UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
FOREST LABORATORIES, INC.,                          :
                                                    :
                                    Plaintiff,      : Index No. 07 CV 7399
                                                    : Hon. Alvin K. Hellerstein
                                                    :
            - against -                             :
                                                    :
                                                    :
 LEIF NISSEN,                                       :
                                                    :
                                                    :
                                    Defendant.      :
--------------------------------------------------------------------x

### THIRD DECLARATION OF CHRISTOPHER SERBAGI IN SUPPORT OF PLAINTIFF'S REQUEST FOR A PERMANENT INJUNCTION

STATE OF NEW YORK      )
                       : ss.:
COUNTY OF NEW YORK   )

        I, CHRISTOPHER SERBAGI, an attorney duly licensed to practice law before this Court, declares the following under penalty of perjury:

        1.   I represent the Plaintiff Forest Laboratories, Inc. ("Forest") in the above-captioned matter.  I submit this Declaration in support of Plaintiff's motion for a permanent injunction and damages.

        2.   Attached hereto as Exhibit A is a true and correct copy of the transcript of the August 21, 2007 hearing before Hon. Loretta Taylor Swain.

        3.   Attached hereto as Exhibit B is a true and correct copy of Judge Loretta Taylor Swain's Order dated August 21, 2007.

        4.   Attached hereto as Exhibit C is a true and correct copy of an electronic communication from Defendant Leif Nissen to me, dated August 21, 2007.

Dated:  August 28, 2007
      New York, New York

_____
CHRISTOPHER SERBAGI

# EXHIBIT A

1

```
          78L3FORC                    Conference
  1     UNITED STATES DISTRICT COURT
  1     SOUTHERN DISTRICT OF NEW YORK
  2     -----------------------------x
  2
  3     FOREST LABORATORIES,
  3
  4               Plaintiff,
  4
  5          v.                              07 CV 7399 (AKH)
  5
  6     LEIF NISSEN,
  6
  7               Defendant.
  7
  8     -----------------------------x
  8                                       New York, N.Y.
  9                                       August 21, 2007
  9                                       12:30 p.m.
 10
 10     Before:
 11
 11                     HON. LAURA TAYLOR SWAIN,
 12
 12                                       District Judge
 13
 13                          APPEARANCES
 14
 14     LAW OFFICES OF CHRISTOPHER SERBAGI
 15          Attorneys for Plaintiff
 15     BY:  CHRISTOPHER SERBAGI
 16              -and-
 16     ERIC M. AGOVINO, ESQ.
 17
 18     LEIF NISSEN, via telephone
 18          Pro Se Defendant
 19
 19
 20
 21
 22
 23
 24
 25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

78L3FORC                    Conference
1           (In open court)
2           THE COURT:  Good afternoon.  I am hearing the
3   application of Forest Laboratories for an order to show cause
4   with the temporary restraining order as against defendant Leif
5   Nissen.  I understand that two counsel are here in the
6   courtroom, and Mr. Nissen is on the phone.
7           Would counsel in the courtroom please state their
8   appearances and introduce themselves.
9           MR. SERBAGI:  Good morning.  Good afternoon.  My name
10  is Christopher Serbagi.  I am outside litigation and trademark
11  counsel for Forest Laboratories.  With me is my colleague and
12  in-house counsel at Forest Laboratories, Eric Agovino.
13          THE COURT:  Good afternoon, Mr. Serbagi and
14  Mr. Agovino.  On the telephone we have?
15          MR. NISSEN:  Leif Nissen.
16          THE COURT:  Good afternoon, Mr. Nissen.
17          MR. NISSEN:  Good afternoon.
18          THE COURT:  I understand that the defendants have at
19  my direction provided you, Mr. Nissen, with copies of their
20  application; is that correct?
21          MR. NISSEN:  Yes.
22          THE COURT:  And did you receive copies of the
23  supplemental certification and declaration?
24          MR. NISSEN:  Yes.
25          THE COURT:  Okay.  Good.  So, have you all been able
                    SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

3

78L3FORC                    Conference
1   to work out anything consensually at this point?  I'll ask
that
2   question of Mr. Serbagi first.
3           MR. SERBAGI:  We have not had discussions subsequent
4   to the letters where Mr. Nissen asked us to purchase the
domain
5   name from him.  So since the time we've filed the application,
6   we have had no further communications with Mr. Nissen.  The
7   correspondence we have had with Mr. Nissen, he's requested us
8   to purchase the domain name from him for $10,000 or he would
9   sell it to Web masters in Pakistan who would use it for

10    pornographic purposes and --

11         THE COURT:  Do you all want me to step out of the

room

12    for a minute for you to discuss on this telephone line whether

13    Mr. Nissen would consent to some variant of the relief that's

14    being sought here pending a hearing?  The case has now

15    officially been reassigned to Judge Hellerstein of this court.

16    He won't be available for a hearing with you though until the

17    5th of September at 10 o'clock.  So whatever we do today, is

18    going to be in anticipation of further proceedings before

Judge

19    Hellerstein on September 5 at 10.  So would you like an

20    opportunity to talk first rather than to argue it and have me

21    decide it?

22         MR. SERBAGI:  I mean, our goal today is simply to

23    obtain a temporary injunction to prevent Mr. Nissen from

24    selling the name and to prevent his registrar from selling it.

25    So --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

78L3FORC              Conference

1         THE COURT:  You want it taken down and delinked.

2         MR. SERBAGI:  We want to deactivate it temporarily so

3    we can present all the evidence to the court and have a full

4    hearing on the issue.

5         Right now, all that he is uses the domain name for is

6    leasing it to these pay-per-click sites who are tying it on to

7    online pharmacies and all kind of improper uses that are

8    confusing consumers in the marketplace and actually causing a

9    concern for public safety, because these online pharmacies are

10    selling unauthorized Lexapro product.  So this is the basis

for

11    our request for emergency relief.

12         THE COURT:  So we're arguing the application.

13    Mr. Nissen, would you care to respond?

14         MR. NISSEN:  Well, I want to point out first that I

15    was originally served with a cease and desist for a name I

16    purchased legally in 2002.  As far as I was concerned, I think

17    Lexapro is not a drug back then.  I did not know of it.  I

18    really -- I don't think anybody knew of it.  I am not a known

19    cybersquatter.

20         THE COURT:  Mr. Nissen, I have to ask you to slow

down

21    a bit.  I have a court reporter here who needs to be able to

```
       22    write everything down and I need to hear everything clearly.
       23           MR. NISSEN:  Sorry.  Should I start over or just
start
       24    from where I left?
       25           THE COURT:  Start over.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```

```
5

             78L3FORC                Conference
        1           MR. NISSEN:  Like I said, I bought the domain in
        2    January 2002, January 22 or 25, I believe it was.  As far as I
        3    know, there was no promotion of Lexapro, I did not know
Lexapro
        4    existed.  I bought it -- I'm sorry.  I'll slow down.  I bought
        5    it to be my professional site that was going to show off my
Web
        6    properties.  I've been a Web master for a very long time.  I
do
        7    not cybersquat domains, I have never cybersquatted domains.  I
        8    think I picked a very nice domain name out, and now I'm being
        9    served with a cease and desist.
       10           I will point out that as mentioned in the injunction,
       11    I have never actually developed a domain name.  I actually, I
       12    didn't find out until a few months after buying it that it was
       13    probably going to be a problem with the fact that there was a
       14    drug named for it or with a different spelling for the domain.
       15    So I just held onto it for two years.  I did nothing with it.
       16    I wanted to see how Lexapro with a different spelling was
going
       17    to be used.  I put up some ad code so people could make money
       18    with it.  It's not up to me what that advertising does.
       19           When I got the cease and desist, that was without any
       20    communication from Forest Laboratories.  They served also on
       21    the company that was serving the advertisements.  And there
       22    really have been no communication.  I picked out the domain
and
       23    I wanted to develop this domain, and was never given the
chance
       24    because they obviously had a different spelling and it was
       25    going to be a problem.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```

```
6
             78L3FORC                Conference
```

```
 1          And then the last thing is I only threatened to sell
 2    it to Pakistan or wherever else because, as far as I'm
 3    concerned, this company has been unreasonable with me and has
 4    not even opened up any lines of communication to discuss the
 5    problem that we all have here.
 6          THE COURT:  Mr. Serbagi, do you wish to respond.
 7          MR. SERBAGI:  Yes, your Honor.  In December of 2000
 8    December of 2000, Forest Laboratories filed an ITU application
 9    for Lexapro.  In January of 2001 we filed for the domain name
10    Lexapro.com.  Throughout 2001 Lexapro was heavily touted in
      the
11    press as being a drug with new efficacy and safety that had
      not
12    been present in drugs prior to that.  It was heavily written
13    about.  If you do an Internet search for Lexapro, you'll see
14    all those articles in 2000 and 20001.  We filed an NDA, new
15    drug application, in 2001 for Lexapro.  Again, heavily touted
16    in the press.
17          It was not until January 25 of 2002, after we had
18    filed our ITU application, after we filed our NDA, after
19    Lexapro had been heavily touted in the press, that Mr. Nissen,
20    claiming somehow to have come up with this very similar
21    spelling, as close as you can get to our drug as possible
22    without being Lexapro, filed for a domain name registration
      for
23    Lexipro.com with an I.  If you look if you plug Lexipro into
24    the Internet and Google, there's actual confusion in the
25    marketplace over the name.
```

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

7

```
      78L3FORC                    Conference
 1          So Forest had prior use to it based on its ITU
 2    application.  There's evidence of bad faith because it was
 3    heavily covered in the press, and Mr. Nissen claims to have
 4    just somehow independently come up with this name that
      mirrored
 5    Forest's drug around the same time shortly after we filed the
 6    IDA.
 7          Putting all that aside, our prior use to it, there's
 8    substantial evidence of bad faith.  If you look at what he's
 9    done with the mark, somebody who comes up with a domain name
10    tries to create a business with it.  He didn't do that.  What
11    he did try to do, he leased it, as I said in my supplemental
```

12    declaration.  If you go on the way back machine which provides
13    a snapshot of Web sites that have been published in the past,
14    the Court may be familiar with that.  But what that shows from
15    Mr. Nissen's Lexipro.com is exactly what he is doing now.  He
16    is parking it on a pay-per-click site.  He is not using it as
17    an independent business.  He gets money every time somebody
who
18    is confused about Lexapro goes on to the Lexipro site, clicks
19    on to it to see what's going on, Mr. Nissen gets paid.  So do
20    the advertisers who are on these sites.
21          Lexipro is linked in the past, according to my
22    supplemental declaration, to online gambling sites.  More
23    recently, he has leased the name to Part.com which is a site
24    that is currently publishing advertisements in connection with
25    Lexipro.com for online pharmacies overseas that the Court has
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

8

      78L3FORC                    Conference
1    no jurisdiction over.  And these online pharmacies, it's a
2    well-known problem, they're selling unauthorized drugs.  Some
3    of it may be Lexapro, some of it may be not.
4          It's dangerous, it's causing consumer confusion in
the
5    marketplace, there is a public safety issue.  Mr. Nissen has
no
6    legitimate business interest in the site, except to piggyback
7    and collect moneys on Lexapro's good name.  So there is a
8    variety of factors that require emergency relief.
9          THE COURT:  Is it your position as a matter of law
10    that under the Cybersquatting Act, even if there were not
11    conclusive proof of an original bad intent in acquiring the
Web
12    site, if the domain name is being used in a manner that is
13    confusingly similar with a bad faith intent, that would be
14    sufficient, the current use would be sufficient to support the
15    cause of action and relief under the anti-cybersquatting
16    statute?
17          MR. SERBAGI:  The answer to your Honor's question is
18    yes.  I do believe that the law will support that.  And the
19    reason is because there are a variety of factors that the
20    courts look at in the anti-cybersquatting statute, and bad
21    faith is one of them.
22          And incidentally, I do believe there is significant
23    evidence of bad faith here when he registered the mark.  The

24    evidence is that -- the evidence is Lexapro was heavily touted
25    in the press at the time.  Mr. Nissen spent a lot of time on
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

9

      78L3FORC                    Conference
1     the Internet, as you can see from all the domain names he has
2     registered.  He is very Internet savvy.  He likely ran across
3     these articles.
4            It's possible the Court could say maybe he didn't
read
5     those articles, that's not really enough evidence.  What he
did
6     after that really shows that he had bad faith from the
7     inception.  And what that shows is he never used it in
8     connection with legitimate business.  He always had it parked
9     on one of these pay-per-click sites to get money off it.  The
10    only reason he is getting money off these sites is because
11    everybody's confusing it with Lexapro.  Nobody makes money off
12    the parked Web sites because nobody would type it in as a Web
13    address.  Nobody would make money that way.  What happened
14    subsequent to his registration of the domain name I believe is
15    very good evidence of bad faith at the inception.
16           But the answer to the Court's question is I do not
17    believe that the cybersquatting law requires that it be shown
18    that there was bad faith when he first registered the mark,
19    although I do believe that evidence is here.
20           THE COURT:  For the record, on the assumption that
21    Mr. Nissen doesn't have a copy of the statute right in front
of
22    him, I will note that the civil liabilities civil action
23    provision of the statute permits such an action where a person
24    has a bad faith intent to profit from a mark and registers,
25    traffics in, or uses a domain name that, in the case of the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

10

      78L3FORC                    Conference
1     famous mark that is famous at the time of registration of the
2     domain name, is identical or confusingly similar to or
dilutive
3     of that mark.
4            And Mr. Serbagi, your representation is that between
5     the NDA and all of the publicity about Lexapro in 2001, that

          6    Lexapro with an A was a famous mark within the meaning of the
          7    statute by January 2002, which is when Mr. Nissen registered
          8    his Lexipro domain name.
          9         MR. SERBAGI:  All that is true, your Honor.  I will
         10    note for the record that this is not a case based solely on
the
         11    cybersquatting statute.  We don't need to rely on that.
         12    There's dilution, there's trademark infringement, there is a
         13    variety of other causes of action.  Even if the Court were to
         14    say that the bad faith from the inception really isn't there,
         15    although I believe the evidence is clear, there's clear
         16    evidence of trademark infringement here at this point.
         17         And so the relief we're requesting is important to at
         18    least put a stop to the consumer confusion that's taking place
         19    and the danger to public safety before we can present to the
         20    Court all the evidence and before a full hearing.
         21         So this temporary relief is not hurting anybody.
It's
         22    deactivation of the domain name temporarily, and we
         23    respectfully request that the Court do that.
         24         THE COURT:  Anything further, Mr. Nissen?
         25         MR. NISSEN:  Yes.  If my intention was bad the entire
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

11

          78L3FORC                   Conference
          1    time and as being said here that I had started this site only
          2    to piggyback off the domain, and as they're saying you can use
          3    the way back machine to see exactly what I was doing with the
          4    site all the years I've owned it, you'll see that as of
          5    December 15, 2004, I had not profited on it.  That means I
          6    owned the domain for all of 2002, all of 2003, and all of 2004
          7    without even knowing -- without even once using it as a
domain.
          8    As I mentioned before, I bought the domain to be used as my
          9    business professional Web site.  For three entire years I did
         10    not have any parking of the domain name, which he keeps saying
         11    that I did.  It was not until basically 2005 that I put a
         12    parking on it, because I decided there was absolutely no way
at
         13    this point I was going to be able to use it as an official
         14    business Web site.
         15         There are known cybersquatters that are piggybacking.
         16    There are lots of cybersquatters that look specifically only
         17    for these kind of domain names.  I am not one of those people.

18    Every site that I build, every domain name that I buy --
sorry,
19    I'll slow down.  Every domain that I buy, I buy with the
20    intention of putting up a legitimate Web site.  This is an
21    unfortunate mistake that's happened.  That we ended up with
the
22    same concept for a domain name or product or whatever.  But
23    this is what happened.  This is the entire basis of their
24    argument as far as I can see.
25            MR. SERBAGI:  I'd like to --
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300


12

        78L3FORC              Conference
1            THE COURT:  Mr. Serbagi, briefly.
2            MR. SERBAGI:  I will briefly respond.  I think we are
3    spending a lot of time on the bad faith issue and we both
4    defended our positions on that.  Bad faith is not required
here
5    for the Court to show a temporary -- the very non-prejudicial
6    temporary restraining order that we're requesting.
7            Trademark infringement is sufficient for that.  There
8    is evidence of consumer confusion, actual confusion in the
9    marketplace.  There is a public safety issue.  And I believe
10   that although we do have evidence of bad faith, and I will
11   strongly argue that, it's not necessary for the Court to issue
12   this TRO, we are not relying on the Cybersquatting Act.
13   There's consumer confusion and that's sufficient.
14           THE COURT:  Anything further, Mr. Nissen, briefly?
15           MR. NISSEN:  As I mentioned before, I put up a park
16   domain on it.  What they do with it is really not up to me.
As
17   far as I know, right now if you click on one of the
18   advertisements, it will bring up a Google search, and at the
19   top of that search will probably be the actual Lexapro.com.
So
20   as far as I can see, they're winning either way anyway no
21   matter what.  But as far as infringement, if they filed their
22   patent before I bought the domain name, I guess I don't have
23   too much to argue with.  I can tell you honestly I had no bad
24   intent.
25           THE COURT:  All right.  Well, having read the papers
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

13

78L3FORC                    Conference
1   and having listened very carefully to everything that I have
2   heard, I find that it is appropriate to enter the temporary
3   restraining order in anticipation of the further hearing on
the
4   application for the preliminary injunction.
5           I find that the proffer here and the facts as they
6   have been explained are indicative of a likelihood of success
7   on the merits of the plaintiff's trademark infringement,
8   dilution and anti-cybersquatting causes of action insofar as
9   there is evidence of consumer confusion, there is evidence of
10  use of the Lexipro domain name to obtain revenue whose source
11  really is that consumer confusion.  And there is, in terms of
12  irreparable harm, not only the irreparable harm that by
13  definition exists in the context of misuse of intellectual
14  property, but also a broader public safety issue with respect
15  to the availability of this Lexipro domain name as a channel
to
16  unauthorized and unregulated versions or purported versions of
17  the name brand drug.
18          Accordingly, I will sign the order as proposed.
19          I will require the posting of a $25,000 bond, and
that
20  bond must be posted by the close of business tomorrow with the
21  clerk of court.  So that would be August 22, so I'll say by
22  4 p.m. on August 22, 2007.
23          And I will set you down for a hearing on September 5,
24  2007, at 10 a.m. before Judge Hellerstein.  I'm going to ask
my
25  deputy whether she knows Judge Hellerstein's courtroom number.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

14

78L3FORC                    Conference
1   It will be courtroom 14D as in David in United States
2   Courthouse, 500 Pearl Street, in Manhattan.  And before the
3   Honorable Alvin Hellerstein of this court.
4           I've crossed out the words a motion term since we're
5   on the individual assignment system.
6           Now, in terms of further paper submissions, this
7   proposed order contemplates that plaintiff want a little more
8   time to put in a memo of law.
9           MR. SERBAGI:  Yes, your Honor.
10          THE COURT:  You will do that by Thursday the 23rd.

11          MR. SERBAGI:  Okay.
12          THE COURT:  So August 23rd, 2007.  That's a so as to
13  be filed and received by Mr. Nissen date.  Not put in the mail
14  date.
15          MR. SERBAGI:  Yes, your Honor.
16          THE COURT:  Mr. Nissen, I will give you until a week,
17  which is until the 30th of August, to serve and file your
18  opposition papers.  If you have not already retained an
19  attorney, I strongly advise you to get in touch with an
20  attorney.  This is an important matter and a short schedule.
21  And any reply papers must be served and filed by September 4

by

22  noon.  Of course courtesy copies of all of these papers should
23  be provided for Judge Hellerstein's chambers.
24          I'll give the plaintiff until the 23rd to serve this
25  order, but the plaintiff will want to do that very promptly.
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300


15

    78L3FORC                    Conference
1   And I am marking it as granted at 12:55 p.m. on August 21,
2   2007.
3           My courtroom deputy and law clerk will assist the
4   counsel in the courtroom with getting the order for service

and

5   we will keep a copy and we'll make sure that the arrangements
6   are made for filing it.  And unless anyone needs to say
7   anything else, that I think concludes our --
8           MR. SERBAGI:  One procedural point.  Is service by
9   e-mail and facsimile sufficient for the PI papers?
10          THE COURT:  Mr. Nissen, do you have any problem with
11  receiving the memorandum of law and injunction related papers
12  by e-mail or fax?
13          MR. NISSEN:  That's not a problem.
14          THE COURT:  Fine.  Then that's authorized.
15          MR. SERBAGI:  Thank you.
16          THE COURT:  Thank you all very much.
17                          o0o
18
19
20
21
22
23
24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# EXHIBIT B

HELLERSTEIN

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/21/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

FOREST LABORATORIES, INC.,

                              Plaintiff,

              - against -

LEIF NISSEN,

                          Defendant.

-------------------------------------------------------------------x

: Index No. 07CV 7399 (SWK)
:
: Order to Show Cause for
: Temporary Restraining Order
: and Preliminary Injunction
:
:
:
:
:
:
:

        Upon the Declaration of Eric M. Agovino and Christopher Serbagi, attorneys for the

Plaintiff, dated August 17, 2007 and upon a copy of the Complaint annexed hereto, it is

        ORDERED, that the above-named Defendant show cause before ~~a motion term~~ the Hon. Alvin Hellerstein of this

Court, at Room 14D ~~12B~~, United States Courthouse, 500 Pearl Street, in the City, County and State of

New York, on September 5, 2007, at 10:00      o'clock, AM or as soon thereafter as counsel may be heard,

why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure,

enjoining the Defendant Leif Nissen, during the pendency of this action, from using the domain

name "lexipro.com" in any manner on the Internet or in any other manner, including use by

others whom Defendant has employed or retained to use the domain name "lexipro.com."

        ORDERED that sufficient reason having been shown therefore, pending the hearing of

Plaintiff's application for a preliminary injunction, pursuant to Rule 65, Fed. R. Civ. P., the

defendant is temporarily Ordered to take all necessary measures to ensure that the domain name

"lexipro.com" is not used in any manner on the Internet, including use by others whom

Defendant has employed or retained to use the domain name "lexipro.com."

ORDERED that ENOM, Inc., the Registrar of the domain name "lexipro.com," temporarily and until further Order of this Court, deactivate and hold the domain name "lexipro.com" so that no individual or entity may purchase or transfer or otherwise make any use of the domain name "lexipro.com." The Court specifically Orders that ENOM, Inc. temporarily and until further Order of this Court deactivate the domain name "lexipro.com" so that users who use the web address "www.lexipro.com" not have access to the Internet with that domain name until further Order of this Court.

ORDERED that Plaintiff submit its preliminary injunction memorandum in support of its motion for a preliminary injunction on 8|23, 2007; that Defendants submit is opposition papers on 8|30, 2007; and that Plaintiff submit its reply papers on 9|4, 2007. *at 12pm non*

ORDERED that plaintiff post a bond of $25,0⁰⁰ pending determination of this hearing. *Post by by 4:00pm m 8|22|2007*

ORDERED that service of a copy of this order and of the papers on which it is based, by Federal Express or other overnight delivery to the Defendant, on or before the 23 day of August, 2007, shall be deemed good and sufficient service thereof.

Dated:  New York, New York
         August 21, 2007
         12:55pm

SO ORDERED:

_____ PART I
USDJ
LAURA TAYLOR SWAIN

2

# EXHIBIT C

**Subject: Re: Judge Swain Order Attached**
**Date:** Tuesday, August 21, 2007 3:56 PM
**From:** Leif Nissen <leif@properhosting.com>
**To:** Christopher Serbagi <c.serbagi@earthlink.net>, "Agovino, Eric"
<Eric.Agovino@frx.com>
**Conversation:** Judge Swain Order Attached

Christopher,

Please email me when the fax is sent so I can read the information.

Of course I don't intend to post bond since I don't live in NY, but I am a bit annoyed at
having to find a lawyer in the next week for the next hearing. So far all you've wanted
was for me to cease and desist. I have now done this. I recommend we find an
amicable solution at this point. From my perspective this harrassment isn't getting
anyone anywhere. You gave me less than 24 hours notice to get in on a phone call after
tricking me into thinking you were actually considering buying the domain from me.
Whether you believed me in court today or not, I never had any intention of
cybersquatting Lexapro. You'll find evidence of that with archive.org <http://
archive.org>  (way back machine) where for 3 years I didn't have it parked. You'll have
a hard time arguing that Google, who is now running the ads on the site, is illegally
showing ads from pharmacies. This goes back to what I asked earlier, what exactly is it
that you want at this point? I can tell you what I want... a peaceful solution that gives
me a fair payout on a domain I legitimately purchased for use as a business domain.

Also, as I mentioned in court, you might want to go after the REAL cybersquatters,
here's a short list of some I came up with that are all registered:

elxapro.com <http://elxapro.com>
pexapro.com <http://pexapro.com>
mexapro.com <http://mexapro.com>
kexapro.com <http://kexapro.com>
lesapro.com <http://lesapro.com>
lecapro.com <http://lecapro.com>
lezapro.com <http://lezapro.com>
lexspro.com <http://lexspro.com>
lexzpro.com <http://lexzpro.com>
lexqpro.com <http://lexqpro.com>
lexaoro.com <http://lexaoro.com>
lexalro.com <http://lexalro.com>
lexapeo.com <http://lexapeo.com>
lexapto.com <http://lexapto.com>
lexapgo.com <http://lexapgo.com>
lexapfo.com <http://lexapfo.com>

**Page 1 of 2**

lexapri.com <http://lexapri.com>
lexaprl.com <http://lexaprl.com>
lexaprp.com <http://lexaprp.com>

Leif

On 8/21/07, **Christopher Serbagi** <c.serbagi@earthlink.net> wrote:
    Dear Mr. Nissen:

    Attached is Judge Swain's Order of today, ordering you and ENOM to
    deactivate use of the domain name " lexipro.com <http://lexipro.com> "
    pending further Order of the
    Court.  Please let me know when you have complied with the Order.

    Please confirm receipt of this email and please let me know if and when you
    have retained a lawyer to represent you in this action.

    Very truly yours,

    Christopher Serbagi


    Law Offices of Christopher Serbagi
    488 Madison Avenue, Suite 1120
    New York, New York  10022
    Tele: 212-593-2112
    Fax:  212-308-8582
    Email: c.serbagi@earthlink.net