UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

FOREST LABORATORIES, INC.,

                Plaintiff,

          - against -

LEIF NISSEN,

               Defendant.

----------------------------------------------------------------x

ECF Case

07 Civ. 7399 (AKH) (MHD)

 

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

James W. Dabney
Sarah R. Krissoff
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, New York 10004 - 1980
(212) 859 - 8000

Attorneys for Defendant
Leif Nissen

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................ ii

FACTS ........................................................................................................................... 1

    Events Giving Rise to This Action ................................................................... 4

    Course of Proceedings ...................................................................................... 6

SUMMARY OF THE ARGUMENT .................................................................... 8

ARGUMENT .......................................................................................................... 8

I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL
    JURISDICTION OVER MR. NISSEN ..................................................................... 9

    A.   Mr. Nissen's Attempts to Settle This Dispute Did Not Subject
       Him to Personal Jurisdiction in New York. .................................................. 9

    B.   Third-Party Displays of Passive "Park" Pages Did Not Subject
       Mr. Nissen to Personal Jurisdiction in New York… ..................................... 12

    C.   Mr. Nissen's 2002 Registration of "lexipro.com" in Indiana Did
       Not Subject Him to Personal Jurisdiction in New York.. ............................. 16

    D.   The Due Process Clause Bars Jurisdiction ................................................... 18

II.   THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE. .................... 22

CONCLUSION ........................................................................................................ 24

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400 (2d Cir. 2005).....................14, 15

Beacon Enterprises, Inc. v. Menzies., 715 F.2d 757 (2d Cir. 1983) ..................................11

Bensusan Restaurant Corp. v. King, 126 F.3d 25 (2d Cir. 1997) ..........................16, 17, 18

Best Van Lines, Inc. v. Walker, 490 F.3d 239 (2d Cir. 2007) ....................................10, 11

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).........................................19, 20, 21

Citigroup Inc v. City Holding Co., 97 F. Supp. 2d 549 (S.D.N.Y. 2000) .........................15

Cobra Partners L.P. v. Liegl, 990 F. Supp. 332 (S.D.N.Y. 1998)......................................22

Daniel v. America Board of Emergency Medical,
    428 F.3d 408 (2d Cir. 2005).................................................................................22, 23

Hanson v. Denckla, 357 U.S. 235 (1957) .............................................................11, 19, 20

ISI Brands, Inc. v. KCC International Inc., 458 F. Supp. 2d 81 (E.D.N.Y. 2006) ............10

International Shoe Co. v. Washington., 326 U.S. 310 (1945) ...........................................19

K.C.P.L., Inc. v. Nash, No. 98 Civ. 3773,
    1998 U.S. Dist. LEXIS 18464 (S.D.N.Y. 1998).........................................................11

Klinghoffer v. Achille Lauro Ed Altri Gestione, 937 F.2d 44 (2d Cir. 1991) ...................11

Leroy v. Great Western United Corp., 443 U.S. 173 (1979) ..............................................22

Light v. Taylor, No. 05 Civ. 5855,
    2007 U.S. Dist. LEXIS 5855 (S.D.N.Y. Jan. 29, 2007)..............................................20

McKee Electric Co. v. Rauland-Borg Corp., 283 N.Y.2d 34 (N.Y. 1967).........................11

Merck & Co. v. Mediplan Health Consulting, Inc.,
    425 F. Supp. 2d 402 (S.D.N.Y. 2006).............................................................13, 14, 15

Realuyo v. Villabrille, No. 01 Civ. 10158,
    2003 U.S. Dist. LEXIS 11529 (S.D.N.Y. Jul. 8, 2003) ...................................18, 20, 21

ii

## TABLE OF AUTHORITIES

Page

Rescuecom Corp. v. Google, Inc., 456 F. Supp. 2d 393
    (N.D.N.Y. 2006) ..........................................................................................13, 14

Seldon v. Direct Response Technologies, Inc., No. 03 Civ. 5381,
    2004 U.S. Dist. LEXIS 5344 (S.D.N.Y. Mar. 30, 2004) ......................................15, 16

Stewart v. Vista Point Verlag, No. 99 Civ. 4225, 2000 U.S. Dist. LEXIS 14236
    (S.D.N.Y. Sept. 29, 2000), aff'd, No. 00-9471 (2d Cir. Oct. 11, 2001).................10, 18

Talk to Me Products, Inc. v. Larami Corp., 804 F. Supp. 555 (S.D.N.Y. 1992) ..............17

World-Wide Volkswagen Corp. v. Woodson., 444 U.S. 286 (1980) ................................21

### FEDERAL STATUTES AND RULES

28 U.S.C. § 1391..........................................................................................8, 21, 22

Fed. R. Civ. P. 4(k)(1)(A) ................................................................................18

Fed. R. Civ. P. 12(b)(2)................................................................................18, 24

Fed. R. Civ. P. 12(b)(3)....................................................................................24

Fed. R. Evid. 408 .........................................................................................10

Defendant Leif Nissen respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), for an Order dismissing this action for lack of personal jurisdiction and for improper venue.

### FACTS

Mr. Nissen is an individual resident of St. Petersburg, Florida. Mr. Nissen designs web sites and owns and operates a web hosting business out of his home called Properhosting.com. A description of Mr. Nissen's business is available at http://www.properhosting.com. Mr. Nissen has no offices, employees, representatives, distributors, telephone listings, property, or bank accounts in New York. In the year ended December 31, 2006, Mr. Nissen's total gross revenues from sales of hosting services and web site advertising space was approximately $260,000.00, all of which revenues were remitted to Mr. Nissen in Florida. Net of expenses, such as the cost of computer equipment used in providing hosting services, Mr. Nissen's 2006 taxable income was $62,255.00. Declaration of Leif Nissen, sworn to September 21, 2007 [hereinafter, "Nissen Decl."] ¶¶ 2-4.

From time to time since 2002, Mr. Nissen has registered domain names that he believed were descriptive of businesses or web site content that he might develop on his own, or that customers of Properhosting.com might develop using web hosting or advertising services provided by Mr. Nissen. For example, Mr. Nissen currently owns and operates an advertiser-supported web site located at http://www.funnywebzone.com/, which features funny video and other humorous content. Nissen Decl. ¶¶ 5-6. Set forth below is an alphabetical listing of domains that Mr. Nissen has registered from time to time since 2002 (id. ¶ 5):

aboutnurshingschool.com
afinancialservices.com
apexreseller.com
ataxpreparation.com

bamboopage.com
bestfreecounter.com
bigzazoo.com
birdhousesforever.com
boldlogos.com
briefcasesdirect.com
broadbandapex.com
bureausite.com
buyermagnet.com
buzzedhumor.com
buzzhumour.com
cameraslink.com
chesssetsonline.com
cozylamps.com
dailypottery.com
discussionz.com
doctorsextra.com
downloadbin.com
electronicsclick.com
exercisewiz.com
flagsdot.com
floortileonline.com
forkliftsdepot.com
freecpanelwebhosting.com
funnytshirtz.com
funnywebzone.com
furniturecomputerdesks.com
generatorsworld.com
hearingaidsworld.com
homesecuritysystemsrus.com
hostcomposer.com
hoststay.com
hotcardealers.com
hotelsinventory.com
jumbohammocks.com
lexipro.com
listingz.com
magazineschoice.com
maincoupons.com
mattressescom.com
onlybanks.com
onlydentists.com
onlyflorists.com
onlypaint.com
optimizationz.com
optimizepro.com

2

properhosting.com
properhosting.net
rankingz.com
realtorscatalog.com
recipesdot.com
redirectz.com
resourcetalk.com
restaurantstour.com
rome3.com
searchmarinas.com
snapdex.com
theznetwork.com
thumboutlet.com
thumbsoutlet.com
thunderhost.org
travelbz.com
unitedcooking.com
webmasterexchange.net
webmaster-software.net
websclick.com
websitez.com
worldcarguide.com

Mr. Nissen registered the domain name "lexipro.com" on or about January 25, 2002, while he was a college student in Indiana. Nissen Decl. ¶ 7. At the time Mr. Nissen thought that "lexipro.com" was a very professional sounding name that might be valuable if used in association with a web site featuring professional legal services. Id. Mr. Nissen registered "lexipro.com" after learning that the domain name "lexpro.com" had already been taken. Id.

Mr. Nissen has sworn that at the time he registered the domain name "lexipro.com" on or about January 25, 2002, he had never heard of Forest Laboratories, "lexapro," or any drug having the name "lexapro." Id.[1] Between January 2002 and April 2004, the domain name

---

[1] The plaintiff in this action, Forest Laboratories, Inc. ("Forest"), claims ownership of a federal trademark registration, U.S. Reg. No. 2,684,432, issued February 4, 2003, for the mark LEXAPRO as applied to "pharmaceutical preparations, namely, antidepressants." See Declaration of Eric M. Agovino, sworn to August 17, 2007 [hereinafter, "First Agovino Decl."] ¶

**Footnote continued**

3

"lexipro.com" was associated with name servers operated by Properhosting.com and was not associated with any text or graphic matter. Id. ¶ 9. Between April 2004 and May 2007, the domain name "lexipro.com" was "parked" with a company called "Domainsponsor" ("DMS") and associated with name servers operated by DMS. Id. ¶ 9. Neither the plaintiff's original nor its amended complaints in this action make any reference to DMS or any web page content that DMS may have displayed in response to queries made to the domain name "lexipro.com" between April 2004 and May 2007. Id. ¶ 10. DMS paid Mr. Nissen a grand total of approximately $743 in fees during the 37-month period between April 2004 and May 2007. Id.

**Events Giving Rise to This Action**

On or about May 23, 2007, while sitting at a computer workstation in his home in St. Petersburg, Florida, Mr. Nissen visited a web site, http://www.parked.com, that was operated by a Tampa, Florida-based company called Parked.com, LLC ("PDC"). According to its web site,

---

Footnote continued from previous page

11 & Ex. B. According to the plaintiff's registration certificate, Forest's "first use" of LEXAPRO did not occur until September 5, 2002. Id. LEXAPRO is a prescription drug whose marketing and sale is subject to regulation by the United States Food and Drug Administration ("FDA"). First Agovino Decl. ¶ 9. The FDA did not approve LEXAPRO for marketing or sale until August 14, 2002. See Second Declaration of Eric M. Agovino, sworn to August 28, 2002 ["Second Agovino Decl."] ¶ 5. Neither the complaint nor any other papers filed by plaintiff to date identifies any direct-to-consumer advertising of LEXAPRO in 2002 or at any other time.

During a TRO hearing in this case on August 21, 2007, plaintiff's counsel was pointedly asked by the Part I Judge, "Mr. Serbagi, your representation is that between the NDA and all of the publicity about Lexapro in 2001, Lexapro with an A was a famous mark within the meaning of the statute by January 2002," to which the response was, "All that is true, your Honor." Third Declaration of Christopher Serbagi, sworn to August 28, ¶ 2 & Ex. A at 10 (emphasis added). Mr. Nissen looks forward to receiving plaintiff's responses to his discovery requests seeking what, if any, factual basis plaintiff's counsel had for his representation to the Court quoted above. Mr. Nissen acknowledges having learned of the existence of the LEXAPRO drug product some months after he registered the domain name "lexipro.com." Nissen Decl. ¶ 8. Partly for that reason, Mr. Nissen never developed any web site content for "lexipro.com" and has never attempted to adopt "lexipro.com" as any type of business name. Id.

4

PDC carried on the same type of "park" page business as did DMS. The PDC web site invited owners of domain names to "park" domain names with PDC by associating them with name servers that PDC operated. The PDC web site indicated that PDC would pay domain name owners a fee if it, PDC, were successful in generating advertising revenues from web pages that PDC would create and display in response to queries made to domain names "parked" with PDC and thus routed to PDC servers. Nissen Decl. ¶ 11. This was similar to the arrangement that Mr. Nissen had had with DMS since April 2004.

Using the PDC web site, Mr. Nissen associated a number of his previously registered domain names with PDC-controlled name servers, one of which was "lexipro.com." For each domain name that Mr. Nissen entered into the PDC web site, the PDC web site provided a drop down list of approximately 50 "key words" and prompted Mr. Nissen to choose a word from the list. Nissen Decl. ¶ 12. PDC apparently has contracts with one or more "search engine companies," under which PDC is supplied with information concerning amounts that advertisers have bid on "key word" search terms. See Affidavit of Sigmund Solares, sworn to August 27, 2007 [hereinafter, "Solares Aff."] ¶¶ 3-4.[2] PDC apparently uses this information to develop lists of suggested "key words" that, if associated with a web site, may increase its ranking in a listing of search engine results. Id. ¶ 4.

In the case of "lexipro.com," PDC presented Mr. Nissen with a drop down list of key words that included the word "depression." Nissen Decl. ¶ 13. Mr. Nissen chose the word

---

[2]    The plaintiff obtained and filed the Solares affidavit after the plaintiff had threatened Mr. Solares's company, PDC, with suit for alleged trademark infringement and related torts. Mr. Nissen believes that the Solares affidavit is very selective and misleading in the information it provides and in its characterization of the former contractual relationship that existed between PDC and Mr. Nissen. Nissen Decl. ¶ 20. Mr. Solares and other PDC personnel would be key witnesses in any trial of this action.

"depression" from the PDC-supplied list. Id. Mr. Nissen had no reason to believe, and did not believe, that PDC's presentation of this key word option to him was in any way improper. Mr. Nissen understood – correctly as it turns out – that PDC intended to generate passive web pages that would offer no goods or services for sale, but would merely present a list of links to third-party web sites that might be of interest to a person who entered the term "lexipro" into a search engine or browser. Id.[3]

Subsequent to May 23, 2007, PDC generated one or more passive web pages exemplified by Exhibit 1 to this memorandum. See Solares Aff. Ex. C. Mr. Nissen did not design, create, review, approve, or display the web page depicted in Exhibit 1. Nissen Decl. ¶ 14. The web page depicted in Exhibit 1 bears a copyright notice that states, "© 2007 lexipro.com All rights reserved." The copyright notice in Exhibit 1 apparently refers to PDC. Mr. Nissen has never identified himself or his business by the name "lexipro.com" and has never offered for sale or sold, in New York or anywhere else, any goods or services identified by the name "lexipro.com." Nissen Decl. ¶¶ 8, 14-15. PDC has paid Mr. Nissen a grand total of approximately $248 in fees for its, PDC's, use of the domain name "lexipro.com" between May 23 and approximately August 14, 2007. Id. ¶ 15.

**Course of Proceedings**

By letter dated August 1, 2007, plaintiff through counsel wrote to Mr. Nissen at his home in St. Petersburg, Florida, and demanded that Mr. Nissen cease use of the domain name

---

[3] As described more fully infra, informational sites related to branded products are extremely common. See Second Agovino Decl. ¶ 12 & Ex. K (GOOGLE search of the term "lexipro" generated 54,000+ responses, most of which were not sponsored by the plaintiff). Mr. Nissen vigorously denies and disputes plaintiff's claim that Mr. Nissen acted in "bad faith" in his interaction with PDC in Florida, or that there was anything unlawful or improper in that interaction whatsoever.

"lexipro.com." Nissen Decl. ¶ 16; First Agovino Decl. ¶ 14 & Ex. C. Plaintiff's initial demand letter did not demand that Mr. Nissen transfer the domain name "lexipro.com" to plaintiff, but merely that Mr. Nissen cease "use" of it. Id. Although plaintiff's counsel's August 1 letter requested a response within 10 days, Mr. Nissen responded immediately that same day, August 1, and attempted to settle the dispute. Nissen Decl. ¶ 16; First Agovino Decl. ¶ 15 & Ex. D. Plaintiff never responded to Mr. Nissen's August 1 settlement communication.

Instead, by letter dated August 14, 2007, and addressed to PDC in Tampa, Florida, plaintiff through outside counsel demanded that PDC cease use of the domain name "lexipro.com." Plaintiff's counsel's August 14 letter stated in part: "It has come to our attention that Parked.Com ("Parked") has employed the domain name 'lexipro.com' on its hosting servers. . . ." First Agovino Decl. ¶ 17 & Ex. E. Plaintiff threatened PDC with suit if it, PDC, did not comply with plaintiff's demand that PDC "immediately remove the domain name 'lexipro.com' and any deriviation or similar name from its hosting servers." Id. PDC apparently complied with this demand on or about August 14, 2007.

Upon learning of plaintiff's interaction with PDC, Mr. Nissen sent a follow-up e-mail to the Forest in-house attorney who had initially made demand on him, in a further attempt to settle the dispute. First Agovino Decl. 19 & Ex. G. Plaintiff once again did not respond. Mr. Nissen then "parked" the domain name "lexipro.com" with another company, Sedo, whose business is similar to that of DMS and PDC. Nissen Decl. ¶¶ 17-18. Sedo generated a passive "park" page whose contents were similar to the one that PDC had generated. See First Agovino Decl. ¶ 20 & Exh. H.

Plaintiff then commenced the present action by filing a complaint with this Court on August 20, 2007.

7

## SUMMARY OF THE ARGUMENT

The plaintiff's complaint should be dismissed for lack of personal jurisdiction, because (a) the plaintiff's purported claims do not arise from any acts of Mr. Nissen that are enumerated in CPLR § 302(a), and because (b) at all events, the Due Process Clause would preclude a New York court from hearing the plaintiff's purported claims against Mr. Nissen in the circumstances of this case.

The plaintiff's complaint should be dismissed for improper venue, because (a) Mr. Nissen does not reside in this district, and (b) this district is not one in which "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).  All of the conduct of Mr. Nissen complained of by the plaintiff occurred in the Middle District of Florida. Non-party PDC is also headquartered in the Middle District of Florida, as is Sigmund Solares, the Chief Executive Officer of PDC.  The plaintiff has already solicited and filed a self-serving affidavit of Mr. Solares, executed in Tampa, Florida, in which Mr. Solares purports to describe PDC's domain name "parking" business, PDC's interactions with Mr. Nissen, and PDC's generation of the web page content that plaintiff has attacked in this action.

In addition, the plaintiff has made the extraordinary allegation that Mr. Nissen has supposedly committed "outright perjury" in this case.  Plaintiff's Pretrial Memorandum of Law dated August 29, 2007, at 3.  Witnesses knowledgeable of Mr. Nissen's character for truthfulness are located in the Middle District of Florida, where Mr. Nissen lives and works.  The plaintiff's "perjury" allegation, however baseless, underscores the importance of this case being tried in the district where percipient witnesses work and reside and can be called live.  Further, after the Court rejected the plaintiff's unusual attempt to have this case called for trial on September 11, 2007, without providing Mr. Nissen with any opportunity to take discovery or contest

8

jurisdiction or venue, plaintiff's counsel wrote to the undersigned; "even if it [this case] gets transferred to Florida, be assured that Forest will seek recovery in that district as well." Declaration of James W. Dabney, sworn to September 21, 2007 [hereinafter, "Dabney Decl."] ¶¶ 2-4 & Ex. 1.

## ARGUMENT

### I.  THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER MR. NISSEN.

Plaintiff's amended complaint alleges that the Court "has personal jurisdiction over the Defendant by virtue of his transacting, doing, and soliciting business in this district." Amended Complaint ¶ 3. In fact, Mr. Nissen has never done any of these things in this district. Plaintiff's jurisdictional allegation appears, at best, to be an argumentative characterization of (a) certain settlement communications between Mr. Nissen and plaintiff's counsel, and (b) certain passive, informational web pages that third-parties apparently created and transmitted for their own account and benefit, and that at all events would not support an exercise of personal jurisdiction over Mr. Nissen even if he had designed and transmitted the complained of pages, which he did not.

#### A.  Mr. Nissen's Attempts to Settle This Dispute Did Not Subject Him to Personal Jurisdiction in New York.

As described above, after plaintiff's New York counsel wrote to Mr. Nissen in Florida on August 1, 2007, and explicitly threatened Mr. Nissen with suit, Mr. Nissen replied to plaintiff's counsel in three e-mails that either proposed settlement or urged the plaintiff to engage in reasonable settlement discussions. See First Agovino Decl. ¶¶ 15, 19 & Exs. D, G; Third Declaration of Christopher Serbagi, sworn to August 28, 2007 [hereinafter, "Third Serbagi Decl."] ¶ 4 & Ex. C. With apparent reference to these settlement communications, plaintiff

9

argues: "Defendant has knowingly reached out to this State by making offers to sell Lexipro.com to Forest Laboratories." Amended Complaint ¶ 30.   There are several basic flaws in plaintiff's argument.

In the first place, the so-called "offers" referred to by plaintiff were clearly made by Mr. Nissen while "attempting to compromise a claim which was disputed as to either validity or amount." Fed. R. Evid. 408.   Under the plain terms of Rule 408, Mr. Nissen's settlement communications with plaintiff's counsel are inadmissible to prove Mr. Nissen's liability to the plaintiff on any theory.

In the second place, personal jurisdiction under CPLR § 302(a) is limited to "a cause of action arising from any of the acts enumerated in this section." Here, the plaintiff complains of alleged consumer "confusion" or harm to the trademark LEXAPRO.   The plaintiff's alleged injuries were not in any way caused, and plaintiff's claims accordingly do not in any way "arise from," Mr. Nissen's August 2007 settlement communications with plaintiff's counsel.  Cf. ISI Brands, Inc. v. KCC Int'l Inc., 458 F. Supp. 2d 81, 88-89 (E.D.N.Y. 2006) (Spatt, J.) (personal jurisdiction could not be based on trademark plaintiff's own purchases of goods bearing an allegedly infringing mark); Stewart v. Vista Point Verlag, No. 99 Civ. 4225, 2000 U.S. Dist. LEXIS 14236, at *11-*12 (S.D.N.Y. Sept. 29, 2000) (Preska, J.) (personal jurisdiction could not be based on contact initiated by the plaintiff), aff'd, No. 00-9471 (2d Cir. Oct. 11, 2001).

In the third place, Mr. Nissen's settlement communications with plaintiff's counsel fall far short of the statutory language, "transacts any business within the state." CPLR § 302(a)(1). "New York courts define 'transact[ing] business' as purposeful activity – 'some act by which the defendant purposefully avails itelf of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Best Van Lines, Inc. v. Walker,

490 F.3d 239, 246-47 (2d Cir. 2007) (quoting McKee Elec. Co. v. Rauland-Borg Corp., 283

N.Y.S.2d 34, 37-38 (N.Y. 1967) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1957))).  Here,

Mr. Nissen's settlement communications with plaintiff's counsel did not in any way involve Mr.

Nissen "conducting activities" in New York or "invoking the benefits and protections" of New

York state laws.  "New York courts have consistently refused to sustain section 302(a)(1)

jurisdiction solely on the basis of a defendant's communications from another locale with a party

in New York."  K.C.P.L., Inc. v. Nash, No. 98 Civ. 3773, 1998 U.S. Dist. LEXIS 18464, at *13-

*14 (S.D.N.Y. 1998) (McKenna, J.) (quoting Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 766

(2d Cir. 1983)).  It is undisputed, moreover, that Mr. Nissen's settlement communications were

not responded to by plaintiff and did not result in any "business" being "transacted."

    In the fourth place, plaintiff relies on a post-suit communication dated August 21, 2007,

that Mr. Nissen e-mailed to plaintiff's counsel in response to plaintiff's counsel's express request

that Mr. Nissen acknowledge service of the Part I Judge's TRO and report compliance therewith.

Amended Complaint ¶ 28; Third Serbagi Decl. ¶ 4 & Ex. C.  Mr. Nissen's post-suit

communication with plaintiff's counsel is irrelevant to the existence of personal jurisdiction, for

as a matter of law, "personal jurisdiction depends on the defendant's contacts with the forum at

the time the lawsuit was filed."  Klinghoffer v. Achille Lauro Ed Altri Gestione, 937 F.2d 44, 52

(2d Cir. 1991).

    In sum, with regard to the plaintiff's first pleaded basis for invoking this Court's

jurisdiction, the record shows that on August 1, 2007 – more than five (5) years after Mr. Nissen

had registered the domain name "lexipro.com" – New York-based lawyers for plaintiff suddenly

initiated contact with Mr. Nissen, sent a letter to Mr. Nissen, and made various demands on Mr.

Nissen, including a demand that Mr. Nissen respond to the plaintiff's New York-based lawyers

11

"within ten business days." First Agovino Decl. ¶ 14 & Ex. C at 2. Mr. Nissen responded promptly to plaintiff's counsel's demand. Mr. Nissen's e-mail response was sent to the e-mail address of the New York-based attorney who had intiated contact with him on August 1, simply because that is where the demand from plaintiff's lawyers had come from.

To say, in these circumstances, that Mr. Nissen "knowingly reached out to this State" (Amended Complaint ¶ 30), is to mischaracterize grossly the actual facts as shown in the e-mail correspondence that plaintiff has itself put before the Court. It would be anomalous in the extreme if an individual in Mr. Nissen's position, faced with a demand letter received from a lawyer located more than a thousand miles away, were put in a worse position by reason of his having attempted to respond to the plaintiff's demand, than would exist if Mr. Nissen had simply ignored the plaintiff's demand and not, in plaintiff's words, "reached out" to the plaintiff's representative who made the demand.

As a matter of law, Mr. Nissen's pre-suit attempts to settle the dispute identified in plaintiff's counsel's demand letter dated August 1, 2007, did not subject Mr. Nissen to the personal jurisdiction of New York courts, if Mr. Nissen was not otherwise subject to personal jurisdiction in New York on the underlying dispute.

    B.    **Third-Party Displays of Passive "Park" Pages Did Not**
                **<u>Subject Mr. Nissen to Personal Jurisdiction in New York.</u>**

The only other purported basis of personal jurisdiction identified by plaintiff is: "Defendant has knowingly reached out to this State by . . . placing the domain name lexipro.com on pay-per-click cites [sic] in which others in this district are likely to be confused as to the source of the 'lexipro.com' domain name." Amended Complaint ¶ 30. Here again, the plaintiff's allegation is a gross mischaracterization of the actual facts as shown by documents that plaintiff has itself put before the Court.

The so-called "pay-per-click cites [sic]" referred to by plaintiff, exemplified by Exhibit 1 to this memorandum, were created, hosted, and owned by third-parties, not Mr. Nissen. Nissen Decl. ¶¶ 13-14. All Mr. Nissen did was accept invitations to associate domain names with "name servers" that third-party entities controlled. Doing this was analogous to re-registering vanity telephone numbers so that they were assigned to telephone instruments that PDC or others controlled, with the result that calls or queries to those numbers would be answered with whatever information the called or queried person – which was <u>not</u> Mr. Nissen – provided.

PDC apparently has some contract with Yahoo! Inc. ("Yahoo"), operator of the YAHOO "search engine," under which Yahoo supplies PDC with information concerning amounts that advertisers have bid on "keyword" search terms, such as "depression." Solares Aff. ¶¶ 3-4. <u>Cf</u>. <u>Rescuecom Corp</u>. v. <u>Google, Inc</u>., 456 F. Supp. 2d 393, 400-01 (N.D.N.Y. 2006) (Mordue, J.) (rejecting trademark infringement claim based on defendant's sale of "a keyword that triggers the competitors' sponsored links to appear on the search results page when an Internet user enters Rescuecom as a search term"); <u>Merck & Co</u>. v. <u>Mediplan Health Consulting, Inc</u>., 425 F. Supp. 2d 402, 414-16 (S.D.N.Y. 2006) (Chin, J.) (rejecting trademark infringement claim based on sale of trademark ZOCOR as a "keyword"). PDC apparently then uses this information to develop lists of suggested "keywords" that, if associated with a web site, may increase its ranking in a listing of search engine results. Solares Aff. ¶ 4.

As described above, when Mr. Nissen, in Florida, logged on to the Tampa-based PDC's web site at http://www.parked.com and initiated the process of "parking" the domain name "lexipro.com" with PDC by associating the domain name with PDC-controlled name servers, PDC presented Mr. Nissen, in Florida, with a list of suggested "keywords," one of which was "depression." Nissen Decl. ¶¶ 12-13. It is probably true, as plaintiff alleges, that PDC suggested

13

"depression" as a "keyword" for the domain name "lexipro.com", because Yahoo or other search engine operators had previously informed PDC that many, many third-party advertisers had "bid" on both "lexipro" and "depression" as keywords when used in conjunction.  Plaintiff has put before the Court selected results of a GOOGLE search of the term "lexipro."  See Second Agovino Decl. ¶ 12 & Ex. K.   The search yielded approximately 54,000 responses, the overwhelming majority of which were not sponsored by the plaintiff, but many of which were relevant to "depression" and side effects of taking the prescription drug LEXAPRO.  Id.

But despite the confidence with which plaintiff has accused Mr. Nissen of "bad faith" and "willful" trademark infringement and related torts, the amended complaint does not even allege that Mr. Nissen has offered or sold any goods or services, in New York or anywhere else, under the mark LEXIPRO.  Rather, the plaintiff asserts that the mere (former) existence and display of one of more "park" web pages, exemplified by Exhibit 1 to this memorandum, itself purportedly "infringed" rights claimed by plaintiff in the trademark LEXAPRO.  Plaintiff apparently contends that a GOOGLE search of the term "lexipro" should yield, not 54,000+ responses (Second Agovino Decl. ¶ 12 & Ex. K), but only one – the plaintiff's "official" site for the prescription drug, LEXAPRO.

Claims very similar to the plaintiff's have been repeatedly rejected in the courts.  E.g., Cf. 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 408-11 (2d Cir. 2005) (rejecting trademark infringement claim based on "use" of mark to trigger pop-up ads, where purported "use" did not meet definition of "use in commerce" provided in 15 U.S.C. § 1127); Rescuecom Corp., 456 F. Supp. 2d at 400-01 (rejecting trademark infringement claim based on "use" of mark to trigger sponsored search results, where purported "use" did not meet definition of "use in commerce" provided in 15 U.S.C. § 1127);   Merck & Co., 425 F. Supp. 2d at 414-16 ("there

14

is nothing improper with defendants' [Canadian pharmacies'] purchase of sponsored links to their websites from searches of the keyword 'Zocor'") (citing and applying <u>1-800 Contacts</u>, 414 F.3d at 408, 411).

For purposes of the present motion, it is sufficient to note that the plaintiff's allegation, "Defendant has knowingly reached out to this State by . . . placing the domain name lexipro.com on pay-per-click cites [sic]" (Amended Complaint ¶ 30) is unsupported and erroneous. To begin, as noted above, the evidence of record establishes that the so-called "pay-per-click cites [sic]" were designed, owned, operated, and controlled by third-parties, not Mr. Nissen. Nissen Decl. ¶¶ 13, 17. <u>See</u> <u>also</u> Exhibit 1 hereto (bearing third-party copyright notice). The prior displays of those sites, no matter what their character, were not "acts" of Mr. Nissen for purposes of any subsection of CPLR § 302(a). <u>Id</u>. ¶¶ 15, 18.

The complained of "pay-per-click cites [sic]" did not, moreover, purport to enable anyone to "transact[] any business" with Mr. Nissen. CPLR § 302(a)(1). As shown in Exhibit 1, the complained of sites merely displayed a list of links to others' web sites (the first one of which was the plaintiff's) and furthermore did not target residents of New York any more than they targeted residents of Alaska or Canada or any other English language speaking country in the world. In sharp contrast with "interactive" web sites that solicit business and have been held sufficient to justify an assertion of personal jurisdiction under CPLR § 302(a)(1), <u>e.g.</u>, <u>Citigroup</u> <u>Inc</u> v. <u>City Holding Co</u>., 97 F. Supp. 2d 549, 565-66 (S.D.N.Y. 2000) (Sweet, J.) (upholding jurisdiction over non-resident mortgage company whose web site permitted New York residents to apply for loans online), the complained of sites here were completely "passive" and did not even provide any means of e-mail or other communication with the person (in the case of Exhibit 1, non-party PDC) that actually created and displayed the sites. <u>E.g.</u>, <u>Seldon</u> v. <u>Direct Response</u>

15

Technologies, Inc., No. 03 Civ. 5381, 2004 U.S. Dist. LEXIS 5344, at *15 (S.D.N.Y. Mar. 30, 2004) (Scheindlin, J.) ("When a cause of action arises from a posting on an internet website, the fact that the posting appears on the website in every state will not give rise to jurisdiction in every state. To the contrary, jurisdiction will lie only if the posting is intended to target or focus on internet users in the state where the ause of ation is filed.").

There is nothing in Exhibit 1, or any other evidence of record, that provides the slightest support for plaintiff's allegation that, at the time this action was commenced, Mr. Nissen was himself personally "transacting, doing, and soliciting business in this district." Amended Complaint ¶ 3. That characterization would be a stretch even as to the entity, PDC, that created and displayed the web page shown in Exhibit 1. But Amended Complaint ¶ 3 is insupportable as a purported description of Mr. Nissen or any business activity of his. Mr. Nissen has never advertised, offered, or sold any goods or services, in New York or anywhere else, under the "lexipro.com" domain name. Nissen Decl. ¶ 8.

**C.**   **Mr. Nissen's 2002 Registration of "lexipro.com" in Indiana**
        **Did Not Subject Him to Personal Jurisdiction in New York.**

The plaintiff has not even purported to make any jurisdictional allegations as could justify suit in New York to contest Mr. Nissen's registration of the domain name "lexipro.com" more than five (5) years ago. The record shows that Mr. Nissen registered the domain name while he was a college student in Indiana, utilizing the services of a domain name registrar located in the State of Washington named eNom Inc. Nissen Decl. ¶ 7; Declaration of Christopher Serbagi, sworn to August 20, 2007 [hereinafter, "First Serbagi Decl."] ¶ 2 & Ex. A. This act of registration did not constitute any type of transaction of business "within" New York for purposes of CPLR § 302(a)(1). It also did not constitute any act committed "within" New York for purposes of CPLR § 302(a)(2). E.g., Bensusan Rest. Corp. v. King, 126 F.3d 25, 29 (2d

16

Cir. 1997) (personal jurisdiction lacking over non-resident whose web site made allegedly confusing use of plaintiff's mark, notwithstanding that site was accessible in New York).

The plaintiff also cannot invoke CPLR § 302(a)(3) as a basis for forcing Mr. Nissen to defend, in New York, his 2002 registration of the domain name "lexipro.com." First, the plaintiff cannot show that as of January 25, 2002, Mr. Nissen's registration of the domain name "lexipro.com" was a "tortious act." The plaintiff's own complaint and evidence shows that as of January 25, 2002, plaintiff had only a contingent interest in the mark LEXAPRO under an intent-to-use application for registration. As of January 25, 2002, Forest had yet to make use of LEXAPRO as a trademark (see note 1 supra) and was not "the owner" of the mark LEXAPRO and could not have sued for its alleged infringement. See Talk to Me Prods., Inc. v. Larami Corp., 804 F. Supp. 555, 560-61 (S.D.N.Y. 1992) (Haight, J.), aff'd per curiam, 992 F.2d 469 (2d Cir. 1993).

Further, and even assuming that Mr. Nissen's January 2002 registration of "lexipro.com" could be characterized as a "tortious act," the plaintiff has not pleaded, and cannot meet, any of the conditions for an invocation of personal jurisdiction under CPLR § 302(a)(3). As described in the accompanying declaration of Mr. Nissen, he operates a small web hosting business out of his home. Mr. Nissen has no offices, employees, distributors, telephone listings, distributors, sales representatives, or bank accounts in New York. Mr. Nissen has no licenses to do business in New York. Mr. Nissen has never traveled to New York to solicit or do business. Mr. Nissen has never signed any contracts in New York nor authorized any other person to do so on his behalf. Mr. Nissen has never shipped any goods into New York. Mr. Nissen has never designed a web site targeted at New York residents. Mr. Nissen owns no property in New York. Mr. Nissen's business is not targeted at residents of any particular state. Nissen Decl. ¶¶ 2-4.

17

In these circumstances, it cannot reasonably be said that Mr. Nissen "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." CPLR § 302(a)(3)(i). Nor can can it reasonably be said that Mr. Nissen "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3)(ii).   As noted above, Mr. Nissen had never heard of this plaintiff or LEXAPRO when he registered the disputed domain name more than 5 years ago.   Further, Mr. Nissen's small home-based business does not generate the kind of "substantial revenue" that would make litigation of plaintiff's claim in New York, more than a thousand miles away from the location of key witnesses to the events purportedly giving rise to the plaintiff's purported claim, anything but an enormous and unfair burden on Mr. Nissen.

### D.    The Due Process Clause Bars Jurisdiction

The Due Process Clause of the Fourteenth Amendment, made applicable to federal question cases by Fed. R. Civ. P. 4(k)(1)(A), provides a separate and independent ground for dismissing the plaintiff's complaint under Fed. R. Civ. P. 12(b)(2).   See, e.g., Realuyo v. Villabrille, No. 01 Civ. 10158, 2003 U.S. Dist. LEXIS 11529, at *22-*32 (S.D.N.Y. Jul. 8, 2003) (Koeltl, J.) (assertion of personal jurisdiction over non-resident, based on web site activity, would violate Due Process Clause); Stewart, 2000 U.S. Dist. LEXIS 14236, at *11-*12 (assertion of personal jurisdiction over non-resident, based on web site activity, would violate Due Process Clause), aff'd, No. 00-9471 (2d Cir. Oct. 11, 2001); Bensusan Rest. Corp., 937 F. Supp. at 300-01 (Stein, J.) (assertion of personal jurisdiction over non-resident, based on web site activity, would violate Due Process Clause), aff'd, 126 F.2d 25 (2d Cir. 1997).

18

In order for an exercise of personal jurisdiction to be consistent with Due Process, a two-part test is applied. First, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 258 (1958)). Second, and "[o]nce it has been decided that a defendant purposefully established minimum contact within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)).

Here, there can be no showing that in registering the domain name "lexipro.com" in 2002, or in associating that name with name servers controlled by third-parties, Mr. Nissen "purposefully established minimum contacts within" New York. Those transactions had no contact or connection with New York whatsoever and did not purport to invoke any protections or benefits of New York law. Mr. Nissen merely, while sitting at a computer workstation at his home, visited web sites of independently owned non-resident third-parties, and associated domain names with name servers controlled by those entities.

As noted above, the creation, hosting, and display of passive web pages by PDC or others were not "acts" of Mr. Nissen that could properly be a basis of personal jurisdiction over him (as distinct from the person(s) whose acts they actually were). But in any event, neither the creation nor the hosting nor the display of the complained of web pages involves any "purposeful availment" of the privilege of conducting activities within New York or any invocation of the benefits or protections of New York law. The web pages in question, exemplified by Exhibit 1 hereto, were not targeted at New York residents, as distinct from English-speaking persons

19

generally, and did not purport to enable anyone in New York, or anyone else, to transact business with or even communicate with Mr. Nissen (or, for that matter, with the companies that created and operated the web sites in question).

Numerous cases have held that "[m]aintaining a website that may be accessed by resisdents of New York is by itself insufficient to confer personal jurisdiction." Light v. Taylor, No. 05 Civ. 5003, 2007 U.S. Dist. LEXIS 5855, at *8 (S.D.N.Y.  Jan. 29, 2007) (Pauley, J.). That a third-party, such as Yahoo, might incur an obligation to another third-party, such as PDC, if someone "clicked" on links displayed by them on a "passive" web site, would be an insufficient basis for asserting jurisdiction over the entities that actually operated the sites containing the links.  See id. at *12-*13 & n.1 (web site did not provide basis for personal jurisdiction over web site operator, notwithstanding that defendant site operator received commissions from Google Advertising each time a visitor to the site clicked on one of the posted advertisements); Realuyo, 2003 U.S. Dist. LEXIS 11529, at *21 (web site did not provide basis for personal jurisdiction over web site operator, notwithstanding that site had "links to other websites that sell merchandise" and web site operator was "paid an advertising fee for allowing the links to be used").  There is no conceivable basis on which it could be said that Mr. Nissen in this case "purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475 (quoting Hanson, 357 U.S. at 253).

An exercise of personal jurisdiction in this case would also fail "to meet the third prong of the due process inquiry – the reasonableness requirement." Realuyo, 2003 U.S. Dist. LEXIS 11529, at *24.  It would be extremely burdensome for Mr. Nissen, an individual who operates a small home-based business, to defend against the plaintiff's purported claims in this district

20

located more than 1,000 miles away from where relevant events occurred and were witnessed and participated in by Mr. Nissen and PDC personnel. The plaintiff, in sharp contrast, is a multi-billion dollar entity that can easily afford to pursue its purported claims in Florida. In fact, in a letter dated September 7, 2007, counsel for plaintiff explicitly told the undersigned: "even if it [this case] gets transferred to Florida, be assured that Forest will seek recovery in that district as well." Declaration of James W. Dabney, sworn to September 21, 2007 (hereinafter, "Dabney Decl.") ¶ 2 & Ex. 1.

It is unclear what interest, if any, the State of New York could be said to have in this federal question case involving a private commercial dispute; however, even assuming that such an interest existed, the plaintiff would be free to present to a federal court in Florida court all of its pendent state law claims. This is not, then, a case in which the New York has any particular "interest in adjudicating the dispute." Realuyo, 2003 U.S. Dist. LEXIS 11529, at *24 (quoting Burger King, 471 U.S. at 477 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

Mr. Nissen owns no property in New York, so that any judgment awarding monetary or injunctive relief could only be executed against Mr. Nissen outside of New York. Hence the "interstate judicial system's interst in obtaining the most efficient resolution of controversies" does not support an exercise of personal juridistion in New York. Realuyo, 2003 U.S. Dist. LEXIS 11529, at *27. This also is not a case in which "fundamental substantive social policies" of New York, or any other state, are involved. Id.

In sum, an exercise of personal jurisdiction in this case would clearly be unreasonable and improper under the Burger King criteria, even if there were not other constitutional and statutory bars to the exercise of such jurisdiction in this case.

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE.

The venue provisions of 28 U.S.C. § 1391(b) provide a separate and independent ground for dismissal of this action. The plaintiff alleges that "[v]enue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c)."  Amended Complaints ¶ 4.  In fact, on its face, 28 U.S.C. § 1391(c) applies only to "a defendant that is a corporation."  Mr. Nissen is an individual.  The plaintiff's purported invocation of 28 U.S.C. § 1391(c) is thus patently erroneous.  For purposes of venue in this action, Mr. Nissen "resides" in Florida, not New York.

Venue could be proper in this district only if it could be deemed "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. 1391(b)(2).  That standard is clearly not met here. The "substantial events or omissions requirement" serves to limit the fora available to plaintiffs.  Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005) (citations omitted).

"The purpose of statutorily specified venue is to protect defendants against the risk that a plaintiff will select an unfair or inconvenient place of trial." Cobra Partners L.P. v. Liegl, 990 F. Supp. 332, 334 (S.D.N.Y. 1998) (Cedarbaum, J.).  "For that reason, Congress has generally not made the residence of the plaintiff a basis for venue in nondiversity cases." Leroy v. Great Western United Corp., 443 U.S. 173, 184 (1979).

Here, there can be no question but that New York would be an extremely "inconvenient" forum in which to litigate whether Mr. Nissen acted in good faith (as he claims) or in "bad faith" (as plaintiff asserts), when he registered the domain name "lexipro.com" or accepted invitations to associate that domain name with name servers controlled by PDC or others.  Virtually all of the web pages complained of by plaintiff were created by Tampa, Florida-based PDC.  The circumstances surrounding the creation of those pages, and the (minimal) nature of Mr. Nissen's

22

relationship with PDC, is all information known only to persons located in Florida who could not be compelled to testify live at trial in New York, and who Mr. Nissen could ill afford to attempt to bring to New York even if they cooperated.

The plaintiff's complaint does not allege that passive web pages that third-parties formerly associated with the domain name "lexipro.com," exemplified by Exhibit 1 hereto, were targeted specifically at New York, or were any more likely to cause alleged "confusion" in New York than they were in any other state or English-language speaking place in the world. Nor does plaintiff allege that it, or any other person, transacted any business with Mr. Nissen, or was actually "confused" as to the origin of any goods sold or services rendered by Mr. Nissen, or anyone acting on his behalf, in New York.

In the circumstances of this case, it is clear that no "substantial part of the events or omissions giving rise to the claim occurred" in this district.   As the Second Circuit stated, "'Substantiality' for venue purposes is more a qualitative than a quantitavie inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." Daniel, 428 F.3d at 432-33.  If the mere accessibility of a passive web page were sufficient to establish venue over an individual under § 1391(b), the statute would be a dead letter and would purport to permit venue to lie in any district in the country.

## CONCLUSION

For the reasons set forth above, the plaintiff's complaint should be dismissed for lack of

personal jurisdiction and improper venue pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(3).


Dated:    New York, New York
          September 21, 2007


                                    Respectfully submitted,

                                    FRIED, FRANK, HARRIS, SHRIVER
                                      & JACOBSON LLP

                                    By: _____
                                          James W. Dabney
                                          Sarah R. Krissoff
                                    One New York Plaza
                                    New York, New York 10004-1980
                                    (212) 859-8000

                                    Attorneys for Defendant
                                    Leif Nissen

556103

24