UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
                                                                         :
FOREST LABORATORIES, INC.,                                               :
                                                                         :
                               Plaintiff,             :          ECF CASE
                                                                         :
                    - against -                  :          07 CIV. 7399 (AKH)(MHD)
                                                                         :
LEIF NISSEN,                                                             :
                                                                         :
                              Defendant.       :
                                                                         :
------------------------------------------------------------------------ x

# DECLARATION OF LEIF NISSEN

1. My name is Leif Nissen. I reside at 7800 North First Street, St. Petersburg, Florida. I am 27 years old. I have resided in St. Petersburg since May 2004. I have personal knowledge of the matters stated in this declaration.

2. I own and operate a web site hosting business out of my home. The name of my business is Properhosting.com. A description of services that I offer through Properhosting.com is available at http://www.properhosting.com. Properhosting.com has been in business continuously since 2002. Properhosting.com is not incorporated, but is operated by me as a sole proprietorship. Properhosting.com has one part-time employee who is located in India.

3. I personally conduct and operate the business of Properhosting.com out of my home in St. Petersburg, Florida. In addition, I design web sites and sell advertising space on web sites designed by me. In the year ending December 31, 2006, my total gross revenues from sales of hosting services and advertising space was approximately

$260,000.00. Net of expenses, such as the costs of computer equipment used in providing hosting services, my 2006 taxable income was $62,255.00. My hosting and web site advertising businesses are not targeted at residents of any particular state.

      4. I have no offices in New York. I have no employees in New York. I have no distributors in New York. I have no telephone listings in New York. I have no sales representatives in New York. I have no bank accounts in New York. I have no licenses to do business in New York. I have never traveled to New York to solicit or do business. I have never signed any contracts in New York nor authorized any other person to do so on my behalf. I have never shipped any goods into New York. I own no property in New York. I have never designed a web site targeted at New York residents. All payments for hosting or advertising services provided by me are remitted to a bank account in Florida. In the year ending December 31, 2006, I received a grand total of $212.45 in fees for hosting services from four (4) customers having New York addresses. I also received $17,980.19 in advertising fees that were remitted to me by a company with a New York address, Innovation Interactive. I do not currently know the addresses of the advertisers whose fees were remitted to me by Innovation Interactive.

      5. From time to time since 2002, I have registered domain names that I thought were descriptive of businesses or web site content that I might develop on my own, or that customers of Properhosting.com might develop using web hosting services provided by my business. Set forth below is an alphabetical listing of domains that I have registered from time to time since 2002:

aboutnurshingschool.com
afinancialservices.com
apexreseller.com
ataxpreparation.com
bamboopage.com
bestfreecounter.com
bigzazoo.com
birdhousesforever.com
boldlogos.com
briefcasesdirect.com
broadbandapex.com
bureausite.com
buyermagnet.com
buzzedhumor.com
buzzhumour.com
cameraslink.com
chesssetsonline.com
cozylamps.com
dailypottery.com
discussionz.com
doctorsextra.com
downloadbin.com
electronicsclick.com
exercisewiz.com
flagsdot.com
floortileonline.com
forkliftsdepot.com
freecpanelwebhosting.com
funnytshirtz.com
funnywebzone.com
furniturecomputerdesks.com
generatorsworld.com
hearingaidsworld.com
homesecuritysystemsrus.com
hostcomposer.com
hoststay.com
hotcardealers.com
hotelsinventory.com
jumbohammocks.com
lexipro.com
listingz.com
magazineschoice.com
maincoupons.com

3

mattressescom.com
onlybanks.com
onlydentists.com
onlyflorists.com
onlypaint.com
optimizationz.com
optimizepro.com
properhosting.com
properhosting.net
rankingz.com
realtorscatalog.com
recipesdot.com
redirectz.com
resourcetalk.com
restaurantstour.com
rome3.com
searchmarinas.com
snapdex.com
theznetwork.com
thumboutlet.com
thumbsoutlet.com
thunderhost.org
travelbz.com
unitedcooking.com
webmasterexchange.net
webmaster-software.net
websclick.com
websitez.com
worldcarguide.com

6. Each and every one of the domain names listed in paragraph 5, above, was believed by me, at the time of its registration, to be available for use as a legitimate and legal name for use in association with an Internet web site or business. Each and every one of the domain names listed in paragraph 4, above, was registered under my actual name, with accurate and truthful contact detail information. Over the years I have developed, owned, and operated a number of advertiser-supported web sites whose web page content is or was described by a domain name registered to me. For example,

currently own and operate a web site located at http://www.funnywebzone.com/, which features funny video and other humorous content.

    7. I registered the domain name "lexipro.com" on or about January 25, 2002, while I was a college student in Indiana. I did so from a computer workstation in Indiana, using the services of a registrar named "eNom." At the time I registered the domain name "lexipro.com," I thought that this was a very professional sounding name that might be valuable as a name for a web site associated with professional legal services. Prior to registering the domain name "lexipro.com," I had tried to register the domain name "lexpro.com" but found that it had already been taken. At the time I registered the domain name "lexipro.com," I had never heard of Forest Laboratories, "lexapro", or any drug having that name. At the time I registered the domain name "lexipro.com," I had no intention whatever to "profit" from any trademark belonging to Forest Laboratories or anyone else. At the time I registered the domain name "lexipro.com," I had never seen nor heard of any "lexapro" trademark or any drug or any other product advertised or sold under that trademark. At no time in 2002, 2003, 2004, 2005, 2006, or during the first seven months of 2007, did the plaintiff voice any objection to my having registered the domain name "lexipro.com" on or about January 25, 2002.

    8. Some time after I registered the domain name "lexipro.com," I learned that a drug company, apparently this plaintiff, was intending to start selling a drug that would be called "lexapro." Partly for that reason, I never developed any web site content for "lexipro.com" and I also never did anything to try and develop "lexipro.com" as any kind of business name. I have never offered any goods or services for sale in New York, or in

any other jurisdiction, under the name "lexipro.com". I have never advertised any goods or services for sale in New York, or in any other jurisdiction, under the name "lexipro.com". I have never sold or contracted to supply any goods or services in New York, or in any other jurisdiction, under the name "lexipro.com." I have never solicited any offers to buy goods or services in New York, or in any other jurisdiction, under the name "lexipro.com".

9. Between January 2002 and April 2004, the domain name "lexipro.com" was associated with name servers operated by me through Properhosting.com and was not associated with any text or graphic matter. Between approximately April 2004 and May 2007, the domain name "lexipro.com" was associated with name servers operated by "Domainsponsor" ("DMS") located at http://www.domainsponsor.com, and queries to that domain name would be answered with whatever text or graphic information DMS provided.

10. I had no involvement in the design or content of any web pages that DMS may have created and transmitted in response to queries to "lexipro.com" between April 2004 and May 2007. At no time prior to the commencement of this action did the plaintiff ever voice any objection to any web page content that DMS generated and associated with the domain name "lexipro.com" between April 2004 and May 2007. During the approximately 37-month period between April 2004 and May 2007, DMS paid me a grand total of approximately $743 in fees.

11. On or about May 23, 2007, I visited the web site of a company called Parked.com, LLC ("PDC") located at http://www.parked.com. I did this using a

computer workstation located in my home in St. Petersburg, Florida. As of May 23, 2007, PDC invited owners of domain names to "park" names with PDC by correlating domain names with name servers that PDC controlled. The business of PDC was similar in this respect to that of DMS. PDC's web site indicated that it would pay domain name owners a fee if it, PDC, were successful in generating advertising revenue from web page content that PDC generated and associated with domain names that were "parked" with PDC.

12. I am not certain of the complete group of domain names that I "parked" with PDC in May 2007; however, I believe that the group probably included bamboopage.com, bigzazoo.com, briefcasesdirect.com, broadbandapex.com, buyermagnet.com, businessmisc.com, cameraslink.com, carrentalagents.com, chesssetsonline.com, and cozylamps.com, in addition to lexipro.com. For each domain name that I entered into the PDC web site, the PDC web site provided me with a drop down list of approximately 50 "key words" and prompted me to choose a word from the list. I do not know how PDC generated these lists of suggested "key words." I have no access to software or systems that PDC uses to generate web page content or key words that PDC associates with web page content that PDC generates, stores, and transmits.

13. In the case of one of the names that I associated with a PDC name server, "lexipro.com," PDC presented me with a drop down list of key words that included the word "depression." I had no reason to believe that PDC's presentation of this key word option to me was in any way improper. It was my understanding that PDC was intending to generate a passive web page that would offer no goods or services for sale, but would

merely present a list of third-party links to web sites that might be of interest to a person who entered the term "lexipro" into a search engine or browser.

14. Annexed hereto as Exhibit 1 is a copy of an Internet web page that PDC apparently generated and associated with the domain name "lexipro.com" on August 15, 2007. I did not design, create, review, approve, or display the web page depicted in Exhibit 1. I have no knowledge of where the photographic image came from or how any of the text content on the page was selected or generated. As of August 15, 2007, the domain name "lexipro.com" was associated with name servers that PDC controlled. The web page depicted in Exhibit 1 bears a copyright notice that states, "© 2007 lexipro.com All rights reserved." I have never used "lexipro.com" to identify myself or my business.

15. I have never had any ownership interest in PDC. I have never had any control over the business or operations of PDC. I have no knowledge of any contracts or arrangements that PDC may have with Yahoo! Inc. ("Yahoo") or any other company that operates an Internet search engine. I have no access to any financial or other business records of PDC. I have no knowledge of any terms under which PDC is paid monies for use of "park" page content by Yahoo or any other person. I have never authorized or appointed PDC to act as my agent or representative for any purpose. I have never paid PDC any money. I believe that PDC has paid me a grand total of approximately $248 in fees since May 23, 2007.

16. On or about August 1, 2007, I received an e-mailed letter from an attorney with Forest Laboratories. All of my communications with Forest Laboratories' attorneys since August 1, 2007, have been attempts to compromise and settle a pre-existing dispute. All

of my communications with Forest Laboratories' attorneys since August 1, 2007, have been reactions to communications that Forest Laboratories initiated and sent to me or PDC in Florida.

17. On or about August 15, 2007, I learned that an attorney for Forest Laboratories had demanded that PDC cease using the domain name "lexipro.com" and it did so. Shortly thereafter I visited the web site of a company called Sedo at www.sedo.com. I did this using a computer workstation in my home in St. Petersburg, Florida. Following prompts on the Sedo web site, I associated the domain name "lexipro.com" with name servers controlled by Sedo. Sedo then independently generated passive informational web pages exemplified by Exhibit 2 hereto. I have never spoken with anyone at Sedo. I did not design, create, review, approve, or display the web page depicted in Exhibit 2.

18. I have never had any ownership interest in Sedo. I have never had any control over the business or operations of Sedo. I have no knowledge of any contracts or arrangements that Sedo may have with Yahoo or any other company that operates an Internet search engine. I have no access to any financial or other business records of Sedo. I have no knowledge of any terms under which Sedo is paid monies for use of "park" page content by Yahoo or any other person. I have never authorized or appointed Sedo to act as my agent or representative for any purpose. I have never paid Sedo any money.

19. On or about August 22, 2007, following the commencement of this action, I caused the domain name "lexipro.com" to be re-associated with Properhosting.com name

servers and not associated with any web page content, as had been the case between January 2002 and April 2004. I did this from my home in St. Petersburg, Florida.

20. I have reviewed the Affidavit of Sigmund Solares that the plaintiff has filed in this action. I believe that Mr. Solares's affidavit is very selective and misleading in the information that it provides and in its characterization of the former contractual relationship that existed between PDC and me.

21. At any trial of this action, I would expect that PDC personnel would be important live witnesses, as would individuals in the St. Petersburg community who can attest to my character for truthfulness. As an individual of limited means, my ability to defend this case would be severely undermined if I had to do so in New York, New York.

I, LEIF NISSEN, hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: September 21, 2007

_____
Leif Nissen

556102