UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                                                   :

FOREST LABORATORIES INC.,             :

                          Plaintiff,           :        ECF CASE

        - against -                 :        07 Civ. 7399 (AKH) (MHD)

LEIF NISSEN,                                 :

                          Defendant.        :

------------------------------------------------------------------ x


# MEMORANDUM IN SUPPORT OF DEFENDANT'S
# MOTION FOR AN AWARD OF ATTORNEYS' FEES


JAMES W. DABNEY
SARAH R. KRISSOFF
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, New York 10004 - 1980
(212) 859 - 8000

Attorneys for Defendant
Lief Nissen

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

ARGUMENT ..................................................................................................................................9

CONCLUSION .............................................................................................................................14

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*1-800 Contacts, Inc. v. WhenU.com, Inc.*,
   414 F.3d 400 (2d Cir. 2005)..................................................................................................10

*Alyeska Pipeline Serv. Co. v. Wilderness Society*,
   421 U.S. 240, 258-59 (1975) ..............................................................................................1, 9

*Chambers v. Nasco, Inc.*,
   501 U.S. 32 (1991)..............................................................................................................1, 9

*Cf. Levine v. Federal Deposit Ins. Corp.*,
   2 F.3d 476, 477-80 (2d Cir. 1993) ..........................................................................................9

*Dattner v. Conagra Foods, Inc.*,
   458 F.3d 98 (2d Cir. 2006)....................................................................................................13

*F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*,
   417 U.S. 116, 129 (1974)) .................................................................................................1, 9

*Levine v. Federal Deposit Insurance Corp.*,
   2 F.3d 476 (2d Cir. 1993) .......................................................................................................9

*Merck & Co. v. Mediplan Health Consulting, Inc.*,
   425 F. Supp. 2d 402 (S.D.N.Y. 2006)...................................................................................10

*Rescuecom Corp. v. Google, Inc.*,
   456 F. Supp. 2d 393 (N.D.N.Y. 2006)..................................................................................10

*Storey v. Cello Holdings, L.L.C.*,
   347 F.3d 370 (2d Cir. 2003)...................................................................................................9

**DOCKETED CASES**

*Morgan Stanley Dean Witter & Co. v. Smart Ideas*,
   No. 99 Civ. 8921 (S.D.N.Y., filed Aug. 13, 1999).................................................................7

## TABLE OF AUTHORITIES
## (Cont'd)

Page

**FEDERAL STATUTES**

15 U.S.C. § 1125(d) ...................................................................................................................8

15 U.S.C. § 1125(d)(2) ..............................................................................................................13

28 U.S.C. § 1391(b) ....................................................................................................................4

Fed. R. Civ. P. 11(c)(1)(B) ..................................................................................................1, 2, 9

Fed. R. Civ. P. 12(b)(2)..........................................................................................................6, 12

Fed. R. Civ. P. 12(b)(3)..........................................................................................................6, 12

Fed. R. Civ. P. 41(a)(1)(i) ..........................................................................................................11

Fed. R. Civ. P. 65(a)2) .................................................................................................................2

Leif Nissen, formerly named as the defendant in this now-dismissed action, respectfully moves for an award of attorneys' fees incurred in seeking dismissal of this action for lack of personal jurisdiction and improper venue, on the basis that the plaintiff invoked this Court's jurisdiction "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975) (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974))).[1]

## FACTS

The plaintiff commenced this civil action on August 20, 2007, by filing a Complaint with this Court that stated in part: "This Court has personal jurisdiction over the Defendant by virtue of his transacting, doing, and soliciting business in this District," Complaint ¶ 3 (emphasis added). This jurisdictional allegation by plaintiff was completely false (see Declaration of Leif Nissen, sworn to September 21, 2007 ["First Nissen Decl."] ¶¶ 2-21), as was subsequently demonstrated in Mr. Nissen's motion to dismiss filed September 21, 2007.

Based in part on its false jurisdictional allegation, the plaintiff obtained an Order to Show Cause issued August 21, 2007, that granted a TRO and directed Mr. Nissen to appear in this Court and show cause why a preliminary injunction should not issue against use of the domain name "lexipro.com" in association with passive and entirely truthful web page content pending determination of this action, conditional on the plaintiff posting a $25,000 bond.

On August 27, 2007, counsel for the plaintiff inquired of the undersigned whether Mr. Nissen would consent to the trial of this action being advanced and consolidated with the hearing of the plaintiffs' then-pending motion for preliminary injunction returnable

---

[1] In addition to the Court's inherent powers, Fed. R. Civ. P. 11(c)(1)(B) vests the Court with authority, on its own initiative, to issue an Order "directing an attorney, law firm, or party to show cause why it has not violate subdivision (b)" of the Rule.

1

September 11, 2007.  Plaintiff's counsel was told that Mr. Nissen was not inclined to consent to the trial of this action being advanced and consolidated with the hearing of the plaintiff's preliminary injunction motion, in part because it did not appear that there was any basis for personal jurisdiction or venue in New York. Second Declaration of James W. Dabney, sworn to October 23, 2007 [hereinafter, "Second Dabney Decl."] ¶ 2.  Plaintiff's counsel was invited, however, to put the plaintiff's consolidation proposal in a letter, and it would be considered.  Id. He never did.

Instead, on August 29, the plaintiff filed voluminous papers with this Court including a paper styled "Plaintiff's Pre-Trial Memorandum of Law" (Pltf. Pre-Trial Mem."). In its "Pre-Trial Memorandum," the plaintiff claimed a right to recover $100,000.00 in punitive statutory damages from Mr. Nissen. Pltf. Pre-Trial Mem. at 18. More significantly for purposes of the present motion, the plaintiff's "Pre-Trial Memorandum" asserted: "By Order dated August 22, 2007, <u>Judge Swain granted Forest's request that the preliminary injunction hearing be combined with a trial on the merits</u> pursuant to Fed. R. Civ. P. 65(a)(2), which would take place on September 11, 2007." Pltf. Pre-Trial Mem. at 5 (emphasis added).

The plaintiff's characterization of what "Judge Swain granted" in her "Order dated August 22, 2007" was insupportable.  Plaintiff's counsel had sent a letter to the Court dated August 22, 2007, in which plaintiff requested an additional five days in which to serve and file the plaintiff's preliminary injunction memorandum and noted that the requested extension of time "may necessitate that the hearing be moved back a week." Second Declaration of Leif Nissen, sworn to October 23, 2007 [hereinafter, "Second Nissen Decl."] ¶ 2 & Ex. 1.  On the same day that plaintiff's counsel's August 22 letter was received, Judge Swain, acting as the Part I Judge, wrote on it, "The requests are granted.  The preliminary injunction hearing is

adjourned to September 11, 2007, at 11:45 a.m." Id. This handwritten Order, issued the same day as plaintiff's August 22 letter was received, clearly was intended to do no more than grant a routine request for extension of time. That was how the plaintiff itself characterized the August 22 Order in contemporaneous correspondence (Second Nissen Decl. ¶ 2 & Ex. 1) and in communications with the undersigned as recently as August 27, 2007. Second Dabney Decl. Ex. 2.

But when counsel appeared for Mr. Nissen and raised a question as to the appropriateness of the plaintiff's having filed suit in New York, the plaintiff suddenly took the position that by her use of the word "requests," Judge Swain had purportedly agreed with plaintiff's assertion that "the issues in this case are relatively simple and straightforward" (Second Nissen Decl. ¶ 2 & Ex. 1 at 3) and so on August 22 had issued, not merely an Order granting a routine request for an extension of time, but a major substantive ruling that Mr. Nissen was purportedly required to appear in this Court and start a jury trial on September 11, 2007, or else risk an adverse verdict and final judgment for punitive statutory damages being entered against him.

No member of the Bar of this Court could have reasonably believed that a Part I Judge, on the second day of a case's pendency, and without providing the defendant any opportunity to brief the issue, would casually schedule a jury trial of claims for punitive statutory damages to begin just twenty-two (22) days after the filing of the plaintiff's Complaint.[2] The Court can and should find that the plaintiff took this insupportable position in bad faith, and in particular, with

---

[2] Mr. Nissen was not served with a summons in this case until on or about September 11, 2007. See Second Nissen Decl. ¶ 3. In an apparent attempt to give color to its claim that this case could properly be called for trial on September 11, plaintiff's counsel on August 29 filed a paper styled "Certificate of Service." The "Certificate of Service" filed by plaintiff was frivolous in a number of respects. It was not sworn to and did not even purport to describe any manner of service that Rule 4 permitted in the circumstances. It stated in effect that plaintiff's counsel had sent an e-mail to Mr. Nissen to which a copy of the Part I Judge's Order to Show Cause was attached.

3

intent to oppress Mr. Nissen and to mislead Judge Hellerstein into cutting off Mr. Nissen's rights under Rules 4, 12, 13, 14, 19, and 26-37 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1391(b), and the Due Process Clause of the Constitution.

On August 30, 2007, plaintiff's counsel sent an overnight letter to Judge Hellerstein that enclosed a document characterized as "Judge Swain's Endorsed letter . . . setting trial on this matter for September 11, 2007." Second Dabney Decl. ¶ 6 & Ex. 2. The letter stated that it had been copied to the undersigned "via facsimile." Id. In fact, the letter was served on the undersigned by regular mail and it did not arrive until six (6) days later, on September 5, and after the Court had had been misled into acting on it as described below.

On September 4, 2007, unaware of plaintiff's counsel's August 30 letter to the Court, the undersigned advised plaintiff's counsel that Mr. Nissen consented to the plaintiff's requested preliminary injunctive relief and there was, thus, no need for a preliminary injunction hearing on September 11. Second Dabney Decl. ¶¶ 4-6 & Ex. 1. In response, the plaintiff's counsel insisted that this case was scheduled for "trial on the merits" on September 11 and that the plaintiff intended to proceed to "trial" on September 11 regardless of whether Mr. Nissen consented to the requested preliminary injunctive relief. Id.

Following the above exchange on September 4, plaintiff's counsel initiated a series of highly improper ex parte telephone contacts with the Court. Second Dabney Decl. ¶¶ 5-6. Following one such ex parte contact, plaintiff's counsel called the undersigned and stated that the Court had assertedly requested that the parties submit a joint letter concerning how they wished to proceed on September 11. Id. ¶ 5. As plaintiff's counsel's contacts with the Court were all ex parte, the undersigned can only surmise that plaintiff's counsel failed to inform the Court that

4

the defendant had consented to the requested preliminary injunctive relief and there was no need for a hearing on September 11.

After the undersigned declined to join with the plaintiff in drafting a pre-trial submission for a trial that purportedly was scheduled to begin on September 11, plaintiff's counsel apparently then had yet another ex parte contact with the Court.  Late in the day on September 4, plaintiff's counsel left a voice mail message for the undersigned to the effect that Judge Hellerstein had requested that counsel appear for a conference with the Court on Friday, September 7, 2007.  Second Dabney Decl. ¶ 8.  This voice mail message was never confirmed in a letter or any other writing.

The following day, September 5, the undersigned finally received plaintiff's counsel's August 30 letter to Judge Hellerstein.  Second Dabney Decl. ¶ 6.  Plaintiff's counsel was asked to provide any fax cover sheet or other record of the August 30 letter having been sent to the undersigned "via facsimile" as the letter had stated.  Id. ¶ 7 & Ex. 3.  Plaintiff's counsel did not respond to this request directly, but instead sent the August 30 letter to the undersigned "via facsimile" on Thursday, September 6.  Id. ¶ 7 & Ex. 4.   By doing this, the plaintiff evidently took the position that its original August 30 statement, "cc: Mr. James Dabney (via facsimile)", had been changed from false to true, and so the Court need not be notified.

On Friday, September 7, the undersigned appeared before Judge Hellerstein for the conference that plaintiff's counsel had arranged for by ex parte telephone contact on September 4.  At the September 7th conference, plaintiff's counsel stated that the plaintiff desired to proceed to trial on the merits the following Tuesday, September 11, and intended to call only one witness at such a trial.  Second Dabney Decl. ¶ 8.  After being told that Mr. Nissen had consented, in writing, to the preliminary injunctive relief the plaintiff had sought, Judge Hellerstein ruled that

5

there would be no trial on September 11 and referred the case to United States Magistrate Judge Michael H. Dolinger for pretrial matters. Id.

The parties then appeared before Magistrate Judge Dolinger. After hearing presentations from both sides, Magistrate Judge Dolinger issued an Order calling for Rule 12 motions to be filed by September 21, 2007; for expedited discovery be completed by October 31, 2007; and for a Joint Pretrial Order to be filed by November 14, 2007. Id. ¶ 9 & Ex. 5. Mr. Nissen served his initial written discovery requests on the plaintiff on September 7, 2007.

On September 21, 2007, Mr. Nissen moved to dismiss this action for lack of personal jurisdiction and improper venue pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3). By Order dated September 26, 2007, Magistrate Judge Dolinger directed the plaintiff to serve any response to Mr. Nissen's motion to dismiss by no later than October 8, 2007. Second Dabney Decl. ¶ 10 & Ex. 6.

In the meanwhile, the plaintiff had served broad objections to making discovery of the factual basis of its purported claims against Mr. Nissen. On September 25, 2007, Mr. Nissen moved for an Order compelling the plaintiff to supplement its interrogatory answers and document production. Second Dabney Decl. ¶ 11 & Ex. 7.

At a hearing on Mr. Nissen's motion held October 4, 2007 (id. ¶ 13 & Ex. 9), the plaintiff admitted that it had no evidence that any challenged conduct of Mr. Nissen's had caused any actual confusion of anyone, anywhere. Id. (Oct. 4 Tr. at 3-6). The plaintiff also abandoned its original claim for alleged "dilution" and, even more remarkably, disavowed its express representation to the Court[3] that the mark LEXAPRO had purportedly been "famous" when

---

[3] During a TRO hearing in this case on August 20, 2007, plaintiff's counsel was pointedly asked by the Part I Judge, "Mr. Serbagi, your representation is that between the NDA and all of the publicity about Lexapro in 2001, Lexapro with an A was a famous mark within the meaning of

6

Mr. Nissen registered the domain name "lexipro.com" in January 2002. Second Dabney Decl. ¶ 14 & Ex. 11 (Oct. 4 Tr. at 6-8). This representation by plaintiff's counsel had been patently untrue, and was of a piece with the plaintiff's similarly false allegations regarding jurisdiction and venue in this Court.

In further rulings on October 4, Magistrate Judge Dolinger directed the plaintiff to produce documents concerning any "impact from the defendant's conduct on the plaintiff's mark and business" (Second Dabney Decl. ¶ 14 & Ex. 11 [Oct. 4 Tr. at 11-12]); documents that contain the term "lexipro" during the period covered by the plaintiff's complaint (id. [Oct. 4 Tr. at 12-15]); and documents concerning surveys of public awareness, or lack of awareness, of the plaintiff's mark. Id. (Oct 4 Tr. at 15-18). Discovery was expected to show that there was very little public awareness of the plaintiff's LEXAPRO mark at relevant times and plaintiff's contrary pleading and representations to the Court were knowingly false.

The Magistrate Judge also rejected an unusual application by plaintiff for an Order summarily denying Mr. Nissen's motion to dismiss on the grounds that certain arguments made by Mr. Nissen were purportedly inconsistent with certain arguments that the undersigned counsel had made in 1999 for another client, Morgan Stanley Dean Witter & Co., Inc., in the case *Morgan Stanley Dean Witter & Co. v. Smart Ideas*, No. 99 Civ. 8921 (S.D.N.Y., filed Aug. 13, 1999). See Second Dabney Decl. ¶ 13 & Ex. 9 (Oct. 4 Tr. at 18-20). In fact, Mr. Nissen's position in this case is very different from that of the defendant in the *Morgan Stanley* case.[4]

---

the statute by January 2002," to which the response was, "All that is true, your Honor." Third Declaration of Christopher Serbagi, sworn to August 28, ¶ 2 & Ex. A at 10 (emphasis added).

[4] Mr. Nissen registered the domain name "lexipro.com" long before the plaintiff's LEXAPRO mark even existed. Mr. Nissen has sworn that at the time he registered the domain name "lexipro.com" in January 2002, he had no knowledge that this plaintiff then intended to use LEXAPRO as a mark if it obtained FDA approval for what was, in January 2002, merely a proposed new drug product. First Nissen Decl. ¶ 7. In sharp contrast, the defendant in the

On the October 8 deadline for responding to Mr. Nissen's motion to dismiss, the plaintiff served nothing. Instead, the plaintiff engaged in an extraordinary evasive maneuver: on October 9, 2007, the plaintiff filed a Notice of Dismissal of this action and the very next day, October 10, the plaintiff filed a parallel Complaint against Mr. Nissen with the World Intellectual Property Organization ("WIPO") in Geneva, Switzerland under the Uniform Dispute Resolution Policy ("UDRP") administered by WIPO and certain other entities. Second Dabney Decl. ¶¶ 14-16 & Ex. 10.

The plaintiff's UDRP complaint mirrors its now-dismissed claim for alleged "bad faith" registration and use of the domain name "lexipro.com" in alleged violation of 15 U.S.C. § 1125(d). But unlike federal court litigation, a complainant in a UDRP proceeding need not make discovery or even submit to cross-examination with respect to the purported factual basis of its claim or submit to cross-examination. Nor can a respondent in a UDRP proceeding obtain discovery of the complainant or third-parties who might have evidence relevant to a claim such as the plaintiff's. UDRP proceedings are decided entirely on paper submissions. Partly for that reason, Panel decisions that do anything but dismiss a complainant's UDRP complaint receive no deference and have no preclusive effect if challenged in court. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 381-32 (2d Cir. 2003).

---

*Morgan Stanley* case had registered variants of a number of long-standing, well-known business names and trademarks and had prevented the plaintiff from using its own actual trademark, MSDW, in a domain name. The plaintiff here complains of nothing like such impact on its business. Also unlike the *Morgan Stanley* case, it was the plaintiff here that sought out contact with Mr. Nissen, not the other way around. The plaintiff's apparent contention that by responding to, rather than ignoring, demands that plaintiff sent to him in Florida, and by making a good faith attempt to settle the dispute in August 2007, Mr. Nissen supposedly committed a tortious act or otherwise subjected himself to jurisdiction in New York with respect to pre-existing purported claims that were not otherwise subject to personal jurisdiction or venue in this Court, is simply frivolous. *See* Memorandum in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Venue filed September 21, 2007 [hereinafter, "Nissen Mem."] at 9-12, the contents of which are incorporated herein by reference.

8

For purposes of its UDRP Complaint against Mr. Nissen, this plaintiff was required to submit to suit in a "Mutual Jurisdiction" (Second Dabney Decl. ¶ 16 & Ex. 11) and had the choice of either the State of Florida, where Mr. Nissen resides, or the State of Washington, where the principal office of the third-party registrar of the domain name "lexipro.com" happens to be located, a location having no connection whatsoever to the events purportedly giving rise to this case. Consistently with the bad faith that has characterized the plaintiff's entire course of conduct in this matter, the plaintiff's UDRP Complaint chose the State of Washington as its "Mutual Jurisdiction." Second Dabney Decl. ¶ 15 & Ex. 10 at 10.

## ARGUMENT

Under the "American Rule" governing attorneys fee awards in federal courts, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. Nasco, Inc*., 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975) (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co*., 417 U.S. 116, 129 (1974))).[5]

Here, the record overwhelmingly supports a conclusion that this plaintiff commenced and maintained this action in bad faith and with specific intent to oppress Mr. Nissen in a distant forum that had no jurisdiction over his person and where venue was also improper. This plaintiff has never identified a shred of evidence that as of August 20, 2007, Mr. Nissen was purportedly "transacting, doing, and soliciting business in this district." Complaint ¶ 3. The reason for this omission is clear: the plaintiff's jurisdictional allegation was completely false. First Nissen

---

[5] In addition to the Court's inherent powers, Fed. R. Civ. P. 11(c)(1)(B) vests the Court with authority, on its own initiative, to issue an Order "directing an attorney, law firm, or party to show cause why it has not violate subdivision (b)" of the Rule. *Cf. Levine v. Federal Deposit Ins. Corp.*, 2 F.3d 476, 477-80 (2d Cir. 1993) (affirming award of Rule 11 sanctions, where the plaintiff's complaint contained a false jurisdictional allegation).

9

Decl. ¶¶ 2-21.  The Court cannot but conclude that the plaintiff's false jurisdictional allegation was made with knowledge of its falsity or with reckless disregard for whether it was true or false.

The plaintiff had a clear and obvious motive for improperly invoking this Court's jurisdiction.  As an individual small business owner located in St. Petersburg, Florida, Mr. Nissen could ill afford to defend trademark infringement litigation brought in New York, New York no matter how meritless the plaintiff's claims might have been.[6]  The plaintiff clearly knew this.  By filing suit in a distant forum, under color of a false jurisdictional allegation, the plaintiff created the potential for securing relief against Mr. Nissen <u>regardless</u> of the merits of the plaintiff's purported claims – provided, of course, that the plaintiff could avoid any meaningful scrutiny of those claims.

Out of the plaintiff's own mouth, we have it that on August 22, 2007, the plaintiff assertedly persuaded the Part I Judge to issue an Order that set this case for trial on the merits in New York on September 11, 2007, notwithstanding that such a trial date would effectively strip Mr. Nissen of virtually every right he had as a litigant, including (a) the right to challenge jurisdiction and venue under Rule 12(b); (b) the right to counterclaim against the plaintiff under Rule 13; (c) the right to implead PDC or other third-parties under Rule 14; and (d) the right to take pretrial discovery of the plaintiff and third-parties under Rules 26-37.

---

[6] Claims very similar to the plaintiff's have been repeatedly rejected in the courts.  <u>E.g.</u>, *Cf. 1-800 Contacts, Inc. v. WhenU.com, Inc*., 414 F.3d 400, 408-11 (2d Cir. 2005) (rejecting trademark infringement claim based on "use" of mark to trigger pop-up ads, where purported "use" did not meet definition of "use in commerce" provided in 15 U.S.C. § 1127); *Rescuecom Corp. v. Google, Inc*., 456 F. Supp. 2d 393, 400-01 (N.D.N.Y. 2006) (rejecting trademark infringement claim based on "use" of mark to trigger sponsored search results, where purported "use" did not meet definition of "use in commerce" provided in 15 U.S.C. § 1127);  *Merck & Co. v. Mediplan Health Consulting, Inc.,* 425 F. Supp. 2d 402, 414-16 (S.D.N.Y. 2006) (Chin, J.) ("there is nothing improper with defendants' [Canadian pharmacies'] purchase of sponsored links to their websites from searches of the keyword 'Zocor'") (citing and applying *1-800 Contacts*, 414 F.3d at 408, 411)

Then, when Mr. Nissen retained counsel and began raising objections to jurisdiction and venue in New York and began challenging substantive premises of the plaintiff's purported claims, the plaintiff embarked on a relentless campaign to have this case called for trial on September 11, 2007, based on an insupportable interpretation of Judge Swain's August 22 handwritten grant of a routine request for extension of time to file briefs.  Plaintiff persisted in this insupportable position even after Mr. Nissen formally consented, in writing, to a grant of the full preliminary injunctive relief that the plaintiff had sought.  The plaintiff's actions included repeated, highly improper ex parte contacts with the Court on September 4, 2007.  Second Dabney Decl. ¶¶ 4-6 & Ex. 1.

When Judge Hellerstein, on September 7, rejected the plaintiff's highly unusual bid to have this case called for jury trial in advance of any pleadings, discovery, or testing of personal jurisdiction or venue, the plaintiff suddenly found itself called upon to respond to a motion to dismiss and to make discovery of the purported factual bases of its claims against Mr. Nissen.  On October 4, 2007, Magistrate Judge Dolinger ordered the plaintiff to produce various categories of documents and information that Mr. Nissen had requested.  Second Dabney Decl. ¶ 13 & Ex. 9.

Five days later, on October 9, the plaintiff abruptly and unilaterally dismissed this action under Fed. R. Civ. P. 41(a)(1)(i) and then, the very next day, October 10, the plaintiff filed a similar Complaint in a European administrative forum where the plaintiff could recover no monetary or injunctive relief, but could make factual allegations about itself, Mr. Nissen, and others without the inconvenience of having to submit to discovery or cross-examination with respect to the allegations' truth or falsity. Second Dabney Decl. ¶¶ 14-17 & Ex. 10.

11

Mr. Nissen has been put to unconscionable burden and expense in defending this New York action that was commenced and maintained in the clear absence of jurisdiction and venue.[7] The plaintiff's conduct speaks volumes: despite this Court's having set this case on an extremely expedited schedule including an October 31 discovery cut-off date and a November 14 date for filing a Joint Pretrial Order; and despite the Court's having granted, at plaintiff's instigation, a Temporary Restraining Order and, subsequently, a consented-to preliminary injunction against use of the domain name "lexipro.com." the plaintiff voluntarily dismissed this action rather than disclose whatever factual or legal basis it may have had for alleging that personal jurisdiction and venue had been proper in this action.

The record overwhelmingly supports a conclusion that this plaintiff sued Mr. Nissen in New York knowing full well that personal jurisdiction and venue were improper here; the plaintiff's jurisdictional and venue allegations were knowingly false; the plaintiff misled the Part I Judge and Judge Hellerstein with respect to whether a trial of this action could rightly or appropriately proceed on September 11, 2007; and then, when called upon to justify its assertion that personal jurisdiction and venue were proper in this Court, the plaintiff abruptly dismissed its suit notwithstanding its previous assertion that a Temporary Restraining Order and an early preliminary injunction hearing were purportedly needed in order to prevent the plaintiff from suffering "irreparable harm" at Mr. Nissen's hands.

The plaintiff's abrupt, unilateral dismissal of this action also serves to underscore that this plaintiff never had any basis for alleging that it would suffer "irreparable harm" in the absence of

---

[7] Should the Court grant the within motion, Mr. Nissen will submit contemporaneous time entries showing the precise amount sought. At this time, Mr. Nissen estimates that the attorneys' fees incurred in seeking dismissal of this action under Fed. R. Civ. P. 12(b)(2) and 12(b)(3) are in the region of $45,000.00 exclusive of the costs of preparing and filing the within motion. This is a very significant sum to Mr. Nissen, whose total business revenues in 2006 were approximately $260,000.00. First Nissen Decl. ¶ 3.

a TRO or preliminary injunctive relief.  Contrary to what plaintiff misled the Part I Judge to believe, it is literally impossible for a ".com" domain name to be removed from beyond the jurisdiction of United States courts, owing to the location in the United States of Verisign, Inc., the "registry" or manager of the ".com" top level domain.  *See* 15 U.S.C. § 1125(d)(2) (authorizing courts to exercise "in rem" jurisdiction in any district where the "registry" of a domain name is located).

The Second Circuit has recently confirmed that where, as here, a plaintiff files suit in an inappropriate forum and does so in bad faith, a District Court may award attorneys' fees to the defendant "pursuant to its inherent authority."  *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 103-104 (2d Cir. 2006).  The standard is clearly met here.  The plaintiff commenced and sought emergency injunctive relief on the basis of a manifestly false jurisdictional allegation.  Then, when Mr. Nissen consented to all of the requested preliminary injunctive relief that had been requested, the plaintiff had no conceivable good faith basis for attempting to have this case called for trial on September 11, and yet it attempted, relentlessly, to do just that.  There is one, and only one, explanation for the plaintiff's conduct: a bad faith intent to oppress Mr. Nissen and deny him any meaningful opportunity to contest jurisdiction, venue, or the merits of the plaintiff's purported claims.

## **CONCLUSION**

For the reasons set forth above, Mr. Nissen's motion for an award of attorney's fees should be granted. Mr. Nissen is prepared to make a separate submission of the precise amount of fees for which he seeks reimbursement.

Dated:   New York, New York
         October 23, 2007

                                        Respectfully submitted,

                                        FRIED, FRANK, HARRIS, SHRIVER
                                        & JACOBSON LLP

                                        By: _____
                                            James W. Dabney
                                            Sarah R. Krissoff
                                        One New York Plaza
                                        New York, New York 10004-1980
                                        (212) 859-8000

                                        Attorneys for Defendant
                                        Leif Nissen

558022