# EXHIBIT 9

```
                                  7A4VFORC.txt
                                                                          1
     7A4VFORC                       Conference
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    FOREST LABORATORIES, INC.,
3
4                Plaintiff,
4
5           v.                                   07 CV 07399 (AKH)(MHD)
5
6    LEIF NISSEN,
6
7                Defendant.
7
8    ------------------------------x
8                                                New York, N.Y.
9                                                October 4, 2007
9                                                10:10 a.m.
10
10   Before:
11
11                     HON. MICHAEL H. DOLINGER,
12
12                                               Magistrate Judge
13
13                            APPEARANCES
14
14   LAW OFFICES OF CHRISTOPHER SERBAGI
15        Attorneys for Plaintiff
15   BY:  CHRISTOPHER SERBAGI
16        -AND-
16   FOREST LABORATORIES, INC.
17   BY:  ERIC AGOVINO
17
18   FRIED FRANK HARRIS SHRIVER & JACOBSON
18   BY:  JAMES DABNEY
19
20
21
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                          2
     7A4VFORC                       Conference
1           (In open court)
2           (Case called)
3           THE COURT:  Good morning.  I asked for this conference
4    because of a dispute embodied in a September 25 letter from
5    defendant's counsel.  I'll be happy to hear from you, first of
6    all, as to what the status of proceedings in this case happens
7    to be; and then as to any matters you wanted to add to the
8    letters that I've received.
9           MR. DABNEY:  Your Honor, James Wilson Dabney, Fried
10   Frank, for the defendant.
11          The status of the proceedings are as they were on
12   September 7 when we were last before your Honor.  The defendant
13   served its first set of interrogatories and document requests
14   on the plaintiff that afternoon; and the responses came in two
                                  Page 1
```

```
                            7A4VFORC.txt
    15    weeks later, which have given rise to the matter here today.
    16              The plaintiff has served its initial discovery on
    17    Mr. Nissen; responses to those are due, I believe, tomorrow.
    18              On September 21, Mr. Nissen filed a motion to dismiss
    19    this action on grounds of lack of personal jurisdiction and
    20    improper venue; and the Court has set a briefing schedule on
    21    that motion which calls for the plaintiff to file its responses
    22    coming Monday the 8th, and for any reply papers to be filed on
    23    Monday the 15th of October.  And I believe both sides are
    24    working towards the discovery cutoff date which the Court set
    25    of October 31 in this case.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
                                                                          3
          7A4VFORC                 Conference
     1              So that's essentially the status of the proceedings
     2    from the defendant's point of view.
     3              THE COURT:  Okay.
     4              MR. SERBAGI:  Your Honor, this is Christopher Serbagi
     5    for the plaintiff.  And I'd like to note to the Court that all
     6    this is quite unnecessary.  The plaintiff has offered to
     7    terminate the proceedings upon transfer of the domain name so
     8    that we could alleviate the time and expense that this
     9    proceeding is going to take, but they have not agreed to that;
    10    they insist on proceeding with this case.
    11              THE COURT:  Well, I guess it's their right to do so.
    12    In any event, let me ask this.  With regard to the items listed
    13    in Mr. Dabney's letter, specifically with respect to the first
    14    one, that is, evidence of actual confusion, I take it that the
    15    response, which seemed like kind of a nonresponse, other than
    16    to allude to some surge, really indicates that at the present
    17    time plaintiff does not have in its possession or control any
    18    evidence of actual confusion, am I correct?
    19              MR. SERBAGI:  Your Honor, that is correct, with the
    20    caveat that we have identified on the internet various
    21    individuals who have submitted responses to web sites that show
    22    that they were confused.  We are in the process of
    23    investigating some of that actual confusion that we've seen on
    24    the internet.
    25              THE COURT:  Then I'm really confused, too, although
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
                                                                          4
          7A4VFORC                 Conference
     1    not by the nature of the confusion that's being litigated in
     2    this case.
     3              I had understood you to say in your letter response
     4    that "Forest cannot identify their names and addresses now
     5    because it is not in our possession."
     6              It's a little bit unclear what the reference is when
     7    you refer to names and addresses, but if you are investigating,
     8    I take it you have a body of information on the basis of which
     9    you are investigating.
    10              MR. SERBAGI:  Your Honor, we have nothing in our
    11    possession which was of the names or addresses of any of these
    12    individuals.  What I meant to say in this response is that we
    13    are going to get information as to those individuals.  And when
    14    we do, we'll certainly turn it over.  There's absolutely no
    15    documentation we have that would be responsive to this
    16    interrogatory.
    17              THE COURT:  Well, let me ask this:  What is it, when
    18    you refer to this internet search, that whoever did the
    19    internet search actually observed on the internet, and also how
                                    Page 2
```

```
                              7A4VFORC.txt
20      is that search done?
21               MR. SERBAGI:  We typed in the name "Lexipro" as part
22      of a Google search, and many references came up.
23               THE COURT:  Lexipro with --
24               MR. SERBAGI:  With an "i."
25               THE COURT:  With an "i."
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                       5
        7A4VFORC                Conference
 1               MR. SERBAGI:  And I believe, your Honor, that a
 2      printout of that web site was produced in connection with our
 3      initial papers on the pretrial memorandum and the affidavits
 4      submitted in connection with the TRO.  So that printout has
 5      been produced.
 6               THE COURT:  And that, no doubt, is the sole body of
 7      information currently available to your client.
 8               MR. SERBAGI:  That is the sole body of information
 9      available to us, your Honor.  Had we had anything else, we most
10      certainly would have produced it.
11               THE COURT:  Okay.  Did you, in fact, receive that
12      printout?
13               MR. DABNEY:  I believe the printout was an attachment
14      to an affidavit dated August 28, I believe, of Mr. Agovino in
15      this case; so it was part of the pretrial submissions that were
16      filed.  So, yes, I do have the Google search report that
17      apparently was generated a week after calls to lexipro.com
18      stopped being answered.  So, yes, I do have that, but it would
19      not have occurred to me before this morning that that would
20      have been argued to be evidence of actual confusion caused by
21      Mr. Nissen.
22               THE COURT:  Let me ask you this, because it sounds as
23      if, and perhaps I'm wrong, the two sides hadn't really spoken
24      about this issue, because otherwise I assume this discussion
25      that I was having with plaintiff's counsel would have been, in
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                       6
        7A4VFORC                Conference
 1      effect, conducted by counsel, between themselves, and that
 2      information would have come to light.
 3               Putting aside whether it should have been disclosed
 4      anyway before, but has this been a topic of discussion?
 5               MR. SERBAGI:  Your Honor, may I answer it?  I did
 6      receive a call from Mr. Dabney's associate who very briefly
 7      raised these issues with me.  And she didn't ask me any
 8      questions that you asked me.
 9               And what I told the associate was that we had produced
10      everything that we have on this issue.  There is nothing in our
11      possession, custody, or control responsive to evidence of
12      actual confusion.  And that was the end of the conversation.
13      She moved onto another topic, and so I tried to explain that we
14      had nothing.
15               THE COURT:  Okay.  Well, I think since the
16      representation has been made on the record by plaintiff's
17      counsel, that will be sufficient for purposes of, indeed, in
18      effect, in supplementation of an interrogatory answer, that we
19      leave that matter as it is for now.
20               With regard to the next item in Mr. Dabney's letter,
21      that is, a request for plaintiff to state a month and year in
22      which it contends that its mark became famous.  I know that
23      plaintiff says now it has disavowed any intention to rely upon
24      the fame of the mark, and on that basis it says that it's
                                 Page 3
```

```
                              7A4VFORC.txt
    25    irrelevant.  It goes on, and plaintiff does go on to submit
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                          7
          7A4VFORC                      Conference
     1    some reference to the burden of producing all sorts of
     2    documents.  The only complaint voiced in Mr. Dabney's letter
     3    was with regard to the failure to answer the interrogatory;
     4    that is, asking month and year of when fame attached to this
     5    trademark.
     6              So I think the burden issue is irrelevant on that.
     7    If, in fact, however, the plaintiff did rely on the contention
     8    that the mark was famous at a particular point in time in
     9    arguing for, I believe it was, a temporary restraining order is
    10    that -- yes, that's what it was, before the district court,
    11    that notwithstanding its, in effect, massaging of its claims,
    12    that the defendant is entitled at least to a representation,
    13    perhaps slightly different from what it's asking for, as to
    14    whether the plaintiff contends that as of the relevant time,
    15    which I believe in Mr. Dabney's letter indicates January 2002,
    16    the mark was famous.
    17              If, in fact, by virtue of whatever amendment you say
    18    you made it is agreed by both sides that the purported fame of
    19    the mark is irrelevant or, more to the point, that the
    20    plaintiff will not contend in any respect in this case and
    21    offer no evidence that the mark has any fame, then I think any
    22    additional inquiry into this area would be unnecessary.
    23              So let me find out from you quite clearly, does the
    24    plaintiff represent at this time that it will make no
    25    contention that the mark has fame, and will not offer any
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                          8
          7A4VFORC                      Conference
     1    evidence that the mark has any fame in this case?
     2              MR. SERBAGI:  We do so represent.
     3              THE COURT:  Okay.  Under those circumstances,
     4    Mr. Dabney, other than having the plaintiff make the
     5    representation that it contended, at least for purposes of a
     6    temporary restraining order, that the mark was famous back in
     7    January 2002, is there any basis for pursuing this matter?
     8              MR. DABNEY:  Well, this ties into our request for
     9    documents relating to the extent of public awareness of the
    10    trademark.  We've tried to be very selective in our discovery
    11    requests that we have put in this case.  But as your Honor is
    12    aware, the extent to which a mark is known, whether it is
    13    extremely well-known and famous, or somewhat well-known, is a
    14    factual continuum that bears on all of the plaintiff's claims
    15    in this case, not just its now abandoned dilution claim.
    16              THE COURT:  Well, we're not, at this stage, dealing
    17    yet with surveys about awareness.  And to the extent that
    18    levels of public awareness may be relevant to one or another
    19    claim or defense, we can deal with that when we come to that
    20    point.
    21              MR. DABNEY:  Okay.
    22              THE COURT:  My question is solely with regard to the
    23    question of fame as such.
    24              MR. DABNEY:  It seems to me that if the plaintiff had
    25    any basis for the representation that it made and the claim
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                          9
          7A4VFORC                      Conference
                                       Page 4
```

```
                              7A4VFORC.txt
 1   that it made, we would be entitled to know what that was, and
 2   we don't have to accept their explanation that the reason why
 3   they have now retracted their contention was "to simplify the
 4   discovery and trial process."  That's the statement made in
 5   their letter in the first sentence in response on the evidence
 6   of fame.
 7             It seems to me that if, in fact, the plaintiff fully
 8   well knew that the mark was not famous in January 2002 and
 9   nevertheless so represented to the Court in response to a
10   pointed question, when there was absolutely no basis for it, it
11   seems to me that we would be entitled to more than a
12   representation that they will not make the contention without
13   having acknowledged that the original contention was untrue.
14             THE COURT:  That may well be true.  But I am taking
15   you at your word as to what you're asking for in your letter.
16   And in your letter what you asked for is an answer to
17   interrogatory No. 4 insofar as it asks from the plaintiff to,
18   and I quote from your letter, "state the month and year in
19   which plaintiff intends that the mark Lexapro," with an "a,"
20   "became a 'famous' trademark of the United States."
21             And as far as I can see, I mean that's not really a
22   very meaningful inquiry, other than insofar as it would trigger
23   an answer that would post-date January 2002.  And hence, I have
24   suggested, I will order, that the plaintiff respond to the
25   interrogatory as rewritten by me to ask whether they contend
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```
                                                                        10
```
     7A4VFORC                         Conference
 1   that the mark was famous by no later than January 2002.
 2             If there are other issues about fame and things you
 3   want to deal with, take it up with the other side; but at the
 4   moment it seems to me we're dealing with, if not a dead horse,
 5   a horse that is mortally wounded.
 6             So let's go on to the next point.
 7             That is damages disclosure.  Now, I understand from
 8   plaintiff's response that they are, in fact, going to seek only
 9   statutory damages, and will seek the statutory maximum of
10   $100,000.  That's, in fact, the case?
11             MR. SERBAGI:  That is correct, your Honor.
12             THE COURT:  Okay.  It seems to me once they choose,
13   whether early or late, to waive any other claim for damages,
14   there's no need for them to calculate damages that they will
15   not seek.  And they will, of course, be precluded from seeking
16   such damages or offering evidence in support of such damages.
17             MR. DABNEY:  Your Honor, if I can just say, when we
18   propounded the interrogatories, we fully well knew what relief
19   the plaintiffs were seeking.  What we were trying to find out
20   was what injury, loss, or damage they have suffered that would
21   be the basis for seeking relief, statutory or otherwise.
22             So interrogatory No. 5, which is obviously understood
23   by them, as reflected in their response, was to focus to their
24   injury as opposed to the relief that they are seeking.
25             So ordinarily in a trademark case like this, if you're
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```
                                                                        11
```
     7A4VFORC                         Conference
 1   going to seek actual damages or seeking compensatory damages,
 2   whether statutory or actual, they've got to be tied to some
 3   actual loss.  And so what this interrogatory is intended, and
 4   it ties into the actual confusion interrogatories in this
 5   circuit, in order to recover money damages of any kind in a
                                  Page 5
```

```
                         7A4VFORC.txt
 6    trademark case there's got to be actual confusion somewhere.
 7    So we are just trying to get them nailed down on whether they
 8    have, in fact, suffered a dime of loss so that in deciding
 9    whether any level of statutory damages is appropriate, the
10    Court can take into account that, in fact, they have no actual
11    loss.
12              THE COURT:  Well, not to split hairs too finely, which
13    is always an introduction that's starting to split hairs, I
14    know, what you've asked for in the interrogatories was a
15    computation of damages.  And I think when a party offers
16    statutory damages, it is not obliged to do a computation,
17    particularly in an area where computation is likely to be
18    difficult, if not impossible, to do.
19              What I think you are entitled to is any evidence of
20    injury that would be pertinent to a calculation of statutory
21    damages, which I think probably in shorthand translates into
22    any evidence that the plaintiffs might be prepared to
23    potentially use to demonstrate that there was some sort of
24    impact from the defendant's conduct on the plaintiff's mark and
25    business.
                   SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
                                                                      12
      7A4VFORC                   Conference
 1              In addition, and I think this is apart from
 2    calculation of damages, to the extent that there are any
 3    documents that would reflect an absence of impact, those
 4    documents necessarily would have to be used, as well.  And so
 5    to that extent, and if it hasn't been otherwise requested in
 6    some other document request, that universe of documents needs
 7    to be provided.
 8              Now, the next item has to do with the so-called
 9    Lexipro, with an "i," references that plaintiff may have.  And
10    there seems to be some question between the two letters I have
11    received as to the basis for limiting production, if, in fact,
12    plaintiffs limited production or limited their searches.  And
13    so I think probably it would be helpful at this point for
14    counsel simply to indicate, No. 1, what was produced; and No.
15    2, what was searched for and how.
16              MR. SERBAGI:  Your Honor, as I told Mr. Dabney's
17    associate over the phone in the meet-and-confer before the
18    conference today, we've produced every document responsive to
19    this request in our possession, custody, and control.  The way
20    we determined that we did that is we had the relevant employees
21    at Forest who knew about this issue search their files, both
22    their hard copies and their computer files, and we produced
23    what we have.
24              So I don't understand why we are even here on this
25    issue, because we've made a representation that we've given
                   SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
                                                                      13
      7A4VFORC                   Conference
 1    them what we had, and there's no reason for them to believe
 2    that we haven't.
 3              THE COURT:  Under these circumstances, on the
 4    assumption from Mr. Dabney's letter that he has a suspicion
 5    that the search or at least the production was only partial or
 6    to put it another way gently, that he has some questions about
 7    the precise accuracy of the representation that he received
 8    from you, defendant is free, as defendants traditionally are,
 9    to take a deposition if they wish of someone who would be in a
10    position to describe the nature of the search and the way in
                                Page 6
```

```
                              7A4VFORC.txt
 11    which documents are retained at plaintiff in order to satisfy
 12    himself that the production was, in fact, complete.
 13             MR. SERBAGI:  And your Honor, I'll just note for the
 14    record we had two weeks to respond to the request; and we will,
 15    out of an abundance of caution that our representations are
 16    fully accurate, continue to search the records and documents to
 17    make doubly sure that we've given everything that we are
 18    obligated to give.  So I'll just say that we reserve the right
 19    to supplement, if we do find something, but we will continue to
 20    check.  But we have no reason to believe that everything hasn't
 21    been turned over.
 22             THE COURT:  Okay.  Well, again, I think the obligation
 23    to make a complete search involved an obligation to do so
 24    within the time frame.
 25             If what you're suggesting is that there may be a
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
                                                                       14
       7A4VFORC                   Conference
  1    decision by your client to research some of the places that
  2    were already searched, that's fine.  But if, in fact, the
  3    search was only a partial one up to now, that's a bit more
  4    troubling.  But I am sure that if the search was not complete
  5    it will be complete within the next couple days.  Either way.
  6             MR. SERBAGI:  I have no reason to believe it wasn't as
  7    complete as possible.
  8             THE COURT:  Okay.  Fine.
  9             MR. DABNEY:  Your Honor, if I could just make clear
 10    that we believe the search should include the entire period of
 11    time covered by the complaint, from 2002.
 12             THE COURT:  Well, my assumption, and perhaps it was an
 13    overly optimistic or naive assumption, is that the search was
 14    not limited to some artificially narrowed time frame.
 15             MR. SERBAGI:  The search was not limited to any time.
 16             THE COURT:  And counsel's representation was not so
 17    hedged.  So I think we're clear, at least on the record, as to
 18    the scope of the search, and you may pursue this further, if
 19    you wish, by other means.
 20             MR. DABNEY:  I'll just note one of the documents that
 21    they did produce that was very recent indicated that they have
 22    had correspondence with Yahoo with regard to the payment of
 23    money by them for rankings of Lexipro, with an "i."  And we
 24    certainly would have expected, in view of that, that their
 25    production would have included correspondence and other
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
                                                                       15
       7A4VFORC                   Conference
  1    documents that reflect their own commercial dealings and
  2    involvement with this letter string.
  3             THE COURT:  With what?
  4             MR. DABNEY:  The letter string, with the letter
  5    string.  Lexipro, L-e-x-i-p-r-o.
  6             THE COURT:  Oh.  Well, I think we're going to have to
  7    leave it where it is.  And if you want to probe further into
  8    this possible mystery, you're free, as I say, to do so.
  9             The last item in Mr. Dabney's letter concerns the
 10    survey evidence question.  And Mr. Dabney, it might be helpful
 11    at this point, given our earlier discussion about the
 12    withdrawal of any suggestion of fame by the plaintiff, what the
 13    relevance of such survey evidence would be to put now in the
 14    case.
 15             MR. DABNEY:  One of the fundamental aspects of a claim
                                   Page 7
```

```
                         7A4VFORC.txt
16       of trademark infringement is the strength of the trademark,
17       which is not merely a function of its arbitrariness, but is
18       also a function of the extent to which the public is aware of
19       it.  This relates both to liability in this case, as well as to
20       what appropriate recommendation might be awarded if, in fact,
21       it turns out that there's extremely low public awareness of
22       this prescription drug that only physicians can prescribe, and
23       certainly I have heard of it when the suit was filed.
24                So to the extent that they have actually tested the
25       hypothesis, the papers in this case are shot through with
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                       16
         7A4VFORC                    Conference
 1       assertions that the mark originally was famous, was well-known,
 2       he must have known, must be bad faith because it's so
 3       well-known, there couldn't be any possible plausible reason he
 4       would have done this.  It seems to me that the evidence itself
 5       bears directly on the merits of their own claims in this case,
 6       No. 1.  And No. 2, surely, if the conduct that the defendant
 7       was causing confusion, this is a likely place where any impact
 8       of such confusion would be reflected.
 9                To the extent that they are able to conduct survey
10       research of public awareness of their mark and they don't
11       encounter confusion, it is evidence that tends to show that, in
12       fact, they've suffered no injury, loss, or damage in this case.
13       So on any number of levels, their complaint places an issue
14       over and over again the proposition that this survey evidence
15       directly tests.
16                THE COURT:  What is the basis for the objection to
17       proffering of the survey evidence?
18                MR. SERBAGI:  Your Honor, the defendant's
19       representations now are substantially different from what is
20       stated in his letter here.  He states in his letter, for the
21       same reasons given in the evidence of fame, paragraph above,
22       survey evidence showing the degree to which the trademark
23       Lexapro was or was not well-known or famous, bears directly on
24       the issues.
25                So the representation is that for the same reasons
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                       17
         7A4VFORC                    Conference
 1       that the issue of fame is relevant, the issue of survey is
 2       relevant.
 3                THE COURT:  Well, not to parse it too finely, No. 1,
 4       for substantially the same reasons, and I suspect perhaps that
 5       he felt so confident about the strength of his argument about
 6       fame before he learned that you were doing away with the fame
 7       issue, that he focused on that.
 8                If, however, the evidence at this time is relevant to
 9       other issues, he's certainly not prevented from arguing that
10       point now, nor am I prevented from considering it.
11                So my question is are you saying that it is completely
12       irrelevant to any issue in this case?
13                MR. SERBAGI:  Your Honor, it's our affirmative
14       obligation in the case to put forward the evidence of the
15       strength of the mark, whether there's confusion in the
16       marketplace, whether there's actual confusion.  This is very
17       similar to the actual confusion issue.
18                If we don't put on evidence of actual confusion, then
19       we're not entitled to represent in court that there is actual
20       confusion.  If we don't produce survey evidence to show that
                                   Page 8
```

```
                              7A4VFORC.txt
21      the mark was strong, then that is our affirmative decision not
22      to put that evidence before the Court.  But it's not relevant
23      to any of the defendant's defenses.
24               THE COURT:  Wait a minute.  Relevance from the
25      perspective of what the defendant can ask for in discovery is
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                       18
        7A4VFORC                    Conference
 1      not limited to potential affirmative defenses of the defendant.
 2      It encompasses evidence relevant to any of the contentions of
 3      the plaintiff, if, in fact, as you seem to be conceding, part
 4      of the plaintiff's potential case goes to the strength of the
 5      mark which in turn implicates public awareness.  And it seems
 6      to me you have effectively defined an area of relevance that
 7      encompasses such survey evidence.
 8               MR. SERBAGI:  Your Honor, based on what the Court is
 9      saying to me now and the new reasons for this type of
10      documentation, I don't believe that Forest objects to producing
11      these documents.
12               THE COURT:  Okay.  Good.  Now, I think that leaves us
13      with one other item.  And I have to confess, that in reading of
14      this matter in the second letter that I got, that is, from
15      plaintiff's counsel, my eyes glazed over because it seemed to
16      be a suggestion that for reasons too complicated for me at the
17      time, perhaps without enough caffeine in me, to grasp, we
18      should take up the possibility of defendant withdrawing its
19      motion to dismiss or having it denied out of hand or something
20      like that.  Perhaps you can tell me what it was I had
21      difficulty understanding here, and what it is you're seeking
22      other than not having to have the motion to dismiss
23      adjudicated.
24               MR. SERBAGI:  Well, your Honor --
25               THE COURT:  An outcome, by the way, which, of course,
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                       19
        7A4VFORC                    Conference
 1      the courts as an institutional matter always favor, but I can't
 2      always bring about.
 3               MR. SERBAGI:  Your Honor, to save the time and expense
 4      of briefing the jurisdictional issue, I wanted to raise to the
 5      Court an issue that we discovered in our research on the
 6      jurisdictional issue.
 7               The defendant in this case, prior to the litigation,
 8      made a number of offers to Forest, I should say demands, to pay
 9      him money to receive for us to retain the trademark, the main
10      name back.  And this was extortion.
11               And Mr. Dabney in a prior case had argued before the
12      same judge, Hellerstein, that those types of offers from an
13      out-of-state defendant constituted jurisdiction in this
14      district because there was a tort committed.  And in this case,
15      the representation is directly opposed to that.  And so I
16      wanted to raise the issue.
17               THE COURT:  Well, I'm familiar with the concept of law
18      of the case.  This is a somewhat original, although, in my
19      experience, not entirely unprecedented argument.  It seems to
20      press for a theory of law of the attorney; that is, if an
21      attorney in a prior case has argued one side of an issue, he
22      shall forever after be precluded from arguing the other side of
23      the issue, even for a different client.
24               I'm not aware of any legal authority for that
25      proposition, and I suspect attorneys as a practical and
                                   Page 9
```

```
                           7A4VFORC.txt
                  SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                      20
     7A4VFORC                    Conference
 1   professional matter would have difficulty with that.
 2           In any event, to the extent that you could think of
 3   analogous theories, I suppose the other one would be judicial
 4   estoppel.  But judicial estoppel, as I understand it, is
 5   limited to situations in which a particular party has taken a
 6   position, and not only taken a position, but has succeeded
 7   based on that position in persuading the Court to rule in its
 8   favor, and then subsequently in another case takes the opposite
 9   position.
10           I take it that your reference to whatever it was that
11   was argued in another case which does not seem to involve
12   Mr. Nissen made an argument, but it doesn't even tell me if he
13   succeeded based on that argument.  So I'm not sure where we're
14   going with all of this.
15           Obviously, if you can convince Mr. Dabney that this is
16   all a waste of his client's time because the law is clearly
17   against him, I encourage you to talk to him.  But beyond that,
18   I don't know what I'm supposed to do with this really.
19           Is there anything else we should deal with at this
20   point?  Thank you.
21           MR. DABNEY:  Thank you, Judge.
22           MR. SERBAGI:  Thank you, Judge.
23           THE COURT:  Have a great rest of the week and a good
24   weekend all.
25                              *    *    *
                  SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```