# EXHIBIT 10

*Before the:*

## WORLD INTELLECTUAL PROPERTY ORGANIZATION
## ARBITRATION AND MEDIATION CENTER

| | |
|---|---|
| Forest Laboratories, Inc.<br>909 Third Avenue<br>New York, NY 10022<br><br>**(Complainant)**<br><br>-v-<br><br>Leif Nissen<br>7800 1st Street North<br>St. Petersburg, Florida 33702<br>**(Respondent)** | **Disputed Domain Name:**<br><br>LEXIPRO.COM |

## COMPLAINT
(Rules, para. 3(b))

### I. Introduction

[1.] This Complaint is hereby submitted for decision in accordance with the Uniform Domain Name Dispute Resolution Policy (the **Policy**), approved by the Internet Corporation for Assigned Names and Numbers (**ICANN**) on October 24, 1999, the Rules for Uniform Domain Name Dispute Resolution Policy (the **Rules**), approved by ICANN on October 24, 1999 and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the **Supplemental Rules**).

## II. The Parties

### A. The Complainant
(Rules, para. 3(b)(ii) and (iii))

[2.]  The Complainant in this administrative proceeding is Forest Laboratories, Inc., a Delaware corporation, with corporate headquarters located at 909 Third Avenue, New York, New York, 10022.

[3.]  The Complainant's contact details are:

|  |  |
|---|---|
| Address: | 909 Third Avenue<br>New York, NY  10022 |
| Telephone: | 212.421.7850 |
| Fax: | 212.750.9152 |
| E-mail: | N/A |

[4.]  The Complainant's authorized representative in this administrative proceeding is:

Eric M. Agovino, Esq.
Forest Laboratories, Inc.
909 Third Avenue
New York, NY  10022
212.224.6925 (phone)
212.750.9152 (fax)
eric.agovino@frx.com

[5.]  The Complainant's preferred method of communications directed to the Complainant in this administrative proceeding is:

Electronic-only material
Method:   e-mail
Address:   eric.agovino@frx.com
Contact:   Eric M. Agovino, Esq.

3

        <u>Material including hardcopy</u>

| | |
|---|---|
| Method: | fax |
| Address: | 909 Third Avenue<br>New York, NY 10022 |
| Fax: | 212.750.9152 |
| Contact: | Eric M. Agovino, Esq. |

### B. <u>The Respondent</u>
(Rules, para. 3(b)(v))

[6.] The domain name at issue, "lexipro.com," is registered with Enom, Inc. (Exhibit A.) According to Enom's Whois database, Respondent Leif Nissen is the registrant of the domain name "lexipro.com." A printout of the database search conducted on October 8, 2007 is attached as Exhibit B.

[7.] All information known to the Complainant regarding how to contact the Respondent is as follows:

    Leif Nissen
    7800 1st Street North
    St. Petersburg, Florida 33702
    Telephone: 877.739.1895
    Email: nissen.leif@gmail.com, leif@properhosting.com

In an action formerly pending but now dismissed by request of Complainant in the U.S. District Court for the Southern District of New York involving the domain name at issue (Case No. 07-7399), Respondent was represented by:

    James Dabney
    Fried, Frank, Harris, Shriver, and Jacobson
    One New York Plaza
    New York, NY 10022
    Telephone: 212.859.8966
    Email: james_dabney@friedfrank.com

### III. <u>The Domain Name and Registrar</u>
(Rules, para. 3(b)(vi) and (vii))

[8.] This dispute concerns the domain name identified below:
LEXIPRO.COM

[9.]  The registrar with whom the domain name is registered is:

Enom, Inc.
15801 NE 24th St.
Bellevue, WA 98008
Fax: 425.974.4791
Email: info@enom.com

### IV.  Jurisdictional Basis for the Administrative Proceeding
(Rules, paras. 3(a), 3(b)(xv))

[10.]  This dispute is properly within the scope of the Policy and the Administrative Panel has jurisdiction to decide the dispute. Pages 2-3 of the registration agreement, under which the domain name that is the subject of this Complaint is registered, incorporate the Policy. A true and correct copy of the domain name dispute policy that applies to the domain name in question is provided as Exhibit C to this Complaint.

### V.  Factual and Legal Grounds
(Policy, paras. 4(a), (b), (c); Rules, para. 3)

[11.]  This Complaint is based on the following grounds:

**A.  The domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights.**
(Policy, para. 4(a)(i), Rules, paras. 3(b)(viii), (b)(ix)(1))

Complainant is a well-known pharmaceutical company with headquarters in New York City. Among other products, Complainant markets and sells pharmaceutical products containing escitalopram oxalate in the United States under the brand name LEXAPRO, a mark that is arbitrary, coined, and fanciful. Other than as a means to identify Complainant's products, the term has no meaning in any language.

Complainant filed a U.S. intent-to-use application under 15 U.S.C. § 1051(b) on December 22, 2000 for the mark LEXAPRO for "pharmaceutical preparations, namely antidepressants." (Exhibit D.) LEXAPRO brand escitalopram oxalate products were approved by the U.S. Food and Drug Administration for the treatment of depression on August 14, 2002 and for the treatment of general anxiety disorder on December 18, 2003. Complainant has made uninterrupted and continuous use of the mark LEXAPRO since

5

September 5, 2002 and received a federal trademark registration for the mark LEXAPRO (Reg. No. 2,684,432) on February 4, 2003. (Exhibit E.) Upon registration, Complainant's rights in the LEXAPRO mark became retroactive to December 22, 2000, the date the intent-to-use application was filed. 15 U.S.C. § 1057(c). LEXAPRO is Complainant's flagship product, with prescriptions to over 15 million people in the United States and sales exceeding $2 billion a year. Complainant's rights to the LEXAPRO mark are longstanding, strong, and incontestable under 15 U.S.C. § 1065. (Complainant also owns the domain name LEXAPRO.COM, which was registered on January 22, 2001.)

Respondent's domain name "lexipro.com" is virtually identical to Complainant's LEXAPRO mark in sight, sound, and meaning. The only difference between the two is the "i" in "lexipro" and the "a" in LEXAPRO, which does not change the pronunciation or the sight of the domain name compared to the mark. (In fact, "lexipro" is a common misspelling of LEXAPRO.) Further, the gtld ".com" cannot be taken into consideration when judging confusing similarity. Therefore, the domain name "lexipro.com" is confusingly similar to Complainant's LEXAPRO mark. *Sanofi-Aventis v. Renars Jeromans*, WIPO Case No. D2005-0705. (Exhibit F.). Additional evidence that "lexipro.com" is confusingly similar to the LEXAPRO mark are the search results generated by Google upon entry of "lexipro" as a search term. Google generates dozens of articles and entries where the public is demonstrably confused and believe that "lexipro" is the well known drug marketed by Complainant. (Exhibit G.)

**B.   The Respondent has no rights or legitimate interests in respect of the domain name.**

(Policy, para. 4(a)(ii), Rules, para. 3(b)(ix)(2))

Multiple facts demonstrate that Respondent has no rights or legitimate interests in the "lexipro.com" domain name. First, Complainant has not agreed or consented to Respondent's use or registration of a domain name confusingly similar to its unique, well-known, and federally-registered LEXAPRO mark. And Respondent does not own any right or legitimate interest in the domain name. *Compagnie de Saint Gobain v. Com-Union Corp.*, WIPO Case No. D2000-0020. (Exhibit H.)

Second, Respondent is not commonly known by the mark and does not use it to identify its business or any business.

Third, Respondent admittedly has never used the domain name at issue in connection with a *bona fide* offering of goods or services. (According to papers filed by Respondent in a

6

federal action in the U.S. District Court for the Southern District of New York, Respondent never developed any web site content for "lexipro.com" and never offered any goods or services for sale in any jurisdiction under the name "lexipro.com." (Exhibit I at ¶ 8.))

Instead, Respondent has only "parked" the domain name "lexipro.com" with various internet advertising firms. (A "parked domain" usually does not any substantial information and is created to make money for pay-per-click campaigns.) Between January 2002 and April 2004, the domain name "lexipro.com" was not associated with any text or graphic matter. (Id. ¶ 9.) Between April 2004 and May 2007, the domain name at issue was parked with a company called DomainSponsor that generated search related advertisements. (Id.)

On or about May 23, 2007, Respondent parked the domain at issue with a company called Parked.com. (Id. ¶ 11.) During the registration process, Respondent selected the keyword "depression," which was then used by Parked.com to generate relevant advertisements. (Id. ¶ 13.) These advertisements included links to several online pharmacies selling unapproved and illegal versions of prescription drugs, including LEXAPRO. And after Parked.com deactivated the domain "lexipro.com" in response to a cease and desist letter sent by the Complainant, the Respondent parked "lexipro.com" with a company called Sedo. (Id. ¶ 17.) Printouts of the web pages associated with "lexipro.com" when it was parked with Parked.com and Sedo are attached as Exhibits J and K, respectively.

Therefore, Respondent was clearly using the LEXAPRO mark in the disputed domain name to attract internet users looking for Complainant's goods to Respondent's website. Such unauthorized use of the mark for a commercial purpose cannot be considered a *bona fide* use. *F. Hoffman-LaRoche AG v. Lythion Services Ltd.*, WIPO Case No. D2006-0035. (Exhibit L.)

In addition, when parked with Parked.com and Sedo, the disputed domain name contained links to online pharmacies selling Complainant's LEXAPRO brand medication as well as other prescription medications to the general public at discount prices. (Exhibits J-K.) But the products offered for sale included products of other pharmaceutical companies, some of which are marketed for the treatment of depression, and therefore compete with Complainant's LEXAPRO products. (See, e.g., Exhibit J.) Therefore, Respondent's use of the domain name to advertise and sell pharmaceutical products cannot constitute a *bona fide* offering of goods and services because the domain name at issue is confusingly similar to Complainant's mark and is used in connection with the promotion and sale of competing products. *Forest Laboratories, Inc. v. Modern Empire Internet Ltd.*, WIPO Case No. D2007-0974. (Exhibit M.)

7

C. <u>**The domain name was registered and is being used in bad faith.**</u>

(Policy, paras. 4(a)(iii), 4(b); Rules, para. 3(b)(ix)(3))

Similarly, multiple facts demonstrate Respondent's bad faith. First, despite Respondent's claim to the contrary, the facts demonstrate that Respondent was well-aware of Complainant's LEXAPRO mark when he registered the domain name "lexipro.com." As noted above, Complainant filed an intent-to-use application on December 22, 2000, which was published for opposition on August 21, 2001. (Exhibit N.) On December 13, 2000, promising results from clinical trials involving escitalopram oxalate were publicized. (Exhibit O.) At least as early as December 13, 2001, Complainant publicly disclosed its intent to market escitalopram oxalate under the brand name LEXAPRO. (Exhibit P.) On January 24, 2002, Complainant issued a press release announcing that it had received an "approvable letter" for LEXAPRO, which represents the final stage before a company receives FDA clearance to market the product in the United States. (Exhibit Q.) <u>The very next day</u>, January 25, 2002, Respondent registered the domain name at issue. (Exhibit A.) It is highly unlikely that Respondent coincidentally registered "lexipro.com," a name that is arbitrary and fanciful, and which is nearly identical to Complainant's trademark, without knowledge of Complainant's trademark. *Sanofi-Aventis v. Renars Jeromans*, WIPO Case No. D2005-0705. (Exhibit F.)

Second, Respondent's bad faith is demonstrated by his actions subsequent to registering the domain name at issue. As discussed above, Respondent never used the domain name in connection with a legitimate business. Further, Respondent made unsolicited offers (and threats) to sell the domain name to Complainant at a price well beyond the cost of transfer.

On August 1, 2007, Complainant sent a cease and desist letter to Respondent, requesting that Respondent stop using the infringing domain name. (Exhibit R.) Respondent wrote an email soon after in which he (i) refused to comply with Complainant's request, (ii) indicated that he had registered the domain name with Parked.com, and (iii) offered to sell the domain name for $10,000. (Exhibit S.)

On August 14, 2007, counsel for Complainant sent a letter to Parked.com, requesting that Parked.com remove "lexipro.com" from its server. (Exhibit T.) Parked.com immediately complied with this request. (Exhibit U.) Upon learning of Parked.com's action, Respondent wrote an email to Complainant threatening to sell the domain name to a "webmaster in Pakistan who will put porn sites on it." (Exhibit V.) Respondent also indicated that he would register the domain name with a different domain parking company. On August, 15, 2007, Complainant became aware that Respondent had registered the domain

8

name with Sedo, a pay-per-click service similar to Parked.com. Complainant then brought an action in federal court in New York to restrain Respondent from transferring the domain.

Third, Respondent's bad faith is demonstrated by the fact that he selected the keyword "depression" during the registration process with Parked.com. This shows that Respondent was aware of the similarity between LEXAPRO and "lexipro" and wished to improperly profit from this similarity.

The above shows that Respondent unquestionably registered the domain name at issue, and "parked" it with DomainSponsor, Parked.com, and Sedo, to attract internet users to his website for commercial gain by creating a likelihood of confusion with Complainant's mark as to the source, sponsorship, affiliation, and endorsement of Respondent's website and Respondent's website. *Glaxo Group Ltd. v. Michale Kelly*, WIPO Case No. D2004-0262. (Exhibit W.)

Respondent also used the disputed domain name to direct internet users to its website that contains advertisements that earn money for the respondent. Intentionally misdirecting internet traffic with a domain name designed to confuse internet users clearly indicates bad faith. *F. Hoffmann-La Roche AG v. Lythion Services Ltd.*, WIPO Case No. D2006-0035. (Exhibit L.)

In conclusion, there can be no question that Respondent registered and has been using the domain name "lexipro.com" in bad faith.

### VI. Remedies Requested
(Rules, para. 3(b)(x))

[12.] In accordance with Paragraph 4(i) of the Policy, for the reasons described in Section V above, the Complainant requests the Administrative Panel appointed in this administrative proceeding issue a decision that the contested domain name be <u>transferred</u> to Complainant.

### VII. Administrative Panel
(Rules, para. 3(b)(iv))

[13.] The Complainant elects to have the dispute decided by a single-member Administrative Panel.

### VIII. Mutual Jurisdiction
(Rules, para. 3(b)(xiii))

[14.] In accordance with Paragraph 3(b)(xiii) of the Rules, the Complainant will submit, with respect to any challenges that may be made by the Respondent to a decision by the Administrative Panel to transfer or cancel the domain name that is the subject of this Complaint, to the jurisdiction of the courts at the location of the principal office of the concerned registrar.

### IX. Other Legal Proceedings
(Rules, para. 3(b)(xi))

[15.] Complainant filed a complaint against the Respondent in the United States District Court for the Southern District of New York on August 20, 2007 alleging several causes of action including cybersquatting, trademark infringement, trademark dilution, unfair competition, and unfair trade practices for Respondent's registration and use of "lexipro.com" (Case No. 07-7399). On August 21, 2007, after finding a likelihood of success on the merits, Judge Swain granted Complainant's motion for a temporary restraining order and enjoined the Respondent and Enom, Inc. from using the domain name "lexipro.com" in any manner during the pendency of the action. Respondent subsequently consented to a preliminary injunction. On October 9, 2007, Complainant dismissed the action in favor of pursuing the more expeditious remedies available before this forum.

### X. Communications
(Rules, paras. 2(b), 3(b)(xii); Supplemental Rules, paras. 3, 4)

[16.] A copy of this Complaint, together with the cover sheet as prescribed by the Supplemental Rules, has been sent or transmitted to the Respondent on October 10, 2007 by the following means:

*Via Federal Express*
Leif Nissen
7800 1st Street North
St. Petersburg, Florida 33702

James W. Dabney, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP

One New York Plaza
New York, NY  10004-1980

*Via Electronic mail*
nissen.leif@gmail.com
leif@properhosting.com
james_dabney@friedfrank.com

[17.] A copy of this Complaint, has been sent or transmitted to the concerned registrar on July 3, 2007 by the following means:

*Via Electronic mail*
info@enom.com

[18.] This Complaint is submitted to the Center in electronic form (except to the extent not available for annexes), and in four (4) sets together with the original.

## XI. Payment
(Rules, para. 19; Supplemental Rules, Annex D)

[19.] As required by the Rules and Supplemental Rules, payment in the amount of USD $1,500.00 will be made by credit card.

## XII. Certification
(Rules, para. 3(b)(xiv))

[20.] The Complainant agrees that its claims and remedies concerning the registration of the domain name, the dispute, or the dispute's resolution shall be solely against the domain name holder and waives all such claims and remedies against (a) the WIPO Arbitration and Mediation Center and Panelists, except in the case of deliberate wrongdoing, (b) the concerned registrar, (c) the registry administrator, (d) the Internet Corporation for Assigned Names and Numbers, as well as their directors, officers, employees, and agents.

[21.] The Complainant certifies that the information contained in this Complaint is to the best of the Complainant's knowledge complete and accurate, that this Complaint is not being presented for any improper purpose, such as to harass, and that the assertions in

this Complaint are warranted under the Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.

Respectfully submitted,

*[signature]*
Eric M. Agovino

Date: October 10, 2007