UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
FOREST LABORATORIES, INC.,                           :
                                                     :  ECF CASE
                                                     :
                                    Plaintiff,       :  Index. No. 07 CV 7399 (AKH) (MHD)
             - against -                             :
                                                     :
                                                     :
                                                     :
                                                     :
LEIF NISSEN,                                         :
                                                     :
                                                     :
                                    Defendant.       :
-------------------------------------------------------------------------x


# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES


On the brief:
Christopher Serbagi, Esq.

Attorney for the Plaintiff
Forest Laboratories, Inc.

## **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES.........................................................................................ii

PRELIMINARY STATEMENT....................................................................................1

STATEMENT OF FACTS.............................................................................................5

ARGUMENT.................................................................................................................15

I.      FOREST HAD A STRONG LEGAL AND FACTUAL BASIS TO ARGUE THAT
        DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION IN NEW
        YORK..................................................................................................................16

II.     FOREST HAD A STRONG BASIS TO REQUEST EMERGENCY RELIEF AND THE TRO
        WAS PROPERLY GRANTED...........................................................................19

        A.      The Facts Forest Submitted Fully Supported Relief On All the Causes of Action in the
                Complaint and Amended Complaint........................................................20

        B.      Defendant's Incredible and Conflicting Representations During the Litigation Further
                Confirm That Forest's Claims Were Well Grounded................................22

                1.      Defendant Has Made Conflicting Representations As To Why He Coined
                        Lexipro.Com..................................................................................22

                2.      Defendant Made Incredible Allegations As To The Nature of His Lexipro.Com
                        Web Site And His Relationship With Parked.Com.........................23

        C.      None Of The Causes of Action In The Complaint Required That LEXAPRO® Be
                Famous When Defendant Registered "Lexipro.com"...............................24

III.    The Defendant's Additional Miscellaneous Accusations Are Either Untrue Or Do Not
        Approach The Level of Bad Faith Litigation Conduct.......................................26

        A.      The Staff of Defendant's Outside Counsel Inadvertently Sent The August 30, 2007
                Letter By First Class Mail.........................................................................26

        B.      Pursuant to Judge Swain's Order, Forest Served Defendant With the Summons and
                Complaint On August 20, 2007, Not September 11, 2007 as Defendant Claims...........27

        C.      There Was No *Ex Parte* Discussion Between Forest's Counsel and Judge Hellerstein...27

CONCLUSION.............................................................................................................28

TABLE OF AUTHORITIES

Page

CASES:

1-800 Contacts, Inc. v. WhenU.com, Inc.,
    414 F.3d 400 (2d Cir. 2005)..........................................................21, 22

Alyeska Pipeline Serv. Co. v. Wilderness Society,
    421 U.S. 240 (1975)....................................................................15

Best Van Lines, Inc. v. Walker,
    490 F.3d 239 (2d Cir. 2007)...........................................................23

Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith,
    910 F.2d 1049, 1990 U.S. App. LEXIS 13691 (2d Cir. 1990)...............................19

Chambers v. Nasco, Inc.,
    501 U.S. 32 (1991).....................................................................15

Dattner v. Conagra Foods, Inc.,
    458 F.3d 98 (2d Cir. 2006).............................................................19

Levine v. Federal Deposit Ins. Corp.,
    2 F.3d 476 (2d Cir. 1990)...........................................................18, 19

Merck & Co. v. Mediplan Health Consulting, Inc.,
    425 F. Supp. 2d 402 (S.D.N.Y. 2006)...................................................22

Morgan Stanley Dean Witter & Co. v. Smart Ideas,
    99 Civ. 8921 (S.D.N.Y. 1999).....................................................16, 17, 18

Omega S.A. v. Omega Engineering, Inc.,
    228 F. Supp. 2d 112 (D. Conn. 2002)...................................................25

Prime Publishers, Inc. v. American-Republican, Inc.,
    160 F. Supp. 2d 266, 277-280 (D. Conn. 2001)...........................................25

Rescuecom Corp. v. Google, Inc.,
    456 F. Supp.2d 393 (N.D.N.Y. 2006)...................................................22

STATUTES

15 U.S.C. § 43(a)........................................................................24

15 U.S.C. § 1114........................................................................24

15 U.S.C. 1125(c)………………………………………………………………..24

15 U.S.C. § 1125(d)(1)(A)………………………………………………………..25

Fed. R. Civ. P. 54(d)………………………………………………………………..19

Fed. R. Civ. P. 65………………………………………………………………..19

Fed. R. Civ. P. 65(a)(2)………………………………………………………..11

Fed. R. Civ. P. 65(c)………………………………………………………………..14, 19

Plaintiff Forest Laboratories, Inc. ("Forest") respectfully submits this memorandum of law in opposition to Defendant Leif Nissen's ("Defendant") motion for an award of attorney's fees.

## PRELIMINARY STATEMENT

Defendant's motion should be denied because Defendant is subject to personal jurisdiction in New York and because Forest's claims are all well founded. Neither Forest nor its attorney would ever intentionally deceive any court and would never file a baseless action. Forest had a very strong factual and legal basis to bring this case against Defendant in New York and has every reason to believe it would have prevailed. Forest made the business decision to re-file this case in an alternative forum before an arbitration panel, but that does not logically lead to the conclusion that it never had a basis to bring the case here in the first instance. Defendant's motion consists primarily of unfounded and personal attacks against Forest and its counsel, some of which are simply untrue and some of which are overblown and immaterial, like a letter that a secretary accidentally sent by First Class Mail rather than facsimile. Defendant's motion is baseless and should not have been filed.

Defendant is subject to personal jurisdiction in New York. He unilaterally and repeatedly reached out to this forum by attempting to extort $10,000 from Forest in exchange for Defendant's agreement to transfer the confusingly similar domain name "lexipro.com" to Forest. If Forest did not capitulate to Defendant's extortion, Defendant threatened, in writing, to sell "lexipro.com" to "a web master in Pakistan who will put a porn site on it." There is case law in this district (and other districts) that directly supports personal jurisdiction under these circumstances. Forest chose not to oppose Defendant's motion to dismiss only because it ultimately decided to pursue this case before an arbitration panel, not out of some nefarious

purpose to avoid judicial scrutiny. In fact, Forest stands behind all the jurisdictional arguments it made and respectfully invites the Court to carefully scrutinize the memorandum of law it would have submitted. Whether or not Forest would have prevailed, under no conceivable interpretation can Forest's personal jurisdiction allegations be considered baseless or frivolous.

Moreover, Forest's causes of action were all well founded. Forest properly requested a temporary restraining order and Judge Swain's decision to grant Forest's request was entirely correct. In August 2007, Forest learned that Defendant was using the confusingly similar name "lexipro.com," not in connection with any legitimate business, but solely to derive advertising revenue from illegal on-line pharmacies and other unauthorized entities that he permitted to advertise on his site. These on-line pharmacies pose a serious public health threat. Especially concerning to Forest was the fact that "lexipro" is a common misspelling of Forest's LEXAPRO® mark and the fact that a simple Internet search reveals that hundreds if not thousands of people wrongly believed that Defendant's "lexipro" is affiliated with Forest. The Defendant even admitted to having chosen the keyword "depression" when he employed Parked.com to further his illegal ends, which was obviously an attempt to attract those interested in Forest's LEXAPRO® mark to his "lexipro.com" site. Forest was also generally and correctly concerned about the general consumer confusion in the marketplace between "lexipro.com" and LEXAPRO®. Even then, Forest demonstrated considerable restraint and did not file suit.

Instead of filing suit, Forest wrote to Defendant and requested that he simply cease and desist from using "lexipro.com." Not only did Defendant refuse to cease and desist, but he demanded that Forest pay him $10,000. Forest did not substantively respond to this communication. Instead of suing Defendant or requesting compensation, Forest wrote to Parked.com, and requested that it cease and desist from assisting Defendant in his infringing

activities. When "Parked.com" complied with Forest's request, the Defendant immediately employed another parked service called SEDO, where the Defendant also posted on-line pharmacies and offered "lexipro.com" for sale to the general public. (Defendant also threatened to subscribe to dozens of additional "parked" sites unless Forest started being "reasonable.") As if all this were not enough, Defendant then wrote to Forest and threatened to sell "lexipro.com" to pornographic web masters in Pakistan unless Forest agreed to pay him $10,000. By his own admission, Defendant admittedly profited from every consumer that clicked on the advertisements posted on his site. This is why Forest finally pursued this litigation and why Judge Swain granted Forest's request for a preliminary injunction.

Forest did not intentionally misled Judge Swain at the order to show cause hearing by agreeing with her statement that it was Forest's position that LEXAPRO® was famous as of January 2002. In retrospect, Forest's attorney erred in <u>agreeing</u> with Judge Swain on this point, as he has admitted in an accompanying declaration, but the evidence strongly supports that that this was an immaterial and inadvertent mistake and was no more than an attorney error made at the spur of the moment without proper reflection. Neither Forest nor its attorney would ever intentionally mislead any court and had no conceivable reason to do so. This is especially so because the evidence Forest submitted was otherwise <u>overwhelming</u> to support the Order that Judge Swain granted. Forest did not affirmatively argue that LEXAPRO® was famous as of January 2002 in any of its papers, as it surely would have done if it intended to mislead or if it thought the issue was material. It did not raise the issue in its Complaint or in any of the affidavits it submitted in support of its request for emergency relief. <u>Forest did not need to make that argument because none of the causes of action Forest filed in any way required that LEXAPRO® be famous as of January 2002.</u> Forest's attorney mistakenly agreed with what

Judge Swain asked. Defendant's attorney's attempt to capitalize on this single mistake by accusing a fellow member of the bar of perjury goes too far.

The error may have been more significant if Defendant argued that Judge Swain had no basis to grant the TRO in the absence of Forest's representation. Tellingly, however, Defendant knows that Forest submitted overwhelming evidence to support the TRO, which is why Defendant consented to the preliminary injunctive relief and why Defendant has not argued that the evidence Forest submitted to Judge Swain was otherwise insufficient to justify the Order. As Forest's supporting papers and the transcript of the August 2007 hearing clearly demonstrates, Forest relied on (i) its prior rights to LEXAPRO® as a result of its prior filed federal intent-to-use application; (ii) Defendant's use of the mark, not in connection with any legitimate business, but solely in connection with "parked" websites where he obtained advertising revenue from unauthorized businesses; (iii) the obvious likelihood of consumer confusion between "lexipro.com" and LEXAPRO®; (iv) Defendant's admission before Judge Swain that he knew that he had a "problem" with "lexipro.com" soon after he registered the mark because of Forest's LEXAPRO® mark; (v) Defendant's clear violation of the Anti-Cybersquatting Act; (vi) the threat to public safety posed by the on-line pharmacies advertised on his "lexipro.com" site; and (vii) Defendant's threat to imminently sell "lexipro.com" to pornographic web masters in Pakistan unless Forest capitulated to his extortion. Defendant's brief essentially ignores these issues.

Rather than focus on the merits of Forest's claims, Defendant's motion consists of mischaracterizations about supposed *ex parte* discussions which never took place, a secretarial error in sending a letter by first class mail rather than my facsimile, and a series of unfortunate accusations that attribute nefarious motives to acts that are entirely permitted by the Federal

Rules of Civil Procedure or were honest mistakes that occur in virtually every expedited litigation. There is no basis whatsoever for Defendant's motion.

## STATEMENT OF FACTS

Forest is a New York based pharmaceutical company that manufactures, markets, and sells LEXAPRO®, a blockbuster drug that is indicated for the treatment of major depressive disorder and general anxiety disorder. Declaration of Eric M. Agovino in Opposition to Defendant's Motion for Attorney's Fees, dated November 21, 2007 ("Agovino Decl."), ¶ 3. LEXAPRO® has been prescribed to more than 15 million adults in the United States. Sales of LEXAPRO® are approximately $2 billion a year. Id., Ex. A.

On December 22, 2000, Forest filed an intent-to-use application with the United States Patent and Trademark Office ("PTO") for the mark LEXAPRO® for "pharmaceutical preparations, namely antidepressants," which means that Forest is entitled to presumptive use from that date forward. Id. at ¶ 4, Ex. B. Forest registered and obtained rights to the domain name "lexapro.com" on January 22, 2001. Id. at ¶ 5, Ex. C.

On December 13, 2001, Forest issued a press release disclosing its intent to market escitalopram under the mark LEXAPRO®. Id. at ¶ 6, Ex. D. On January 24, 2002, Forest disclosed in a press release that it had received an "approvable" letter from the FDA for LEXAPRO®, which represents the final stage before a company receives FDA clearance to market a drug in the Unites States. Id. at ¶ 8, Ex. E. The very next day, the Defendant registered and obtained rights to the domain name "lexipro.com." Agovino Decl., ¶ 8, Ex. F. "Lexipro" is a common misspelling for Forest's LEXAPRO® mark and, on information and belief, Defendant registered "lexipro.com" only because he sought to capitalize on the good will that LEXAPRO® brand would obtain in the marketplace. Id. On February 4, 2003, the PTO issued a federal

5

registration for LEXAPRO® (Reg. NO. 2,684,432). Id. at ¶ 9, Ex. G.

From market research, Forest learned that "lexipro" is a top internet keyword for LEXAPRO®. Id. at ¶ 10. Forest purchased a "sponsored link" from Google so that whenever an individual searches for "lexipro," a link to Forest's LEXAPRO.COM is prominently displayed at the top of the page. Id., Ex. H. As of June 2007, Forest's sponsored link was served 15,008 times (i.e. someone typed lexipro into Google 15,008 times). Id. After these searches, Forest's sponsored LEXAPRO.COM link was clicked 3,640 times. Id. This corresponds to a 24.25% "click through rate," indicating that a large percentage of individuals who searched for "lexipro.com" were trying to reach the LEXAPRO.COM website. Id.

In early August 2007, it came to Forest's attention through its marketing department that someone had registered and was making improper use of the domain name "lexipro.com." Id. at ¶ 11. In particular, "lexipro.com" was linked to, among other things, a number of on-line pharmacies that are making unauthorized sales of drugs that purport to be LEXAPRO®, both in the United States and in other countries. Id. These online and rogue pharmacies are engaging in willful patent infringement, trademark infringement, and other violations of Forest's valuable intellectual property. Id. Even worse, the sale of unregulated drugs by rogue online pharmacies presents a well established public safety issue. Id.

Forest's further investigation disclosed that "lexipro.com" is registered to an individual by the name of Leif Nissen, the Defendant in the present action. Id. at ¶ 12. On August 1, 2007, Forest wrote to Defendant and requested that he cease and desist from his unlawful activities in connection with his use of the domain name "lexipro.com." Id., at Ex. I. On August 1, 2007, Defendant wrote back to Forest and incorrectly stated that he had the "lexipro.com" domain name before the Forest product LEXAPRO® existed. Id. at ¶ 13, Ex. J. Defendant also admitted

6

to placing "lexipro.com" on a pay-per-click site called "Parked.Com."[1] Id.

By leasing "lexipro.com" to Parked.Com, whenever someone interested in Forest's LEXAPRO® typed "www.lexipro.com" as a web address the user was directed to a web site that contained links to several rogue on-line pharmacies and other sites. Id. at ¶ 14. To increase the amount of money he received, Defendant selected the primary keyword "depression." Id. at 15, Ex. K. This caused the Parked system to select the additional keywords "LEXAPRO®" and "CELEXA®," both of which are registered Forest trademarks. Id. Those entities that bid on the word "lexipro" were prominently displayed on the "lexipro.com" website, including on line pharmacies. Id. From May 23, 2007 until the domain name "lexipro.com" was shut down by Order of Judge Swain, the domain name "lexipro.com" had 1,410 visitors with 1,243 verified clicks. Id. at ¶ 16.

In Defendant's August 1, 2007 electronic communication to Forest, he offered to sell the "lexipro.com" domain name to Forest for $10,000 or he would sell the name to offshore companies. Id. at ¶ 13, Ex. J. On or about August 14, 2007, Forest's outside trademark counsel sent a cease and desist letter to the pay-per-click site "Parked.Com" and demanded that it cease providing services in connection with "lexipro.com." Id. at ¶ 16, Ex. L. That same day, Parked.Com terminated its relationship with Defendant. Id. at ¶ 17, Ex. M. On August 14, 2007, Defendant wrote to Forest again via electronic communication, and stated:

> Well, you've gotten parked.com<http://parked.com> to stop
> running ads on the site. Being that you're being so reasonable,
> maybe I'll sell it to a webmaster in Pakistan who will put a porn
> site on it. Let's start being reasonable here before I do something

---

[1] Parked.Com is an on-line advertising business that services owners of domain names. Agovino Decl., at ¶ 15, Ex. K. Both Parked.Com and Defendant collected advertising dollars each time someone clicked on an advertised site, which in turn provided a portion of those monies to those who owned the particular domain names in question, like Defendant. Id. at ¶ 4.

> stupid. There are 10+ domain parking companies if that's really
> the tactic you want to take.

Id. at ¶ 18, Ex. N. On or about August 14, 2007, Defendant made true on his threat and

displayed the "lexipro.com" domain name on another pay-per-click site called SEDO. Id. at ¶

19, Ex. O. This new site also links users to rogue on-line pharmacies. Id. Both SEDO and

Defendant have received advertising dollars in connection with their improper activities.

On August 20, 2007, Forest moved for a temporary restraining order and preliminary

injunction in order to prevent the defendant from making good on his promise to sell

"lexipro.com" to web masters in Pakistan who would use it for pornographic purposes.

Declaration of Christopher Serbagi in Opposition to Defendant's Motion for Attorney's Fees,

dated November 21, 2007 ("Serbagi Decl."), ¶ 4. Forest did not provide Defendant prior notice

of its motion because it was concerned that Defendant would sell or otherwise transfer the mark

before a Judge had an opportunity to enjoin its sale. Id. That same day, Judge Swain Ordered (i)

the parties to appear on August 21, 2007 for hearing on Forest's motion; (ii) Forest to serve

Defendant by electronic communication the papers Forest had filed in Court on Defendant; and

(iii) Forest file a Rule 65(b) Attorney Certification attesting to its efforts to serve Defendant. Id.,

Ex. A. Pursuant to Judge Swain's Order, on the evening of August 20, 2007, Forest served on

Defendant by electronic communication the following documents: (i) Summons and Complaint;

(ii) Declaration of Eric M. Agovino; (iii) proposed Order to Show Cause; and (iv) Declaration of

Christopher Serbagi. Id. at ¶ 5, Ex. B. Defendants representation that Forest did not serve these

documents is incorrect. Id.

On August 21, 2007, Judge Loretta Taylor Swain heard Forest's application for a

temporary restraining order that would require the Defendant and the Registrar of "lexipro.com"

to de-activate the domain name pending a full hearing. Id. at ¶ 6, Ex. C. Both parties appeared

and presented their arguments in open court. Id. The first argument that Forest presented to the Court was the basis for its position that there was personal jurisdiction over Defendant in New York, namely that Defendant had requested that Forest purchase "lexipro.com" for $10,000 or he would sell it to web masters in Pakistan who would use it for pornographic purposes." Id. at ¶¶ 6-7, Ex. C., p.3, lines 5-10. Forest presented the following affirmative arguments as the basis for its position that Judge Swain should grand its motion: (i) Defendant was leasing "lexipro.com" to pay-per-click sites who are permitting on-line pharmacies to advertise on the site; id., Ex. C., p.4, lines 5-10; (ii) Forest had prior rights to the mark by virtue of its ITU application; and (iii) there was substantial evidence of Defendant's bad faith, including the similarities between the respective marks, Defendant's knowledge of LEXAPRO®, and his use of the mark to obtain advertising revenues not in connection with any legitimate business. Id., Ex. C., pp. 6-8.

The Court asked Forest two questions: First, whether it is sufficient under the Anti-Cybersquatting Act if a defendant use the mark in bad faith even if there is no proof of bad faith upon the defendant's registration of the domain name. Id. at ¶ 8, Ex. C., p. 8, lines 9-16. Forest stated that it is sufficient if a defendant uses a mark in bad faith and the Court agreed with Forest's representation, which is consistent with the plain statutory language and the well established case law. Id. at ¶ 8, Ex. C., pp. 8-9, lines 9-19. Second, the Court asked Forest's counsel whether it was his position that LEXAPRO® was famous as of January 2002 when Defendant registered "lexipro.com." Id., Ex. C, p. 10, lines 4-8. Forest's counsel generally stated "all that is true." Id. at line 9. Forest's counsel made this statement without proper reflection and was incorrect, but it was not a statement that it made in support of any of its supporting papers, either for the temporary restraining order or in its pre-trial memorandum. Id. Not a single cause of action requires that LEXAPRO® have been famous as of the date when

9

Defendant registered lexipro.com.  Id.

Defendant declared that it was not until after he registered lexipro.com that he tried to capitalize on LEXAPRO®'s good will.  Id., Ex. C, p. 5, lines 10-18.  Defendant stated:

> I will point out that as mentioned in the injunction, I have never actually developed a domain name.  **I actually, I didn't find out until a few months after buying it that it was probably going to be a problem with the fact that there was a drug named for it or with a different spelling or the domain.**  So I just held onto it for two years.  I did nothing with it.  I wanted to see how LEXAPRO® with a different spelling was to be used.  I put up some ad code so people could make money with it.

Id. (emphasis added).

Based on the evidence presented at the hearing, Judge Swain held that (i) Forest was likely to succeed in its trademark infringement, dilution, and cybersquatting causes of action; (ii) there was evidence of consumer confusion; (iii) that Defendant was obtaining revenue based on that consumer confusion; (iv) there was irreparable harm, not only caused by misuse of Forest's intellectual property, but a broader public safety issue caused by the use of lexipro.com to sell unauthorized and unregulated versions of the brand drug.  Id. at Ex. C, p. 12-13.  In particular, Judge Swain held:

> I find that the proffer here and the facts as they have been explained are indicative of a likelihood of success in the merits of the plaintiff's trademark infringement, dilution and anti-cybersquatting causes of action insofar as there is evidence of consumer confusion, there is evidence of use of the Lexipro domain name to obtain revenue whose source really is that consumer confusion.  And there is, in terms of irreparable harm, not only the irreparable harm that by definition exists in the context of misuse of intellectual property, but also a broader public safety issues with respect to the availability of Lexipro domain name as a channel unauthorized and unregulated versions or purported versions of the name brand drug.  Accordingly, I will sign the order as proposed.

Id.  Judge Swain appeared to rely heavily on the likelihood of consumer confusion between

"lexipro" and LEXAPRO® and the public safety issue of consumers buying drugs from the on-line pharmacies posted on Defendant's site. Judge Swain subsequently transferred the case to Judge Hellerstein. Id., Ex. C, p. 3, lines 14-15.

The Defendant was undeterred by Judge Swain's well reasoned admonitions. On the eve of Judge Swain's Order, Defendant again reiterated his requirement that Forest provide him a "fair payout." Id., at ¶ 8, Ex. D.

On August 22, 2007, Forest wrote to Judge Hellerstein and requested that the Court (i) provide Forest a five day extension of time to submit its memorandum of law in support of its request for a preliminary injunction and (ii) "an Order that the preliminary injunction hearing be combined with a trial on the merits pursuant to F.R.C.P. 65(a)(2)." Serbagi Decl. at ¶ 9, Ex. E. By Memo Endorsed Order dated the same day, Judge Swain Ordered that "[t]he requests are granted. Id. The preliminary injunction hearing is adjourned to September 11, 2007, at 11:45 A.M." Id.

On August 27, 2007, Forest spoke with Defendant's counsel. Forest informed him that its interpretation of Judge Swain's Order is that she granted Forest's specific request that the preliminary injunction hearing be combined with a trial on the merits. Id., at ¶ 10. Forest did not request permission from Defendant's counsel for a Rule 65(a)(2) Order as Defendant represents because Forest believed that Judge Swain had already granted that Order. Id. Instead, Forest's counsel requested permission that Defendant consent to having the issue decided by summary judgment papers rather than burdening the Court with a hearing. Id. When Defendant stated that he was not inclined to agree, Forest reconsidered and decided to proceed in the manner already Ordered by the Court. Id.

On August 30, 2007, Forest sent a letter to Judge Hellerstein, which merely enclosed

11

courtesy copies of documents that Forest had already electronically filed the prior day and that were therefore immediately available to Defendant's attorney. Id. at ¶ 11, Ex. F. Defendant received this letter except by First Class Mail, which was the result of an innocent secretarial mistake. Id.

Defendant never challenged Judge Swain's issuance of the temporary restraining order, Forest's written representations it submitted in support of that Order, or any of Forest's oral representations made at the August 21, 2007 hearing. Id. at ¶ 12. In fact, during a phone conversation between counsel for Forest and Defendant on September 4, 2007, Defendant's counsel consented to all the preliminary injunctive relief Forest requested. Id. Forest's counsel stated to Defendant's counsel that it believed Judge Swain's written statement "the requests are granted" included Forest's request that the preliminary injunction hearing be combined with a trial on the merits." Id. When Defendant's counsel disagreed, Forest called Judge Hellerstein's law clerk to ascertain whether the case was on for a trial on the merits or just a preliminary injunction. Id. Judge Hellerstein's law clerk stated that the parties submit a joint letter on how they wanted to proceed on September 11, 2007. Id. Forest immediately called Defendant's counsel by telephone to provide that information. Id. That same afternoon, Judge Hellerstein's law clerk called Forest's counsel and Ordered that the parties appear for a pretrial conference on September 7, 2007, which necessitated the joint letter moot. Id. Again, Forest called Defendant's counsel and provided that information by telephone. Id.

On September 7, 2007, the parties appeared (both represented by counsel) before Judge Hellerstein. Id. at ¶ 13. Consistent with Forest's belief that Judge Swain had Ordered that the preliminary injunction hearing by combined with a trial on the merits, Forest requested that Judge Hellerstein hold a trial on September 11, 2007. Id. Defendant's counsel requested that it

12

be able to conduct some discovery. Id. Judge Hellerstein consented to Defendant's request and referred the case to Magistrate Judge Dolinger to conduct pre-trial discovery. Id.

Defendant's brief mischaracterizes what transpired at the discovery conference before Judge Dolinger on October 4, 2007. Id. at ¶ 14. First, the Defendant incorrectly states that Forest "admitted that it had no evidence that any challenged conduct of Mr. Nissen's had caused any actual confusion of anyone, anywhere." Def's Memo. at 6. What Forest stated at the conference is that it had produced everything that it had on actual confusion. Id., Ex. G, p. 4, lines 10-16. In particular, Forest stated to the Court that it had internally typed in the name "lexipro" as a search term in Google and observed many pages of references demonstrating that consumers were actually confused between "lexipro.com" and LEXAPRO®. Id., at pp. 4-5. Indeed, Forest produced the web pages it printed out in connection with the August 28, 2007 Declaration of Eric M. Agovino. Id.; see also Agovino Decl., at ¶¶ 20-21, Exs. P-Q. A review of these pages clearly demonstrates that consumers did confuse the respective marks and Forest testified that it was investigating those references but had no additional documents to produce at that time. Id. Defendant's counsel acknowledged that he had received those documents. Id., p. 5, lines 13-21.

Regarding "fame," Forest decided not to present any evidence on the issue. Agovino Decl., at ¶ 22. Defendant did not admit that LEXAPRO® is not "famous." Id. And Defendant's representation that "discovery was expected to show that there was very little public awareness of plaintiff's LEXAPRO® mark at relevant times" is also inaccurate. Def's Memo. at 7. Forest (i) ultimately decided not to argue that LEXAPRO® is "famous" only because (i) not a single cause of action in the Complaint and Amended Complaint required that LEXAPRO® be famous as of the date when the Defendant registered "lexipro.com;" (ii) wanted to streamline the

13

litigation: and (iii) it had made the internal business decision not to burden its employees with producing all the evidence that proving fame would entail.  Agovino Decl., at ¶ 22.  Forest had strong evidence that its mark is famous at the relevant times, including approximately seven billion dollars in sales by 2007.[2]  Id. at ¶ 3.

As of early September, and based on internal business considerations, Forest began to consider whether it could more quickly dispose of this matter by bringing a proceeding before the World Intellectual Property Organization ("WIPO").  Id. at ¶ 23.

On October 2, 2007, Forest offered to withdraw its Amended Complaint if Defendant agreed to transfer "lexipro.com" to Forest and not register any confusingly similar names in the future.  Serbagi Decl., ¶ 15, Ex. H.  By letter dated October 3, 2007, Defendant insisted on proceeding with the litigation.  Serbagi Decl., ¶ 16, Ex. I.  On October 10, 2007, Forest filed a Fed. R. Civ. P. 41(a)(1) Notice of Dismissal and filed a Complaint with WIPO that mirrors the allegations that Forest asserted in this lawsuit.  Id. at ¶ 17, Ex. J.  Forest's decision was entirely legitimate and Defendant has the right to seek judicial scrutiny of any adverse decision.  Id. Further, Forest's choice of Washington as the state where Defendant can seek judicial review of an adverse WIPO decision is legitimate and explicitly permitted by the applicable rules.  (Under the WIPO Rules provide the Complainant can choose the location of the Registrar of the domain name or the location of the Respondent).  Agovino Decl. at ¶ 24, Ex. R.

On October 17, 2007, Defendant sent a letter to Judge Hellerstein in which it stated that it would request damages for a wrongful injunction under Fed. R. Civ. P. 65(c) and attorney's fees for bad faith litigation.  Serbagi Dec., at ¶ 18, Ex. K.  Defendant sent the letter to Forest's

---

[2] As set forth in the Declaration of Christopher Serbagi, his agreement with Judge Swain's question that LEXAPRO® was famous as of January 2002 was an inadvertent mistake that had no material impact on this case.

counsel by First Class Mail and to the Court via facsimile, apparently as retribution for the mistake Forest's counsel's secretary made in sending a prior letter by <u>First Class Mail rather than facsimile</u>. <u>Id.</u> Despite Defendant's representation to Judge Hellerstein that it would seek damages for a purported wrongful injunction, Defendant, tellingly, did not make that request to this Court. <u>Id.</u>

## ARGUMENT

The Court should deny Defendant's motion for attorney' fees. Attorney's fees are warranted only "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" <u>Chambers v. Nasco, Inc.</u>, 501 U.S. 32, 45-46 (1991) (<u>quoting Alyeska Pipeline Serv. Co. v. Wilderness Society</u>, 421 U.S. 240, 258-59 (1975)). In <u>Chambers</u>, the Petitioner acted in bad faith by (i) delaying and complicating issues at trial; (ii) attempting to defraud the court; (iii) continuously delaying the proceedings; (iv) repeatedly taking actions in contempt of court orders, and (v) filed a series of meritless motions and pleadings. <u>Id.</u> at 36-42. Nothing of the sort occurred in this case. After careful deliberation, Forest properly invoked this Court's jurisdiction and asserted well founded claims against Defendant. Tellingly, Defendant's brief does not seriously challenge the merits of Forest's claims against him. Instead, Defendant's motion concludes that Forest acted in bad faith based on a few honest and entirely immaterial mistakes which occur in most fast moving litigations. But none rise to the level of "bad faith" or "vexatious conduct" that can support an award of attorney's fees. The indisputable evidence demonstrates that the only party who acted in bad faith is Defendant, who chose the keyword "depression" and then advertised illegal on-line pharmacies on his web site to earn advertising dollars from Forest's LEXAPRO® mark.

I.     **FOREST HAD A STRONG LEGAL AND FACTUAL BASIS TO ARGUE THAT DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION IN NEW YORK**

Defendant brazenly alleges, without any support whatsoever, that Forest's jurisdictional arguments were "knowingly false." Not only did Forest believe that this Court has personal jurisdiction over Defendant, but Forest strongly believes it would have prevailed.

Concurrent with this brief, Forest submits to the Court a detailed memorandum of law that it was prepared to file in opposition to Defendant's motion to dismiss for lack of personal jurisdiction. Serbagi Decl., at ¶ 19, Ex. L. As demonstrated in that memorandum of law, Defendant is subject to personal jurisdiction in this forum because he unilaterally reached out here on two separate occasions (prior to the inception of the lawsuit) and, in one instance, demanded that Forest pay a ransom of $10,000. Agovino Decl., ¶ 13, Ex. J. On one occasion, Defendant threatened to sell the "lexipro.com" domain name to web masters in Pakistan unless Forest capitulated to Defendant's extortion. Id. at ¶ 18, Ex. N. Jurisdiction is proper under these circumstances. See Morgan Stanley Dean Witter & Co. v. Smart Ideas, 99 Civ. 8921 (S.D.N.Y. 1999) (AKH).

In Smart Ideas, the plaintiff argued that there was personal jurisdiction in New York over an alleged cybersquatter located in California who attempted to sell domain names from California to Morgan Stanley in New York. In particular, Morgan Stanley argued:

> Indeed, it is well-established that establishing an infringing domain name with the intention of extorting money from the trademark owner is, **without more**, a tortious act."

Serbagi Decl., at ¶ 20, Ex. M. Judge Hellerstein accepted this argument and found that the Defendant was subject to jurisdiction in New York based on Defendant's offer to sell an

allegedly infringing domain name from California to New York. In particular, referring to the Defendant's offers to sell its domain name to the Plaintiff, Judge Hellerstein stated:

> The services rendered in the state that they offer is elimination of a confusingly similar name if their outrageous terms are accepted. That's business. It may not be nice business, but it's business . . . The very purpose of the defendants' act, it is alleged, is to attack Morgan Stanley and to extort money from Morgan Stanley because of a confusingly similar domain name that was created for no legitimate purpose.

Id. at ¶ 22, Ex. N. Plainly, Defendant's argument that Forest had no basis to allege that Defendant was subject to personal jurisdiction in New York goes too far.[3]

The Defendant incorrectly argues that Smart Ideas does not apply because the defendant there had registered variants of a number of long-standing, well-known business names and trademarks and had prevented the plaintiff from using its own actual trademark, MSDW, in a domain name." Def's Memo. at pp-7-8 n.4. In fact, there are many more reasons to find jurisdiction here than was present in the Smart Ideas case. For one thing, the present Defendant selected the keyword "depression" to intentionally misdirect consumers interested in the antidepressant LEXAPRO® to his "lexipro.com" site. Then he attempted to derive advertising dollars from those who clicked on links for "on-line pharmacies," which constitutes a well recognized threat to public safety.

Defendant also attempts to distinguish Smart Ideas by arguing that he had no knowledge of LEXAPRO® when he registered "lexipro.com." This fact is irrelevant. The issue is how Defendant used the domain name in commerce. And Defendant admitted to learning about

---

[3] That Defendant's present counsel argued in the Smart Ideas case that an attempt to extort a New York plaintiff constitutes personal jurisdiction renders it particularly difficult to understand how the same arguments propounded by Forest are now sanctionable. Under the circumstances, that Defendant did not even cite that to the Court is far more egregious than any of the acts that Forest is accused of committing.

LEXAPRO® soon after he registered "lexipro.com" and knowing that he had a "problem" because of LEXAPRO®. Moreover, that he never used the domain name in connection with a legitimate business and instead parked the domain with various pay-per-click services demonstrates that he wanted to improperly derive advertising dollars from the good will associated with LEXAPRO®.

Finally, Defendant attempts to avoid the impact of the case law by euphemistically characterizing his attempts at extortion as settlement offers that Forest initiated. The written correspondence demonstrates that Forest never initiated any settlement talks, and never even attempted to purchase the domain name, it simply requested that Defendant cease and desist from his unlawful activities. Agovino Decl., ¶ 12. Defendant refused, and demanded a payment of $10,000. Id. at ¶ 13, Ex. J. After Forest wrote to Parked.com and demanded that it de-link the "lexipro.com" site, Defendant unilaterally wrote to Forest and demanded that it pay him $10,000 or he would sell "lexipro.com" to web masters in Pakistan who would use it for pornography. Id. at ¶¶ 16-18. Hardly the stuff of settlement discussions. There were negotiations in the Smart Ideas case, where it was Morgan Stanley who requested that Smart Ideas "part with" the domain name and offered Smart Ideas $10,000 to do so. Here, Forest never offered the Defendant any money. There is far more reason to find personal jurisdiction in the present case than in Smart Ideas.[4]

Defendant cites to only two cases in purported support of its argument that Forest's jurisdictional argument are so baseless as to require sanctions. Neither is applicable or relevant. Defendant's citation to Levine v. Federal Deposit Ins. Corp., 2 F.3d 476, 477 (2d Cir. 1990) is

---

[4] Forest respectfully refers the Court to the numerous other cases cited in Forest's brief to support its assertion that this Court has personal jurisdiction over Defendant. Serbagi Decl, ¶ 20, Ex. M.

inapposite because in that case the Plaintiff's attorney based his jurisdictional argument on his sworn affidavit wherein he specifically accused the Defendant of conspiring with other Defendants to secure possession of collateral and to wrongfully transfer it to Paine Weber, Inc. Id. at 478. Not only was Plaintiff's attorney incorrect about the facts of the conspiracy, but he had no basis whatsoever to allege those facts, which were contradicted by his own deposition and his client's prior deposition. Id. Plaintiff's attorney concocted a factual story he knew to be incorrect. In stark contrast, the basis for Forest's jurisdictional allegations are electronic communications the Defendant sent to Forest, wherein Defendant demanded that Forest pay him $10,000 or he would sell the domain name to web masters in Pakistan who would use it for pornography. Forest did not fabricate any jurisdictional facts. In stark contrast, in Levine the attorney concocted a factual story he knew to be incorrect. If it turns out that the Court disagrees with Forest's good faith interpretation of the cases, that is a far cry from intentionally concocting facts or filing a case in bad faith so as to warrant an award of attorney's fees.[5]

## II.    FOREST HAD A STRONG BASIS TO REQUEST EMERGENCY RELIEF AND THE TRO WAS PROPERLY GRANTED

Despite Defendant's claim in a letter to the Court on October 11, 2007 that it would request "damages for a wrongful injunction under Fed. R. Civ. P. 65[6]," Defendant's brief is completely silent on this issue. Serbagi Decl., ¶ 18. And for good reason. Forest presented

---

[5] Defendant also cites to Dattner v. Conagra Foods, Inc., 458 F.3d 98 (2d Cir. 2006). Def's Memo at 13. In Dattner, the Second Circuit ruled that a defendant that secures a *forum non-conveniens* ruling is not a "prevailing party" under Fed. R. Civ. P. 54(d). In *dicta*, the Dattner court stated the well accepted and self evident proposition that a Court may award attorney's fees under it inherent authority if a Defendant files suit in an inappropriate forum and does so in bad faith. 458 F.3d at 103-04. The Dattner court remanded the case to the district court and did not decide whether attorney's fees were warranted or not. Id.

[6] A party has been "wrongfully enjoined" under Rule 65(c) only "if it ultimately found that the enjoined party had at all times the right to do the enjoined act." Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, 910 F.2d 1049, 1990 U.S. App. LEXIS 13691, *16 (2d Cir. 1990).

overwhelming evidence in support of its request for a temporary restraining order, which Defendant does not even address in his brief. Defendant also consented to a preliminary injunction. Defendant's claims that he was not entitled to seek return of the injunction bond was frivolous.

**A.    The Facts Forest Submitted Fully Supported Relief On All the Causes of Action in the Complaint and Amended Complaint**

Forest strongly believes it would have prevailed on every cause of action it asserted, both in its initial Complaint and Amended Complaint. As early as August 29, 2007, Forest drafted a "pre-trial memorandum of law" in which it provided a detailed recitation of the factual and legal basis for its claims. Serbagi Decl. ¶ 22, Ex. O. If Forest proceeded in this litigation, it would have significantly augmented this memorandum, which it quickly prepared in anticipation of an expedited trial. Id. This is not a case where a plaintiff withdraws an action to avoid the consequences of its failure to conduct a proper pre-filing investigation, as Defendant would have the Court believe. Rather, Forest thoroughly researched all its claims, and respectfully submits that its pre-trial memorandum demonstrates that Forest pursued this litigation in good faith. Id. The only reason Forest decided to withdraw the case (which was fully within its rights) was because it made the internal business decision to litigate before an arbitration panel. Agovino Decl., at ¶¶ 23-24.

The Defendant does not provide any substantive legal basis for its conclusory assertion that Forest's claims were meritless. Importantly, Defendant does not even attempt to contest the validity of Forest's anti-cybersquatting cause of action. Instead, in a single footnote, it provides a citation to some irrelevant trademark cases and asserts that claims "very similar to the plaintiff's have been rejected." Def's Memo, at 10, n.6. If by "similar" the Defendant means

20

"highly distinguishable" the Defendant is correct. In truth, however, there is nothing analogous about the cases Defendant cited.

Defendant's leading case is <u>1-800 Contacts, Inc. v. WhenU.com, Inc.</u>, 414 F.3d 400 (2d Cir. 2005), <u>cert denied</u>, 546 U.S. 1033 (2005). The issue in that case was whether software, known as "SaveNow," which generates "keyword advertisements" constitutes "use" of a trademark in interstate commerce. <u>Id.</u> Once installed on a user's computer, SaveNow monitors Internet activity by tracking the websites visited and any terms used in search engines. <u>Id.</u> at 404. Then, using a proprietary directory of commonly used search phrases, web addresses, and various keyword algorithms, SaveNow determines whether any of the terms, web addresses, or content matches the information in the directory. If the program finds a match, it identifies an associated product or service category. <u>Id.</u> Finally, SaveNow determines whether the user's computer should receive a pop-up advertisement that is selected at random from clients that match the category of the user's activity. <u>Id.</u>

The Second Circuit stated that the only place that the Defendant reproduced the plaintiff's trademark was in the Defendant's directory, which was <u>inaccessible to both the user and the general public</u>. <u>Id.</u> at 409. The Court found that Defendant was not using Plaintiff's trademarks in commerce because (i) "a company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to a individual's private thoughts about a trademark;" (ii) the pop up ads do not display the trademarks at issue; and (iii) the only reason that the pop up ads appeared is because of the web address that the Plaintiff employed. <u>Id.</u> at 409-10.

The present case is highly distinguishable. Here, Defendant used Forest's LEXAPRO® mark in his confusingly similar domain name (which is obviously accessible to the public).

Defendant also prominently displayed the mark "LEXIPRO.COM" on his website. Agovino Decl., ¶ 15, Ex. H. Defendant enlisted the support of the parked services he employed to do his bidding. And by receiving monies from the sponsors listed on his site, the Defendant encouraged, colluded, and participated in the sale of those goods listed on his "lexipro.com" site. He also obviously chose the keyword "depression" to attract consumers interested in LEXAPRO® to the advertisers he profited from.

The other cases that the Defendant has cited are also irrelevant. Indeed, none of them involve the sale of any goods or services in connection with a mark. See Rescuecom Corp. v. Google, Inc., 456 F. Supp.2d 393 (N.D.N.Y. 2006) and Merck & Co. v. Mediplan Health Consulting, Inc., 435 F. Supp. 2d 402, 414-16 (S.D.N.Y. 2006). Similar to the 1-800 Contacts case, both of these cases involve the mere sale and use of keywords not visible to the consuming public.

Defendant has presented no evidence that Forest's claims are "meritless," much less so meritless as to warrant an award of attorney's fees. Were Forest's claims so baseless, Defendant surely would have addressed those claims in great detail.

### B. Defendant's Incredible and Conflicting Representations During the Litigation Further Confirm That Forest's Claims Were Well Grounded

Defendant has made a number of conflicting and factually incredible statements during this litigation that further confirm that Forest brought this litigation in good faith with well grounded claims.

### 1. Defendant Has Made Conflicting Representations As To Why He Coined Lexipro.Com

22

Defendant provided radically different stories as to why he registered "lexipro.com" in the first instance. At the hearing before Judge Swain on August 21, 2007, Defendant said that he bought "lexipro.com" "to be my professional site that was going to show off my properties." Serbagi Decl., ¶ 6, Ex. C, at p. 5, lines 4-7. When represented by counsel, Defendant made a contrary representation. In particular, in Defendant's Declaration dated September 21, 2007 that he submitted in support of his motion to dismiss, stated: "[a]t the time I registered the domain name 'lexipro.com.' I thought that this was a very professional sounding name that might be valuable as a name for a web site associated with **professional legal services**." Nissen Decl., ¶ 7 (emphasis added). Defendant's conflicting statements cannot be reconciled. A web site for professional legal services is not a site to show off "properties."

### 2. Defendant Made Incredible Allegations As To The Nature of His Lexipro.Com Web Site And His Relationship With Parked.Com

Defendant represents to this Court that "lexipro.com" was a passive and entirely truthful web page. Def's Memo, at 1. Even a brief review of Defendant's former "lexipro.com" web site reveals that this statement is misleading to say the least. Nissen Decl., at ¶ 11, Ex. 1. A passive web site is one that merely advertises goods and services, but does not permit a visitor to purchase those good on this site. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 251 (2d Cir. 2007) (holding that a passive web site that does little more than make information available . . . is not grounds for the exercise [of] personal jurisdiction"). On the contrary, Defendant's "lexipro.com" web page was active because it provided links to numerous advertisers that provided goods and services that Defendant directly profited from. Id. (an active web site is one in which "a defendant clearly does business over the Internet"). Defendant clearly "did business" on his "lexipro.com" site because he (i) made advertising dollars each time a consumer clicked on an advertised link and (ii) in effect, offered goods and services by posting links on his

23

site whereby one could directly purchase goods and services. To say that the "lexipro.com" site is "passive" is simply incorrect.

### C. None Of The Causes of Action In The Complaint Required That LEXAPRO® Be Famous When Defendant Registered "Lexipro.com"

While Forest's counsel did not affirmatively argue that LEXAPRO® was famous as of January 2002, he mistakenly agreed with Judge Swain on that point. However, all the evidence indicates that counsel's agreement with Judge Swain was an unintentional mistake and had no material impact on the case.

Current sales of LEXAPRO® are in the neighborhood of seven billion dollars. Forest stands by its representation that LEXAPRO® is currently famous and has been famous for quite some time. Agovino Decl., ¶ 3[7] However, whether or not LEXAPRO® was famous at the time Defendant registered "lexipro.com" on January 25, 2002 is not an element to any cause of action in the Complaint.

For five of the six causes of action in the Complaint, it is <u>entirely irrelevant</u> whether LEXAPRO® was famous when Defendant registered "lexipro.com." Forest asserted causes of action for trademark infringement under 15 U.S.C. § 1114, federal trademark dilution under 15 U.S.C. 1125(c), false designation of origin under 15 U.S.C. § 43(a) and for common law unfair competition. Forest has submitted strong evidence in support of all these claims, but none of these claims either require or consider whether a plaintiff's mark was famous as of the date when a defendant registered its a domain name. With respect to these causes of action, the fame or the

---

[7] Forest decided to withdraw its Dilution claim in the Second Amended Complaint and withdrew its claim that LEXAPRO® is famous only because the discovery associated with defending this claim would have been extraordinary and unnecessarily burdensome to its employees. Forest had numerous other strong causes of action to assert, so it saw no point in incurring the additional work associated with proving fame. To be clear though, Forest had and submitted strong evidence that LEXAPRO® is famous. Agovino Decl., at ¶ 3.

strength of a mark is only relevant as of the date the Plaintiff asserts infringing or diluting "use." Here, when Forest moved for a preliminary injunction, it relied on the Defendant's use as of August 1, 2007. Compl. at ¶16. This was the date when Forest learned that Defendant had enlisted Parked.com and both parties had collaboratively posted on-line pharmacies and other unauthorized uses on the "lexipro.com" website. Agovino Decl., at ¶11.

The only cause of action where the date of fame has any relevance whatsoever is the Anti-Cybersquatting Consumer Protection Act ("ACPA"). None of the papers that Forest submitted argued that its LEXAPRO® mark was famous as of January 2002. The ACPA explicitly states that a mark can be distinctive or famous at the time a defendant registers the domain name at issue. 15 U.S.C. § 1125(d)(1)(A). The Second Circuit has reiterated the clear statutory language and explicitly recognized that a mark need not be famous to receive protection under the ACPA. Sporty's Farm L.L.C. v. Sportsman's Market, Inc., 202 F.3d 489, 497 (2d Cir. 2000) (holding that the ACPA provides protection to "distinctive marks regardless of fame"). In the Sporty's Farm case, the Second Circuit held that it need not decide whether the district court was correct in finding the mark at issue famous because it was sufficient that the mark was distinctive." Id.; see also Prime Publishers, Inc. v. American-Republican, Inc., 160 F. Supp. 2d 266, 277-280 (D. Conn. 2001) (holding that the defendant violated the ACPA where Plaintiff's mark was distinctive but not famous); Omega S.A. v. Omega Engineering, Inc., 228 F. Supp. 2d 112, 125-26 (D. Conn. 2002) (granting plaintiff summary judgment on its ACPA claim on everything but the issue of bad faith, holding that Plaintiff was entitled to ACPA protection for its distinctive, not famous).

For the reasons set forth in Forest's pre-trial memorandum of law, Forest's mark was highly distinctive when it registered "lexipro.com." Thus, whether or not Forest's mark was

famous as of January 2002 is simply irrelevant. This is precisely why the Defendant has not argued that the injunction was improperly issued.

### III.     THE DEFENDANT'S ADDITIONAL MISCELLANEOUS ACCUSATIONS ARE EITHER UNTRUE OR DO NOT APPROACH THE LEVEL OF BAD FAITH LITIGATION CONDUCT

#### A.     The Staff of Defendant's Outside Counsel Inadvertently Sent The August 30, 2007 Letter By First Class Mail

The staff of Forest's outside counsel did send the August 30, 2007 letter by First Class Mail, rather than facsimile. Serbagi Decl., at ¶ 11, Ex. F. That mistake was entirely immaterial and had no impact on the litigation, which is why the Defendant never raised it to the Court before.

Forest's August 30, 2007 letter enclosed its pre-trial memorandum and additional affidavits. Id. It contained nothing substantive and merely enclosed courtesy copies of documents for the Court. Id. Forest served every document in that letter on the Defendant either on August 29 or earlier, both by electronic communication and through the Court's ECF system. Id. Defendant does not claim to have been prejudiced in any manner and there would be no basis for this claim. The Defendant claims that the Court was misled into acting in a certain manner, but despite that conclusory allegation Defendant does not explain how that was the case. The Defendant claims not to have known about the August 22, 2007 Memo Endorsed letter, but Forest sent that letter to Defendant and it was formally served on counsel through the ECF system. Id. at ¶ 9, Ex. E. Defendant's counsel regrets this secretarial mistake, for which he assumes responsibility, but to say that they constitute vexatious litigation conduct goes way too far.[8]

---

[8] Defendant's counsel has engaged in similar conduct, but Forest did not even consider filing a sanctions motion as a result. On October 11, 2007, Defendant wrote to the Court and made a

**B.    Pursuant to Judge Swain's Order, Forest Served Defendant With the Summons and Complaint On August 20, 2007, Not September 11, 2007 as Defendant Claims**

The Defendant claims that Forest did not serve him with the Summons and Complaint until September 11, 2007. Def's Memo. at 3, n.2. This is simply untrue. On August 20, 2007, Judge Swain Ordered that Forest serve on Defendant all the documents it filed in connection with its request for a preliminary injunction. Serbagi Decl., at ¶ 4. On August 20, 2007, Forest served the Summons and Complaint on Defendant via electronic communication, as well as two declarations filed in connection therewith. Id. at ¶ 5. So that there could be no future dispute as to whether Judge Swain intended her August 20, 2007 Order to include formal service of the summons and complaint, Forest directed that a process server also serve those documents on the Defendant. Id.

**C.    There Was No *Ex Parte* Discussion Between Forest's Counsel and Judge Hellerstein**

Defendant incorrectly alleges that Forest initiated a series of *ex parte* discussions with the Court. Def's Memo. at 4. Untrue. On September 4, 2007, Forest's counsel called the Court's chambers to inquire whether the hearing was on for September 11, 2007, what procedures it would like the parties to follow, and whether we should get Defendant's counsel on the line to discuss the subject. Serbagi Decl., at ¶ 12. The Court's law clerk responded that the parties should submit a joint letter to the Court on the issue. Id. Forest immediately informed Defendant's counsel of this brief dialogue with the Court's law clerk. Id. It was the Court's law clerk that called Forest's counsel later in that afternoon and stated that the parties should appear

---

number of very serious yet spurious accusations against Forest and its counsel. Serbagi Decl. ¶ 18, Ex. K. Noticeable absent from this letter is any indication of how it sent this letter to Forest's counsel. Id. Defendant sent this letter to the Court via overnight mail and to Forest's counsel via First Class Mail. Id. Forest did not receive this letter until October 15, 2007. Id.

27

for a conference on September 7, 2007. Id. Forest's counsel did not engage in any substantive discussions about the case and requested whether it would be necessary to get Defendant's counsel on the line, there was nothing improper about this communication.[9]

## CONCLUSION

The Court should deny Defendant's motion for attorney's fees because Forest did not engage in any bad faith or vexatious litigation. This Court had personal jurisdiction over Defendant based on his attempts to extort Forest. In addition, Forest's claims were thoroughly researched and well founded.

Dated: New York, New York
      November 21, 2007

                               Respectfully Submitted,

                               By: _Christopher Serbagi_
                               CHRISTOPHER SERBAGI, ESQ.
                               Law Offices of Christopher Serbagi
                               488 Madison Avenue, Suite 1120
                               New York, New York 10022
                               (212) 593-2112
                               Attorney for the Plaintiff

---

[9] Forest notes that the only *ex parte* discussion that resulted in any specific action by the Court was Defendant's specific oral request that oral argument on this matter be heard before Judger Swain. Serbagi Decl., at ¶ 23, Exs. P-Q. Defendant never notified Forest that it made this request of Judge Dolinger, either before or after it made the request. Id. Forest first learned of the matter when Judge Dolinger issued an Order on October 25, 2006 granting Defendant's request. Id.