```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
FOREST LABORATORIES, INC.,                    :
                                              :
                                              :
                              Plaintiff,      : Index. No. 07 CV 7399 (AKH)
              - against -                     :
                                              :
                                              :
                                              :
                                              :
                                              :
LEIF NISSEN,                                  :
                                              :
                                              :
                              Defendant.      :
-----------------------------------------------------------------x
```

## DECLARATION OF ERIC M. AGOVINO IN OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES

I, ERIC M. AGOVINO, declare as follows:

1. I am an attorney admitted to practice before the Courts in the State of New York and the Southern District of New York. I submit this declaration in opposition to defendant's motion for attorney's fees.

2. I am in-house intellectual property counsel for Forest Laboratories, Inc. ("Forest"). My responsibilities include consultation concerning all aspects of Forest's vast intellectual property portfolio.

3. Forest is a New York based pharmaceutical company that manufactures, markets, and sells LEXAPRO®, a blockbuster drug that is indicated for the treatment of major depressive disorder and general anxiety disorder. LEXAPRO® has been prescribed to more than 15 million adults in the United States. Sales of LEXAPRO® are approximately $2 billion a year. Attached as Exhibit A are copies of electronic printouts of Forest 10K filings, regarding sales of LEXAPRO®, for the years 2003 to 2007.

4. Attached as Exhibit B is a copy of Forest's intent-to-use trademark application for LEXAPRO® filed on December 22, 2000.

5. Attached as Exhibit C is a copy of an electronic printout of the registration information for the domain name "lexapro.com."

6. Attached as Exhibit D is a copy of an electronic printout of the press release issued by Forest on December 13, 2001 disclosing Forest's intent to market escitalopram under the trade name LEXAPRO®.

7. Attached as Exhibit E is a copy of an electronic printout of the press release issued by Forest on January 24, 2002 announcing that it had received an "approvable" letter from the U.S. Food and Drug Administration for LEXAPRO®.

8. Attached as Exhibit F is a copy of an on-line printout of the registration information for "lexipro.com."

9. Attached as Exhibit G is a copy of the trademark registration certificate for LEXAPRO®.

10. From market research, Forest learned that "lexipro" is a top internet keyword for LEXAPRO®. Forest purchased a "sponsored link" from Google so that whenever an individual searches for "lexipro," a link to Forest's LEXAPRO.COM is prominently displayed at the top of the page. As of June 2007, Forest's sponsored link was served 15,008 times (i.e., someone typed "lexipro" into Google 15,008 times). After these searches, Forest's sponsored LEXAPRO® link was clicked 3,640 times. This corresponds to a 24.25% "click through rate," indicating that a large percentage of individuals who searched for "lexipro" were trying to reach the LEXAPRO.COM website. Attached as Exhibit H is a copy of a spreadsheet entitled "LEXAPRO Statistics

June 2007," which contains data prepared by Forest's e-marketing department.

11.  In early August 2007, it came to my attention through Forest's marketing department that someone had registered and was making improper use of the domain name "lexipro.com." In particular, "lexipro.com" was linked to, among other things, a number of on-line pharmacies that are making unauthorized sales of drugs that purport to be LEXAPRO®, both in the United States and in other countries. These online and rogue pharmacies are engaging in willful patent infringement, trademark infringement, and other violations of Forest's valuable intellectual property. Even worse, the sale of unregulated drugs by rogue online pharmacies presents a well established public safety issue.

12.  Forest's further investigation revealed that "lexipro.com" is registered to an individual by the name of Leif Nissen, the Defendant in the present action. On August 1, 2007, Forest wrote to Defendant and requested that he cease and desist from his unlawful activities in connection with his use of the domain name "lexipro.com." Attached as Exhibit I is a copy of Forest's August 1, 2007 letter to Defendant.

13.  On August 1, 2007, Defendant wrote back to me and incorrectly stated that he had the "lexipro.com" domain name before the Forest product LEXAPRO® existed. Defendant also admitted to placing "lexipro.com" on a pay-per-click site called "Parked.Com." Attached as Exhibit J is a copy of Mr. Nissen's August 1, 2007 electronic communication to me.

14.  By leasing "lexipro.com" to Parked.Com, whenever someone interested in Forest's LEXAPRO® typed "www.lexipro.com" as a web address, the user was directed to a web site that contained links to several rogue on-line pharmacies and other sites.

15. Attached as Exhibit K is a copy of the Affidavit of Sigmund Solares, dated August 27, 2007.

16. On or about August 14, 2007, Forest's outside trademark counsel sent a cease and desist letter to the pay-per-click site "Parked.Com" and demanded that it cease providing services in connection with "lexipro.com." Attached as Exhibit L is a copy of Forest's August 14, 2007 letter to Parked.Com.

17. That same day, Parked.Com terminated its relationship with Defendant. Attached as Exhibit M is a copy of Parked.Com's electronic communication dated August 14, 2007 to Forest's outside counsel.

18. On August 14, 2007, Defendant wrote to me again via electronic communication, a copy of which is attached as Exhibit N, and stated:

> Well, you've gotten parked.com<http://parked.com> to stop running ads on the site. Being that you're being so reasonable, maybe I'll sell it to a webmaster in Pakistan who will put a porn site on it. Let's start being reasonable here before I do something stupid. There are 10+ domain parking companies if that's really the tactic you want to take.

19. On or about August 14, 2007, Defendant made true on his threat and displayed the "lexipro.com" domain name on another pay-per-click site called SEDO, a copy of which is attached as Exhibit O. This new site also linked users to rogue on-line pharmacies that offer to sell unauthorized versions of LEXAPRO.

20. On August 28, 2007, I typed "lexipro" into the Google search engine. Attached as Exhibit P are electronic printouts that show a selected portion of search results.

21. Attached as Exhibit Q is an electronic printout of the website at

http://drepression.emedtv.com/lexapro/lexipro.html, the first link presented by Google as a result of my search for "lexipro."

22. Forest ultimately decided not to argue that LEXAPRO® is "famous" only because (i) not a single cause of action in the Complaint or Amended Complaint required that LEXAPRO® be famous as of the date when the Defendant registered "lexipro.com," (ii) Forest wanted to streamline the litigation, and (iii) it had made the internal business decision not to burden its employees with producing all the evidence that proving fame would entail.

23. As of early September 2007, and based on internal business considerations, Forest began to consider whether it could more quickly dispose of this matter without interfering with Forest employees by bringing a proceeding before the World Intellectual Property Organization ("WIPO").

24. Attached as Exhibit R is a copy of an electronic printout of the "Rules for Uniform Domain Name Dispute Resolution Policy."

25. Under penalty of perjury, I swear that the foregoing is true and correct.

Dated: November 21, 2007
New York, New York

_____
ERIC M. AGOVINO