```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
FOREST LABORATORIES, INC.,                       :
                                                 :
                    Plaintiff,                   : Index No. 07 CV 7399(AKH)(MHD)
                                                 :
         - against -                             :
                                                 :
                                                 :
LEIF NISSEN,                                     :
                                                 :
                                                 :
                    Defendant.                   :
------------------------------------------------------------x
```

### DECLARATION OF CHRISTOPHER SERBAGI IN OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES

1. My name is Christopher Serbagi. I represent the Plaintiff Forest Laboratories, Inc. ("Forest") in the above-captioned matter. I have personal knowledge of the matters stated in this declaration.

2. I submit this declaration to respond to Defendant's repeated representation that Forest and I acted in bad faith and lied to the Court. As set forth below, neither Forest nor I have ever intentionally misrepresent any fact to any court. I have never been sanctioned by any Court and either have any of the upstanding and honest attorney's I work with at Forest.

3. I am an adjunct professor of law at Cardozo Law School, where I repeatedly teach my students that honesty and integrity before the Court are the most important aspects of lawyering. I sincerely believe that to be the case. While I made some immaterial mistakes in this highly expedited litigation, I would never jeopardize everything I have worked for by engaging in the behavior Defendant's attorney has so harshly and misleadingly described. Putting aside that I would never risk my career and reputation by lying to a federal judge, I sincerely hope the Court

will appreciate that there was no conceivable reason for Forest to intentionally misrepresent any fact because its case against the Defendant was otherwise overwhelming. I respectfully submit that if the Court were to examine evidence of bad faith, the overwhelming evidence demonstrates that is was the Defendant who acted in bad faith both prior to and throughout this litigation.

**Forest Served Defendant With The Summons and Complaint on August 20, 2007**

4. On August 20, 2007, Forest moved for a temporary restraining order and preliminary injunction in order to prevent the Defendant from making good on his threat to sell "lexipro.com" to web masters in Pakistan who would use it for pornographic purposes. I did not initially notify Defendant of Forest's intention to file a TRO because Forest was concerned that Defendant would sell or otherwise transfer LEXAPRO® (as he threatened to do) before a Judge had an opportunity to enjoin its sale. That same day, Judge Swain's law clerk told me that Judge Swain Ordered (i) the parties to appear on August 21, 2007 for a hearing on Forest's motion; (ii) Forest to serve Defendant by electronic communication the papers Forest had filed in Court on Defendant; and (iii) Forest file a Rule 65(b) Attorney Certification attesting to its efforts to serve Defendant. Attached hereto as Exhibit A is a true and correct copy of the Rule 65(b) Attorney Certification I filed with the Court on August 20, 2007.

5. Pursuant to Judge Swain's Order, on the evening of August 20, 2007, I served on Mr. Nissen by electronic communication the following documents: (i) Summons and Complaint; (ii) Declaration of Eric M. Agovino; (iii) proposed Order to Show Cause; and (iv) Declaration of Christopher Serbagi. Attached hereto as Exhibit B is a true and correct copy of a printout from the send file of my computer that reflects that I served Defendant with the foregoing documents, including the Summons and Complaint, on August 20, 2007. So that there could be no future dispute as to whether Judge Swain intended her August 20, 2007 Order to include formal service

of the summons and complaint, I directed that a process server also serve those documents on the Defendant.

**Forest Did Not Misrepresent Any Material Fact At the August 21, 2007 Hearing And The Temporary Injunction Was Properly Granted**

6. On August 21, 2007, Judge Loretta Taylor Swain heard Forest's application for a temporary restraining order. Attached hereto as Exhibit C is a true and correct copy of the transcript of that hearing.

7. The first argument that I presented to the Court was the basis for Forest's position that there was personal jurisdiction over Defendant in New York, namely that Defendant had requested that Forest purchase "lexipro.com" for $10,000 or he would sell it to web masters in Pakistan who would use it for pornographic purposes." I also presented the following affirmative arguments as the basis for Forest's position that Judge Swain should grand its motion: (i) Defendant was leasing "lexipro.com" to pay-per-click sites who are permitting on-line pharmacies to advertise on the site; (ii) Forest had prior rights to LEXAPRO® by virtue of its federal intent-to-use application; and (iii) there was substantial evidence of Defendant's bad faith, including unexplainable similarities between the respective marks and Defendant's failure to use the mark in connection with any legitimate business.

8. The Court asked me two questions: First, whether it is sufficient under the Anti-Cybersquatting Act if a defendant uses a mark in bad faith even if there is no proof of bad faith upon the defendant's registration of the domain name. I stated that it is sufficient if a defendant uses a mark in bad faith. The Court also asked me whether I represented that LEXAPRO® was famous as of January 2002 when Mr. Nissen registered "lexipro.com." I mistakenly stated "all that is true." Current sales of LEXAPRO® are in the neighborhood of seven billion dollars.

Forest stands by its representation that LEXAPRO® is currently famous and has been famous for quite some time. Second Agovino Decl., dated August 8, 2007, ¶¶ 6-11[1] However, whether or not LEXAPRO® was famous at the time Defendant registered "lexipro.com" on January 25, 2002 is not a necessary element to any cause of action in the Complaint. I do apologize for not more fully considering the Court's question and agreeing with the Court on this issue, but it was an honest mistake that I made without proper reflection. I would never lie to any Court, but if one were to lie they certainly would not intentionally state that a mark was famous before it was on the market, as is the case here. For the reasons set forth below, not only was the misstatement a mistake, it was not material, and did not prejudice the Defendant in any manner whatsoever.

(i) On August 20, 2007, I provided a number of documents to the Court in support of Forest's motion for a temporary restraining order including a complaint, a declaration by myself and a declaration by Eric M. Agovino. Attached as Exhibit G to Mr. Agovino's November 21, 2007 declaration is a copy of Forest's federal registration of LEXAPRO®, which clearly states that Forest first began using the mark in September 5, 2002. Thus, from the inception of this litigation, Forest disclosed the date when Forest first used LEXAPRO® in commerce.

(ii) It was not an argument that I made in any of Forest's supporting papers, either for the temporary restraining order or in its pre-trial memorandum. Not a single cause of action in the Complaint or Amended Complaint requires that LEXAPRO® have been

---

[1] Forest decided to withdraw its Dilution claim in the Second Amended Complaint and withdrew its claim that LEXAPRO® is famous only because the discovery associated with defending this claim would have been extraordinary and unnecessarily burdensome to its employees. Forest had numerous other strong causes of action to assert, so it saw no point in incurring the additional work associated with proving fame. To be clear though, Forest had and submitted strong evidence that LEXAPRO® is famous. Agovino Decl., at ¶¶ 3; Second Agovino Decl., dated August 8, 2007, ¶¶ 6-11.

famous as of the date when Defendant registered "lexipro.com." The only cause of action where the date when Defendant registered "lexipro.com" has any <u>potential</u> relevance is the Anti-Cybersquatting Consumer Protection Act ("ACPA"). However, the ACPA explicitly states that a mark can be <u>distinctive</u> or famous at the time a defendant registers the domain name at issue. 15 U.S.C. § 1125(d)(1)(A)). For all the reasons set forth in Forest's pre-trial memorandum of law, Forest's mark was highly distinctive when it registered "lexipro.com." This is precisely why the Defendant has not argued that the injunction was improperly issued.

(iii) Judge Swain appeared to rely heavily on the likelihood of consumer confusion between "lexipro" and LEXAPRO® and the significant public safety issue associated with consumers buying drugs from the illegal on-line pharmacies posted on Defendant's site. Indeed, these were Forest's primary reasons for brining this action.

The Defendant was undeterred by Judge Swain's well reasoned admonitions. On the eve of Judge Swain's Order, Defendant wrote to me and requested that Forest provide him a "fair payout." Attached hereto as Exhibit D is a true and correct copy of Defendant's August 21, 2007 letter to me.

**I Believed That Judge Swain Had Granted Forest's Request To Combine The Preliminary Injunction Hearing With A Trial On the Merits**

9. On August 22, 2007, I wrote to Judge Hellerstein and requested that the Court (i) provide Forest a five day extension of time to submit its memorandum of law in support of its request for a preliminary injunction and (ii) "an Order that the preliminary injunction hearing be combined with a trial on the merits pursuant to F.R.C.P. 65(a)(2)." By Memo Endorsed Order dated the same day, Judge Swain Ordered that "[t]he requests are granted. The preliminary injunction hearing is adjourned to September 11, 2007, at 11:45 A.M." Attached hereto as Exhibit E is a true and correct copy of Judge Swain's Memo Endorsed Order.

5

10. On August 27, 2007, I spoke with Defendant's counsel and informed him that my interpretation of Judge Swain's Order is that she granted Forest's specific request that the preliminary injunction hearing be combined with a trial on the merits. I did <u>not</u> request permission from Defendant's counsel for a Rule 65(a)(2) Order, as Defendant represents, because I believed that Judge Swain had already granted that Order. Instead, I asked counsel that Defendant consent to having the issue decided by summary judgment papers rather than burdening the Court with a hearing. When Defendant's counsel stated that he was not inclined to agree, Forest reconsidered and decided to proceed in the manner already Ordered by the Court.

**My Secretary Accidentally Sent the August 30, 2007 Letter By First Class Mail Rather Than Facsimile**

11. On August 30, 2007, I faxed a letter to Judge Hellerstein, which merely enclosed courtesy copies of documents that I had already electronically filed the prior day and that were therefore immediately available to Defendant's attorney. Defendant received this letter by First Class Mail, which was the result of an innocent secretarial mistake. Attached hereto as Exhibit F is a true and correct copy of my August 30, 2007 letter. Nether I nor any member of my staff had an intent to send Defendant's copy of the letter in a less expeditious manner than to the Court.

12. Defendant never challenged Judge Swain's issuance of the temporary restraining order, Forest's written representations it submitted in support of that Order, or any of Forest's oral representations made at the August 21, 2007 hearing. In fact, during a phone conversation between myself and Defendant's counsel on September 4, 2007, Defendant's counsel consented to all the preliminary injunctive relief Forest requested. I stated to Defendant's counsel that it believed Judge Swain's written statement "the requests are granted" included Forest's request that the preliminary injunction hearing be combined with a trial on the merits." When

Defendant's counsel disagreed. I called Judge Hellerstein's law clerk to ascertain whether the case was on for a trial on the merits or just a preliminary injunction. Judge Hellerstein's law clerk stated to me that the parties submit a joint letter on how they wanted to proceed on September 11, 2007. I immediately called Defendant's counsel by telephone to provide that information. That same afternoon, Judge Hellerstein's law clerk called me and Ordered that the parties appear for a pretrial conference on September 7, 2007. Again, I called Defendant's counsel and provided that information by telephone.

13. On September 7, 2007, the parties appeared (both represented by counsel) before Judge Hellerstein. Consistent with Forest's belief that Judge Swain had Ordered that the preliminary injunction hearing by combined with a trial on the merits, Forest requested that Judge Hellerstein hold a trial on September 11, 2007. Defendant's counsel requested that it be able to conduct some discovery. Judge Hellerstein consented to Defendant's request and referred the case to Magistrate Judge Dolinger to conduct pre-trial discovery.

**Defendant's Mischaracterize Forest's Representations At The October 4, 2007 Hearing Before Judge Dolinger**

14. Attached hereto as Exhibit G is a true and correct copy of the transcript from the October 4, 2007 hearing before Magistrate Judge Michael H. Dolinger. Defendant makes a number of highly misleading characterizations of what transpired at the discovery conference before Judge Dolinger on October 4, 2007. First, the Defendant argues that Forest "admitted that it had no evidence that any challenged conduct of Mr. Nissen's had caused any actual confusion of anyone, anywhere." Def's Memo, at 6. What I stated at the conference is that Forest had produced everything that it had on actual confusion. In particular, I stated to the Court that Forest had internally typed in the name "lexipro" as a search term in Google and observed many pages of references demonstrating that consumers were actually confused between "lexipro.com"

and LEXAPRO®. A review of the web pages Forest previously produced in connection with the Declaration of Eric Agovino, dated August 28, 2007 clearly demonstrates that consumers did confuse the respective marks and I testified that Forest was investigating those references but had no additional documents to produce at that time. Defendant's counsel acknowledged that he had received those documents.

**Forest Decided To Withdraw The Action Only Because It Came To Believe That Its Interests Would Be Better Served By Pursuing Its Claims Before a WIPO Panel**

15. As of early September, and based on internal business considerations, Forest began to consider whether it could more quickly dispose of this matter by bringing a proceeding before the World Intellectual Property Organization ("WIPO"). On October 2, 2007, Forest offered to withdraw its Amended Complaint if Defendant agreed to transfer "lexipro.com" to Forest and not register any confusingly similar names in the future. Attached hereto as Exhibit H is a true and correct copy of my October 2, 2007 letter to Defendant's counsel.

16. By letter dated October 3, 2007, Defendant still refused to transfer "lexipro.com" to Forest and insisted on proceeding with the litigation. Attached hereto as Exhibit I is a true and correct copy of Mr. Dabney's letter to me.

17. Consistent with its decision to proceed before WIPO, on October 10, 2007, Forest filed a Fed. R. Civ. P. 41(a)(1) Notice of Dismissal and filed a Complaint with WIPO that mirrors the allegations that Forest asserted in this lawsuit. Forest's decision was entirely legitimate and Defendant has the right to seek judicial scrutiny of any adverse decision. Attached hereto as Exhibit J is a true and correct copy of Forest's October 10, 2007 Notice of Dismissal.

**Defendant Knows That The Injunction Was Properly Granted Which Is Why It Withdrew Its Request To Seek Damages For A Wrongful Injunction**

18.  On October 17, 2007, Defendant's counsel sent a letter to Judge Hellerstein in which he stated that it would request damages for a wrongful injunction under Fed. R. Civ. P. 65(c) and attorney's fees for bad faith litigation. Attached hereto as Exhibit K is a true and correct copy of Mr. Dabney's letter. Defendant's counsel sent the letter to me by First Class Mail and to the Court via facsimile. I did not receive this letter until October 15, 2007. Despite Defendant's representation to Judge Hellerstein that it would seek damages for a purported wrongful injunction, Defendant did not make that request to this Court. Indeed, he could not have made the request because the injunction was clearly warranted, he consented to the preliminary injunction, and there was no conceivable damage to Defendant resulting from the injunction.

19. Attached hereto as Exhibit L is a true and correct copy of Forest's memorandum of law in opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. Forest would have supplemented and finalized this memorandum had it decided to proceed with the instant litigation.

20. Attached hereto as Exhibit M is a true and correct copy of a document entitled "Memorandum in Opposition to Defendant's Motion to Dismiss for Alleged Lack of Personal Jurisdiction," dated October 19, 1999, submitted by James W. Dabney in the case entitled Morgan Stanley Dean Witter & Co. v. Smart Ideas, 99 Civ. 8921 (S.D.N.Y. 1999) (AKH).

21. Attached hereto as Exhibit N is a true and correct copy of a transcript of a hearing in the case Morgan Stanley Dean Witter & Co. v. Smart Ideas, 99 Civ. 8921 (S.D.N.Y. 1999) (AKH), dated December 15, 1999, Hon. Alvin K. Hellerstein presiding.

22. Attached hereto as Exhibit O is a true and correct copy of a document Pre-Trial Memorandum of Law, dated August 29, 2007. I drafted this memorandum in a matter of days in

anticipation of an expedited trial, without the benefit of any discovery. If the case proceeded to trial, I would have significantly augmented the arguments in this brief and cited additional case law.

23. On October 25, 2007, Defendant's counsel informed me that he had a conversation with Judge Dolinger about the briefing schedule for Defendant's motion for attorney's fees. He did not mention to me either in writing or on the phone that he asked Judge Dolinger whether Judge Swain could hear oral argument on the matter. Attached hereto as Exhibit P is a true and correct copy of Mr. Dabney's October 25, 2007 electronic communication to me. The first I heard of the matter is when Judge Dolinger issued an Order on October 25, 2007 granting Defendant's request, a true and correct copy of which is attached hereto as Exhibit Q.

I, Christopher Serbagi, hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: November 21, 2007
New York, New York

_____
CHRISTOPHER SERBAGI