# EXHIBIT C

```
                                                              1
          78L3FORC                       Conference
     1    UNITED STATES DISTRICT COURT
     1    SOUTHERN DISTRICT OF NEW YORK
     2    ------------------------------x
     2
     3    FOREST LABORATORIES,
     3
     4             Plaintiff,
     4
     5        v.                                 07 CV 7399 (AKH)
     5
     6    LEIF NISSEN,
     6
     7             Defendant.
     7
     8    ------------------------------x
     8                                           New York, N.Y.
     9                                           August 21, 2007
     9                                           12:30 p.m.
    10
    10    Before:
    11
    11                  HON. LAURA TAYLOR SWAIN,
    12
    12                                           District Judge
    13
    13                       APPEARANCES
    14
    14    LAW OFFICES OF CHRISTOPHER SERBAGI
    15         Attorneys for Plaintiff
    15    BY:  CHRISTOPHER SERBAGI
    16             -and-
    16    ERIC M. AGOVINO, ESQ.
    17
    18    LEIF NISSEN, via telephone
    18         Pro Se Defendant
    19
    19
    20
    21
    22
    23
    24
    25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

```
        78L3FORC                Conference
 1          (In open court)
 2          THE COURT:  Good afternoon.  I am hearing the
 3   application of Forest Laboratories for an order to show cause
 4   with the temporary restraining order as against defendant Leif
 5   Nissen.  I understand that two counsel are here in the
 6   courtroom, and Mr. Nissen is on the phone.
 7          Would counsel in the courtroom please state their
 8   appearances and introduce themselves.
 9          MR. SERBAGI:  Good morning.  Good afternoon.  My name
10   is Christopher Serbagi.  I am outside litigation and trademark
11   counsel for Forest Laboratories.  With me is my colleague and
12   in-house counsel at Forest Laboratories, Eric Agovino.
13          THE COURT:  Good afternoon, Mr. Serbagi and
14   Mr. Agovino.  On the telephone we have?
15          MR. NISSEN:  Leif Nissen.
16          THE COURT:  Good afternoon, Mr. Nissen.
17          MR. NISSEN:  Good afternoon.
18          THE COURT:  I understand that the defendants have at
19   my direction provided you, Mr. Nissen, with copies of their
20   application; is that correct?
21          MR. NISSEN:  Yes.
22          THE COURT:  And did you receive copies of the
23   supplemental certification and declaration?
24          MR. NISSEN:  Yes.
25          THE COURT:  Okay.  Good.  So, have you all been able
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

```
        78L3FORC                Conference
 1   to work out anything consensually at this point?  I'll ask that
 2   question of Mr. Serbagi first.
 3          MR. SERBAGI:  We have not had discussions subsequent
 4   to the letters where Mr. Nissen asked us to purchase the domain
 5   name from him.  So since the time we've filed the application,
 6   we have had no further communications with Mr. Nissen.  The
 7   correspondence we have had with Mr. Nissen, he's requested us
 8   to purchase the domain name from him for $10,000 or he would
 9   sell it to Web masters in Pakistan who would use it for
```

```
            10      pornographic purposes and --
            11              THE COURT:  Do you all want me to step out of the
room
            12      for a minute for you to discuss on this telephone line whether
            13      Mr. Nissen would consent to some variant of the relief that's
            14      being sought here pending a hearing?  The case has now
            15      officially been reassigned to Judge Hellerstein of this court.
            16      He won't be available for a hearing with you though until the
            17      5th of September at 10 o'clock.  So whatever we do today, is
            18      going to be in anticipation of further proceedings before
Judge
            19      Hellerstein on September 5 at 10.  So would you like an
            20      opportunity to talk first rather than to argue it and have me
            21      decide it?
            22              MR. SERBAGI:  I mean, our goal today is simply to
            23      obtain a temporary injunction to prevent Mr. Nissen from
            24      selling the name and to prevent his registrar from selling it.
            25      So --
                            SOUTHERN DISTRICT REPORTERS, P.C.
                                    (212) 805-0300


4
            78L3FORC                  Conference
             1              THE COURT:  You want it taken down and delinked.
             2              MR. SERBAGI:  We want to deactivate it temporarily so
             3      we can present all the evidence to the court and have a full
             4      hearing on the issue.
             5              Right now, all that he is uses the domain name for is
             6      leasing it to these pay-per-click sites who are tying it on to
             7      online pharmacies and all kind of improper uses that are
             8      confusing consumers in the marketplace and actually causing a
             9      concern for public safety, because these online pharmacies are
            10      selling unauthorized Lexapro product.  So this is the basis
for
            11      our request for emergency relief.
            12              THE COURT:  So we're arguing the application.
            13      Mr. Nissen, would you care to respond?
            14              MR. NISSEN:  Well, I want to point out first that I
            15      was originally served with a cease and desist for a name I
            16      purchased legally in 2002.  As far as I was concerned, I think
            17      Lexapro is not a drug back then.  I did not know of it.  I
            18      really -- I don't think anybody knew of it.  I am not a known
            19      cybersquatter.
            20              THE COURT:  Mr. Nissen, I have to ask you to slow
down
            21      a bit.  I have a court reporter here who needs to be able to
```

```
22   write everything down and I need to hear everything clearly.
23           MR. NISSEN:  Sorry.  Should I start over or just start
24   from where I left?
25           THE COURT:  Start over.
             SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```

5

```
     78L3FORC                Conference
1            MR. NISSEN:  Like I said, I bought the domain in
2    January 2002, January 22 or 25, I believe it was.  As far as I
3    know, there was no promotion of Lexapro, I did not know Lexapro
4    existed.  I bought it -- I'm sorry.  I'll slow down.  I bought
5    it to be my professional site that was going to show off my Web
6    properties.  I've been a Web master for a very long time.  I do
7    not cybersquat domains, I have never cybersquatted domains.  I
8    think I picked a very nice domain name out, and now I'm being
9    served with a cease and desist.
10           I will point out that as mentioned in the injunction,
11   I have never actually developed a domain name.  I actually, I
12   didn't find out until a few months after buying it that it was
13   probably going to be a problem with the fact that there was a
14   drug named for it or with a different spelling for the domain.
15   So I just held onto it for two years.  I did nothing with it.
16   I wanted to see how Lexapro with a different spelling was going
17   to be used.  I put up some ad code so people could make money
18   with it.  It's not up to me what that advertising does.
19           When I got the cease and desist, that was without any
20   communication from Forest Laboratories.  They served also on
21   the company that was serving the advertisements.  And there
22   really have been no communication.  I picked out the domain and
23   I wanted to develop this domain, and was never given the chance
24   because they obviously had a different spelling and it was
25   going to be a problem.
             SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```

6

```
     78L3FORC                Conference
```

```
 1          And then the last thing is I only threatened to sell
 2     it to Pakistan or wherever else because, as far as I'm
 3     concerned, this company has been unreasonable with me and has
 4     not even opened up any lines of communication to discuss the
 5     problem that we all have here.
 6          THE COURT:  Mr. Serbagi, do you wish to respond.
 7          MR. SERBAGI:  Yes, your Honor.  In December of 2000 --
 8     December of 2000, Forest Laboratories filed an ITU application
 9     for Lexapro.  In January of 2001 we filed for the domain name
10     Lexapro.com.  Throughout 2001 Lexapro was heavily touted in the
11     press as being a drug with new efficacy and safety that had not
12     been present in drugs prior to that.  It was heavily written
13     about.  If you do an Internet search for Lexapro, you'll see
14     all those articles in 2000 and 20001.  We filed an NDA, new
15     drug application, in 2001 for Lexapro.  Again, heavily touted
16     in the press.
17          It was not until January 25 of 2002, after we had
18     filed our ITU application, after we filed our NDA, after
19     Lexapro had been heavily touted in the press, that Mr. Nissen,
20     claiming somehow to have come up with this very similar
21     spelling, as close as you can get to our drug as possible
22     without being Lexapro, filed for a domain name registration for
23     Lexipro.com with an I.  If you look if you plug Lexipro into
24     the Internet and Google, there's actual confusion in the
25     marketplace over the name.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

7
```
       78L3FORC                 Conference
 1          So Forest had prior use to it based on its ITU
 2     application.  There's evidence of bad faith because it was
 3     heavily covered in the press, and Mr. Nissen claims to have
 4     just somehow independently come up with this name that mirrored
 5     Forest's drug around the same time shortly after we filed the
 6     IDA.
 7          Putting all that aside, our prior use to it, there's
 8     substantial evidence of bad faith.  If you look at what he's
 9     done with the mark, somebody who comes up with a domain name
10     tries to create a business with it.  He didn't do that.  What
11     he did try to do, he leased it, as I said in my supplemental
```

12  declaration. If you go on the way back machine which provides
13  a snapshot of Web sites that have been published in the past,
14  the Court may be familiar with that. But what that shows from
15  Mr. Nissen's Lexipro.com is exactly what he is doing now. He
16  is parking it on a pay-per-click site. He is not using it as
17  an independent business. He gets money every time somebody who
18  is confused about Lexapro goes on to the Lexipro site, clicks
19  on to it to see what's going on, Mr. Nissen gets paid. So do
20  the advertisers who are on these sites.
21          Lexipro is linked in the past, according to my
22  supplemental declaration, to online gambling sites. More
23  recently, he has leased the name to Part.com which is a site
24  that is currently publishing advertisements in connection with
25  Lexipro.com for online pharmacies overseas that the Court has

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

78L3FORC                    Conference
1   no jurisdiction over. And these online pharmacies, it's a
2   well-known problem, they're selling unauthorized drugs. Some
3   of it may be Lexapro, some of it may be not.
4           It's dangerous, it's causing consumer confusion in the
5   marketplace, there is a public safety issue. Mr. Nissen has no
6   legitimate business interest in the site, except to piggyback
7   and collect moneys on Lexapro's good name. So there is a
8   variety of factors that require emergency relief.
9           THE COURT: Is it your position as a matter of law
10  that under the Cybersquatting Act, even if there were not
11  conclusive proof of an original bad intent in acquiring the Web
12  site, if the domain name is being used in a manner that is
13  confusingly similar with a bad faith intent, that would be
14  sufficient, the current use would be sufficient to support the
15  cause of action and relief under the anti-cybersquatting
16  statute?
17          MR. SERBAGI: The answer to your Honor's question is
18  yes. I do believe that the law will support that. And the
19  reason is because there are a variety of factors that the
20  courts look at in the anti-cybersquatting statute, and bad
21  faith is one of them.
22          And incidentally, I do believe there is significant
23  evidence of bad faith here when he registered the mark. The

```
24     evidence is that -- the evidence is Lexapro was heavily touted
25     in the press at the time.  Mr. Nissen spent a lot of time on
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

9

```
       78L3FORC                Conference
 1     the Internet, as you can see from all the domain names he has
 2     registered.  He is very Internet savvy.  He likely ran across
 3     these articles.
 4            It's possible the Court could say maybe he didn't read
 5     those articles, that's not really enough evidence.  What he did
 6     after that really shows that he had bad faith from the
 7     inception.  And what that shows is he never used it in
 8     connection with legitimate business.  He always had it parked
 9     on one of these pay-per-click sites to get money off it.  The
10     only reason he is getting money off these sites is because
11     everybody's confusing it with Lexapro.  Nobody makes money off
12     the parked Web sites because nobody would type it in as a Web
13     address.  Nobody would make money that way.  What happened
14     subsequent to his registration of the domain name I believe is
15     very good evidence of bad faith at the inception.
16            But the answer to the Court's question is I do not
17     believe that the cybersquatting law requires that it be shown
18     that there was bad faith when he first registered the mark,
19     although I do believe that evidence is here.
20            THE COURT:  For the record, on the assumption that
21     Mr. Nissen doesn't have a copy of the statute right in front of
22     him, I will note that the civil liabilities civil action
23     provision of the statute permits such an action where a person
24     has a bad faith intent to profit from a mark and registers,
25     traffics in, or uses a domain name that, in the case of the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

10

```
       78L3FORC                Conference
 1     famous mark that is famous at the time of registration of the
 2     domain name, is identical or confusingly similar to or dilutive
 3     of that mark.
 4            And Mr. Serbagi, your representation is that between
 5     the NDA and all of the publicity about Lexapro in 2001, that
```

```
         6   Lexapro with an A was a famous mark within the meaning of the
         7   statute by January 2002, which is when Mr. Nissen registered
         8   his Lexipro domain name.
         9           MR. SERBAGI:  All that is true, your Honor.  I will
        10   note for the record that this is not a case based solely on
the
        11   cybersquatting statute.  We don't need to rely on that.
        12   There's dilution, there's trademark infringement, there is a
        13   variety of other causes of action.  Even if the Court were to
        14   say that the bad faith from the inception really isn't there,
        15   although I believe the evidence is clear, there's clear
        16   evidence of trademark infringement here at this point.
        17           And so the relief we're requesting is important to at
        18   least put a stop to the consumer confusion that's taking place
        19   and the danger to public safety before we can present to the
        20   Court all the evidence and before a full hearing.
        21           So this temporary relief is not hurting anybody.
It's
        22   deactivation of the domain name temporarily, and we
        23   respectfully request that the Court do that.
        24           THE COURT:  Anything further, Mr. Nissen?
        25           MR. NISSEN:  Yes.  If my intention was bad the entire
                          SOUTHERN DISTRICT REPORTERS, P.C.
                                    (212) 805-0300
```

11

```
             78L3FORC                Conference
         1   time and as being said here that I had started this site only
         2   to piggyback off the domain, and as they're saying you can use
         3   the way back machine to see exactly what I was doing with the
         4   site all the years I've owned it, you'll see that as of
         5   December 15, 2004, I had not profited on it.  That means I
         6   owned the domain for all of 2002, all of 2003, and all of 2004
         7   without even knowing -- without even once using it as a
domain.
         8   As I mentioned before, I bought the domain to be used as my
         9   business professional Web site.  For three entire years I did
        10   not have any parking of the domain name, which he keeps saying
        11   that I did.  It was not until basically 2005 that I put a
        12   parking on it, because I decided there was absolutely no way
at
        13   this point I was going to be able to use it as an official
        14   business Web site.
        15           There are known cybersquatters that are piggybacking.
        16   There are lots of cybersquatters that look specifically only
        17   for these kind of domain names.  I am not one of those people.
```

18    Every site that I build, every domain name that I buy -- sorry,
19    I'll slow down.  Every domain that I buy, I buy with the
20    intention of putting up a legitimate Web site.  This is an
21    unfortunate mistake that's happened.  That we ended up with the
22    same concept for a domain name or product or whatever.  But
23    this is what happened.  This is the entire basis of their
24    argument as far as I can see.
25             MR. SERBAGI:  I'd like to --
            SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

12

78L3FORC                Conference
1             THE COURT:  Mr. Serbagi, briefly.
2             MR. SERBAGI:  I will briefly respond.  I think we are
3    spending a lot of time on the bad faith issue and we both
4    defended our positions on that.  Bad faith is not required here
5    for the Court to show a temporary -- the very non-prejudicial
6    temporary restraining order that we're requesting.
7             Trademark infringement is sufficient for that.  There
8    is evidence of consumer confusion, actual confusion in the
9    marketplace.  There is a public safety issue.  And I believe
10   that although we do have evidence of bad faith, and I will
11   strongly argue that, it's not necessary for the Court to issue
12   this TRO, we are not relying on the Cybersquatting Act.
13   There's consumer confusion and that's sufficient.
14             THE COURT:  Anything further, Mr. Nissen, briefly?
15             MR. NISSEN:  As I mentioned before, I put up a park
16   domain on it.  What they do with it is really not up to me.  As
17   far as I know, right now if you click on one of the
18   advertisements, it will bring up a Google search, and at the
19   top of that search will probably be the actual Lexapro.com.  So
20   as far as I can see, they're winning either way anyway no
21   matter what.  But as far as infringement, if they filed their
22   patent before I bought the domain name, I guess I don't have
23   too much to argue with.  I can tell you honestly I had no bad
24   intent.
25             THE COURT:  All right.  Well, having read the papers
            SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

13

78L3FORC                    Conference
1   and having listened very carefully to everything that I have
2   heard, I find that it is appropriate to enter the temporary
3   restraining order in anticipation of the further hearing on the
4   application for the preliminary injunction.
5          I find that the proffer here and the facts as they
6   have been explained are indicative of a likelihood of success
7   on the merits of the plaintiff's trademark infringement,
8   dilution and anti-cybersquatting causes of action insofar as
9   there is evidence of consumer confusion, there is evidence of
10  use of the Lexipro domain name to obtain revenue whose source
11  really is that consumer confusion.  And there is, in terms of
12  irreparable harm, not only the irreparable harm that by
13  definition exists in the context of misuse of intellectual
14  property, but also a broader public safety issue with respect to
15  to the availability of this Lexipro domain name as a channel
16  unauthorized and unregulated versions or purported versions of
17  the name brand drug.
18         Accordingly, I will sign the order as proposed.
19         I will require the posting of a $25,000 bond, and that
20  bond must be posted by the close of business tomorrow with the
21  clerk of court.  So that would be August 22, so I'll say by
22  4 p.m. on August 22, 2007.
23         And I will set you down for a hearing on September 5,
24  2007, at 10 a.m. before Judge Hellerstein.  I'm going to ask my
25  deputy whether she knows Judge Hellerstein's courtroom number.
             SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

14

78L3FORC                    Conference
1   It will be courtroom 14D as in David in United States
2   Courthouse, 500 Pearl Street, in Manhattan.  And before the
3   Honorable Alvin Hellerstein of this court.
4          I've crossed out the words a motion term since we're
5   on the individual assignment system.
6          Now, in terms of further paper submissions, this
7   proposed order contemplates that plaintiff want a little more
8   time to put in a memo of law.
9          MR. SERBAGI:  Yes, your Honor.
10         THE COURT:  You will do that by Thursday the 23rd.

```
11          MR. SERBAGI:  Okay.
12          THE COURT:  So August 23rd, 2007.  That's a so as to
13   be filed and received by Mr. Nissen date.  Not put in the mail
14   date.
15          MR. SERBAGI:  Yes, your Honor.
16          THE COURT:  Mr. Nissen, I will give you until a week,
17   which is until the 30th of August, to serve and file your
18   opposition papers.  If you have not already retained an
19   attorney, I strongly advise you to get in touch with an
20   attorney.  This is an important matter and a short schedule.
21   And any reply papers must be served and filed by September 4 by
22   noon.  Of course courtesy copies of all of these papers should
23   be provided for Judge Hellerstein's chambers.
24          I'll give the plaintiff until the 23rd to serve this
25   order, but the plaintiff will want to do that very promptly.
```

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

15

```
     78L3FORC                  Conference
1    And I am marking it as granted at 12:55 p.m. on August 21,
2    2007.
3           My courtroom deputy and law clerk will assist the
4    counsel in the courtroom with getting the order for service and
5    we will keep a copy and we'll make sure that the arrangements
6    are made for filing it.  And unless anyone needs to say
7    anything else, that I think concludes our --
8           MR. SERBAGI:  One procedural point.  Is service by
9    e-mail and facsimile sufficient for the PI papers?
10          THE COURT:  Mr. Nissen, do you have any problem with
11   receiving the memorandum of law and injunction related papers
12   by e-mail or fax?
13          MR. NISSEN:  That's not a problem.
14          THE COURT:  Fine.  Then that's authorized.
15          MR. SERBAGI:  Thank you.
16          THE COURT:  Thank you all very much.
17                             oOo
18
19
20
21
22
23
24
```

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# EXHIBIT D

christopher serbagi                                              Tue, Nov 20, 2007  8:28 PM

**Subject: Re: Judge Swain Order Attached**
**Date:** Tuesday, August 21, 2007 3:56 PM
**From:** Leif Nissen <leif@properhosting.com>
**To:** Christopher Serbagi <c.serbagi@earthlink.net>, "Agovino, Eric" <Eric.Agovino@frx.com>
**Conversation:** Judge Swain Order Attached

Christopher,

Please email me when the fax is sent so I can read the information.

Of course I don't intend to post bond since I don't live in NY, but I am a bit annoyed at having to find a lawyer in the next week for the next hearing. So far all you've wanted was for me to cease and desist. I have now done this. I recommend we find an amicable solution at this point. From my perspective this harrassment isn't getting anyone anywhere. You gave me less than 24 hours notice to get in on a phone call after tricking me into thinking you were actually considering buying the domain from me. Whether you believed me in court today or not, I never had any intention of cybersquatting Lexapro. You'll find evidence of that with archive.org <http://archive.org> (way back machine) where for 3 years I didn't have it parked. You'll have a hard time arguing that Google, who is now running the ads on the site, is illegally showing ads from pharmacies. This goes back to what I asked earlier, what exactly is it that you want at this point? I can tell you what I want... a peaceful solution that gives me a fair payout on a domain I legitimately purchased for use as a business domain.

Also, as I mentioned in court, you might want to go after the REAL cybersquatters, here's a short list of some I came up with that are all registered:

elxapro.com <http://elxapro.com>
pexapro.com <http://pexapro.com>
mexapro.com <http://mexapro.com>
kexapro.com <http://kexapro.com>
lesapro.com <http://lesapro.com>
lecapro.com <http://lecapro.com>
lezapro.com <http://lezapro.com>
lexspro.com <http://lexspro.com>
lexzpro.com <http://lexzpro.com>
lexqpro.com <http://lexqpro.com>
lexaoro.com <http://lexaoro.com>
lexalro.com <http://lexalro.com>
lexapeo.com <http://lexapeo.com>
lexapto.com <http://lexapto.com>
lexapgo.com <http://lexapgo.com>
lexapfo.com <http://lexapfo.com>

Page 1 of 2

lexapri.com <http://lexapri.com>
lexaprl.com <http://lexaprl.com>
lexaprp.com <http://lexaprp.com>

Leif

On 8/21/07, **Christopher Serbagi** <c.serbagi@earthlink.net> wrote:
   Dear Mr. Nissen:

   Attached is Judge Swain's Order of today, ordering you and ENOM to
   deactivate use of the domain name " lexipro.com <http://lexipro.com> "
   pending further Order of the
   Court.  Please let me know when you have complied with the Order.

   Please confirm receipt of this email and please let me know if and when you
   have retained a lawyer to represent you in this action.

   Very truly yours,

   Christopher Serbagi


   Law Offices of Christopher Serbagi
   488 Madison Avenue, Suite 1120
   New York, New York  10022
   Tele: 212-593-2112
   Fax:  212-308-8582
   Email: c.serbagi@earthlink.net

# EXHIBIT E

THE HONORABLE ALVIN K. HELLERSTEIN
UNITED STATES DISTRICT JUDGE
UNITED STATES COURTHOUSE
SOUTHERN DISTRICT OF NEW YORK
500 Pearl Street, Room 910
New York, New York 10007
Telephone (212) 805-0152
Fax (212) 805-7942

<u>Forest Labs. Inc. v. Nissen</u>, 07 Civ. 7399 (AKH)

Date: August 22, 2007

From: Chambers of Judge Hellerstein – Brian Sutherland, judicial law clerk

| TO | FAX NO. | Company/Phone No. |
|---|---|---|
| Christopher Serbagi | 212.308.8582 | |

NUMBER OF PAGES TO FOLLOW (INCLUDING THIS COVER SHEET): __3__

<u>**MESSAGE**</u>

See attached memo endorsement. Please communicate this change to Defendant.

It is ORDERED that counsel to whom this Order is sent is responsible for sending a copy to all counsel involved in this case and retaining verification of such in the case file. Do not send such verification to Chambers.

# LAW OFFICES OF CHRISTOPHER SERBAGI

ATTORNEYS AT LAW

488 MADISON AVENUE

SUITE 1120

NEW YORK, NEW YORK 10022

(212) 593-2112

FACSIMILE: (212) 308-8582

c.serbagi@att.net




MEMO ENDORSED

August 22, 2007

Via Facsimile
Honorable Alvin K. Hellerstein
United States District Court
500 Pearl Street, Room 1050
New York, New York 10007

    Re: <u>Forest Laboratories, Inc. v. Leif Nissen, Index. No. 07 CV 7399</u>

Dear Judge Hellerstein:

    I am counsel for Plaintiff Forest Laboratories, Inc. ("Forest") in the above-entitled action. I write to request a five day extension of the time for Forest to file its memorandum of law in support of its motion for a preliminary injunction. No other requests for adjournments have been made by either party.

    By way of brief background, this case is about the Defendant's use of the domain name "lexipro.com," which Forest alleges infringes its trademark LEXAPRO, along with other related causes of action. On August 21, 2007, The Honorable Laura Taylor Swain granted Plaintiff's motion for a temporary restraining order and scheduled the preliminary injunction hearing for September 5, 2007. Judge Swain Ordered that the parties' preliminary injunction papers be filed and served as follows: (i) Plaintiff's supporting papers on August 23, 2007; Defendant's opposition papers on August 30, 2007; and Plaintiff's reply papers on September 4, 2007. The Plaintiff respectfully requests that the Court provide the Plaintiff an additional five days to file and serve its preliminary injunction memorandum of law, so that it is now due on August 28, 2007. Plaintiff recognizes that this may necessitate that the hearing be moved back a week in order to provide the Defendant enough time to respond and for the Plaintiff to submit a reply memorandum.

    At the present time, the Defendant is appearing in the case pro se but has represented that his new lawyer will be calling me today. The extra time would also provide the Defendant's new lawyer time to get up to speed on the case. Plaintiff has requested the Defendant to consent to the proposed adjournment but he has declined and provided no reason why except that he wants his lawyer to address the issue.

CHRISTOPHER SERBAGI, ESQ.

 Finally, because the issues in this case are relatively simple and straightforward, the Plaintiff requests that the Court Order that the preliminary injunction hearing be combined with a trial on the merits pursuant to F.R.C.P. 65(a)(2).

 We thank the Court for its consideration of these issues.

Respectfully Submitted,

*Christopher Serbagi*

Christopher Serbagi

cc: Mr. Leif Nissen (via facsimile)

*The requests are granted. The preliminary injunction hearing is adjourned to September 11, 2007, at 11:45AM.*

SO ORDERED.

_____ 8/22/2007
LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE Part I

2