# EXHIBIT F

# MESSAGE CONFIRMATION

SEP-06-2007 11:19 AM THU

FAX NUMBER   :
NAME         :

| | | |
|---|---|---|
| NAME/NUMBER | : | 12128594000 |
| PAGE | : | 3 |
| START TIME | : | SEP-06-2007 11:18AM THU |
| ELAPSED TIME | : | 00'50" |
| MODE | : | STD G3 |
| RESULTS | : | [ O.K ] |

## LAW OFFICES OF CHRISTOPHER SERBAGI

### FACSIMILE TRANSMITTAL SHEET

| TO: James W. Dabney, Esq. | FROM: Christopher Serbagi, Esq. |
|---|---|
| COMPANY Fried, Frank, Harris, Shriver & Jacobson LLP | DATE September 6, 2007 |
| FAX NUMBER 212-859-4000 | TOTAL NO. OF PAGES INCLUDING COVER: 3 |
| PHONE NUMBER 212-859-8000 | SENDER'S REFERENCE NUMBER |
| RE Attached letter | YOUR REFERENCE NUMBER |

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

NOTES/COMMENTS:

488 MADISON AVENUE • SUITE 1120 • NEW YORK, NY 10022
(212) 593-2112 TELEPHONE  (212) 308-8582 FACSIMILE

# LAW OFFICES OF CHRISTOPHER SERBAGI

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: James W. Dabney, Esq. | FROM: Christopher Serbagi, Esq. |
| COMPANY: Fried, Frank, Harris, Shriver & Jacobson LLP | DATE: September 6, 2007 |
| FAX NUMBER: 212-859-4000 | TOTAL NO. OF PAGES INCLUDING COVER: 3 |
| PHONE NUMBER: 212-859-8000 | SENDER'S REFERENCE NUMBER: |
| RE: Attached letter | YOUR REFERENCE NUMBER: |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

LAW OFFICES OF CHRISTOPHER SERBAGI

ATTORNEYS AT LAW

488 MADISON AVENUE

SUITE 1120

NEW YORK, NEW YORK 10022

(212) 593-2112
FACSIMILE: (212) 308-8582
c.serbagi@att.net

August 30, 2007

<u>Via Overnight Delivery</u>
Honorable Alvin K. Hellerstein
United States District Court
500 Pearl Street, Room 1050
New York, New York 10007

  Re: <u>Forest Laboratories, Inc. v. Leif Nissen, Index. No. 07 CV 7399(AKH)</u>

Dear Judge Hellerstein:

  I am counsel for Plaintiff Forest Laboratories, Inc. ("Forest") in the above-entitled action. I respectfully enclose courtesy copies of the following documents.

1. The Order to Show Cause, signed by Judge Loretta Talyor Swain on August 21, 2007, along with the following documents in support, namely (i) Summons and Complaint; (ii) Declaration of Eric M. Agovino; (iii) First and Second Declarations of Christopher Serbagi; and (iv) Plaintiff's Rule 65(b) Certification.

2. Plaintiff's pre-trial memorandum of law and the following documents in support, namely (i) Affidavit of Sigmund Solares; (ii) Second Declaration of Eric Agovino; and (iii) Third Declaration of Christopher Serbagi. The documents listed in Part I are also cited in Plaintiff's pre-trial memorandum.

3. Judge Swain's Endorsed letter (i) granting Plaintiff's request to combine its request for a preliminary injunction hearing with a trial on the merits pursuant to Rule 65(a)(2) and (ii) setting trial on this matter for September 11, 2007.

  I recognize that the Court's individual rules require that the Plaintiff's exhibit tabs be numbered. I used letter tabs for the papers identified in point 1 above at a time when this case was not yet assigned to this Court. Under those circumstances, I felt it would be confusing to

CHRISTOPHER SERBAGI, ESQ.

submit the most recent papers with numbered tabs, so I used letter tabs to be consistent. I hope this is acceptable to the Court.

Respectfully Submitted,

Christopher Serbagi

cc: Mr. James Dabney (via facsimile)

# EXHIBIT G

7A4VFORC.txt

```
                                                                        1
7A4VFORC                  Conference
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FOREST LABORATORIES, INC.,

              Plaintiff,

         v.                           07 CV 07399 (AKH)(MHD)

LEIF NISSEN,

              Defendant.

------------------------------x
                                      New York, N.Y.
                                      October 4, 2007
                                      10:10 a.m.
Before:

              HON. MICHAEL H. DOLINGER,

                                      Magistrate Judge

                         APPEARANCES

LAW OFFICES OF CHRISTOPHER SERBAGI
      Attorneys for Plaintiff
BY:   CHRISTOPHER SERBAGI
      -AND-
FOREST LABORATORIES, INC.
BY:   ERIC AGOVINO

FRIED FRANK HARRIS SHRIVER & JACOBSON
BY:   JAMES DABNEY
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
                                                                        2
7A4VFORC                  Conference
         (In open court)
         (Case called)
         THE COURT: Good morning. I asked for this conference
because of a dispute embodied in a September 25 letter from
defendant's counsel. I'll be happy to hear from you, first of
all, as to what the status of proceedings in this case happens
to be; and then as to any matters you wanted to add to the
letters that I've received.
         MR. DABNEY: Your Honor, James Wilson Dabney, Fried
Frank, for the defendant.
         The status of the proceedings are as they were on
September 7 when we were last before your Honor. The defendant
served its first set of interrogatories and document requests
on the plaintiff that afternoon; and the responses came in two
```

Page 1

7A4VFORC.txt
15  weeks later, which have given rise to the matter here today.
16      The plaintiff has served its initial discovery on
17  Mr. Nissen; responses to those are due, I believe, tomorrow.
18      On September 21, Mr. Nissen filed a motion to dismiss
19  this action on grounds of lack of personal jurisdiction and
20  improper venue; and the Court has set a briefing schedule on
21  that motion which calls for the plaintiff to file its responses
22  coming Monday the 8th, and for any reply papers to be filed on
23  Monday the 15th of October. And I believe both sides are
24  working towards the discovery cutoff date which the Court set
25  of October 31 in this case.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

7A4VFORC                    Conference
1      So that's essentially the status of the proceedings
2  from the defendant's point of view.
3      THE COURT: Okay.
4      MR. SERBAGI: Your Honor, this is Christopher Serbagi
5  for the plaintiff. And I'd like to note to the Court that all
6  this is quite unnecessary. The plaintiff has offered to
7  terminate the proceedings upon transfer of the domain name so
8  that we could alleviate the time and expense that this
9  proceeding is going to take, but they have not agreed to that;
10 they insist on proceeding with this case.
11      THE COURT: Well, I guess it's their right to do so.
12 In any event, let me ask this. With regard to the items listed
13 in Mr. Dabney's letter, specifically with respect to the first
14 one, that is, evidence of actual confusion, I take it that the
15 response, which seemed like kind of a nonresponse, other than
16 to allude to some surge, really indicates that at the present
17 time plaintiff does not have in its possession or control any
18 evidence of actual confusion, am I correct?
19      MR. SERBAGI: Your Honor, that is correct, with the
20 caveat that we have identified on the internet various
21 individuals who have submitted responses to web sites that show
22 that they were confused. We are in the process of
23 investigating some of that actual confusion that we've seen on
24 the internet.
25      THE COURT: Then I'm really confused, too, although

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

7A4VFORC                    Conference
1  not by the nature of the confusion that's being litigated in
2  this case.
3      I had understood you to say in your letter response
4  that "Forest cannot identify their names and addresses now
5  because it is not in our possession."
6      It's a little bit unclear what the reference is when
7  you refer to names and addresses, but if you are investigating,
8  I take it you have a body of information on the basis of which
9  you are investigating.
10     MR. SERBAGI: Your Honor, we have nothing in our
11 possession which was of the names or addresses of any of these
12 individuals. What I meant to say in this response is that we
13 are going to get information as to those individuals. And when
14 we do, we'll certainly turn it over. There's absolutely no
15 documentation we have that would be responsive to this
16 interrogatory.
17     THE COURT: Well, let me ask this: What is it, when
18 you refer to this internet search, that whoever did the
19 internet search actually observed on the internet, and also how

Page 2

```
                           7A4VFORC.txt
20    is that search done?
21            MR. SERBAGI:  We typed in the name "Lexipro" as part
22    of a Google search, and many references came up.
23            THE COURT:  Lexipro with --
24            MR. SERBAGI:  With an "i."
25            THE COURT:  With an "i."
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                        5
      7A4VFORC                  Conference
 1            MR. SERBAGI:  And I believe, your Honor, that a
 2    printout of that web site was produced in connection with our
 3    initial papers on the pretrial memorandum and the affidavits
 4    submitted in connection with the TRO.  So that printout has
 5    been produced.
 6            THE COURT:  And that, no doubt, is the sole body of
 7    information currently available to your client.
 8            MR. SERBAGI:  That is the sole body of information
 9    available to us, your Honor.  Had we had anything else, we most
10    certainly would have produced it.
11            THE COURT:  Okay.  Did you, in fact, receive that
12    printout?
13            MR. DABNEY:  I believe the printout was an attachment
14    to an affidavit dated August 28, I believe, of Mr. Agovino in
15    this case; so it was part of the pretrial submissions that were
16    filed.  So, yes, I do have the Google search report that
17    apparently was generated a week after calls to lexipro.com
18    stopped being answered.  So, yes, I do have that, but it would
19    not have occurred to me before this morning that that would
20    have been argued to be evidence of actual confusion caused by
21    Mr. Nissen.
22            THE COURT:  Let me ask you this, because it sounds as
23    if, and perhaps I'm wrong, the two sides hadn't really spoken
24    about this issue, because otherwise I assume this discussion
25    that I was having with plaintiff's counsel would have been, in
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                        6
      7A4VFORC                  Conference
 1    effect, conducted by counsel, between themselves, and that
 2    information would have come to light.
 3            Putting aside whether it should have been disclosed
 4    anyway before, but has this been a topic of discussion?
 5            MR. SERBAGI:  Your Honor, may I answer it?  I did
 6    receive a call from Mr. Dabney's associate who very briefly
 7    raised these issues with me.  And she didn't ask me any
 8    questions that you asked me.
 9            And what I told the associate was that we had produced
10    everything that we have on this issue.  There is nothing in our
11    possession, custody, or control responsive to evidence of
12    actual confusion.  And that was the end of the conversation.
13    She moved onto another topic, and so I tried to explain that we
14    had nothing.
15            THE COURT:  Okay.  Well, I think since the
16    representation has been made on the record by plaintiff's
17    counsel, that will be sufficient for purposes of, indeed, in
18    effect, in supplementation of an interrogatory answer, that we
19    leave that matter as it is for now.
20            With regard to the next item in Mr. Dabney's letter,
21    that is, a request for plaintiff to state a month and year in
22    which it contends that its mark became famous.  I know that
23    plaintiff says now it has disavowed any intention to rely upon
24    the fame of the mark, and on that basis it says that it's
                                 Page 3
```

7A4VFORC.txt

25    irrelevant. It goes on, and plaintiff does go on to submit
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

7A4VFORC                    Conference
1    some reference to the burden of producing all sorts of
2    documents. The only complaint voiced in Mr. Dabney's letter
3    was with regard to the failure to answer the interrogatory;
4    that is, asking month and year of when fame attached to this
5    trademark.
6              So I think the burden issue is irrelevant on that.
7    If, in fact, however, the plaintiff did rely on the contention
8    that the mark was famous at a particular point in time in
9    arguing for, I believe it was, a temporary restraining order is
10   that -- yes, that's what it was, before the district court,
11   that notwithstanding its, in effect, massaging of its claims,
12   that the defendant is entitled at least to a representation,
13   perhaps slightly different from what it's asking for, as to
14   whether the plaintiff contends that as of the relevant time,
15   which I believe in Mr. Dabney's letter indicates January 2002,
16   the mark was famous.
17             If, in fact, by virtue of whatever amendment you say
18   you made it is agreed by both sides that the purported fame of
19   the mark is irrelevant or, more to the point, that the
20   plaintiff will not contend in any respect in this case and
21   offer no evidence that the mark has any fame, then I think any
22   additional inquiry into this area would be unnecessary.
23             So let me find out from you quite clearly, does the
24   plaintiff represent at this time that it will make no
25   contention that the mark has fame, and will not offer any
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

7A4VFORC                    Conference
1    evidence that the mark has any fame in this case?
2              MR. SERBAGI: We do so represent.
3              THE COURT: Okay. Under those circumstances,
4    Mr. Dabney, other than having the plaintiff make the
5    representation that it contended, at least for purposes of a
6    temporary restraining order, that the mark was famous back in
7    January 2002, is there any basis for pursuing this matter?
8              MR. DABNEY: Well, this ties into our request for
9    documents relating to the extent of public awareness of the
10   trademark. We've tried to be very selective in our discovery
11   requests that we have put in this case. But as your Honor is
12   aware, the extent to which a mark is known, whether it is
13   extremely well-known and famous, or somewhat well-known, is a
14   factual continuum that bears on all of the plaintiff's claims
15   in this case, not just its now abandoned dilution claim.
16             THE COURT: Well, we're not, at this stage, dealing
17   yet with surveys about awareness. And to the extent that
18   levels of public awareness may be relevant to one or another
19   claim or defense, we can deal with that when we come to that
20   point.
21             MR. DABNEY: Okay.
22             THE COURT: My question is solely with regard to the
23   question of fame as such.
24             MR. DABNEY: It seems to me that if the plaintiff had
25   any basis for the representation that it made and the claim
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

7A4VFORC                    Conference
Page 4

7A4VFORC.txt

1  that it made, we would be entitled to know what that was, and
2  we don't have to accept their explanation that the reason why
3  they have now retracted their contention was "to simplify the
4  discovery and trial process." That's the statement made in
5  their letter in the first sentence in response on the evidence
6  of fame.
7           It seems to me that if, in fact, the plaintiff fully
8  well knew that the mark was not famous in January 2002 and
9  nevertheless so represented to the Court in response to a
10 pointed question, when there was absolutely no basis for it, it
11 seems to me that we would be entitled to more than a
12 representation that they will not make the contention without
13 having acknowledged that the original contention was untrue.
14          THE COURT: That may well be true. But I am taking
15 you at your word as to what you're asking for in your letter.
16 And in your letter what you asked for is an answer to
17 interrogatory No. 4 insofar as it asks from the plaintiff to,
18 and I quote from your letter, "state the month and year in
19 which plaintiff intends that the mark Lexapro," with an "a,"
20 "became a 'famous' trademark of the United States."
21          And as far as I can see, I mean that's not really a
22 very meaningful inquiry, other than insofar as it would trigger
23 an answer that would post-date January 2002. And hence, I have
24 suggested, I will order, that the plaintiff respond to the
25 interrogatory as rewritten by me to ask whether they contend

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

7A4VFORC                    Conference
1  that the mark was famous by no later than January 2002.
2           If there are other issues about fame and things you
3  want to deal with, take it up with the other side; but at the
4  moment it seems to me we're dealing with, if not a dead horse,
5  a horse that is mortally wounded.
6           So let's go on to the next point.
7           That is damages disclosure. Now, I understand from
8  plaintiff's response that they are, in fact, going to seek only
9  statutory damages, and will seek the statutory maximum of
10 $100,000. That's, in fact, the case?
11          MR. SERBAGI: That is correct, your Honor.
12          THE COURT: Okay. It seems to me once they choose,
13 whether early or late, to waive any other claim for damages,
14 there's no need for them to calculate damages that they will
15 not seek. And they will, of course, be precluded from seeking
16 such damages or offering evidence in support of such damages.
17          MR. DABNEY: Your Honor, if I can just say, when we
18 propounded the interrogatories, we fully well knew what relief
19 the plaintiffs were seeking. What we were trying to find out
20 was what injury, loss, or damage they have suffered that would
21 be the basis for seeking relief, statutory or otherwise.
22          So interrogatory No. 5, which is obviously understood
23 by them, as reflected in their response, was to focus to their
24 injury as opposed to the relief that they are seeking.
25          So ordinarily in a trademark case like this, if you're

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

7A4VFORC                    Conference
1  going to seek actual damages or seeking compensatory damages,
2  whether statutory or actual, they've got to be tied to some
3  actual loss. And so what this interrogatory is intended, and
4  it ties into the actual confusion interrogatories in this
5  circuit, in order to recover money damages of any kind in a

Page 5

```
                                       7A4VFORC.txt
 6       trademark case there's got to be actual confusion somewhere.
 7       So we are just trying to get them nailed down on whether they
 8       have, in fact, suffered a dime of loss so that in deciding
 9       whether any level of statutory damages is appropriate, the
10       Court can take into account that, in fact, they have no actual
11       loss.
12                THE COURT:  Well, not to split hairs too finely, which
13       is always an introduction that's starting to split hairs, I
14       know, what you've asked for in the interrogatories was a
15       computation of damages.  And I think when a party offers
16       statutory damages, it is not obliged to do a computation,
17       particularly in an area where computation is likely to be
18       difficult, if not impossible, to do.
19                What I think you are entitled to is any evidence of
20       injury that would be pertinent to a calculation of statutory
21       damages, which I think probably in shorthand translates into
22       any evidence that the plaintiffs might be prepared to
23       potentially use to demonstrate that there was some sort of
24       impact from the defendant's conduct on the plaintiff's mark and
25       business.
                           SOUTHERN DISTRICT REPORTERS, P.C.
                                     (212) 805-0300
                                                                              12
         7A4VFORC                     Conference
 1                In addition, and I think this is apart from
 2       calculation of damages, to the extent that there are any
 3       documents that would reflect an absence of impact, those
 4       documents necessarily would have to be used, as well.  And so
 5       to that extent, and if it hasn't been otherwise requested in
 6       some other document request, that universe of documents needs
 7       to be provided.
 8                Now, the next item has to do with the so-called
 9       Lexipro, with an "i," references that plaintiff may have.  And
10       there seems to be some question between the two letters I have
11       received as to the basis for limiting production, if, in fact,
12       plaintiffs limited production or limited their searches.  And
13       so I think probably it would be helpful at this point for
14       counsel simply to indicate, No. 1, what was produced; and No.
15       2, what was searched for and how.
16                MR. SERBAGI:  Your Honor, as I told Mr. Dabney's
17       associate over the phone in the meet-and-confer before the
18       conference today, we've produced every document responsive to
19       this request in our possession, custody, and control.  The way
20       we determined that we did that is we had the relevant employees
21       at Forest who knew about this issue search their files, both
22       their hard copies and their computer files, and we produced
23       what we have.
24                So I don't understand why we are even here on this
25       issue, because we've made a representation that we've given
                           SOUTHERN DISTRICT REPORTERS, P.C.
                                     (212) 805-0300
                                                                              13
         7A4VFORC                     Conference
 1       them what we had, and there's no reason for them to believe
 2       that we haven't.
 3                THE COURT:  Under these circumstances, on the
 4       assumption from Mr. Dabney's letter that he has a suspicion
 5       that the search or at least the production was only partial or
 6       to put it another way gently, that he has some questions about
 7       the precise accuracy of the representation that he received
 8       from you, defendant is free, as defendants traditionally are,
 9       to take a deposition if they wish of someone who would be in a
10       position to describe the nature of the search and the way in
                                       Page 6
```

```
                         7A4VFORC.txt
11     which documents are retained at plaintiff in order to satisfy
12     himself that the production was, in fact, complete.
13              MR. SERBAGI:  And your Honor, I'll just note for the
14     record we had two weeks to respond to the request; and we will,
15     out of an abundance of caution that our representations are
16     fully accurate, continue to search the records and documents to
17     make doubly sure that we've given everything that we are
18     obligated to give.  So I'll just say that we reserve the right
19     to supplement, if we do find something, but we will continue to
20     check.  But we have no reason to believe that everything hasn't
21     been turned over.
22              THE COURT:  Okay.  Well, again, I think the obligation
23     to make a complete search involved an obligation to do so
24     within the time frame.
25              If what you're suggesting is that there may be a
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                   14
       7A4VFORC                  Conference
 1     decision by your client to research some of the places that
 2     were already searched, that's fine.  But if, in fact, the
 3     search was only a partial one up to now, that's a bit more
 4     troubling.  But I am sure that if the search was not complete
 5     it will be complete within the next couple days.  Either way.
 6              MR. SERBAGI:  I have no reason to believe it wasn't as
 7     complete as possible.
 8              THE COURT:  Okay.  Fine.
 9              MR. DABNEY:  Your Honor, if I could just make clear
10     that we believe the search should include the entire period of
11     time covered by the complaint, from 2002.
12              THE COURT:  Well, my assumption, and perhaps it was an
13     overly optimistic or naive assumption, is that the search was
14     not limited to some artificially narrowed time frame.
15              MR. SERBAGI:  The search was not limited to any time.
16              THE COURT:  And counsel's representation was not so
17     hedged.  So I think we're clear, at least on the record, as to
18     the scope of the search, and you may pursue this further, if
19     you wish, by other means.
20              MR. DABNEY:  I'll just note one of the documents that
21     they did produce that was very recent indicated that they have
22     had correspondence with Yahoo with regard to the payment of
23     money by them for rankings of Lexipro, with an "i."  And we
24     certainly would have expected, in view of that, that their
25     production would have included correspondence and other
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                   15
       7A4VFORC                  Conference
 1     documents that reflect their own commercial dealings and
 2     involvement with this letter string.
 3              THE COURT:  With what?
 4              MR. DABNEY:  The letter string, with the letter
 5     string.  Lexipro, L-e-x-i-p-r-o.
 6              THE COURT:  Oh.  Well, I think we're going to have to
 7     leave it where it is.  And if you want to probe further into
 8     this possible mystery, you're free, as I say, to do so.
 9              The last item in Mr. Dabney's letter concerns the
10     survey evidence question.  And Mr. Dabney, it might be helpful
11     at this point, given our earlier discussion about the
12     withdrawal of any suggestion of fame by the plaintiff, what the
13     relevance of such survey evidence would be to put now in the
14     case.
15              MR. DABNEY:  One of the fundamental aspects of a claim
                                Page 7
```

```
                                  7A4VFORC.txt
16      of trademark infringement is the strength of the trademark,
17      which is not merely a function of its arbitrariness, but is
18      also a function of the extent to which the public is aware of
19      it.  This relates both to liability in this case, as well as to
20      what appropriate recommendation might be awarded if, in fact,
21      it turns out that there's extremely low public awareness of
22      this prescription drug that only physicians can prescribe, and
23      certainly I have heard of it when the suit was filed.
24                So to the extent that they have actually tested the
25      hypothesis, the papers in this case are shot through with
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                          16
         7A4VFORC                       Conference
 1      assertions that the mark originally was famous, was well-known,
 2      he must have known, must be bad faith because it's so
 3      well-known, there couldn't be any possible plausible reason he
 4      would have done this.  It seems to me that the evidence itself
 5      bears directly on the merits of their own claims in this case,
 6      No. 1.  And No. 2, surely, if the conduct that the defendant
 7      was causing confusion, this is a likely place where any impact
 8      of such confusion would be reflected.
 9                To the extent that they are able to conduct survey
10      research of public awareness of their mark and they don't
11      encounter confusion, it is evidence that tends to show that, in
12      fact, they've suffered no injury, loss, or damage in this case.
13      So on any number of levels, their complaint places an issue
14      over and over again the proposition that this survey evidence
15      directly tests.
16                THE COURT:  What is the basis for the objection to
17      proffering of the survey evidence?
18                MR. SERBAGI:  Your Honor, the defendant's
19      representations now are substantially different from what is
20      stated in his letter here.  He states in his letter, for the
21      same reasons given in the evidence of fame, paragraph above,
22      survey evidence showing the degree to which the trademark
23      Lexapro was or was not well-known or famous, bears directly on
24      the issues.
25                So the representation is that for the same reasons
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                          17
         7A4VFORC                       Conference
 1      that the issue of fame is relevant, the issue of survey is
 2      relevant.
 3                THE COURT:  Well, not to parse it too finely, No. 1,
 4      for substantially the same reasons, and I suspect perhaps that
 5      he felt so confident about the strength of his argument about
 6      fame before he learned that you were doing away with the fame
 7      issue, that he focused on that.
 8                If, however, the evidence at this time is relevant to
 9      other issues, he's certainly not prevented from arguing that
10      point now, nor am I prevented from considering it.
11                So my question is are you saying that it is completely
12      irrelevant to any issue in this case?
13                MR. SERBAGI:  Your Honor, it's our affirmative
14      obligation in the case to put forward the evidence of the
15      strength of the mark, whether there's confusion in the
16      marketplace, whether there's actual confusion.  This is very
17      similar to the actual confusion issue.
18                If we don't put on evidence of actual confusion, then
19      we're not entitled to represent in court that there is actual
20      confusion.  If we don't produce survey evidence to show that
                                     Page 8
```

```
                            7A4VFORC.txt
21     the mark was strong, then that is our affirmative decision not
22     to put that evidence before the Court.  But it's not relevant
23     to any of the defendant's defenses.
24               THE COURT:  Wait a minute.  Relevance from the
25     perspective of what the defendant can ask for in discovery is
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
                                                                    18
       7A4VFORC                  Conference
 1     not limited to potential affirmative defenses of the defendant.
 2     It encompasses evidence relevant to any of the contentions of
 3     the plaintiff, if, in fact, as you seem to be conceding, part
 4     of the plaintiff's potential case goes to the strength of the
 5     mark which in turn implicates public awareness.  And it seems
 6     to me you have effectively defined an area of relevance that
 7     encompasses such survey evidence.
 8               MR. SERBAGI:  Your Honor, based on what the Court is
 9     saying to me now and the new reasons for this type of
10     documentation, I don't believe that Forest objects to producing
11     these documents.
12               THE COURT:  Okay.  Good.  Now, I think that leaves us
13     with one other item.  And I have to confess, that in reading of
14     this matter in the second letter that I got, that is, from
15     plaintiff's counsel, my eyes glazed over because it seemed to
16     be a suggestion that for reasons too complicated for me at the
17     time, perhaps without enough caffeine in me, to grasp, we
18     should take up the possibility of defendant withdrawing its
19     motion to dismiss or having it denied out of hand or something
20     like that.  Perhaps you can tell me what it was I had
21     difficulty understanding here, and what it is you're seeking
22     other than not having to have the motion to dismiss
23     adjudicated.
24               MR. SERBAGI:  Well, your Honor --
25               THE COURT:  An outcome, by the way, which, of course,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
                                                                    19
       7A4VFORC                  Conference
 1     the courts as an institutional matter always favor, but I can't
 2     always bring about.
 3               MR. SERBAGI:  Your Honor, to save the time and expense
 4     of briefing the jurisdictional issue, I wanted to raise to the
 5     Court an issue that we discovered in our research on the
 6     jurisdictional issue.
 7               The defendant in this case, prior to the litigation,
 8     made a number of offers to Forest, I should say demands, to pay
 9     him money to receive for us to retain the trademark, the main
10     name back.  And this was extortion.
11               And Mr. Dabney in a prior case had argued before the
12     same judge, Hellerstein, that those types of offers from an
13     out-of-state defendant constituted jurisdiction in this
14     district because there was a tort committed.  And in this case,
15     the representation is directly opposed to that.  And so I
16     wanted to raise the issue.
17               THE COURT:  Well, I'm familiar with the concept of law
18     of the case.  This is a somewhat original, although, in my
19     experience, not entirely unprecedented argument.  It seems to
20     press for a theory of law of the attorney; that is, if an
21     attorney in a prior case has argued one side of an issue, he
22     shall forever after be precluded from arguing the other side of
23     the issue, even for a different client.
24               I'm not aware of any legal authority for that
25     proposition, and I suspect attorneys as a practical and
                                Page 9
```

```
                         7A4VFORC.txt
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                      20
         7A4VFORC                     Conference
 1       professional matter would have difficulty with that.
 2                 In any event, to the extent that you could think of
 3       analogous theories, I suppose the other one would be judicial
 4       estoppel.  But judicial estoppel, as I understand it, is
 5       limited to situations in which a particular party has taken a
 6       position, and not only taken a position, but has succeeded
 7       based on that position in persuading the Court to rule in its
 8       favor, and then subsequently in another case takes the opposite
 9       position.
10                 I take it that your reference to whatever it was that
11       was argued in another case which does not seem to involve
12       Mr. Nissen made an argument, but it doesn't even tell me if he
13       succeeded based on that argument.  So I'm not sure where we're
14       going with all of this.
15                 Obviously, if you can convince Mr. Dabney that this is
16       all a waste of his client's time because the law is clearly
17       against him, I encourage you to talk to him.  But beyond that,
18       I don't know what I'm supposed to do with this really.
19                 Is there anything else we should deal with at this
20       point?  Thank you.
21                 MR. DABNEY:  Thank you, Judge.
22                 MR. SERBAGI:  Thank you, Judge.
23                 THE COURT:  Have a great rest of the week and a good
24       weekend all.
25                              *    *    *
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

# EXHIBIT H

LAW OFFICES OF CHRISTOPHER SERBAGI

ATTORNEYS AT LAW

488 MADISON AVENUE

SUITE 1120

NEW YORK, NEW YORK 10022

(212) 593-2112

FACSIMILE: (212) 308-8582

c.serbagi@att.net

October 2, 2007

<u>Via Facsimile</u>
James W. Dabney, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004-1980

  Re: <u>Forest Laboratories, Inc. v. Leif Nissen, Index. No. 07 CV 7399 (AKH)(MHD)</u>

Dear James:

  Enclosed for your signature is a proposed Stipulation and Order that would dispose of this case. Please let me know if the terms are acceptable as soon as possible.

  If the hearing before Magistrate Judge Dolinger will not be necessary, I am sure he would appreciate a call sooner rather than later. I suggest a phone call between us tonight or tomorrow to discuss any specific comments you may have.

Very truly yours,

Christopher Serbagi

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
FOREST LABORATORIES, INC.,                : ECF CASE
                                          :
                                          :
                              Plaintiff,  : Index No. 07 CV 7399 (AKH)
                                          :
                                          :
              - against -                 : **STIPULATION AND ORDER**
                                          :
                                          :
LEIF NISSEN,                              :
                                          :
                                          :
                              Defendant.  :
-------------------------------------------------------------------x

IT IS HEREBY STIPULATED, by and between the undersigned, that the parties have agreed to settle the action on the following terms.

1. Defendant Leif Nissen ("Nissen") agrees to transfer the Internet domain name LEXIPRO.COM to Forest Laboratories, Inc. ("Forest") at no cost to Forest.

2. Upon execution of this Stipulation and Order by both parties, Nissen will immediately take all necessary measures to transfer ownership in the domain name LEXIPRO.COM to Forest.

3. Nissen represents that he has not registered, and agrees that he will not in the future register or use, any other Internet domain names that contain any variation of "lexipro," "lexapro," or any other domain name that is confusingly similar thereto.

4. Nissen agrees not to register or use, now or in the future, as a domain name or in any other manner, any of Forest's trademarks, service marks, or design marks.

5. Nissen agrees not to disclose either the existence of this settlement or the terms of the settlement in any public forum, including on the Internet or any electronic or print media.

6. Nissen hereby stipulates and agrees that Forest's registered trademark LEXAPRO® is a famous mark.

7. The Court shall retain jurisdiction over the parties to this action in the event of any breach of the foregoing terms of settlement.

8. The Amended Complaint is dismissed with prejudice. The parties agree to bear their own attorney's fees and costs.

Dated: New York, New York
October 2, 2007

LAW OFFICES OF CHRISTOPHER SERBAGI

By: *Christopher Serbagi*
Christopher Serbagi, Esq. (CS 7746)
488 Madison Avenue, Suite 1120
New York, New York 10022
Tele: 212-593-2112
Fax: 212-308-8582

Attorney for the Plaintiff

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

By: _____
James W. Dabney (JD 9715)
One New York Plaza
New York, New York 10004-1980
Tele: 212-859-8000
Fax: 212-859-4000

Attorney for the Defendant

SO ORDERED THIS

___th day of October, 2007

_____
Alvin K. Hellerstein
United States District Judge

2