# EXHIBIT L

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x
FOREST LABORATORIES, INC.,                                    :
                                                              :
                                                              :
                        Plaintiff,                            :   Index. No. 07 CV 7399 (AKH)
          - against -                                         :
                                                              :
                                                              :
                                                              :
                                                              :
LEIF NISSEN,                                                  :
                                                              :
                                                              :
                          Defendant.                          :
-----------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

On the brief:
Christopher Serbagi

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT…………………………………………………................1

STATEMENT OF FACTS……………………………………………………………….3

ARGUMENT……………………………...…………………………………….................6

**I.**   THE DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION IN NEW
YORK………………………………………………………………………………………6

    A.   Personal Jurisdiction is Proper Under CPLR § 302(a)(1)…………………………..7

    B.   New York Had Personal Jurisdiction Over Defendant Pursuant to 302(a)(2)…………9

    C.   Personal Jurisdiction is Proper Under CPLR 302(a)(3)…………………………………10

    D.   Defendant Cannot Avoid New York Jurisdiction By Now Arguing That He Was Only
Attempting To "Settle" A Dispute……………………………………………… …….12

    E.   Personal Jurisdiction over the Defendant Comports With Constitutional Due Process…15

**II.**   VENUE IS PROPER IN THE SOUTHERN DISTRICT OF NEW YORK…..……………16

CONCLUSION…………………………………………………………………….............19

i

TABLE OF AUTHORITIES

Page

CASES:

Basquiat v. Kemper Snowboards,
    No. 96 Civ. 0185, 1997 U.S. Dist. LEXIS 12653, at *9-*13 (S.D.N.Y. 1997)..............9

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)………………………………………………………………...15

Business Trends Analysis v. Freedonia Group, Inc.,
    650 F. Supp. 1452 (S.D.N.Y. 1987)………………………………………………………9

Cello Holdings, L.L.C. v. Lawrence-Dahl Companies,
    89 F. Supp.2d 464 (S.D.N.Y. 2000)……………………….…………....……...10, 11

Citigroup Inc. v. City Holding Co.,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000)……………………………………………7, 17

Concesionaria D.H.M, S.A. v. Int'l Fin Corp.,
    307 F. Supp. 2d 553 (S.D.N.Y. 2004)……………………………………………16

Daniel v. Am. Bd. of Emergency Med.,
    428 F.3d 408 (2d Cir. 2005)………………………………………………………16

Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.,
    779 F. Supp. 335 (S.D.N.Y. 1991)………………………………………………9

Deleo v. Zconnexx Corp.,
    No. 00-CV-0319(E)(F), 2001 U.S. Dist. LEXIS 7641 (W.D.N.Y. June 6, 2001)……11,15

Exovir, Inc. v. Mandel,
    1995 U.S. Dist. LEXIS 9667 (S.D.N.Y. July 12, 1995)……………………………..16

German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.,
    569 F. Supp. 1529 (S.D.N.Y. 1983)……………………………………………………9

G.F.C. Fashions, Ltd. v. Goody's Family Clothing, Inc.,
    No. 97 Civ. 07330, 1998 WL 78292 (S.D.N.Y. Feb. 24, 1998)…………………………16

Gulf Ins. Co. v. Glasbrenner,
    417 F.3d 353 (2d Cir. 2005)……………………………………………………16

Honda Assocs. v. Nozawa Trading, Inc.,
    374 F. Supp. 886 (S.D.N.Y. 1974)……………………………..……….………………9

IA, Inc. v. Thermacell Techs., Inc.,
    983 F. Supp. 697 (E.D. Mich. 1997)……………………………………………….17

Int'l Shoe Co. v. Washington,
    326 U.S. 310, 320 (1945)…………………………………………………………..15

Leroy v. Great W. United Corp.,
    443 U.S. 173 (1979)………………………………………………………………..17

Metropolitan Opera Ass'n,
    2000 WL 987265 (S.D.N.Y. 2000)……………………………………………….17

Morgan Stanley Dean Witter & Co. v. Smart Ideas,
    99 Civ. 8921 (S.D.N.Y. Dec. 15, 1999)……………………………7, 8, 11, 12, 13, 14

Panavision Int'l, L.P. v. Toeppen,
    141 F.3d 1316 (9th Cir. 1998)……………………………………………………..11

Radio Computing Services, Inc. v. Roland Computing Services,
    2003 U.S. Dist. LEXIS 3645 (S.D.N.Y. Mar. 12, 2003)……………………………7, 8

Transamerica Corp. v. Transfer Planning, Inc.,
    419 F. Supp. 1261 (S.D.N.Y. 1976)…………………………………………..……9

Tuxxedo Network, Inc. v. Hughes Comm. Carrier Services, Inc.,
    753 F. Supp. 514 (S.D.N.Y. 1990)…………………………………………………6

Vanity Fair Mills, Inc. v. T. Eaton Co.,
    234 F.2d 633 (2d Cir.), cert denied, 352 U.S. 913 (1956)………………….………9

Viacom Intern., Inc. v. Melvin Simon Productions,
    774 F. Supp. 858 (S.D.N.Y. 1991)…………………………………………………7

STATUTES:

28 U.S.C. § 1391(b)………………………………………………………………..16

CPLR § 302(a)(1)…………………………………………………………………7, 8

CPLR § 302(a)(2)………………………………………………………………..…9

CPLR § 302(a)(3)………………………………………………………………10, 11

F.R.E. 408……………………………………………………………….…………13

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT.................................................................................1

STATEMENT OF FACTS..................................................................................3

ARGUMENT..................................................................................6

**I.** THE DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION IN NEW YORK..................................................................................6

    A. Personal Jurisdiction is Proper Under CPLR § 302(a)(1).................................7

    B. New York Had Personal Jurisdiction Over Defendant Pursuant to 302(a)(2)..............9

    C. Personal Jurisdiction is Proper Under CPLR 302(a)(3)......................................10

    D. Defendant Cannot Avoid New York Jurisdiction By Now Arguing That He Was Only Attempting To "Settle" A Dispute..................................................................12

    E. Personal Jurisdiction over the Defendant Comports With Constitutional Due Process...15

**II.** VENUE IS PROPER IN THE SOUTHERN DISTRICT OF NEW YORK.........................16

CONCLUSION..................................................................................19

i

<u>TABLE OF AUTHORITIES</u>

Page

<u>CASES</u>:

<u>Basquiat v. Kemper Snowboards</u>,
     No. 96 Civ. 0185, 1997 U.S. Dist. LEXIS 12653, at *9-*13 (S.D.N.Y. 1997)..............9

<u>Burger King Corp. v. Rudzewicz</u>,
     471 U.S. 462 (1985)...................................................................................15

<u>Business Trends Analysis v. Freedonia Group, Inc.</u>,
     650 F. Supp. 1452 (S.D.N.Y. 1987)..............................................................9

<u>Cello Holdings, L.L.C. v. Lawrence-Dahl Companies</u>,
     89 F. Supp.2d 464 (S.D.N.Y. 2000).............................................……...........10, 11

<u>Citigroup Inc. v. City Holding Co.</u>,
     97 F. Supp. 2d 549 (S.D.N.Y. 2000)..........................................................7, 17

<u>Concesionaria D.H.M, S.A. v. Int'l Fin Corp.</u>,
     307 F. Supp. 2d 553 (S.D.N.Y. 2004).........................................................16

<u>Daniel v. Am. Bd. of Emergency Med.</u>,
     428 F.3d 408 (2d Cir. 2005).....................................................................16

<u>Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.</u>,
     779 F. Supp. 335 (S.D.N.Y. 1991)..............................................................9

<u>Deleo v. Zconnexx Corp.</u>,
     No. 00-CV-0319(E)(F), 2001 U.S. Dist. LEXIS 7641 (W.D.N.Y. June 6, 2001)......11,15

<u>Exovir, Inc. v. Mandel</u>,
     1995 U.S. Dist. LEXIS 9667 (S.D.N.Y. July 12, 1995)....................................16

<u>German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.</u>,
     569 F. Supp. 1529 (S.D.N.Y. 1983).............................................................9

<u>G.F.C. Fashions, Ltd. v. Goody's Family Clothing, Inc.</u>,
     No. 97 Civ. 07330, 1998 WL 78292 (S.D.N.Y. Feb. 24, 1998)...........................16

<u>Gulf Ins. Co. v. Glasbrenner</u>,
     417 F.3d 353 (2d Cir. 2005)....................................................................16

<u>Honda Assocs. v. Nozawa Trading, Inc.</u>,
     374 F. Supp. 886 (S.D.N.Y. 1974)..............................................................9

<u>IA, Inc. v. Thermacell Techs., Inc.</u>,
   983 F. Supp. 697 (E.D. Mich. 1997)……………………………………………………17

<u>Int'l Shoe Co. v. Washington</u>,
   326 U.S. 310, 320 (1945)……………………………………………………………..15

<u>Leroy v. Great W. United Corp.</u>,
   443 U.S. 173 (1979)……………………………………………………………………17

<u>Metropolitan Opera Ass'n</u>,
   2000 WL 987265 (S.D.N.Y. 2000)……………………………………………………17

<u>Morgan Stanley Dean Witter & Co. v. Smart Ideas</u>,
   99 Civ. 8921 (S.D.N.Y. Dec. 15, 1999)……………………………7, 8, 11, 12, 13, 14

<u>Panavision Int'l, L.P. v. Toeppen</u>,
   141 F.3d 1316 (9th Cir. 1998)…………………………………………………………11

<u>Radio Computing Services, Inc. v. Roland Computing Services</u>,
   2003 U.S. Dist. LEXIS 3645 (S.D.N.Y. Mar. 12, 2003)……………………………7, 8

<u>Transamerica Corp. v. Transfer Planning, Inc.</u>,
   419 F. Supp. 1261 (S.D.N.Y. 1976)…………………………………………..………9

<u>Tuxxedo Network, Inc. v. Hughes Comm. Carrier Services, Inc.</u>,
   753 F. Supp. 514 (S.D.N.Y. 1990)……………………………………………………6

<u>Vanity Fair Mills, Inc. v. T. Eaton Co.</u>,
   234 F.2d 633 (2d Cir.), <u>cert denied</u>, 352 U.S. 913 (1956)…………………………9

<u>Viacom Intern., Inc. v. Melvin Simon Productions</u>,
   774 F. Supp. 858 (S.D.N.Y. 1991)……………………………………………………7

<u>STATUTES:</u>

28 U.S.C. § 1391(b)…………………………………………………………………..16

CPLR § 302(a)(1)…………………………………………………………………….7, 8

CPLR § 302(a)(2)……………………………………………………………………..9

CPLR § 302(a)(3)………………………………………………………………….10, 11

F.R.E. 408………………………………………………………………………..……13

Plaintiff Forest Laboratories, Inc. ("Forest") respectfully submits this memorandum of law in opposition to Defendant Leif Nissen's ("Defendant") motion to dismiss the Amended Complaint for lack of personal jurisdiction and improper venue.

## PRELIMINARY STATEMENT

Defendant is subject to personal jurisdiction in New York because he repeatedly attempted to extort $10,000 from Forest in exchange for Defendant's agreement to transfer the infringing domain name "lexipro.com" to Forest. If Forest did not capitulate to Defendant's extortion, Defendant threatened, in writing, to sell "lexipro.com" to "a web master in Pakistan who will put a porn site on it." The case law in this Circuit is clear: a defendant is subject to personal jurisdiction in New York under these circumstances.

Defendant attempts to avoid the impact of the case law by euphemistically characterizing his attempts at extortion as settlement offers that Forest initiated. The written correspondence between the parties demonstrates that this is simply false. On August 1, 2007, Forest sent a letter to Defendant and requested that he cease and desist his unlawful use of "lexipro.com," which Defendant (along with the parked web sites he employed) linked to on-line pharmacies selling bootleg pharmaceutical products. In response, and before Forest commenced this action, Defendant unilaterally offered to sell "lexipro.com" to Forest for $10,000. Forest did not substantively respond to this communication. Instead, Forest sent a cease and desist letter to the parked site that Defendant employed to place advertisings on his site. When the parked site complied with Forest's demands and deactivated Defendant's "lexipro.com" site, Defendant again unilaterally reached out to Forest and threatened to sell "lexipro.com" to a web master in Pakistan who would use it for pornographic purposes unless Forest complied with his demands. Defendant offered "lexipro.com" for sale on his web site. The written correspondence between

the partes demonstrates that Forest did not initiate any settlement discussions. Pursuant to case law in this District and other districts, including a decision by Judge Hellerstein. Defendant's attempts at extortion of a confusingly similar domain name subject him to personal jurisdiction in this District.

Finally, the Defendant has posted numerous advertisements on his active "lexipro.com" web site for over three years that are broadcast via the Internet into New York, obtaining advertising revenue from companies who offered goods and services to the world. To the extent that any of the companies sold goods or services in New York, those are sales that are directly attributable to the Defendant for jurisdictional purposes and arise out of the causes of action in the Amended Complaint. It was reasonable for Forest to believe that New York consumers viewed Defendant's "lexipro.com" web site and purchased goods and services because Forest is a New York based company and New York consumers are the most likely to have mistakenly believed that "lexipro.com" was associated with Forest's LEXAPRO®. Under these circumstances, Forest would have been entitled to jurisdictional discovery to ascertain whether any links that Defendant posted on the "lexipro.com" site were viewed by consumers in New York and whether consumers in New York purchased any of the good and services offered on Defendant's "lexipro.com" site.

New York is also a proper and fair venue. The Defendant admitted to knowing that Forest owned the LEXAPRO® mark soon after he registered "lexipro.com" and he admitted to waiting to see how the mark was to be used. He then took a number of highly improper measures to earn advertising revenue from the mark. When Forest protested, he reached out to this forum by attempting to extort Forest, even after Forest requested that Defendant cease and desist. Venue in New York is entirely fair under these circumstances. Courts have found venue to be proper

2

where misrepresentations that underlie trademark infringement are made on an interactive web site, as is the case here. Finally, most of the witnesses are located in New York and in states outside Florida, which would render a trial in Florida inherently unfair and inconvenient to Forest as well as those witnesses. Venue is proper in New York.

## STATEMENT OF FACTS

### Forest's Use and Registration of LEXAPRO®

Forest is a New York based pharmaceutical company that produces and markets drugs that treat a variety of conditions. Declaration of Eric M. Agovino, ¶ 4 ("Agovino Decl."). Forest has well-established franchises in therapeutic areas of the central nervous system, cardiovascular, and respiratory systems. Id. Forest's blockbuster product is the anti-depressant drug LEXAPRO®. Id. at ¶ 5. LEXAPRO® has been prescribed for more than 15 million adults in the United States for the treatment of depression and generalized anxiety disorder ("GAD") in adults. Id. Currently, more than 19 million American adults suffer from depression and 4 million American adults suffer from GAD. Id.

On December 22, 2000, Forest filed an intent-to-use application with the United States Patent and Trademark Office ("PTO") for the mark LEXAPRO® for "pharmaceutical preparations, namely antidepressants," which means that Forest is entitled to presumptive use from that date forward. Id. at ¶ 6. Forest registered and obtained rights to the domain name "lexapro.com" on January 22, 2001. Id. at ¶ 7.

On March 23, 2001, Forest submitted a new drug application with the United States Food and Drug Administration ("FDA"), which was touted in the press. Agovino Decl. at ¶ 9. On January 24, 2002, Forest disclosed that it had received an "approvable" letter from the FDA for LEXAPRO®, which represents the final stage before a company receives FDA clearance to

3

market a drug in the Unites States. Second Declaration of Eric M. Agovino (Agovino Decl.) ¶
4. The very next day after Forest had achieved significant press for LEXAPRO® and after it had
filed its intent-to-use application for LEXAPRO®, the Defendant registered and obtained rights
to the domain name "lexipro.com." Agovino Decl., ¶ 10. "Lexipro" is a common misspelling for
Forest's LEXAPRO® mark and, on information and belief, Mr. Defendant registered
"lexipro.com" only because he sought to capitalize on the good will that LEXAPRO® brand has
obtained in the marketplace. Id. at ¶ 10.

Forest's LEXAPRO® mark is extremely well known. In 2003, Forest sold $244,730,000
of LEXAPRO® product and had a market share of 12% of the antidepressant market; in 2004,
LEXAPRO® had sales of $1,088,957,000 and a 16.7% market share; by 2005 LEXAPRO® had
sales of $1,605,296,000 with a 19.0% market share; by 2006 LEXAPRO® had sales of
$1,873,255,000 with a 20.1% market share; and in 2007 LEXAPRO® has had $2,105,999,000
and an 17.5% market share. LEXAPRO® sales to date are: $6,918,228,000. Second Declaration
of Eric Agovino at ¶¶ 6-11.

On February 4, 2003, the PTO issued a federal registration for LEXAPRO® (Reg. No.
2,684,432). First Agovino Dec. at ¶ 11.

**Defendant's Infringing Activities**

In early August 2007, it came to Forest's attention through its marketing department that
someone had registered and was making improper use of the domain name "lexipro.com." Id. at
¶ 13. In particular, Defendant linked his "lexipro.com" site to, *inter alia*, a number of on-line
pharmacies that offered unauthorized drugs for sale, both in the United States and in other
countries. Even worse, the sale of unregulated drugs by rogue online pharmacies presents a well
established public safety issue. Id. Forest's further investigation disclosed that "lexipro.com" is

4

registered to an individual by the name of Leif Nissen, the Defendant in the present action. Id. at ¶ 14.

**Defendant's New York Contacts**

On August 1, 2007, Forest wrote to Defendant and requested that he cease and desist from his unlawful activities in connection with his use of the domain name "lexipro.com." Id. Forest did not request that Defendant transfer the domain name nor did Forest offer Defendant any money. Id. On August 1, 2007, Defendant wrote back to Forest and admitted to placing "lexipro.com" on a pay-per-click site called "Parked.Com." Id. at ¶ 15.[1] In Defendant's August 1, 2007 electronic communication to Forest, he offered to sell the "lexipro.com" domain name to Forest for $10,000 or he would sell the name to offshore companies. Agovino Decl., ¶ 16.

On or about August 14, 2007, Forest's outside trademark counsel sent a cease and desist letter to the pay-per-click site Parked.Com and demanded that it cease providing services in connection with "lexipro.com." Id. at ¶ 17. That same day, Parked.Com terminated its relationship with Defendant. Id. at ¶ 18. This was not enough for Defendant. Instead of leaving matters well enough alone, on August 14, 2007, Defendant again reached out to Forest in New York and attempted to further extort Forest. He stated via electronic communication:

---

[1] Parked.Com is an on-line advertising business that services owners of domain names. Affidavit of Sigmund Solares, ¶ 1. Both Parked.Com and Defendant collected advertising dollars each time someone clicks on an advertised site, which in turn provide a portion of those monies to those who own the particular domain names in question, like Defendant. Id. at ¶ 4. Thus, when someone types "www.lexipro.com" as a web address the user thinks that he/she will locate sites that are sponsored by Forest in connection with the name LEXAPRO®. Id. Instead, the user is directed away from Forest's LEXAPRO® brand and directed to a variety of rogue on-line pharmacies and other sites. In order to increase the likelihood that those interested in depression in general and LEXAPRO® in particular were directed to Defendant's "lexipro.com" web site, Defendant selected the primary keyword "depression." Id. at 6. As a result of Defendant's selection of the keyword "depression," the Parked system selected the additional keywords "LEXAPRO" and "CELEXA," both of which are registered Forest trademarks. Id. at ¶ 7. Those advertisers who bid on the word "lexipro" were prominently displayed on the "lexipro.com" website, including advertisers for on-line pharmacies. Id. at ¶¶ 9, 11. From May 23, 2007 until the domain name "lexipro.com" was shut down by Order of Judge Swain, the domain name "lexipro.com" had 1,410 visitors with 1,243 verified clicks. Id. at ¶ 10.

> Well, you've gotten parked.com<http://parked.com> to stop running ads on the site. Being that you're being so reasonable, maybe I'll sell it to a webmaster in Pakistan who will put a porn site on it. Let's start being reasonable here before I do something stupid. There are 10+ domain parking companies if that's really the tactic you want to take.

Id. at ¶ 19. On or about August 14, 2007, Defendant made true on his threat and displayed the "lexipro.com" domain name on another pay-per-click site called SEDO. This new site also links users to rogue on-line pharmacies that sell bootleg LEXAPRO®. Id. at ¶ 20. Both SEDO and Defendant have received advertising dollars in connection with their improper activities. Id. at ¶ 20.

## ARGUMENT

## I.    THE DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION IN NEW YORK

At this early stage of the litigation, before any discovery had been taken on jurisdictional or other matters, a Plaintiff "need make only a *prima facie* showing of jurisdiction. . . all pleadings and affidavits must be construed in a light most favorable to plaintiff and all doubts resolved in its favor." To survive a motion to dismiss, Forest need only make a *prima facie* showing that jurisdiction exists. Tuxxedo Network, Inc. v. Hughes Comm. Carrier Services, Inc., 753 F. Supp. 514, 516-17 (S.D.N.Y. 1990) (citations omitted).

As set forth below, case law in this district has held that a defendant is subject to personal jurisdiction here when he attempts to improperly extract a payment from a trademark holder who resides in New York. The present Defendant made two unsolicited attempts to extort a payment from Forest prior to this litigation. First, when Forest sent Defendant a cease and desist letter on August 1, 2007, Defendant responded by offering to sell the domain name for $10,000 or he might sell it to offshore companies. Agovino Dec., ¶ 15, Ex. D. Second, when Forest sent a cease and desist letter to the "pay-per-click" site Parked.Com on August 14, 2007, Defendant

6

implicitly reiterated his request for money by threatening to place the domain on other pay-per-click sites (which he subsequently did) and to sell the domain name to a pornographic webmaster in Pakistan unless Forest started to be "reasonable" with Defendant. Agovino Decl., ¶ 19, Ex. G. On the eve of Judge Swain's Order dated August 21, 2007 granting Forest's request for a TRO, Defendant again wrote and requested that he "wanted a peaceful solution that gives me a fair payout. The law is clear that these blatant attempts at extortion subject Defendant to personal jurisdiction in New York. Third Serbagi Decl., ¶ 4, Ex. C.

### A.     Personal Jurisdiction is Proper Under CPLR § 302(a)(1)

The transaction of business prong of CPLR Section 302(a)(1) confers jurisdiction over "a defendant who purposefully avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws," where the cause of action arises out of the subject matter of the business transacted. See, e.g., Viacom Intern., Inc. v. Melvin Simon Productions, 774 F. Supp. 858, 862 (S.D.N.Y. 1991). New York courts look to the totality of circumstances to determine whether the defendant has engaged in some purposeful activity in New York in connection with the matter in controversy. Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000). A single transaction of business is sufficient to give rise to jurisdiction under CPLR § 302(a)(1), even where the defendant never enters the state, if the claim arises out of the transaction. Id.

The Defendant's effort to extort money from a Plaintiff by offering to sell a domain name is transacting business sufficient to confer jurisdiction under C.P.L.R. § 302(a)(1). Smart Ideas, 99 Civ. 8921 (S.D.N.Y. Dec. 15, 1999) (holding that Defendant's efforts to sell its domain name "msdwonline.com" to Morgan Stanley were in effect transaction of business sufficient to confer jurisdiction under CPLR 302(a)(1)); Radio Computing Services, Inc. v. Roland Computing

Services, 2003 U.S. Dist. LEXIS 3645, *4 (S.D.N.Y. Mar. 12, 2003) (holding that an offer to sell a domain name constitutes doing business pursuant to C.P.L.R. 302(a)(1)). In the Smart Ideas case, the issue was whether the Defendant's offer to sell an infringing domain name to Morgan Stanley was sufficient to constitute personal jurisdiction in New York. Judge Hellerstein held:

> The services rendered in the state that they offer is the elimination of a confusingly similar name if their outrageous terms are accepted. That's business. **It may not be nice business, but it's business.**

Fourth Serbagi Decl., Ex. B, at 8-9 (emphasis added). In the Radio Computing case, the court found there was no personal jurisdiction over the Defendant only because, as opposed to the facts in the present case, "it was the plaintiff who contacted defendant repeatedly and continuously over a three year period of time making requests to buy the domain name." Id. The Court recognized that an offer to sell a domain name to a party in New York sufficient to confer jurisdiction under C.P.L.R. 302(a)(1). The Radio Commuting court, specifically and extensively relied on the law set forth in Judge Hellerstein's opinion in the Smart Ideas case, stated:

> Judge Hellerstein found that the defendant's offers to sell its domain name, "msdwonline.com," to Morgan Stanley for a high price were in effect the transaction of business sufficient to confer jurisdiction under CPLR 302(a)(1).

Id. at *4.

Similar to the Defendant in the Smart Ideas case, the Defendant here transacted business in New York by threatening to sell the confusingly similar "lexipro.com" to web masters in Pakistan unless Forest succumbed to his extortion. Judge Hellerstein recognized that this conduct constituted personal jurisdiction under C.P.L.R. § 302(a)(1) and this Court should also so find.

**B. New York Had Personal Jurisdiction Over Defendant Pursuant to 302(a)(2)**

CPLRR 302(a)(2) provides that "a court may exercise personal jurisdiction over any non-domiciliary . .who in person or through an agent . . . commits a tortious act within the state." Many courts have held that unauthorized use of a trademark constitutes a tort for purposes of CPLR 302(a). Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 639 (2d Cir.), cert denied, 352 U.S. 913 (1956); Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc., 779 F. Supp. 335, 337 (S.D.N.Y. 1991); Honda Assocs. v. Nozawa Trading, Inc., 374 F. Supp.. 886, 889-89 (S.D.N.Y. 1974). It is also well established that the tort of trademark infringement is deemed to occur at the place of were goods or services labeled with an infringing mark are sold or offered for sale. Vanity Fair, 234 F.2d at 639; Dave Guardala Mouthpieces, 779 F. Supp. at 337; Honda, 374 F. Supp. at 888-89.

As a result, in many cases involving trademark and copyright infringement, courts have held that the transmission into New York of advertising material bearing infringing trademarks or service marks, in connection with sales solicitation, constitutes the commission of a tortious act "within" the state of New York for purposes of CPLR 302(a)(2). See, e.g., Pilates, Inc. v. Pilates Institute, Inc., 891F. Supp. 175, 181-82 (S.D.N.Y. 1995); Dave Guardala, 779 F. Supp. at 337-38; Business Trends Analysis v. Freedonia Group, Inc., 650 F. Supp. 1452, 1455-56 (S.D.N.Y. 1987); German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co., 569 F. Supp. 1529, 1532 (S.D.N.Y. 1983); Transamerica Corp. v. Transfer Planning, Inc., 419 F. Supp. 1261, 1262-63 (S.D.N.Y. 1976); Honda, 374 F. Supp. at 888-89; Basquiat v. Kemper Snowboards, No. 96 Civ. 0185, 1997 U.S. Dist. LEXIS 12653, at *9-*13 (S.D.N.Y. 1997) (CPLR 302(a)(2) applied to find jurisdiction over persons who shipped infringing copyrighted material into the state, notwithstanding defendant not physically present).

Defendant has propounded the incredible argument that it is not subject to jurisdiction in New York because the parked services he employed were somehow independent tortfeasors who transmitted infringing material into this district without his knowledge or participation. Def's Memo, at 4-6. Defendant's story defies reason. Defendant obviously initiated a relationship with all parked services so they would perform their primary function, i.e. park advertisements on his "lexipro.com" web site so that those who type in "lexipro.com" would be presented with relevant advertisements. In this way, both the parked services and Defendant maximized their profits because the more consumers who clicked on a "lexipro.com" advertisement, the more money Defendant and the parked services made. By his own admission, this is exactly why Defendant chose the keyword "depression." He knew that LEXAPRO® is an anti-depressant and he wanted those interested in that drug to click on the on-line pharmacies and other advertisements presented on this web site.

### C. Personal Jurisdiction is Proper Under CPLR 302(a)(3)

C.P.L.R. § 302(a)(3) provides in part that:

> a court may exercise personal jurisdiction over any non-domiciliary . . . who commits a tortious act without the state causing injury to a person or property within the state . . . if he . . .expects or reasonably should have expected the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y.C.P.L.R. § 302(a)(3) (McKinney 1997). The law in this Circuit is clear: a non-resident defendant who offers a domain name for sale to a New York resident for the purpose of extorting a payment from the trademark holder has committed a tort outside the district, which he should reasonably expect to have consequences in the state. Cello Holdings, L.L.C. v. Lawrence-Dahl Companies, 89 F. Supp.2d 464, 470 (S.D.N.Y. 2000) (holding that defendant's efforts to sell an allegedly infringing domain name to Plaintiff in New York constituted personal jurisdiction

10

under C.P.L.R. § 302(a)(3)). In the <u>Cello Holdings</u> case, the Defendant registered the domain name "cello.com" and attempted to sell it to the Plaintiff. The Plaintiff argued that Cello, like Defendant, was aware of the Plaintiff and therefore "surely knew, or should have known, that any such efforts would have an impact in New York."[2] <u>Id</u>. He telephoned Cello twice and sent an e-mail to Cornell, and thus he 'reached out' and 'originated' contacts with New York." <u>Id</u>. at 471. Under these circumstances, the Court held that the Defendant "purposefully availed himself of the benefits of doing business in New York. See <u>Deleo v. Zconnexx Corp.</u>, No. 00-CV-0319(E)(F), 2001 U.S. Dist. LEXIS 7641, at *7-8 (W.D.N.Y. June 6, 2001) (holding that Defendant's alleged scheme to deprive plaintiff of its interest in domain name subjected Defendant to personal jurisdiction in New York pursuant to CPLR § 302(a)(3)); <u>see also</u> <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1321-22 (9th Cir. 1998) (holding that trial court's jurisdictional finding was proper based on Defendant's scheme to extort money from Panavision to pay money for its domain name).

In <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316 (9th Cir. 1998), the defendant registered PANAVISION.COM and had attempted and failed to persuade the owner of the famous PANAVISION trademark to pay a substantial ransom for the domain name. 141 F.3d at 1319. Notwithstanding the linking of PANAVISION.COM with a web site displaying photographs of the town of Pana, Illinois, the Ninth Circuit held that the defendant was required to stand trial in California, where his intended target and victim was located. <u>Id.</u> at. 1322.

Likewise, in <u>Morgan Stanley Dean Witter & Co. v. Smart Ideas</u>, 99 Civ. 8921 (S.D.N.Y. Dec. 15, 1999), the California based Defendant, Smart Ideas, registered and used the domain name msdwonline.com. Fourth Serbagi Decl., Ex. A, at 5. When Morgan Stanley learned of

---

[2] Defendant admitted at the August 20, 2007 hearing before Judge Swain that "sometime after he registered the domain name 'lexipro.com,' I learned that a drug company, apparently the plaintiff, was intending to start selling a drug that would be called "lexapro."

Smart Ideas' actions, a Morgan Stanley employee contacted Smart Ideas and requested that it voluntarily "part with" the domain name. Id. Smart Ideas responded with an offer to sell the domain name and Morgan Stanley responded with an offer of $10,000. Id. at 6. Smart Ideas countered with an offer of $75,000. Id. Under these circumstances, and even though it was Morgan Stanley that made the first settlement contact, Morgan Stanley argued that this Court had personal jurisdiction over the Smart Ideas because it had committed a tortuous act outside the district having impact in the district. In particular, Morgan Stanley argued:

> Indeed, it is well-established that establishing an infringing domain name with the intention of extorting money from the trademark owner is, without more, a tortuous act.

Id. at 15. Judge Hellerstein accepted this argument and found that Smart Ideas was subject to personal jurisdiction in New York based on its effort to "attack Morgan Stanley and extort money from Morgan Stanley because of a confusingly similar domain name that was created for no legitimate purpose." Id. at Ex. B, at p. 12.

The present facts are far more egregious than in the Smart Ideas case and the maintenance of personal jurisdiction far more appropriate here. The present Defendant unilaterally and repeatedly attempted to extort money from Forest or he would sell the confusingly similar "lexipro.com" overseas to those who would use it for pornography. That a well known pharmaceutical is at issue renders the situation even more grave, especially since the Defendant advertised on-line pharmacies on his site. Defendant is subject to personal jurisdiction in New York.

### D. Defendant Cannot Avoid New York Jurisdiction By Now Arguing That He Was Only Attempting To "Settle" A Dispute

Defendant attempts to avoid the import of the case law by euphemistically characterizing his attempts at extortion as settlement offers that Forest initiated. The written correspondence

between the parties demonstrates that this is simply not the case. When Forest learned about "lexipro.com" in August 2007, it wrote him a letter asking him to cease and desist from his improper use of the mark. Agovino Decl., ¶ 14, Ex. C. In response, and <u>before Forest commenced this action</u>, Defendant unilaterally offered to sell "lexipro.com" to Forest for ten thousand dollars or he might sell it overseas. <u>Id.</u> at ¶ 15, Ex. D. <u>Forest did not substantively respond to this communication</u>. Instead, Forest sent a cease and desist letter to the parked site that Defendant employed. <u>Id.</u> at ¶ 17, Ex. E. When the parked site complied with Forest's demands and shut down the site linked to "lexipro.com," Defendant again <u>unilaterally</u> reached out to Forest and threatened to sell "lexipro.com" to a web master in Pakistan who would use it for pornographic purposes unless Forest complied with his demand. <u>Id.</u> at ¶ 19, Ex. G. The written correspondence between the partes demonstrates that Forest did not initiate the discussions about a sale. Even if the present discussions were for settlement, F.R.E. 408 only insulates statements when offered to prove "liability for, invalidity of, or amount of a claim that was disputed . . ." or when offered "to impeach through a prior inconsistent statement or contradiction." F.R.E. 408.[3]

In the <u>Smart Ideas</u> case, when Morgan Stanley learned that Smart Ideas was using the MSDWONLINE.COM domain name, it initiated contact by asking if Defendant was willing voluntarily to "part with" the domain name MSDWONLINE.COM. Smart Ideas responded with a request for Morgan Stanley to purchase the name and Morgan Stanley offered Smart Ideas $10,000 in consideration of an assignment of the domain name. <u>Id.</u> Smart Ideas countered with a counter for $75,000.00 and when Morgan Stanley rejected the offer, Smart Ideas countered with another offer for $50,000 and stated that Morgan Stanley should purchase the "online"

---

[3] Here, Forest offers the statements for the purpose of showing that Defendant reached out to this forum to extort Forest. Defendant argues that Rule 408 insulates Defendant's statements for any purpose, but no member of the Bar could possibly think that Rule 408 applies under these circumstances. Def's Memo. at 10.

designation because all of its competitors were providing online trading. Id. The Defendant's current counsel represented to Judge Hellerstein that Smart Ideas' efforts constituted "extortion" and Judge Hellerstein accepted that argument and found that the Smart Ideas was subject to jurisdiction in New York based on his attempt to extort Morgan Stanley. Id. Defendant failed to even cite this case in its moving papers.

First, there is far more evidence that the present Defendant reached out to New York than was present in the Smart Ideas case. Here, unlike in the Smart Ideas case, Forest never invited settlement discussions by asking whether Defendant would voluntarily part with "lexipro.com" – Forest simply asked Defendant to cease and desist from his infringing activities.   In the Smart Ideas case, the Defendant unilaterally offered $10,000; here, Forest never offered any money to Defendant.

Second, there is far more evidence of extortion in the present case than in Smart Ideas. The nature of the communication in Smart Ideas was innocuous compared to Defendant's overt threats in the present case. In Smart Ideas, the Defendant merely suggested that Morgan Stanley keep pace with its competitors; here, Defendant threatened to sell the confusingly similar "lexipro.com" to web masters in Pakistan would use it for pornography unless Forest paid Defendant $10,000. Judge Hellerstein found that Smart Ideas' relatively innocuous suggestion constituted extortion. Thus, there is far more reason to find that Defendant's unlawful attempts at extortion subject him to jurisdiction in this district than was present in Smart Ideas and the other cases Forest cites herein.

### E.  Personal Jurisdiction over the Defendant Comports With Constitutional Due Process

Personal jurisdiction over the Defendant in New York comports with the requirements of Due Process Clause of the Fourteenth Amendment.  First, due process requires that a non-resident defendant "purposely direct his activities at residents of the forum."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).  Second, the exercise of jurisdiction must "comport with fair play and substantial justice."  Id. at 476 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 91945)).

The Defendant repeatedly and purposefully directed his activities at this forum by (i) using the domain name "lexipro.com" after he learned about Forest's LEXAPRO® mark and knew it would be a "problem;" (ii) permitting advertisements to be placed on his "lexipro.com" web site when he knew that Forest would be harmed and consumers in this District would be confused; and (iii) most significantly, reaching out to this forum by making two unsolicited pre-litigation attempts to extort money from Forest.   Under these circumstances, it comports with substantial justice and fair play to require the Defendant to appear before this Court, which is located in the very district in which the Defendant's allegedly infringing and purposeful acts were directed.  See Deleo, 2001 U.S. Dist. LEXIS 7641, at *7-*8 (holding that maintenance of suit against the Defendant in New York comported with Due Process where the Plaintiff made a *prima facie* showing that the Defendant  knew the impact of its actions would be felt by the Plaintiff where it is located).

The exercise of personal jurisdiction over the Defendant in New York is entirely proper.

## II.    VENUE IS PROPER IN THE SOUTHERN DISTRICT OF NEW YORK

Absent a formal hearing, to avoid a motion to dismiss for improper venue a plaintiff need only make a *prima facie* showing of venue. Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005). All facts must be construed in a light most favorable to the plaintiff. Exovir, Inc. v. Mandel, No. 94 Civ. 3546, 1995 U.S. Dist. LEXIS 9667 (S.D.N.Y. July 12, 1995). In ruling on the motion, the court may rely on facts and consider documents outside the complaint. Concesionaria D.H.M, S.A. v. Int'l Fin Corp., 307 F. Suppp. 2d 553, 555 (S.D.N.Y. 2004).

28 U.S.C. § 1391(b) provides, *inter alia*, that venue is proper where a substantial part of the events . . . giving rise to the claim occurred. Determining whether events are sufficiently substantial to support venue is not achieved "by simply adding up the number of contacts." Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 433 (2d Cir. 2005). Rather, the putatively substantial acts must "bear a close nexus to the claims" in issue. Id. at 433.

Several cases in this district have defined the "substantial part" requirement in trademark infringement cases as follows: For venue in a trademark infringement case to be proper, the defendant must have aimed its marketing and advertising at the district or have sold its infringing goods there. G.F.C. Fashions, Ltd. v. Goody's Family Clothing, Inc., No. 97 Civ. 0730, 1998 WL 78292 (S.D.N.Y. Feb, 24, 1998). If there is active marketing or advertising in a district, selling even nominal amounts of an infringing product meets the substantiality requirement. Metro Opera Ass'n Naxos of Am., Inc., No. 98 Civ. 7858, 2000 U.S. Dist. LEXIS 9834 (S.D.N.Y. July 18, 2000). Venue may be appropriate in multiple districts so long as the substantiality test is fulfilled. Gulf Ins. Co., 417 F.3d at 356-57. The "substantial part" requirement does not prevent laying venue in a particular district, "even if a greater portion of the events occurred elsewhere." Concesionaria DHM, 307 F. Supp. 2d at 559. The purpose of

the venue statutes is to protect the defendant against a plaintiff's inconvenient or unfair selection of trial location.  Leroy v. Great W. United Corp., 443 U.S. 173, 183-84 (1979).

Venue is proper and entirely fair in New York because the Defendant has, *vis-à-vis* its infringing "lexipro.com" website, directed advertising and pursued efforts to market here.[4]  In deciding whether Defendant's "lexipro.com" website satisfies the requirements for venue, a court should apply the same principles developed to determine whether a website confers personal jurisdiction.  See Metropolitan Opera Ass'n, 2000 WL 987265, at *3-*4 (relying on cases involving websites and personal jurisdiction to determine proper venue).  While it is true that a guiding principle is that the creation of a website—which by its nature can be viewed anywhere—should not permit suit in every judicial district in the United States, the significance of the "website shifts to the extent that there is any interaction between [the defendant] and New York residents.  Citigroup Inc., 97 F. Supp. 2d at 567.  Courts associate interactive websites with advertising purposefully directed toward the forum state.  See, e.g., IA, Inc. v. Thermacell Techs., Inc., 983 F. Supp. 697, 701 (E.D. Mich. 1997) (finding venue proper where misrepresentations that underlie trademark infringement claim are made on interactive website).

The Defendant argues that New York is an inconvenient forum because he is located in Florida.  If this allegation were sufficient, any non-New Yorker could avoid litigation in New York merely by alleging that it is inconvenient to litigate here.  While it may be true that some of the potential witnesses are located in Florida, Forest has a number of witnesses it would need to call in New York, including witnesses attesting to (i) the strength of Forest's LEXAPRO®

---

[4] The "lexipro.com" website is not passive by any stretch of the imagination but entirely active. Each of the advertisements that the Defendant (and the parked sites he employed) posted on his web site provided goods and services that consumers could purchase simply be clicking the respective link.

trademark; (ii) the channels of trade in which it travels; (iii) the sophistication of the relevant purchasers; (iii) Forest's knowledge of Defendant's use of the domain name "lexipro.com;" (iii) the general public awareness of LEXAPRO®; and (iii) Defendant's unilateral written communications with Forest employees to extort money from Forest.

The Defendant has acknowledged that "between April 2004 and May 2007, the domain name 'lexipro.com' was 'parked' with a company called 'Domainsponsor' ('DMS')." Def's Memo, at 4. DMS is a service of Oversee.net, which is a company located in Los Angeles, California. Forest will likely need to call a witness from DMS at trial. Id. The Defendant admits to parking "lexipro.com" with another company, SEDO, which is a company located in Cambridge, Massachusetts. Forest will likely need to call a witness from DMS at trial. _ Forest is also likely to need to call a witness from the registrar of the domain name "lexipro.com," Enom, Inc., which is a company located in Bellevue, Washington. In short, most of the witnesses are located in New York and other states.

To the extent that Defendant is inconvenienced in having to litigate in New York, this is a situation of his own making and Forest should not be further burdened by being forced to litigate in Florida when Defendant made such concerted efforts to direct his activities to New York. When Forest first learned of Defendant's infringing behavior, Forest immediately requested that Defendant simply cease and desist. Not only did the Defendant refuse, he insisted on three different occasions that Forest submit to his extortion or he would sell "lexipro.com" to web masters in Pakistan who would use it for pornography. At every turn, the Defendant has taken aggressive action which necessitates the continued litigation of Forest's claims. Venue is as proper, convenient, and fair in New York as it would be in any other forum.

## **CONCLUSION**

For all the foregoing reasons, Forest respectfully requests that the Court deny

Defendant's motion to dismiss the Amended Complaint for lack of personal jurisdiction and

venue and such other relief as the Court may deem just and proper.

Dated:  New York, New York
       October \_\_\_, 2007

                                      Respectfully Submitted,

                             By:_____

                                 CHRISTOPHER SERBAGI, ESQ.
                                 Law Offices of Christopher Serbagi
                                 488 Madison Avenue, Suite 1120
                                 New York, New York  10022
                                 (212) 593-2112

                                 Attorney for Plaintiff