# EXHIBIT M

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORGAN STANLEY DEAN WITTER & CO.,

Plaintiff,

v.

SMART IDEAS,

Defendant.

Civil Action No. 99 CIV. 8921 (AKH)

Judge Hellerstein

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS FOR ALLEGED LACK OF PERSONAL JURISDICTION**

James W. Dabney
Jonathan E. Moskin
Katharine E. Smith
Catherine M. Clayton

Of Counsel

PENNIE & EDMONDS LLP
1155 Avenue of the Americas
New York, New York 10036
(212) 790-9090

Attorneys for Plaintiff
Morgan Stanley Dean Witter & Co.

October 19, 1999

**TABLE OF CONTENTS**

**FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Defendant's Registration and Use of
New York Investment Banking Names . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Defendant's Expected and Intended Impact on MSDW
Events Precipitating This Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Events Precipitating This Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Course of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7


**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.     THE COURT HAS PERSONAL JURISDICTION TO DETERMINE
       MSDW'S INTENTIONAL TORT CLAIMS AGAINST DEFENDANT . . . . . . . . . . . . 9

       A.     Defendant is Subject to Personal Jurisdiction . . . . . . . . . . . . . . . . . . . . . . 9

              1.     Defendant, On Its Own and Through Its Agent
                     and Co-Conspirator HotYellow, Has Committed
                     Multiple Tortious Acts Within New York . . . . . . . . . . . . . . . . . . . . 10

                     a.     HotYellow as Defendant's Agent . . . . . . . . . . . . . . . . . . . 13

                     b.     HotYellow as Defendant's Co-Conspirator . . . . . . . . . . 13

              2.     Defendant Has Caused Injury in New York
                     and Regularly Solicits Business in New York . . . . . . . . . . . . . . . . . . 14

              3.     Defendant Has Both Transacted Business Within
                     and Contracted to Supply Services in New York . . . . . . . . . . . . . . . . 17

       B.     The Due Process Clause Does Not Prevent the Exercise of Jurisdiction . . . . . . . 19


II.    THE COURT HAS IN REM JURISDICTION TO DETERMINE
       MSDW'S AND DEFENDANT'S RIVAL CLAIMS OF INTEREST
       IN THE DOMAIN NAME REGISTRATIONS WHICH NSI HAS
       DEPOSITED WITH THIS COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21


**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

*American Network, Inc. v. Access America/Connect Atlanta, Inc.,*
   975 F. Supp. 494 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 20

*Basquiat v. Kemper Snowboards,*
   No. 96 Civ. 0185, 1997 U.S. Dist. LEXIS 12653 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . 11

*Bensusan Restaurant Corp. v. King,*
   126 F.3d 25 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Business Trends Analysts v. Freedonia Group, Inc.,*
   650 F. Supp. 1452 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Chrysler Capital Corp. v. Century Power Corp.,*
   778 F. Supp. 1260 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Colonial Penn Group, Inc. v. Colonial Deposit Co.,*
   834 F.2d 229 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*D'Amato v. Lichine USA Co.,*
   No. 92 Civ. 8424 (LBS), 1993 U.S. Dist. LEXIS 15153 (S.D.N.Y. Oct. 27, 1993) . . . . . . 13

*Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.,*
   779 F. Supp. 335 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Emerson Power Transmission Corp. v. Roller Bearing Co. of America,*
   922 F. Supp. 1306 (N.D. Ind. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Exovir, Inc. v. Mandel,*
   No. 94 Civ. 3546, 1995 U.S. Dist. LEXIS 9677 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . 11

*G.H. Bass & Co. v. Wakefern Food Corp.,*
   No. 91 Civ. 2683, 1991 U.S. Dist. LEXIS 18344 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . 11

*Gateway 2000, Inc. v. Cyrix Corp.,*
   942 F. Supp. 985 (D.N.J. 1996); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

i

Page(s)

*German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.,*
 569 F. Supp. 1529 (S.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Greenky v. Irving Music, Inc.,*
 217 U.S.P.Q. 750 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hearst Corp. v. Goldberger,*
 1997 U.S. Dist. LEXIS 2065 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Heritage House Frame & Moulding Co. v. Boyce Highlands Furniture,*
 88 F.R.D. 172 (E.D.N.Y. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Honda Assocs. V. Nozawa Trading, Inc.,*
 374 F. Supp. 886 (S.D.N.Y. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Hubbell Inc. v. Pass & Seymour Inc.,*
 883 F. Supp. 955 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Inset Systems, Inc. v. Instruction Set, Inc.,*
 937 F. Supp. 161 (D. Conn. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Intermatic Inc. v. Toeppen,*
 947 F. Supp. 1227 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

*Jews for Jesus v. Brodsky, ,*
 993 F. Supp. 282 (D. N.J. 1998), *aff'd,* 159 F.3d 1351 (3d Cir. 1998) . . . . . . . . . . . . . . . 15

*K.C.P.L., Inc. v. Nash,*
 49 U.S.P.Q. 2d 1584 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*La Chemise LaCoste v. Alligator Co.,*
 506 F.2d 339 (3d Cir.), *cert. denied,* 421 U.S. 937 (1975) . . . . . . . . . . . . . . . . . . . . . 23

*Lehigh Valley Indus. Inc. v. Birenbaum,*
 389 F. Supp. 798 (S.D.N.Y. 1975), *aff'd,* 527 F.2d 87 (2nd Cir. 1975) . . . . . . . . . . . . . 13

*Lesportsac v. K-Mart Corp.,*
 617 F. Supp. 316 (E.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Linzer v. EMI Blackwood Music, Inc.,*
 904 F. Supp. 207 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

NY2 - 1008101.1

Page(s)

*Lipton v. The Nature Co.,*
    781 F. Supp. 1032 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Madanes v. Madanes,*
    981 F. Supp. 241  (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Marine Midland Bank, N.A. v. Miller,*
    664 F.2d 899 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17

*Maritz, Inc. v. Cybergold, Inc.,*
    947 F. Supp. 1328 (E.D. Mo. 1996 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McMaster-Carr Supply Co.  v.  Supply Depot, Inc.,*
    458 F. Supp. 1052 (S.D.N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Metropa Corp. v. Choi,*
    458 F. Supp. 1052 (S.D.N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Meyer v. Sharron,*
    1986 U.S. Dist. LEXIS 22320 (S.D.N.Y. July 24, 1986) . . . . . . . . . . . . . . . . . . . . . . . 19

*Nascimento v. Fox Lorber Associates Inc.,*
    No. 93 Civ. 1230, 1993 U.S. Dist. LEXIS 7050 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . 11

*PDK Labs, Inc. v. Friedlander,*
    103 F.3d 1105 (2d. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Panavision Int'l, L.P. v. Toeppen,*
    141 F.3d 1316 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 15, 20

*PG Media, Inc.  v.  Network Solutions, Inc.*
    51 F.  Supp.  2d 389 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Pilates, Inc. v. Current Concepts,*
    No. 96 Civ. 0043, 1996 U.S. Dist. LEXIS 15415 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . 11

*Pilates, Inc. v. Pilates Institute, Inc.,*
    891 F. Supp. 175 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Planned Parenthood,*
    42 U.S.P.Q. 2d at 1436-37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

NY2 - 1008101.1

Page(s)

*Porsche Cars North America v. Porsch.Com,*
    51 F. Supp. 2d 707 (E.D. Va. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Purco Fleet Servs. V. Towers,*
    38 F. Supp. 2d 1320 (D. Utah 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*QRM Publishing Co. v. Reed,*
    No. 86 Civ. 3222, 1986 U.S. Dist. LEXIS 24706 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . 11

*Schaffer v. Heitner,*
    433 U.S. 186 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Sierra Rutile Limited v. Katz,*
    No. 90 Civ. 4913 (JFK), 1992 U.S. Dist. LEXIS 13518 (S.D.N.Y. Sept. 9, 1992) . . . 13, 14

*Singer v. Bell,*
    585 F. Supp. 300 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Toys "R" Us v. Abir,*
    45 U.S.P.Q. 2d 1944 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Transamerica Corp. v. Transfer Planning, Inc.,*
    419 F. Supp. 1261 (S.D.N.Y. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Tuxxedo Network, Inc. v. Hughes Comm. Carrier Services, Inc.,*
    753 F. Supp. 514 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9, 13

*Umbro Int'l, Inc. v. 3263851 Canada, Inc.,*
    50 U.S.P.Q. 2d 1786 (Va. Cir. Ct. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

*Vanity Fair Mills, Inc. v. T. Eaton Co.,*
    234 F.2d 633 (2d Cir.), *cert. denied,* 352 U.S. 913 (1956) . . . . . . . . . . . . . . . . . . . . . 10

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,*
    952 F. Supp. 1119 (W.D. Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

STATE CASES

*Alan Lupton Assocs. Inc. v. Northeast Plastics Inc.,*
    105 A.D.2d 3, 482 N.Y.S.2d 647 (4th Dept. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

NY2 - 1008101.1

Page(s)

*Banco Nacional Ultramarino, S.A. v. Chan,*
  169 Misc. 2d 182, 641 N.Y.S.2d 1006 (Sup. Ct. 1996), *aff'd,* 240 A.D.2d 253,
  659 N.Y.S.2d 734 (1st Dept. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Courtroom Television v. Focus Media, Inc.,*
  695 N.Y.S.2d 17, 1999 N.Y. App. Div. LEXIS 8787, (1999) . . . . . . . . . . . . . . . . . . . . . 18

*Kreutter v. McFadden Oil Corp.,*
  71 N.Y.2d 460, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988) . . . . . . . . . . . . . . . . . . . . . . . 17

*McCasland v. McCasland,*
  68 N.Y.2d 748, 497 N.E.2d 696, 506 N.Y.S.2d 329 (1986) . . . . . . . . . . . . . . . . . . . . . . 25

## FEDERAL STATUTES

Fed. R. Civ. P. 4(n) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24, 25

Fed. R. Civ. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATE STATUTES

N.Y. Gen. Bus. Law § 360-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

NY2 - 1008101.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORGAN STANLEY DEAN WITTER & CO.,

Plaintiff,

v.

SMART IDEAS,

Defendant.

Civil Action No. 99 Civ. 8921 (AKH)

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
## TO DISMISS FOR ALLEGED LACK OF PERSONAL JURISDICTION

Plaintiff Morgan Stanley Dean Witter & Co. ("MSDW") respectfully submits this memorandum in opposition to defendant's motion to dismiss for alleged lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Defendant's motion is without merit and should be denied, because:

(1) defendant has committed intentional torts against MSDW within the State of New York, both in person and through an agent headquartered in Buffalo, New York;

(2) defendant has caused tortious injury to MSDW in New York and regularly solicits business in New York;

(3) defendant has both transacted business in and contracted to supply services in New York; and

(4) at all events, the Court has in rem jurisdiction to determine who, as between MSDW and defendant, has the superior right to the Internet domain name registrations which Network Solutions, Inc. ("NSI") has formally deposited with this Court.

## FACTUAL BACKGROUND

The defendant in this case, an entity calling itself "Smart Ideas," is a prototypical "cyber-squatter."[1] The defendant's "business" consists of (a) registering, as Internet domain names, variations of famous trademarks and service marks owned by third parties;[2] (b) using the names in advertising solicitations aimed at defendant's target "customers"; and then (c) attempting to sell – indeed, ransom – the domain name registrations for large sums when the affected trademark owners learn of the defendant's actions. Defendant's assertion that its "business" was set up "to promote their teenage sons' hobbies" (Def. Mem. at 3) is false and sharply disputed.

### Defendant's Registration and Use of
### New York Investment Banking Names

The defendant in this case has targeted MSDW and the New York investment banking community with particular precision and malice. In addition to having registered, for its exclusive use, the Internet domain names MORGANSTANLEYDIRECT.COM, MSDWSTOCKTRADE.COM, MSDWONLINE.COM, and MSDWTRADING.COM, all variations of famous trademarks and service marks owned and used by MSDW, this defendant has also registered GOLDMANSACHSDIRECT.COM, JPMORGANONLINE.COM, SMITHBARNEYDIRECT.COM, SMITHBARNEYONLINE.COM,

---

[1]    The term "cyber-squatter" refers to a person "who steals valuable trademarks and establishes domain names on the Internet using these trademarks to sell the domain names to the rightful trademark owners." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1318 (9th Cir. 1998). *See also Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227, 1233 (N.D. Ill. 1996) (a "cyber-squatter . . . attempt[s] to profit from the Internet by reserving and later reselling or licensing domain names back to the companies that spent millions of dollars developing the goodwill of the trademark").

[2]    For a general description of how Internet domain names are registered, *see PG Media, Inc. v. Network Solutions, Inc.*, 51 F. Supp. 2d 389 (S.D.N.Y. 1999) (Patterson, J.).

NY2 - 1001998.2

MERILLLYNCHDIRECT.COM, and CITICORPDIRECT.COM. (Declaration of Garland Stephens, sworn to October 19, 1999 [hereinafter "Stephens Decl."] ¶ 3 & Ex. 17) Defendant has also registered, in manifest bad faith, such other domain names as SARALEEONLINE.COM, CIGNAONLINE.COM, AMOCOONLINE.COM, and AMOCODIRECT.COM (id.). Defendant effected each of these registrations by means of express contracts with NSI, the registrar of the top level ".com" Internet domain (id. ¶ 2 & Ex. 18).

In furtherance of its scheme to misappropriate and ransom the above-described Internet domain names, defendant entered into one or more further contracts with HotYellow98.Com, Inc. ("HotYellow"), a corporation headquartered in Buffalo, New York (id. ¶¶ 5-6 & Exs. 19&20). Defendant and HotYellow openly and notoriously use MORGANSTANLEYDIRECT.COM, MSDWSTOCKTRADE.COM and other such "hot" Internet domain names registered by defendant in commercial advertisements soliciting use of "web hosting services"[3] purportedly offered by HotYellow. Prior to MSDW bringing suit, defendant and HotYellow used MDSWONLINE.COM for the same purpose (Declaration of Gol Ophir sworn to October 19, 1999 [hereinafter "Ophir Decl."] ¶ 3 & Ex. 14). A specimen of such a commercial advertisement is annexed to this memorandum as Exhibit 1 (see also Stephens Decl.¶ 7 & Ex. 21).

As is illustrated in Exhibit 1 hereto, defendant's and HotYellow's advertisements are designed to display MSDW's and others' famous trademarks in close conjunction with the

---

[3]    "Web hosting services" involve the maintenance of a computer "server" on which files containing information displayed on a particular web site reside. As part of its registration agreement with NSI, a registrant must provide the host name and Internet protocol address of a server which will connect a domain name (usually composed of a fairly memorable string of letters and numbers) to one or more assigned numerical addresses. Without establishing a connection between a domain name and a server, no user would be able to access a web site by typing its domain name into an Internet navigation program (Stephens Decl. ¶ 8).

NY2 - 1001998.2

none too subtle commercial message: "Host Your Company's Domain Name Soon or it could be NONE of your Business!"(Ophir Decl. ¶3 & Ex. 14); *see also* Stephens Decl. Ex. 21. These advertising solicitations, incorporating counterfeit replicas of MSDW registered trademarks, have been and currently are being broadcast via the Internet in and into the State of New York, by a corporation headquartered in New York, with transparent attempt to capitalize on the fame and goodwill of New York companies including MSDW.

### Defendant's Expected and Intended Impact on MSDW

MSDW is one of the nation's preeminent investment banking firms headquartered in New York, New York. MSDW has used MORGAN STANLEY as a trade name and service mark since 1935. Morgan Stanley Group, Inc. merged with Dean Witter, Discover & Co. in 1997, and since that time MSDW has used MSDW as an acronym for the name of the merged company, Morgan Stanley Dean Witter & Co. A description of MSDW's businesses and services appears at an Internet web site operated by MSDW at the address MSDW.COM. (Declaration of J. Wesley McDade, sworn to October 19, 1999 [hereinafter "McDade Decl."] Ex. 12). MSDW is the owner of the following trademarks: MORGAN STANLEY (U.S. Reg. No. 1,707,196), DEAN WITTER (U.S. Reg. No. 1,425,933), MSDW (Appl. No. 75-534,563), MSDW.COM (Appl. No. 75-546,046), and numerous other registrations and applications for service marks incorporating the words MORGAN STANLEY and DEAN WITTER. (Ophir Decl. ¶ 2 and Ex. 13).

MSDW uses and has long used the marks MORGAN STANLEY and MSDW to identify the source of financial services which it provides and has provided to clients via online communications links, including links to the Internet web site at the address MSDW.COM (McDade Decl. ¶ 4). These web-based services have included trading of stocks and permitting

NY2 - 1001998.2

direct, online access to customer account information (*id.*; Declaration of Glenn Tom, sworn to

October 19, 1999 [hereinafter "Tom Decl."] ¶ 2 & Ex. 1).

        In or about June or July 1999, MSDW decided to adopt a variant of its existing

MSDW.COM mark, MSDWONLINE.COM, to identify online brokerage services provided by

MSDW's Discover Brokerage Direct business unit (Tom Decl. ¶ 3).  As the defendant and

HotYellow had expected and anticipated would happen, MSDW soon discovered that (1)

defendant had purported to register MSDWONLINE.COM in its own name in May 1999, and (2)

defendant and HotYellow were making commercial use of the name in advertisements

exemplified by Exhibit 1 to this memorandum (Tom Decl. ¶ 4; Ophir Decl. ¶ 3 and Ex. 14;

Livingston Decl.¶ 2; McDade Decl. ¶ 6).  Defendant's and HotYellow's commercial use of

MSDWONLINE.COM was discovered by an employee working at MSDW's headquarters in

New York, who accessed and downloaded information from the MDSWONLINE.COM web site

via the personal computer in his office in New York (Ophir Decl. ¶ 3 and Ex. 2).

### Events Precipitating This Litigation

        On July 28, 1999, an employee of a marketing firm utilized by MSDW, Alejandro

Levins, contacted defendant and inquired whether defendant was willing voluntarily to "part

with" the domain named MSDWONLINE.COM (Tom Decl. ¶ 5 and Exs. 2-3).  At the time of

this initial contact, MSDW was unaware that in addition to MSDWONLINE.COM, defendant

had also registered MORGANSTANLEYDIRECT.COM and the other variants of famous

investment banking names listed above.

        On July 30, 1999, a representative of defendant sent an e-mail message to Mr.

Levins which stated:

> Smart Ideas currently has over one hundred "useful" domain
> names for sale to the highest bidder. Since these are very valuable
> assets, and "useful" domain names are becoming harder and harder
> to come by, we are not eager to dispose of them unless the price is
> right. If your client is still interested please give us an offer we
> cannot refuse (*id* Ex. 4).

Apparently without the benefit of any legal advice, Mr. Levins responded to

defendant's solicitation of an "offer we cannot refuse" and proposed to pay defendant $10,000.00

in consideration of an assignment of the domain name MSDWONLINE.COM (*id*. Exs. 4-5).

Defendant then sent another e-mail message, confirming that the domain name

MSDWONLINE.COM was available "for sale" but at a price of $75,000.00 (*id*. Ex. 6).

MSDW rejected defendant's offer (*id*. Ex. 7), following which defendant sent

MSDW another e-mail message dated August 10, 1999, which stated in part: "we have decided

to lower our asking price to $50,000 (final)" (*id*. Ex. 8). Defendant's e-mail message of August

10, 1999, left no doubt that the true nature of defendant's "business" was extortion:

> As you may not be aware, some "useful" domain names can fetch
> as much as six (6) figures or more. . . . In the areas of online
> brokerage, we have registered many relevant domain names
> covering some of the major competitors of your parent company.
> Our rationale is that all brokerage houses, which do not have
> online trading today, will eventually provide that service (like it or
> not), e.g., Solomon Smith Barney, Goldman Sachs, etc. . . . . You
> are making a big mistake for not acquiring the "best" URL for your
> company, merely to save a few bucks (*id*. Ex. 8).

Following receipt of the above communication, MSDW legal counsel became

involved. MSDW rejected defendant's $50,000 offer and withdrew its previous offer of $10,000.

(*id*. Ex. 9). Defendant then revealed to MSDW that defendant had also registered

MORGANSTANLEYDIRECT.COM and offered to "sell" that name to MSDW for the same

$50,000 it had demanded for MSDWONLINE.COM (*id*. Ex. 11). The next day, defendant

registered the domain names MSDWTRADING.COM and MSDWSTOCKTRADE.COM with

NY2 - 1001998.2

NSI (Stephens Decl. Ex. 19).  MSDW commenced this action on August 13, 1999.

**Course of Proceedings**

Following the commencement of this action, MSDW promptly notified the registrar of the ".com" domain, NSI, of the pendency of the suit.  On or about August 25, 1999, NSI delivered to MSDW, for deposit with the Court, a certificate representing all rights to control disposition of the domain names MORGANSTANLEYDIRECT.COM and MSDWONLINE.COM (Declaration of Katharine E. Smith, sworn to October 19, 1999 [hereinafter "Smith Decl."] ¶ 2 & Ex. 15).  The NSI certificates were deposited with the Court on August 27, 1999 (id. ¶ 3 & Ex. 16).

At some point subsequent to the commencement of this action, and in a transparent attempt to conceal its fraudulent ransom scheme, defendant and HotYellow changed the text matter associated with the name MSDWONLINE.COM.  Whereas previously defendant and Hot Yellow had used MSDWONLINE.COM to draw attention to commercial advertising solicitations exemplified by Exhibit 1 hereto (and defendant and HotYellow continue to use MORGANSTANLEYDIRECT.COM in this fashion), defendant and HotYellow now use the Internet domain name MSDWONLINE.COM to advertise a nonsense web site purportedly devoted to "Mud Sweat's Downhill World" (Ophir Decl. ¶ 4).

Defendant's conduct in this case is strikingly similar to the conduct of the defendant described in in *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) (upholding personal jurisdiction over "cyber-squatter" who specifically targeted the plaintiff for ransom).  In that case, the defendant had registered PANAVISION.COM with NSI and had attempted and failed to persuade the owner of the famous PANAVISION trademark to pay a substantial ransom for the domain name.  141 F.3d at 1319.  Notwithstanding the

NY2 - 1001998.2

defendant's linking of PANAVISION.COM with a web site displaying photographs of the town of Pana, Illinois, the Ninth Circuit held that the defendant was required to stand trial in California, where his intended target and victim was located. *Id.* at 1322.

Defendant's motion to dismiss understandably fails to cite the *Panavision* case, for the Ninth Circuit's reasoning and holding in *Panavision* are directly applicable to the present case. In fact, the basis of personal jurisdiction over defendant Smart Ideas in this case is even stronger than was the basis of personal jurisdiction in *Panavision*, for the defendant here not only set out to commit intentional torts against MSDW in New York, but did so with the active assistance and participation of a New York- based company, HotYellow.

Further, and regardless of whether the Court has jurisdiction over the person of the defendant, the Court unquestionably has *in rem* jurisdiction to determine who, as between MSDW and defendant, has the superior right to registration of the domain names MORGANSTANLEYDIRECT.COM and MSDWONLINE.COM. NSI has formally deposited control over those registrations with this Court. CPLR 314(2) specifically authorizes the exercise of *in rem* jurisdiction in these circumstances. Defendant's motion fails even to cite CPLR 314(2) and identifies no basis on which the Court could rightly decline to exercise *in rem* jurisdiction over the domain name registrations which NSI has deposited with it.


## ARGUMENT

At this early stage of the litigation, before any discovery has been taken on jurisdictional or other matters, MSDW "need make only a prima facie showing of jurisdiction. . . . . . All pleadings and affidavits must be construed in the light most favorable to plaintiff and all doubts resolved in its favor." *Tuxxedo Network, Inc. v. Hughes Comm. Carrier Services, Inc.*,

NY2 - 1001998.2

753 F. Supp. 514, 516-17 (S.D.N.Y. 1990) (citation omitted). *See also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997) (plaintiff need only allege a prima facie showing of personal jurisdiction). Plaintiff's burden is thus "easiest to fulfill" at the outset of the case, before discovery. *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175, 178 (S.D.N.Y. 1995).

"[I]n considering jurisdictional motions, the Court may consider evidence outside of the pleadings in reaching its decision . . . ." *Id.* at 178 n.2, *quoting American Centennial Ins. Co. v. Seguros La Republica S.A.*, 90 Civ. 2370, 1991 WL 60378 at *3 (S.D.N.Y. 1991). It is also appropriate to allow discovery on jurisdictional facts if a more complete record is required in order to resolve the motion. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

I.    **THE COURT HAS PERSONAL JURISDICTION TO DETERMINE MSDW'S INTENTIONAL TORT CLAIMS AGAINST DEFENDANT.**

Determining the existence of in personam jurisdiction is a two step process. First, the Court must determine whether state law authorizes the issuance of process against the defendant. *See PDK Labs*, 103 F.3d at 1108. Second, if authorization is found, the Court must determine whether the exercise of authorized jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *See id.* at 1110.

In the present case, CPLR 302(a) clearly authorizes the issuance of process against this defendant with respect to MSDW's claims against the defendant for intentional torts (Part I.A, *infra*). It is equally clear that this Court's exercise of in personam jurisdiction over this defendant would not offend any concept of due process (Part I.B *infra*).

A.    Defendant is Subject to Personal
        Jurisdiction Pursuant to CPLR 302

The conduct of defendant in this case falls squarely within three provisions of

9

NY2 - 1001998.2

CPLR 302(a), namely, CPLR 302(a)(2), CPLR 302(a)(3), and CPLR 302(a)(1). Each statutory section is treated in turn.

    1.       Defendant, On Its Own and Through Its Agent
                and Co-Conspirator HotYellow, Has Committed
                Multiple Tortious Acts Within New York

CPLR 302(a)(2) provides in pertinent part: "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act within the state." It is well-established that unauthorized use of a trademark constitutes a tort for purposes of CPLR 302(a). *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir.), *cert. denied*, 352 U.S. 913 (1956); *Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.*, 779 F. Supp. 335, 337 (S.D.N.Y. 1991) (Lasker, J.); *Honda Assocs. V. Nozawa Trading, Inc.*, 374 F. Supp. 886, 888-89 (S.D.N.Y. 1974) (Conner, J.). It is equally well-settled that the tort of trademark infringement is deemed to occur at the place where goods or services labeled with an infringing mark are sold or offered for sale. *Vanity Fair*, 234 F.2d at 639; *Dave Guardala Mouthpieces*, 779 F. Supp. at 337; *Honda*, 374 F. Supp. at 888-89.

Consequently, in numerous cases involving trademark and copyright infringement, courts have held that the transmission into New York of advertising material bearing infringing trademarks or service marks, in connection with sales solicitation, constitutes the commission of a tortious act "within" the State of New York for purposes of CPLR 302(a)(2). *See, e.g., Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175, 181-82 (S.D.N.Y. 1995) (Wood, J.); *Dave Guardala*, 779 F. Supp. at 337-38 ; *Business Trends Analysts v. Freedonia Group, Inc.*, 650 F. Supp. 1452, 1455-56 (S.D.N.Y. 1987) (Weinfeld, J.); *German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.*, 569 F. Supp. 1529, 1532 (S.D.N.Y. 1983) (Haight, J.); *Metropa Corp. v. Choi*, 458 F. Supp. 1052, 1054 (S.D.N.Y.

NY2 - 1001998.2

1978) (Weinfeld, J.); *Transamerica Corp. v. Transfer Planning, Inc.*, 419 F. Supp. 1261, 1262-

63 (S.D.N.Y. 1976) (Lasker, J.); *Honda*, 374 F. Supp. at 888-89; *Basquiat v. Kemper*

*Snowboards*, No. 96 Civ. 0185, 1997 U.S. Dist. LEXIS 12653, at *9-*13 (S.D.N.Y. 1997)

(Preska, J.) (CPLR 302(a)(2) applied to find jurisdiction over person who shipped infringing

copyrighted material into the state, notwithstanding defendant not physically present).[4]

     The facts of the present case are virtually indistinguishable from those on which

Judge Haight found personal jurisdiction to be present under CPLR 302(a)(2) in *German*

*Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.*, 569 F. Supp. 1529

(S.D.N.Y. 1983).  In that case, the defendant transmitted via satellite from Oregon to all public

broadcasting television stations, including those in New York, an advertisement for a television

program produced by the defendant and bearing a title which was alleged to infringe the

plaintiff's trademark. *Id.* at 1532.  The Court held that the defendant's conduct constituted the

commission of a "tortious act" within the State of New York, notwithstanding that the defendant

had committed the act by broadcasting infringing material into the state from a point outside the

state. *Id.*

     The reasoning and holding of the *German Educational Television* case are directly

applicable here.  As in the *German Educational Television* case, the defendant herein stands

charged with broadcasting into New York advertising materials which bear counterfeit replicas

of MSDW trademarks.  Jurisdiction is even more appropriate in the present case, where

defendant stands charged with directly targeting its advertisements at specific New York-based

---

[4]  *See also Pilates, Inc. v. Current Concepts*, No. 96 Civ. 0043, 1996 U.S. Dist. LEXIS 15415, at *5-*6 (S.D.N.Y. 1996) (Cedarbaum, J.); *Exovir, Inc. v. Mandel*, No. 94 Civ. 3546, 1995 U.S. Dist LEXIS 9677, at *7-*9 (S.D.N.Y. 1995) (Wood, J.); *Nascimento v. Fox Lorber Associates Inc.*, No. 93 Civ. 1230, 1993 U.S. Dist. LEXIS 7050, at *5-*6 (S.D.N.Y. 1993) (Metzner, J.); *G.H. Bass & Co. v. Wakefern Food Corp.*, No. 91 Civ. 2683, 1991 U.S. Dist. LEXIS 18344, at *8-*9 (S.D.N.Y. 1991) (Sweet, J.); *QRM Publishing Co. v. Reed*, No. 86 Civ. 3222, 1986 U.S. Dist. LEXIS 24706, at *3-*5 (S.D.N.Y. 1986) (Conner, J.).

entities including MSDW.[5]  Moreover, the defendant's contacts with New York are significantly

greater in one respect than were the defendant's contacts in *German Educational Television*, in

that the defendant herein has contracted with or licensed a New York-based entity, HotYellow, to

use the disputed names in commercial advertisements exemplified by Exhibit 1 hereto.

Because defendant itself has caused acts of trademark infringement and unfair

competition to occur within New York, jurisdiction is warranted under CPLR 302(a)(2).

Moreover, defendant and HotYellow apparently have an express contractual relationship and

HotYellow is acting in concert with defendant, if not on behalf of the defendant.  In these

circumstances, HotYellow constitutes defendant's agent and co-conspirator for purposes of

CPLR 302(a)(2).

---

[5]    Defendant's argument that CPLR 302(a)(2) supposedly excludes persons who direct and cause the commission of in-state trademark infringements from locations outside the state (Def. Mem. at 11) has been rejected by the Appellate Division, First Department, as "ignor[ing] the reality of modern banking and computer technology in the end of the twentieth century." *Banco Nacional Ultramarino, S.A. v. Chan*, 169 Misc.2d 182,188-89, 641 N.Y.S.2d 1006, 1009-10 (Sup. Ct. 1996), *aff'd*, 240 A.D.2d 253, 659 N.Y.S.2d 734 (1st Dept. 1997). "[T]he weight of authority holds that at least when the tort alleged is infringement, the physical presence of the defendant is not required for the tort to be viewed — for jurisdictional purposes — as having occurred in New York." *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175, 182 (S.D.N.Y. 1995) (Wood, J.). "A requirement of physical presence would introduce a totally artificial and unrealistic barrier to jurisdiction." *Transamerica Corp. v. Transfer Planniong, Inc.*, 419 F. Supp. 1261, 1262 (S.D.N.Y. 1976) (Lasker, J.). Even those cases which state that physical presence "generally" is required for 302(a)(2) jurisdiction recognize an exception for infringing solicitations transmitted into the state and targeted specifically at New York persons. *See Hearst Corp. v. Goldberger*, 1997 U.S. Dist. LEXIS 2065, at *43 n. 15 (S.D.N.Y. 1997) (Leisure, J.).

Thus, courts have frequently found personal jurisdiction over cybersquatters who target their activities at plaintiffs residing in the forum. *See, e.g., Purco Fleet Servs. v. Towers*, 38 F. Supp. 2d 1320, 1324-25 (D. Utah 1999); *McMaster-Carr Supply Co. v. Supply Depot, Inc.*, No. 98 C 1903, 1999 WL 417352 at *2 (N.D. Ill. June 14, 1999); *Toys "R" Us v. Abir*, 45 U.S.P.Q.2d 1944, 1947-49 (S.D.N.Y. 1997). Defendant's reliance on broad dicta in *K.C.P.L., Inc. v. Nash*, 49 U.S.P.Q.2d 1584 (S.D.N.Y. 1998) and *Bensusan Restaurant Corp. v. King*, 126 F3d 25 (2d Cir. 1997), is misplaced. Neither *K.C.P.L.* nor *Bensusan* involved a cybersquatter who targeted his activities at the forum. Defendants in both cases had plausible legitimate explanations for their activities. In *K.C.P.L.*, the defendant denied any awareness of plaintiff's REACTION mark, denied ever having demanded payments, and demonstrated his attempts to establish a legitimate Internet-based business. 49 U.S.P.Q. 2d at 1586, 1591. Nothing like such a situation exists here. In *Bensusan*, the Court declined to find jurisdiction over a purely local Missouri operation which also had a legitimate business incorporating the disputed name in a geographic area remote from the plaintiff and which never "targeted" the plaintiff or attempted to traffic in domain names. *Id.* at 29. Smart Ideas, on the other hand, is running an inherently interstate cybersquatting scheme targeted at the New York banking industry. *Bensusan* has no application here.

NY2 - 1001998.2

a.    HotYellow as Defendant's Agent

HotYellow "need not be an official agent" for its activities to subject defendant to personal jurisdiction. *Tuxxedo Network, Inc.*, 753 F. Supp. at 517. Its actions, which are analogous to an independent broker's distribution or offer for sale of infringing goods, suffice to qualify it as an "agent" under CPLR 302. *Hubbell Inc. v. Pass & Seymour Inc.*, 883 F. Supp. 955, 961 (S.D.N.Y. 1995); *Business Trends Analyst v. Freedonia Group*, 650 F. Supp. 1452, 1456 (S.D.N.Y. 1987) (Weinfeld, J.); *Heritage House Frame & Moulding Co. v. Boyce Highlands Furniture*, 88 F.R.D. 172, 173 (E.D.N.Y. 1980). Inasmuch as HotYellow undisputedly is physically present within New York and is using and broadcasting advertisements bearing the accused domain names, CPLR 302(a)(2) clearly authorizes issuance of process against defendant on account of the conduct of HotYellow. *Hubbell*, 883 F. Supp. at 961; *D'Amato v. Lichine USA Co.*, No. 92 Civ. 8424 (LBS), 1993 U.S. Dist. LEXIS 15153, at *3-*4 (S.D.N.Y. Oct. 27, 1993) (Sweet, J.).

b.    HotYellow as Defendant's Co-Conspirator

"Agents" under CPLR 302(a) also includes co-conspirators. *Lehigh Valley Indus. Inc. v. Birenbaum*, 389 F. Supp. 798 (S.D.N.Y. 1975), *aff'd*, 527 F.2d 87 (2nd Cir. 1975); *Sierra Rutile Limited v. Katz*, No. 90 Civ. 4913 (JFK), 1992 U.S. Dist. LEXIS 13518, at *24 (S.D.N.Y. Sept. 9, 1992). HotYellow is an "agent" of defendant for the further reason that HotYellow and defendant clearly have combined and conspired with each other to commit trademark infringement within the State of New York. It is well-established under New York law that the acts of a co-conspirator within a state may be attributed to an out-of-state defendant for the purpose of obtaining personal jurisdiction over that defendant. *Singer v. Bell*, 585 F. Supp. 300, 302 & n. 3 (S.D.N.Y. 1984) (collecting cases); *see also Madanes v. Madanes*, 981 F. Supp. 241

(S.D.N.Y. 1997).

"To establish jurisdiction against an out-of-state co-conspirator, a plaintiff must allege facts warranting the inference that the out-of-state defendant was a member of the conspiracy and that the defendant had an awareness (a) of the effects of its activity in New York and (b) that the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators." *Sierra Rutile*, 1992 U.S. Dist. LEXIS 13518, at *25 (citing *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991)). Defendant's membership in the conspiracy is shown by its registration of the infringing domain names with NSI and its contract with HotYellow to distribute advertisements associated with those names in New York and elsewhere. Defendant not only had an awareness of the effects of its activity in New York, but it specifically intended its actions to have such effects. Moreover, it benefitted from the scheme by obtaining a means by which it could extort money from MSDW and other New-York based investment houses.

HotYellow unquestionably is subject to this Court's jurisdiction, and under the co-conspiracy theory of person jurisdiction, defendant is equally subject to this Court's jurisdiction.

2.    Defendant Has Caused Injury in New York
and Regularly Solicits Business in New York

CPLR 302(a)(3) provides a separate and independent basis of personal jurisdiction over the defendant. Pursuant to CPLR 302(a)(3), a court may exercise personal jurisdiction over any non-domiciliary who in person or through an agent (1) commits a tortious act outside the state (2) causing injury to person or property inside the state (3) if defendant (a) regularly does or solicits business or engages in any other persistent course of action in the state **or** (b) expects or reasonably should expect the act to have consequences in the state and derives substantial

14

revenue from interstate or international commerce.

In the present case, the defendant and HotYellow have broadcast, not just "regularly," but continuously, advertisements in and into New York which are targeted at New York residents and which incorporate counterfeit replicas of MSDW trademarks and trade names. Such activity is clearly a tortious act on the authorities cited in Part I.A.1., *supra*. Indeed, it is well-established that establishing an infringing domain name with the intention of extorting money from the trademark owner is, without more, a tortious act. *Panavision*, 141 F.3d at 1321; *Intermatic*, 947 F. Supp. at 1238-41; *Purco*, 38 F. Supp.2d at 1324; *Planned Parenthood*, 42 U.S.P.Q.2d at 1436-37; *Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 296 (D. N.J. 1998), *aff'd*, 159 F.3d 1351 (3d Cir. 1998); *Toys "R" Us, Inc. v. Abir*, 45 U.S.P.Q.2d at 1947-49.

For purposes of the present motion, defendant does not and cannot deny that its and HotYellow's unauthorized uses of MSDW trademarks have caused injury to MSDW. MSDW has been unable to transact business in New York using the domain names MSDWONLINE.COM, MORGANSTANLEYDIRECT.COM, MSDWTRADING.COM, and MSDWSTOCKTRADE.COM, and New York customers of MSDW have likely been confused and deceived by these domain names and the absence of MSDW services at sites identified by those domain names (McDade Decl. ¶¶ 6-7).

In *American Network, Inc. v. Access America/Connect Atlanta, Inc.*, 975 F. Supp. 494 (S.D.N.Y. 1997), the Court found that plaintiff trademark owner had been injured under the meaning of CPLR 302(a)(3) in factual circumstances analogous to the current case. In *American Network*, plaintiff alleged that defendant's use of AMERICA.NET for Internet services infringed plaintiff's mark AMERICAN.NET for the same type of services. *Id.* at 495. Plaintiff alleged

NY2 - 1001998.2

that "it has been, and will continue to be, harmed in the New York market because New York computer users, who are among plaintiff's potential customers, have viewed the mark 'AMERICA.NET' on their computer screens in New York when visiting defendant's site and have been confused and deceived by that mark." *Id.* at 497. The Court held that plaintiff's allegations of injury were sufficient under CPLR 302(a)(3) and denied defendant's motion to dismiss for lack of jurisdiction. Injury has similarly occurred to MSDW here.

Defendant's primary basis for disputing jurisdiction under CPLR 302(a)(3) is its contention that, as a "mom and pop" operation, it allegedly does not derive any "substantial" revenues from interstate or international commerce (Def. Br. at 13). Defendant's contention is unavailing for two separate and independent reasons.

First, the statute does not require a showing of substantial revenue if defendant regularly solicits business within the state. CPLR 302(a)(3)(i). By its contracts with HotYellow, defendant and its agent, HotYellow, both unquestionably engage in a "persistent course of conduct" in New York, including "regular" solicitation of business in New York. It is well-settled that the proprietor of an Internet "web site" is subject to in personam jurisdiction in states where the proprietor solicits business via the Internet. *See, e.g., American Network, Inc. v. Access America/Connect Atlanta, Inc.,* No. 96 Civ. 6823 (LLS), 1997 WL 466507, at*4-*6 (S.D.N.Y. August 14, 1997); *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997); *Maritz, Inc. v. Cybergold, Inc.,* 947 F. Supp. 1328, 1333 (E.D. Mo. 1996 ); *Inset Systems, Inc. v. Instruction Set, Inc.,* 937 F. Supp. 161, 164 (D. Conn. 1996). Advertisements exemplified by Exhibit 1 to this memorandum expressly solicit business and are seen by countless people in New York every day. Defendant thus falls squarely under CPLR 302(a)(3)(i), regardless of how much revenue it has or has not succeeded in capturing.

Second, the record of the present case does not permit the Court to form any conclusion about how much revenue defendant has or has not generated as a result of its ransom scheme. Defendant admits that it has registered over 100 domain names, which it characterizes as "valuable assets" that "can fetch as much as six (6) figures or more" (Tom Decl. Exs. 4 & 8). If MSDW had given in to defendant's extortionate demands, defendant would have received between $50,000 and $75,000. Defendant's allegation that it does not derive any revenue from interstate or international commerce is thus sharply disputed (*see* Def. Br. at 13). To the extent that this issue is material to the presence or absence of jurisdiction, MSDW is entitled to discovery to determine the extent to which defendant has or has not generated revenues. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

    3.    Defendant Has Both Transacted Business Within
          and Contracted to Supply Services in New York

Defendant's contracts with NSI and HotYellow also support a finding of long-arm jurisdiction under CPLR 302(a)(1) which provides for personal jurisdiction over an out-of-state defendant who "in person or through an agent . . . transacts any business within the state [of New York] or contracts anywhere to supply goods or services in the state." CPLR 302(a)(1) is "a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40, 43, 527 N.Y.S.2d 195, 198-99 (1988). Jurisdiction over defendant is warranted under both the "transacting business" prong and the "contracting to supply services" prong of CPLR 302(a)(1).

It is uncontroverted that defendant entered into various contracts with NSI pursuant to which defendant purported to reserve for itself the exclusive right to use

NY2 - 1001998.2

MSDWONLINE.COM, MORGANSTANLEYDIRECT.COM and other Internet domain names incorporating MSDW trademarks and service marks. The record further shows that defendant entered into these contracts for the sole purpose of "supplying" these names to MSDW at prices hundreds of times higher than the basic $70 registration fee (*see* Stephens Decl. Ex. 2).

Defendant's contractual relationship with HotYellow constitutes transaction of business within New York, thereby justifying the exercise of jurisdiction under the "transacting business" prong of CPLR 302(a)(1). *Courtroom Television v. Focus Media, Inc.*, 695 N.Y.S.2d 17, 19, 1999 N.Y. App. Div. LEXIS 8787, *4 (1999); *Alan Lupton Assocs. Inc. v. Northeast Plastics Inc.*, 105 A.D.2d 3, 7, 482 N.Y.S.2d 647, 651 (4th Dept. 1984). Moreover, defendant's contracts with NSI and HotYellow constitute contracts to supply goods and services in the state under the second prong of CPLR 302(a)(1). Defendant contracted with NSI to obtain registration of the infringing domain names so that it could sell or "supply" these domain names to MSDW and other brokerage firms in New York. *See Umbro Int'l, Inc. v. 3263851 Canada, Inc.*, 50 U.S.P.Q.2d 1786, 1790 (Va. Cir. Ct. 1999) (Internet domain names are considered property). Defendant has thus unquestionably engaged in conduct falling with the plain meaning of the statute.

It is also undisputed that defendant has licensed or otherwise agreed with HotYellow that HotYellow can use MSDWONLINE.COM, MORGANSTANLEYDIRECT.COM, and other domain names registered by defendant in commercial advertisements touting "web hosting services" purportedly offered by HotYellow. These contracts have subsisted for months and have resulted in the broadcast into New York of commercial advertising available to millions of viewers including MSDW and its clients. Where defendant licenses infringing material to a third party in New York who then distributes the

material in New York and elsewhere, jurisdiction is warranted under the "contracting to supply

services" prong of CPLR 302(a)(1).  *Linzer v. EMI Blackwood Music, Inc.*, 904 F. Supp. 207,

213-14 (S.D.N.Y. 1995); *Lipton v. The Nature Co.*, 781 F. Supp. 1032, 1035 (S.D.N.Y. 1992);

*Meyer v. Sharron*, 1986 U.S. Dist. Lexis 22320, at *3 (S.D.N.Y. July 24, 1986); *Greenky v.

Irving Music, Inc.*, 217 U.S.P.Q. 750 (S.D.N.Y. 1981).  Defendant's various contracts with

HotYellow and NSI thus provide a basis for personal jurisdiction under CPLR 302(a)(1).

      B.      The Due Process Clause Does Not Prevent the Exercise of Jurisdiction.

      It is also clear that the Due Process Clause of the Fourteenth Amendment does not

preclude the exercise of personal jurisdiction on the particular facts of this case.  To determine

whether an exercise of jurisdiction is consistent with due process of law, a two step inquiry in

undertaken.  First, the Court must determine whether the defendant "'purposely directed' his

activities at residents of the forum."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)

(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  Second, the Court must

analyze whether, under all the circumstances, an exercise of jurisdiction "would comport with

`fair play and substantial justice.'"  *Id.* at 476 (quoting *International Shoe Co. v. Washington*, 326

U.S. 310, 320 (1945)).

      In the present case, the first prong of due process analysis is easily satisfied.

There can be no doubt that this defendant purposely, deliberately, premeditatedly, and

maliciously targeted MSDW and other New York-based investment banks when it registered

Internet domain names such as MORGANSTANLEYDIRECT.COM,

JPMORGANONLINE.COM, and GOLDMANSACHSDIRECT.COM.  Defendant has not

denied that it was aware of MSDW's trademark and trade names at the time defendant applied

for the registration of the domain names in question.  Defendant's contract with New York-based

HotYellow for web hosting services likewise shows purposeful availment of the benefits of conducting business in New York. *American Network*, 975 F. Supp. at 499.

In view of the indefensible and malicious character of defendant's acts, there also can be no doubt that requiring defendant to account for itself in this Court, where defendant's intended victim is domiciled, comports with substantial justice and fair play. As the Court stated in *American Network*, "[a]ssuming that defendant indeed knew of plaintiff's mark and New York place of business, it became more reasonable for defendant to assume that publishing its similar mark on its Web page, which could be viewed from anywhere, might cause harm to a New York corporation and that defendant might then be sued there." *Id.* at 500.

Defendant's position is no different in this respect from that of the defendant in the *Panavision* case, wherein the Ninth Circuit held that the Due Process Clause did not preclude the exercise of personal jurisdiction over a "cyber-squatter" whose conduct is substantially similar to the conduct with which defendant is charged in this case. *Panavision*, 141 F.3d at 1323-24. Indeed, the case for jurisdiction is stronger in the present case than it was in *Panavision*, because as noted above, defendant has seen fit to utilize the services of a New-York headquartered company, HotYellow, to further defendant's ransom scheme. When defendant deliberately registered famous trademarks and trade names of New York investment banks and openly and notoriously offered these names for sale to the highest bidder, the defendant could reasonably expect that the targets of its ransom scheme would file suit against defendant and that defendant could be subject to jurisdiction in the forum where its targets reside, as in the *Panavision* case.

NY2 - 1001998.2

II.    **THE COURT HAS IN REM JURISDICTION TO DETERMINE MSDW'S AND DEFENDANT'S RIVAL CLAIMS OF INTEREST IN THE DOMAIN NAME REGISTRATIONS WHICH NSI HAS DEPOSITED WITH THIS COURT.**

Fed. R. Civ. P. 4(n)(2) provides:

> Upon a showing that personal jurisdiction over a defendant cannot, in the district where the action is brought, be obtained with reasonable efforts by service of summons in any manner authorized by this rule, the Court may assert jurisdiction over any of the defendant's assets found within the district by seizing the assets under the circumstances and in the manner provided by the law of the state in which the district court is located.

Thus, even assuming, for purposes of argument, that this Court somehow lacked personal jurisdiction over the defendant's person, Rule 4(n)(2) expressly authorizes the Court to exercise in rem jurisdiction "over any of the defendant's assets found within the district by seizing the assets under the circumstances and in the manner provided by the law of the state in which the district court is located."

Under New York law, in rem jurisdiction is authorized by CPLR 314(2) which provides:

> Service may be made without the state by any person authorized by Section 313 in the same manner as service is made within the state . . . where a judgment is demanded that the person to be served be excluded from a vested or contingent interest in or lien upon specific real or personal property within the state; or that such interest or lien in favor of either party be enforced, regulated, defined or limited; or otherwise affecting the title to such property, including an action of interpleader or defensive interpleader.

MSDW's complaint in this action seeks a judgment excluding defendant from any interest in the Internet domain name registrations which the holder of those registrations, NSI, has deposited with this Court. There is and can be no question that these deposited registrations

21

constitute "personal property within the state" of New York. *Cf. Umbro Int'l, Inc. v. 3263851 Canada, Inc.,* 50 U.S.P.Q.2d 1786 (Va. Cir. Ct. 1999) (Internet domain names deposited with a Court constituted property subject to attachment).

Defendant's assertion that "plaintiff in this action cannot claim (and does not allege) that the domain names themselves, or even their certificates, are located in this judicial district, so as to give this Court jurisdiction over them in an in rem proceeding" (Def. Mem. at 17) is simply wrong. MSDW alleges exactly that. The domain name registrations have been "deposited" with, and are sitting in the registry of this Court; and this Court's judgment will unquestionably be enforceable to effect a transfer of the names to MSDW. The domain names are located "within" New York to the maximum extent any intangible personal property can be. Further, as noted above, a New York-headquartered entity, HotYellow, is actually broadcasting advertisements using the disputed domain names. For this separate and independent reason, the domain names are located "within" New York in every sense of the term.

Defendant's alternative assertion that MSDW supposedly "should have sued the domain names themselves, the res over which Plaintiff asks the Court to exercise jurisdiction" (Def. Mem. at 17) is equally erroneous. CPLR 314(2) "requires that the intended defendants be named and served in usual way." D. Siegel, New York Practice § 103 at 174 (3d ed. 1999). Defendant's contrary suggestion is baseless. MSDW's complaint expressly invokes this Court's in rem jurisdiction and complies with CPLR 314(2).

Defendant's final assertion, that federal trademark law supposedly does not "permit" the exercise of *in rem* jurisdiction over Internet domain name registrations (Def. Opp. Mem. at 2, 17-18) is erroneous on several levels. In the first place, the Lanham Act does not currently have, and never has had, any provision relating to service of process. The

commencement of actions arising under the Lanham Act has always been accomplished in accordance with the law of the state where the action in pending. Nothing can be inferred from a supposed absence of "permission" in the Lanham Act for courts to issue process based on in rem jurisdiction, for the statute does not even purport to address the subject.

Second, it is well-established the Lanham Act is cumulative of, and in no way preempts, state law remedies for unfair competition. *Lesportsac v. K-Mart Corp.*, 617 F. Supp. 316, 318 (E.D.N.Y. 1985) (the Lanham Act does not preempt any state law upon which plaintiff might rely in seeking relief). *See also Colonial Penn Group, Inc. v. Colonial Deposit Co.*, 834 F.2d 229, 237 (1st Cir. 1987); *La Chemise LaCoste v. Alligator Co.*, 506 F.2d 339, 346 (3d Cir.), *cert. denied*, 421 U.S. 937 (1975); *Gateway 2000, Inc. v. Cyrix Corp.*, 942 F. Supp. 985, 993 (D.N.J. 1996); *Emerson Power Transmission Corp. v. Roller Bearing Co. of America*, 922 F. Supp. 1306, 1313 (N.D. Ind. 1996). Thus, even if the Lanham Act did contain a service of process provision (and it does not), state laws authorizing service of process with regard to MSDW's claims would be unaffected. This would be particularly true with regard to MSDW's claims arising under state law.

Third, the Lanham Act does not purport to create or regulate how rights in Internet domain name registrations are created or transferred. Whether the Lanham Act "permits" federal courts to exercise in rem jurisdiction over Internet domain name registrations is thus basically irrelevant to the issue of this Court's jurisdiction over Internet domain name assets located in New York.

The sole authority cited by defendant in opposition to *in rem* jurisdiction is *Porsche Cars North America v. Porsch.Com*, 51 F. Supp. 2d 707 (E.D. Va. 1999). The *Porsche* case is no authority for dismissing the present action for a number of reasons.

NY2 - 1001998.2

First, the *Porsche* decision purported to interpret Fed. R. Civ. P. 4(n)(1), not Fed. R. Civ. P. 4(n)(2). *See id.* at 711. The court in *Porsche* appeared to reason that Rule 4(n)(2) was not available to the plaintiff in that case because "neither the Virginia legislature nor the Virginia courts have recognized claims for trademark dilution under state law." *Id.* Putting aside the merits of this reasoning, it has no application to the present case in any event, since New York has long recognized causes of action for trademark dilution. N.Y. Gen. Bus. Law § 360-l. Furthermore, MSDW asserts multiple claims arising under both state and federal law. There is nothing in the text of Fed. R. Civ. P. 4(n)(2) which restricts its applicability to causes of action arising under state law, but again, even if there were any such limitation, that would be no bar to MSDW's action which invokes New York state as well as federal unfair competition law.

Second, the *Porsche* decision cited *Schaffer v. Heitner*, 433 U.S. 186 (1977), for the broad proposition that "courts generally cannot exercise in rem jurisdiction to adjudicate the status of property unless the Due Process Clause would have permitted in personam jurisdiction over those who have an interest in the *res.*" *Porsche,* 51 F. Supp. 2d at 712. This broad statement was clearly incorrect, because it confused "true" in rem jurisdiction, which is asserted in the present case, from so-called "quasi" in rem jurisdiction which was the subject of the *Schaffer* case. The reasoning of *Schaffer* is completely inapposite to true in rem jurisdiction cases, as a leading commentator notes:

> The category of rem jurisdiction we have been discussing, in which the property involved is the very subject of the claim in suit, is not affected by the U.S. Supreme Court's decision in *Schaffer v. Heitner*. The restrictions pronounced by that case affect quasi in rem jurisdiction. . . .

D. Siegel, New York Practice § 103 at 174 (3d ed. 1999).

Indeed, the fallacy of the defendant's argument (and the court's statement in the

*Porsche* decision quoted above) appears on the face of Rule 4(n)(2). That rule expressly provides that in rem jurisdiction may be exercised where personal jurisdiction "cannot, in the district where the action is brought, be obtained." Defendant's position would effectively negate Rule 4(n)(2) and abolish true in rem jurisdiction in the federal court system.

This is not a case, like *Schaffer*, where the plaintiff claims no interest in the specific property which has been deposited with the Court. On the contrary, MSDW in this case specifically alleges that the subject domain name registrations are MSDW's rightful property, and that title to those registrations should be transferred to MSDW. This is a prototypical situation in which both and federal and state courts have traditionally exercised in rem jurisdiction to determine the respective rights and obligations of rival claimants to specific personal or real property.

For the reasons set forth in Part I, above, there is nothing unfair about requiring this defendant to account for its actions in New York and show cause why it should not be enjoined and ordered to pay damages to MSDW for conduct amounting to trademark infringement and unfair competition. But in any event, the Court unquestionably has jurisdiction to determine that this defendant should be excluded from any interest in the Internet domain name registrations which literally are sitting in the registry of the Court, having been placed there by the registrar, NSI, who consents to this Court's jurisdiction, and whose conduct would be required to effect any change in the record ownership of the names. *Cf. McCasland v. McCasland*, 68 N.Y.2d 748, 750, 497 N.E.2d 696, 697, 506 N.Y.S.2d 329, 330 (1986) (*in rem* jurisdiction available to determine conflicting claim to stock of corporation which was subject to jurisdiction in New York, notwithstanding alleged lack of jurisdiction over person of defendant claimant.)

NY2 - 1001998.2

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss should be denied in its

all respects.

Dated:  October 19, 1999

Respectfully submitted,

PENNIE & EDMONDS LLP

By _____

    James W. Dabney (JD 9715)
    Jonathan E. Moskin (JM 9814)
    Katharine E. Smith (KS 8394)
    Catherine M. Clayton (CC 5575)

1155 Avenue of the Americas
New York, New York  10036-2711
(212) 790-9090

Attorneys for Plaintiff
Morgan Stanley Dean Witter & Co.

NY2 - 1001998.2



