# EXHIBIT N

9cflmorc                                                                 1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   MORGAN STANLEY,

 4                  Plaintiff,

 5             v.                              99 CV 8921 (AKH)

 6   SMART IDEAS,

 7                  Defendant.

 8   ------------------------------x

 9

10
                                               December 15, 1999
11                                             9:50 a.m.

12

13   Before:

14                  HON. ALVIN K. HELLERSTEIN,

15                                             District Judge

16

17

18                       APPEARANCES

19   PENNIE & EDMUNDS
          Attorneys for Plaintiff
20   BY:  JAMES DABNEY
          KATHARINE E. SMITH
21

22   FRIEDMAN SIEGELBAUM
          Attorneys for Defendant
23   BY:  LINDSEY TAYLOR

24

25
```

SOUTHERN DISTRICT REPORTERS (212) 805-0300

```
9cflmorc                                                              1
```

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   MORGAN STANLEY,

 4                  Plaintiff,

 5             v.                            99 CV 8921 (AKH)

 6   SMART IDEAS,

 7                  Defendant.

 8   ------------------------------x

 9

10                                           December 15, 1999
11                                           9:50 a.m.

12

13   Before:

14                    HON. ALVIN K. HELLERSTEIN,

15                                           District Judge

16

17

18                            APPEARANCES

19   PENNIE & EDMUNDS
          Attorneys for Plaintiff
20   BY:  JAMES DABNEY
          KATHARINE E. SMITH
21

22   FRIEDMAN SIEGELBAUM
          Attorneys for Defendant
23   BY:  LINDSEY TAYLOR

24

25
```

1          (In open court)
2          THE COURT: This is defendant's motion on
3     jurisdiction. Do you wish to speak?
4          MR. TAYLOR: Your Honor, Lindsey Taylor on behalf of
5     the defendant.
6          THE COURT: OK. Go ahead.
7          MR. TAYLOR: Good morning, your Honor. This is the
8     defendant's motion to dismiss this case for lack of personal
9     jurisdiction. The defendant Smart Ideas is a California
10    corporation, which it is alleged they own --
11         THE COURT: Therefore, I take it is as true.
12         MR. TAYLOR: For purposes of this motion.
13         THE COURT: Right, so don't worry about addressing
14    what they have said. They are entitled to their complaint.
15    You are entitled to your motion.
16         MR. TAYLOR: Smart Ideas owns an internet domain
17    named msdwonline.com. Morgan Stanley alleges that that domain
18    name infringes upon their registered trademarks and
19    unregistered trademarks, and have brought suit here in New
20    York based upon trademark infringement and other claims.
21         Smart Ideas owns the name. They are a California
22    corporation. They transact no business in New York, and the
23    use of this particular domain name has been for a mountain
24    biking web site which is entirely passive, in which I mean
25    that it does not send out any messages in order to access the

1   site.  To use the site, a person needs to dial up Smart Ideas'
2   web page, rather than Smart Ideas sending out messages to the
3   world.
4           The starting place for personal jurisdiction is under
5   C.P.L.R. 302 rather than the due process clause, because New
6   York has chosen a much narrower or a shorter long-arm statute,
7   as it were.  Under C.P.L.R. 302, an out-of-state defendant
8   cannot be held in New York unless they transact business
9   within the state, or they commit a tortious act within the
10  state, or they commit a tortious act outside the state --
11          THE COURT:  And has an effect in the state.
12          MR. TAYLOR:  And has an effect in the state.  And one
13  of caveats on that, however, is that the defendant expected,
14  or should have expected, an effect in the state and they
15  derived substantial revenue interstate and international
16  commerce.  Smart Ideas' only revenue-producing business is an
17  SAT aid web site, which they have only sold to California
18  residents.  So they have no revenue from international or
19  interstate commerce.
20          THE COURT:  Run that by me again.  Say that again.
21          MR. TAYLOR:  Sure.
22          THE COURT:  They have only sold what to California
23  residents?
24          MR. TAYLOR:  They have a separate web site dealing
25  with SAT aids for the SAT college exam tests, and they sell

9cflmorc                                                           4

1  some materials for studying for the SAT test, but the only
2  people that they have sold materials to have been California
3  residents.
4           THE COURT:  How is the SAT related to this case?
5           MR. TAYLOR:  The only way it is related to this case
6  is that that is the revenue that has been earned by Smart
7  Ideas doing anything.  That has nothing to do with Morgan
8  Stanley or msdwonline.com.
9           THE COURT:  The point they are making is that Morgan
10 Stanley is here.
11          MR. TAYLOR:  Correct.
12          THE COURT:  And that the whole point of your client's
13 occupying the domain name is to affect Morgan Stanley here
14 because they are standing like a colossus to thwart their
15 ability to move into the internet and have their name.
16          MR. TAYLOR:  That particular name.
17          THE COURT:  That is all we are talking about, isn't
18 it?
19          MR. TAYLOR:  They have their web site msdw.com.  In
20 fact, there are numbers of examples which were submitted to
21 the Court of all the information about Morgan Stanley which
22 they printed off of their web page msdw.com.  And while I was
23 watching the football games this weekend, I saw a number of
24 ads advertising that morganstanleyonline brokerage were so
25 great; visit our web site on msdw.com.

                    SOUTHERN DISTRICT REPORTERS (212) 805-0300

9cflmorc                                                                 5

1           THE COURT:  They allege msdwonline.com is confusingly
2    similar to msdw.com.
3           MR. TAYLOR:  That's going to the merits of the case
4    rather than the contacts between --
5           THE COURT:  Follow through there.  They alleged that,
6    yes, it goes to the merits, but they are saying that you are
7    injuring me -- "you" being your client, "me" being Morgan
8    Stanley for purposes of this hypothetical -- by preventing me
9    from doing my business on the internet in New York and
10   elsewhere and from New York because you have created a
11   confusingly similar name; that this is a tort in New York
12   because it has major effects in New York; and the very
13   hallmark of the internet is interstate commerce and revenues
14   from interstate commerce.  So you have complied completely
15   with Section 302.  You have injured me by committing the tort
16   against me in New York and you are involved in interstate
17   business.
18          MR. TAYLOR:  I understand those allegations, except
19   that the actions of the defendant, giving them the benefit of
20   all of their allegations, is that what -- if there were
21   tortious conduct by Smart Ideas, it took place in California,
22   because the internet is unlike traditional advertising or
23   broadcasting, because advertising and broadcasting the
24   defendant sends it out into the world, whereas on the internet
25   people come into the defendant.

1      THE COURT:  Paragraph 5 of the complaint says, "This
2  Court has personal jurisdiction over the defendant, because
3  defendant has committed and threatens to commit trademark
4  infringement, trade name infringement, unfair competition,
5  dilution, misappropriation, and other torts in this
6  district" -- that is, the Southern District of New York --
7  "because the defendant has caused injury to the plaintiff and
8  its property in this district; and because defendant has
9  purposely and directly targeted its activities at this
10 district."
11     Those are the allegations that are the bases of in
12 personam jurisdiction.
13     MR. TAYLOR:  Those are the allegations, your Honor.
14 However, as is set forth in the declarations that are
15 submitted with our motion, all of the activities of the
16 defendant took place in California, and in the K.C.P.L. v.
17 Nash case, which was decided here in the Southern District in
18 1998 based upon fairly similar facts, the Court found that the
19 activities did not take place in New York, they took place out
20 of state.
21     That defendant was not --
22     THE COURT:  What case is that?
23     MR. TAYLOR:  K.C.P.L. v. Nash.  That was cited in our
24 papers.
25     The Court there found that these same activities were

taking place outside of the state. The defendant was not transacting business within the state. If there was a tortious act committed, it was not within the state. And in order to fit within the other criteria under 302, committing the tortious act outside and which causes an effect inside, this defendant has not derived substantial revenue from interstate commerce, which is one of the criteria under Section 302.

THE COURT: I take your point.

MR. TAYLOR: So this defendant does not fit within any of the three pigeonholes which is required under Section 302.

THE COURT: But the plaintiff alleges that you took the name to stand aside and thwart Morgan Stanley in the normal pursuit of its business on the internet by creating a confusingly similar name, having effects and doing damage in the Southern District of New York. You could be anywhere in the world, you could be nowhere in the world, you could be somewhere in the radio waves that surround the world, but the effects and the purpose of your acts are focused right here. That is their point.

MR. TAYLOR: I understand that that is their point.

THE COURT: It is a good point.

MR. TAYLOR: I understand their point. However, the defendant's activities still don't fit within the pigeonhole

1   of Section 302, because in order to fit within -- I keep
2   saying it is a pigeonhole because that's pretty much what it
3   is. Committing it outside the state, causing injury within
4   the state, you have to regularly do business --
5           THE COURT: I think it does. It is a tortious act
6   outside the state, causing injury to personal property within
7   the state. There are two provisos.
8           MR. TAYLOR: Right.
9           THE COURT: The first is that the defendant regularly
10  does or solicits business or derives substantial revenue from
11  goods used or consumed or services rendered, in the state.
12  The very purpose that plaintiff alleges is to get revenue from
13  Morgan Stanley by holding it up. That is revenue. That is
14  the very purpose of the activity, so alleged.
15          And the second is that it should reasonably have
16  expected the act to have consequences in the state. That's
17  clear. And third, derive substantial revenue from interstate
18  or international commerce. That is also part of it. And to
19  find that, as a pretext, they engaged in some fashion.
20          MR. TAYLOR: However, Smart Ideas hasn't earned any
21  revenue in interstate commerce. They did not do business or
22  derive any revenue for goods or services -- for goods sold
23  within the state or services rendered within the state.
24          THE COURT: The services rendered in the state that
25  they offer is elimination of a confusingly similar name if

1  their outrageous terms are accepted.  That's business.  It may
2  not be nice business, but it's business.
3           MR. TAYLOR:  But they didn't earn any revenue from
4  it.
5           THE COURT:  They are saying that they have a very
6  good name and you are tarnishing their name, you are cheating
7  that name, you are appropriating that name, you are doing
8  damage to that name; that it is right here in this district,
9  and that you do it from your position on the internet.
10          MR. TAYLOR:  Everything that the defendant did took
11 place in California, except for two things:  First of all,
12 which was marketing their name on HotYellow, which was in
13 Arizona; and registering the domain name --
14          THE COURT:  They have an office in New York.
15          MR. TAYLOR:  No.  Registering the domain name with
16 Internet Solution in Virginia.
17          THE COURT:  Where is the Arizona company in terms of
18 its accounting office; is that in new York?
19          MR. TAYLOR:  Correct.  That is the only tie to New
20 York, the accounting office in New York.  The server is in
21 Toronto.  They send their bills out of New York.
22          THE COURT:  OK.  Anything else?
23          MR. TAYLOR:  A second basis of jurisdiction which
24 they are alleging is --
25          THE COURT:  *In rem*.  Forget about that.

1    MR. TAYLOR:  Forget about that, I have nothing more
2  to say.
3    THE COURT:  I think the point on the *in rem* is very
4  secondary.  Besides, Morgan Stanley doesn't need the *in rem* if
5  the jurisdiction *in personam* is accepted.
6    MR. TAYLOR:  Exactly so.  Thank you, your Honor.
7    THE COURT:  Is that true?
8    MR. DABNEY:  That is correct, your Honor.  The *in rem*
9  jurisdiction is moot if *in personam* jurisdiction is held to
10 exist.
11   THE COURT:  You were going to withdraw that
12 allegation.  I think it is paragraph 6 in your complaint.
13   MR. DABNEY:  If the motion under 12(b)(2) is denied,
14 then the request that the Court exercise *in rem* jurisdiction
15 would be withdrawn.
16   THE COURT:  I am crossing it out.
17   Have I stated your theory correctly?
18   MR. DABNEY:  Your Honor, you have very aptly stated
19 one of the multiple bases of jurisdiction which could be
20 exercised in this case.  The record shows uncontradicted that
21 on May the 13th, 1999, in addition to registering msdwonline,
22 this same defendant registered GoldmanSachsDirectOnline,
23 MorganStanleyDirectOnline and SmithBarneyOnline.
24   THE COURT:  You will tell me that in terms of --
25   MR. DABNEY:  We will, your Honor.

1             THE COURT: I guess you are saying this has to do
2    with their coming into this jurisdiction for having relevant
3    purposes of jurisdiction, doing business by occupying domain
4    names of New York companies.
5             MR. DABNEY: In every single internet case decided to
6    date, whether it is where there has been a clear showing that
7    the defendant purposely, premeditatedly and deliberately
8    targeted its activity at residents of the forum, without
9    exception, the courts have upheld the exercise of personal
10   jurisdiction, as was done in the Toeppen case and the McMaster
11   Carr case and numerous cases cited in our papers. And this
12   case falls squarely within that line of authority.
13            I would like, if I could, to illustrate the other
14   bases of the jurisdiction before the Court. If the Court has
15   before it the declarations that were submitted in opposition
16   to the motion, one of the declarations was a declaration of
17   Garland Stevens, which had an Exhibit 21 attached which
18   illustrated some of the commercial advertising which was going
19   on, was going on in October, using the Morgan Stanley direct
20   name and, as of yesterday, was still going on using the Morgan
21   Stanley direct name. And with your Honor's permission, I
22   would just like to supplement the record to show what the
23   state of the activity in the marketplace as of --
24            THE COURT: I don't want to supplement the record. I
25   think I can rule.

1      It is the law in this circuit that the commission of
2  even a single tort within the state gives this Court personal
3  jurisdiction.  The tort here is creation of a confusingly
4  similar name in New York and elsewhere, but purposefully
5  directed to Morgan Stanley in New York.  The basis of
6  jurisdiction is consistent with Pilates, Inc. v. Pilates
7  Institute, Inc., 891 F. Supp. 175 (S.D.N.Y. 1995); Dave
8  Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc., 779 F.
9  Supp. 335 (S.D.N.Y. 1991); Linzer v. EMI Blackwood Music,
10 Inc., 904 F. Supp. 207 (S.D.N.Y., 1995).  I also accept the
11 reasoning, even though the California long-arm statute is
12 broader than New York, Panvision Int'l, L.P. v. Toeppen, 141
13 F.3d 1316 (9th Cir. 1998).
14     The very purpose of the defendant's act, it is
15 alleged, is to attack Morgan Stanley and extort money from
16 Morgan Stanley because of a confusingly similar domain name
17 that was created for no legitimate purpose.  I repeat these
18 allegations in the complaint not to make judicial findings,
19 but to note what the allegations are.  I accept those
20 allegations for purposes of the jurisdictional motion.
21     I find that there is personal jurisdiction.  The
22 plaintiff has withdrawn paragraph 6 and other consistent
23 allegations alleging *in rem* jurisdiction.  This case will
24 proceed on the basis of personal jurisdiction.
25     Have we had a status conference in this case yet?

1           MR. DABNEY: We are scheduled to appear before your
2  Honor on January 7 for the Rule 16 conference, and I think
3  that may be a very good date because there is a very great
4  likelihood that Morgan Stanley will join as a party to this
5  case the HotYellow98.com entity which has submitted papers and
6  remarkably undertaken to assume certain responsibility for the
7  wrongful acts at issue in this case.
8           THE COURT: You need to make a motion under Rule
9  15(a) to do that, but it seems to me that there is no reason
10 to oppose it. And I think the defendant will probably consent
11 to that motion, won't you?
12          MR. TAYLOR: Yes, your Honor.
13          THE COURT: Without prejudice. So get that done
14 before the conference. We should not have a conference on
15 January 7. When you send me the stipulation, write me a
16 letter and ask that that conference be put over for
17 approximately 45 days to give an opportunity to HotYellow to
18 respond. Is this a kind of case that -- I don't think it
19 is -- where you can resolve the issues by motion? I don't
20 believe so. I believe you need discovery.
21          MR. DABNEY: I believe that there will be possibly
22 some discovery needed of the defendants. For instance, I
23 heard for the first time this morning, your Honor, that the
24 defendant is a California corporation. Up until now, the
25 defendant in its affidavits filed in this court had indicated

1    the Smart Ideas was simply a fictitious name for Mr. and
2    Mrs. Wong. So one thing on which we will need a little bit of
3    discovery, potentially, is simply to find out who is who in
4    this case, but certainly we can be prepared to go to trial in
5    this case very, very quickly.
6            THE COURT: I would think so, too, and I would be
7    amenable to that. I also don't think there is any need to
8    waste a considerable amount of time here or money. I think
9    you ought to cut to the chase quickly. I think you ought to
10   do the necessary document discovery now and not wait, and I
11   think, Mr. Taylor, it would be in your interests to agree to
12   that as well. I don't mean to agree to things that are
13   excessive, but you know very well what the discovery that will
14   be had in this case is. There is no need to fight it. If you
15   have grounds to succeed, the sooner you do that the better
16   because I don't think this case could run economically if you
17   prolong the proceedings either.
18           So, I think, talk to each other. I am not even sure
19   you need a case management conference. If you can get
20   together on discovery and can get a program for the discovery,
21   you can submit that in lieu of the conference. Save yourself
22   some more time and money and give me a discovery plan and
23   we'll set a date to meet.
24           MR. DABNEY: That would be fine.
25           MR. TAYLOR: I suspect that's something we can work

9cflmorc                                                                                          15

1   out.
2           THE COURT:  I think it is in both your interests to
3   do that.  I think it would be in HotYellow's interests as
4   well.
5           MR. DABNEY:  Thank you, your Honor.
6           THE COURT:  We'll issue a summary order tomorrow that
7   reflects what we have done.
8           (Adjourned)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25