UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
FOREST LABORATORIES, INC,                            :
:
                                  Plaintiff,             :       ECF CASE
:
           - against -                                    :       07 Civ. 7399 (AKH) (MHD)
:
:
LEIF NISSEN,                                         :
                                  Defendant.             :
:
------------------------------------------------------------------------x

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEYS' FEES**

      Leif Nissen respectfully submits this reply memorandum in support of his pending motion for an award of attorneys' fees.

      The plaintiff's opposition ("Pltf. Opp. Mem.") presents no evidence in support of its pleaded jurisdictional allegation that: "This Court has personal jurisdiction over the Defendant by virtue of his transacting, doing, and soliciting business in this District." Complaint ¶ 3 (emphasis added). The Court can and should find that this allegation was false (*see* Declaration of Leif Nissen, sworn to September 21, 2007 [hereinafter, "Nissen Decl."] ¶¶ 2-21), and was made with at best reckless disregard for its truth or falsity.

      The undisputed evidence of record shows that the web pages complained of by plaintiff (Nissen Decl. ¶¶ 14, 17 & Exs. 1-2) were designed, created, hosted, and displayed by third-parties, not Mr. Nissen. Nissen Decl. ¶¶ 14-15, 17-18. Plaintiff's counsel's assertions that Mr. Nissen "employed" these third parties (*e.g.*, Pltf. Opp. Mem. at 2; "when he *employed* Parked.com") to operate "his site" (*id*. at 3; "advertisements posted on *his* site") are simply false. The plaintiff's persistence in making false and unsupported factual assertions continuous a pattern of reckless, bad faith conduct that has characterized this plaintiff's litigation conduct from day one.

The *record evidence* – as distinguished from plaintiff's counsel's baseless assertions – shows that Mr. Nissen did no more than sit at a computer workstation at his home and respond to third-party online solicitations that he correlate certain domain names with "name server" computers that third-parties owned and controlled (Nissen Decl. ¶¶ 11, 17), in consideration of which the third-parties agreed to pay Mr. Nissen token amounts if *they*, the *third parties*, were successful in generating revenues from visits to *their* servers and "clicks" on hyper-text links in web page content that the *third parties* generated and displayed. *Id.* For example, during the 37-month period between April 2004 and May 2007, one third-party paid Mr. Nissen a grand total of $743 in fees in consideration of Mr. Nissen's having correlated the domain name "lexipro.com" with a server that that third party operated during those months. Nissen Decl ¶ 10. Mr. Nissen did not own or control, and in no way "employed," the third-parties whose independently-generated and hosted web pages were alleged by this plaintiff to be likely to cause confusion of consumers.

Passing over that the subject web pages (Nissen Decl. ¶¶ 14, 17 & Exs. 1-2) were in no way targeted at New York residents (as distinguished from English-speaking people anywhere in the world) and did not permit anyone to purchase any goods or services under any name, much less any goods or services of Mr. Nissen, the undisputed fact remains: the objected-to web pages *were not Mr. Nissen's*. The plaintiff's persistence in falsely asserting the contrary (*e.g.*, Pltf. Opp. Mem. at 2 ["*his* site"]; *id.* at 8 ["Defendant made true on his threat and *displayed* the 'lexipro.com' domain name on another pay-per-click site called SEDO") (emphasis added) is an excellent demonstration of how this plaintiff has acted "in bad faith." *Chambers v. Nasco*, *Inc.*, 501 U.S. 32, 45-46 (1991) (quotations and citations omitted).

The plaintiff also persists in asserting that the Court had personal jurisdiction on a theory that Mr. Nissen purportedly "reached out to this forum" (Pltf. Opp. Mem. at 1) when he sent an e-mail response to a cease and desist letter received from plaintiffs'

2

counsel (*id*. at 6; "Defendant wrote back to Forest"), and then sent a second e-mail to plaintiff's counsel after learning that plaintiff had induced a Florida-based third-party, Parked.com, LLC ("PDC"), to terminate its contractual relationship with Mr. Nissen (*id*. at 7-8). By sending these two e-mails, plaintiff says, Mr. Nissen "attempted to extort $10,000 from Forest" (*id.* at 1) and thus supposedly *created* a basis for personal jurisdiction that did not otherwise exist. The contention was frivolous when the plaintiff first asserted it (Complaint ¶ 28), and is no less frivolous now.

As we have previously demonstrated (*see* Memorandum in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Venue filed September 21, 2007 [hereinafter, "Def. Sept. 21 Mem."] at 9-12), the plaintiff's now-dismissed claims for alleged "cybersquatting" and related torts did not even purport to arise from Mr. Nissen's acts of sending two e-mails to plaintiff's counsel in New York that proposed or urged settlement on terms that Mr. Nissen believed reasonable in the circumstances (and plaintiff apparently viewed as "extortionate" and rejected). No claim is made, or could be made, that those e-mail communications were likely to cause confusion or caused any injury to this plaintiff whatsoever.

It was, thus, frivolous for the plaintiff to allege (Complaint ¶ 28), and is frivolous for plaintiff now to argue (e.g., Pltf. Opp. Mem. at 18; "the basis for Forest's jurisdictional allegations are electronic communications the Defendant sent to Forest") that the Court had personal jurisdiction over Mr. Nissen because he sent two entirely *lawful* e-mail communications to plaintiff's counsel that were never directly answered. Contrary to plaintiff's suggestion (Pltf. Opp. Mem. at 1), there is no "case law in this district" that remotely supports the plaintiff's frivolous position.

In *Morgan Stanley Dean Witter & Co. v. Smart Ideas*, 99 Civ. 8921 (S.D.N.Y. Dec. 15, 1999), the defendant had registered MORGANSTANLEYDIRECT.COM and other variants of well-known names of New York-based businesses. The defendant was alleged to have registered domain names with intent to "thwart Morgan Stanley in the

normal pursuit of its business on the internet" (Declaration of Christopher Serbagi in Opposition to Defendant's Motion for Attorney's Fees, sworn to November 21, 2007 [hereinafter, "Serbagi Fees Decl."]), "to get revenue from Morgan Stanley by holding it up" (*id*. at 8), and "to attack Morgan Stanley and extort money from Morgan Stanley." *Id*. at 12. The act that was said to subject the defendant to personal jurisdiction in New York was a bad faith act of *domain name registration* that the Court found had been "purposefully directed to Morgan Stanley in New York" (*id*.) and prevented Morgan Stanley from using its own actual name in New York-based business activities.

Nothing said or held in the *Morgan Stanley* case renders any less frivolous this plaintiff's repeated assertion that two *lawful* e-mail communications from Mr. Nissen to plaintiff's counsel, in which Mr. Nissen responded to a demand letter from plaintiff's counsel and proposed or urged settlement discussions, constituted a basis for personal jurisdiction over Mr. Nissen with respect to the purported claims stated in the plaintiff's now-dismissed Complaint. When coupled with the plaintiff's patently false allegation that as of August 20, 2007, Mr. Nissen was purportedly himself personally "transacting, doing, and soliciting business in this District" (Complaint ¶ 3), the inference is irresistible: the plaintiff invoked this Court's jurisdiction in bad faith, with willful or reckless disregard to Mr. Nissen's rights, and with manifest intent to oppress Mr. Nissen in a distant forum.

The plaintiff's recklessness and bad faith were further evident in its pleaded allegation, "[v]enue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c)." Complaint ¶ 4. As we have previously shown (Def. Sept. 21 Mem. at 22), 28 U.S.C. § 1391(c) applies only to "a defendant that is a corporation." The statute is patently inapplicable to Mr. Nissen, an individual. The plaintiff's opposition memorandum does not even mention the issue of venue. Mr. Nissen has never offered, advertised, or sold any goods in New York under the "lexipro.com" domain name. Nissen Decl. ¶ 8. There

4

was absolutely no basis for the laying of venue in this action in New York and plaintiff's opposition memorandum identifies none. Plaintiff's venue allegation was frivolous.

With regard to the plaintiff's failed attempt to have this case called for trial on September 11, 2007 (*see* Second Declaration of James W. Dabney, sworn to October 23, 2007 [hereinafter, "Second Dabney Decl."] ¶¶ 2-9), the plaintiff now denies having requested the undersigned's consent to having the trial of this action advanced and consolidated with the hearing of the plaintiff's motion for preliminary injunction, and claims to have always believed that on the second day of this case's pendency, without briefing or argument, the Part I Judge had casually set this case for jury trial to commence September 11, 2007. Serbagi Fees Decl. ¶ 10.

Mr. Serbagi would have the Court believe that on August 27, 2007, he purportedly requested of the undersigned that "Defendant consent to having *the issue* decided by summary judgment papers rather than burdening the Court with a hearing." *Id*. (emphasis added). The Court should find, instead, that the plaintiff's purported account of its actions is willfully false (*compare* Second Dabney Decl. ¶ 2 *with* Serbagi Fees Decl. ¶ 10) and an additional ground for concluding that the plaintiff has acted in bad faith and with intent to oppress Mr. Nissen.

This plaintiff is a multi-billion dollar corporation that was represented at all times by sophisticated counsel. This plaintiff knew exactly what it was doing when it filed suit in this Court against an individual defendant who had no New York presence, who had never sold a dime's worth of goods or services under any mark comprising "lexipro", and whose challenged domain name registration long antedated the plaintiff's claimed first use of the mark LEXAPRO. Nissen Decl. ¶ 7. The plaintiff also clearly knew and realized that by attempting to have this case called for trial on September 11, 2007, despite Mr. Nissen's written consent to all requested preliminary injunctive relief, the plaintiff was acting in a manner that was designed to cut off Mr. Nissen's rights as a

5

litigant (e.g., to discovery) and to deny Mr. Nissen any meaningful opportunity to challenge personal jurisdiction or venue or the merits of the plaintiff's purported claims.

The plaintiff's failure to submit evidence supporting its jurisdictional allegations and theories cannot be explained by a lack of access to evidence, for the Court granted expedited discovery and provided this plaintiff with every opportunity to obtain and present evidence supporting its Complaint. When the plaintiff failed in its unusual bid to cut off Mr. Nissen's rights to contest jurisdiction or venue and to take discovery of the factual basis of the plaintiff's purported claims, the plaintiff then voluntarily dismissed its suit and initiated a new proceeding that, plaintiff openly admits (Pltf. Opp. Mem. at 14), is purposely and deliberately designed to force Mr. Nissen to defend himself in *Washington state*.

Mr. Nissen respectfully suggests that the Court should ask itself: What conceivable good faith reason could this plaintiff have had for choosing Washington state, rather than Mr. Nissen's home state of Florida, as a place where Mr. Nissen could seek review of any adverse decision on the plaintiff's UDRP complaint (Second Dabney Decl. ¶ 15 & Ex. 10), a complaint that admittedly "mirrors the allegations that Forest asserted in this lawsuit" (Pltf. Opp. Mem. at 14)? Did the plaintiff choose Washington state because the plaintiff wanted to minimize the cost of litigating the merits of its purported claims? Was it because the plaintiff wanted to minimize the inconvenience of witnesses and the parties? Or might it be that this plaintiff acted with a view to *maximizing* the cost of contesting its purported claims, in hopes that the extreme remoteness and cost of litigation in Washington state might finally force Mr. Nissen to give up?

The Court can and should find that the plaintiff's "choice of Washington" (Pltf. Opp. Mem. at a 14) continues a pattern of litigation conduct in which this plaintiff has, throughout, acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."

6

*Chambers*, 501 U.S. at 45-46 (citations and quotations omitted).  Mr. Nissen's motion for attorneys' fees should be granted.

Dated:    New York, New York
          December 4, 2007

                                    Respectfully submitted,

                                    FRIED, FRANK, HARRIS,
                                      SHRIVER & JACOBSON LLP


                                    By:  /s/ James W. Dabney
                                            James W. Dabney
                                            Sarah R. Krissoff

                                    One New York Plaza
                                    New York, New York 10004-1980
                                    (212) 859-8000

                                    Attorneys for Defendant
                                      Leif Nissen

560276

## CERTIFICATE OF SERVICE

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that on the 4th day of December, 2007 I caused to be served upon the following, by the methods described below, a true copy of Reply Memorandum in Support of Defendant's Motion for an Award of Attorneys' Fees.

**First Class Mail**

Christopher Serbagi, Esq.
Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York 10022
*Attorneys for Plaintiff*

Dated: New York, New York
    December 4, 2007

_____
Jeffrey J. Bednar
Paralegal